# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHYLLIS CARSON; LORNE
COSMAN; WILLIAM DRAPER;
PHILLIP ERICKSON; SCOTT
EVANS; TERENCE GRANER;
DONALD HARMAN; SARAH
HOUSEHOLDER; TRUDY L.
GRANER; TRUDY LETSON;
SABINE MILLER; DIANA
HOBERT-POWELL; JANET
PURVIS; PATRICIA ROBERTS;
CAROLE SCHAUER; CARA
WASHINGTON; STEPHEN
KAPLITT; DEBORAH THELEN
individually and on behalf of all
others similarly situated,

   Plaintiffs,

v.

HP Inc.

   Defendant.

_____

Case No.:  1:22-cv-00208-CFC

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Phyllis Carson; Lorne Cosman; William Draper; Phillip Erickson;

Scott Evans; Terence Graner; Donald Harman; Sarah Householder; Trudy L.

Graner; Trudy Letson; Sabine Miller; Diana Hobert-Powell; Jan Purvis; Patricia

Roberts; Carole Schauer; Cara Washington; Stephen Kaplitt; and Deborah Thelen

1

individually and on behalf of all others similarly situated, file this First Amended

Class Action Complaint ("First Amended Complaint") against Defendant HP Inc.

("HP"). The following allegations are based on personal knowledge as to

Plaintiffs' own conduct and on the investigation conducted by their counsel.

## INTRODUCTION AND SUMMARY OF ACTION

1.      Plaintiffs bring this consumer class action alleging that HP misled

consumers about the quality and functionality of the Envy Laptops ("Envy"), Envy

360 Laptops ("Envy 360"), Pavilion Laptops ("Pavilion"), Pavilion 360 Laptops

("Pavilion 360") and the HP 14, HP 15, and HP 17 Laptops ("HP Laptop").

Together, these computers, sold in or after 2017, make up the "Class Laptops".

2.      HP designed, manufactured, marketed, sold, and distributed the Class

Laptops to tens of thousands of consumers throughout the United States.

3.      The Class Laptops all possess a material defect that prevent them

from being used as portrayed in HP's advertising materials, and HP concealed,

failed to disclose, or otherwise engaged in deceptive marketing with respect to this

defect. As a result, many consumers purchased computers that became practically

unusable after just months of use.

4.      Unbeknownst to consumers, the Class Laptops are designed and

manufactured with a common inherent defect that, over time and with ordinary use

as intended, compromises the laptops' hinges, thus impairing the computer's

2

portability and functionality. The Class Laptops' display hinges are defective in that they fail and eventually break off from the poorly secured plastic mounting points at the base of the device (the "Defect").

5.     One of the essential attributes of a laptop or portable computer is the ability to open and close the case like a clam shell for ease of transport. This ability is contingent on the hinge being anchored to the two halves of the laptop. A laptop's universal design consists of a thin upper case, containing the monitor, and a thicker, more robust bottom case that contains the keyboard, hard drive, CPU, and other critical components. The hinge provides a connection between the two halves and allows the monitor to be opened and closed as needed.

6.     Upon information and belief, the Defect is the result of ordinary stress on a vital component that is common in the Class Laptops. Because the hinges are anchored to the laptops with poorly made and substandard parts constructed from weak plastic and/or otherwise suffer from defects in material and/or workmanship, the ordinary opening or closing of the laptop fractures the plastic anchors, causing them to fail, and destabilizes the hinges. This destabilizing of the hinges causes the case to become compromised resulting in further damage to the lower case and inoperability of the hinge as designed. The Defect is captured in the below photograph of a Class Laptop hinge mechanism.

Fractured Plastic Anchors in Class Laptop (HP 17)



Fractured Plastic Anchors in 17" HP Envy[1]



Defect in an HP Envy 360[2]

[1] 17" HP Envy Coming apart at the left near screen hinge - Page 3 - HP Support Community - 4651990
[2] HP Envy x360 Broken Hinge - HP Support Community - 6793400



7.      Despite their knowledge of the Defect, Defendant markets its Envy

360 and Pavilion 360 computers as "convertible" and designed to offer a range of

angles and movements to users:

> "Create on-the-go with a convertible laptop designed to move with you. The power of a 360 degree hinge combined with the simultaneous use of touch and pen make for vibrant, accurate creations…The 360 degree hinge adapts so you can capture every intricate sketch with precision."[3] (Envy x360)

[3] *See* HP Envy x360 Product Listing, https://www.hp.com/us-en/shop/pdp/hp-envy-x360-laptop-15t-ed100-174r7av-1?cq_src=google_ads&cq_cmp=12690817676&cq_con=123460399194&cq_term=&cq_med=&cq_plac=&cq_net=g&cq_pos=&cq_plt=gp&DSA&jumpid=ps_con_nb_ns&utm_medium=ps&utm_source=ga&utm_campaign=HP-Store_US_BRA_PS_CPS_OPEX_Google_All_SEM_All_Notebooks-DSA&utm_term=&matchtype=b&adid=512564949515&addisttype=g&gclid=Cj0KCQjwqKuKBhCxARIsACf4XuEpqark2dOenF2HqBQPwnykTceQK1TgHgPcz62FECDLt7bBJRgkvDsaAibJEALw_wcB&gclsrc=aw.ds

"The HP Pavilion x360…convertible adapts to you so that you are productive at any angle…with four modes to choose from, you'll find just the right angle for anything with the extremely flexible HP Pavilion x360."[4]

8. Defendant marketed its HP Laptops as "reliable" and "designed for long-lasting performance", with "compact, portable design."[5]

9. Defendant further provides assurances to customers as to the HP Laptops' durability and HP's pre-sale diligence by stating that "extensive quality testing ensures that you can keep going…and going."[6]

10. Indeed, Defendant claims that each model has been subject to 115,000 hours of testing,[7] which included opening and closing the laptops tens of thousands of times.[8]

11. Defendant uniformly represented to consumers that it had years of experience manufacturing computers and was in effect an expert in manufacturing, design, and use of computers.

---

[4] *See* HP Pavilion x360 Convertible Product Listing, https://www.hp.com/us-en/shop/pdp/hp-pavilion-x360-convertible-15t-er000-touch-24d80av-1?jumpid=ma_weekly-deals_product-tile_laptops_3_24d80av-1_hp_pavilion-x360-con
[5] See Work, Watch and Play All Day, June 4, 2018, https://www.youtube.com/watch?v=KdB4v9ssdIY
[6] HP Laptop - 17-ca2097nr (2Y438UA#ABA)
[7] HP Total Test Process Testing - HP Inc Video Gallery - Products (brightcovegallery.com)
[8] HP Total Test Process Testing - HP Inc Video Gallery - Products (brightcovegallery.com); Inside HP Labs of Destruction! (archive.org)

12.    Plaintiffs and Class members saw or heard these representations from Defendant about the Class Laptops prior to purchasing their Envy, Envy x360, Pavilion x360, Pavilion, or HP Laptops.

13.    Contrary to HP's representations, HP fails to disclose that the Class Laptops are designed and/or manufactured with a common inherent defect that, over time, compromises the laptop's hinges, significantly impairing the computer's portability and functionality.

14.    According to Plaintiffs and other owners of the Class Laptops who have experienced the Defect, the common hinge problem is not a result of dropping or otherwise handling the laptop roughly. Rather, owners report that the Defect becomes suddenly apparent by way of a popping or crunching noise when opening or closing the laptop during normal and intended use. This initial fracturing of the hinge assembly eventually, with ordinary use, becomes a complete failure, making it impossible to properly open and close the laptop.

15.    As a result, the user's ability to (1) open the laptop to utilize the device, (2) close or transport the laptop, or (3) transition the configuration of the laptop, is dramatically reduced, or lost altogether.  Thus, the Defect renders the computer partially or wholly unusable.

16.    Consequently, the Class Laptops are not fit for their intended purpose as functioning, compact, portable, or flexible computers and cannot satisfy the representations HP made in its marketing materials and warranties.

17.    There are thousands of customer posts on Defendant's own online forum complaining of the hinge issue described above in the Class Laptops. These posts date back to at least 2014.

18.    The complaints describe the Defect, the accompanying crunching sounds when the devices are opened, and even report plastic debris from the weak hinge anchors being expelled from the Class Laptops.

19.    HP has responded to the Defect in several ways, all of which are inadequate. In communications with some owners of the Class Laptops, HP has stated that a hardware assembly issue was causing the hinge cracking and panel separation problems.[9] Despite acknowledging the Defect in this fashion, Defendant has been unable or unwilling to address the true scope and pervasive nature of the Defect in the Class Laptops.

20.    HP's laptop computers are covered by a limited warranty (the "Limited Warranty"), which warrants that HP products are free of defects in material and/or

---

[9] https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Laptop-Hinge-completely-broken-and-laptop-will-not-close/m-p/8101580 (posted on 07/02/2021 at 6:50 AM)

workmanship and that HP will repair the product, or if it is unable to repair the product, replace or refund the purchase.

21.    The Defect manifests both inside and outside of the warranty period. Defendant has been unable to fix the Defect during the warranty period and routinely refuses to repair the Defect free of charge outside the warranty period.

22.    Many consumers complaining to HP about the Defect were told that the issue was caused by user error and HP refused to provide complementary repair. Many other purchasers of the Class Laptops have sent their computers in for repair, only to find that the same issues crop up after the purported repairs, and/or in the next iteration of HP laptop owners purchased.

23.    Despite being aware of the cause of the Defect, HP and its representatives have often engaged in, or directed frustrated customers to engage in, ineffective repair methods.[10] Many customers who attempted to exercise their rights under the warranty were told the hinge problems were the result of a hardware problem and were instructed to order and install replacement hinges from the HP Part store, which did not fix the Defect. And when HP accepted a Class Laptop for repair under warranty, it often replaced the hinges with the same part.

---

[10] *See, e.g.,* Response https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Laptop-Hinge-completely-broken-and-laptop-will-not-close/m-p/8101580 (posted on 7/2/2021 at 7:32 AM).

None of these purported repairs remedied the hinge issues because none addressed the Defect.

24.    Defendant marketed, promoted, and sold the Class Laptops as flexible, compact, and portable laptops featuring sleek design and mobility to support on-the-go, dynamic, and prolonged use.

25.    Defendant knew that a material factor for consumers who purchased a Class Laptop was that the device was capable of handling frequent use and transportation and, in the case of the Envy 360 and Pavilion 360, possessed hinges capable of movement into various positions and angles.

26.    The Defect, however, makes it difficult or impossible to open and close the Class Laptop, transport the laptop, or move the laptop smoothly into any of its advertised dynamic positions.

27.    HP concealed from and/or failed to disclose to Plaintiffs and the Class the defective nature of the Class Laptops and failed to remove the Class Laptops from the marketplace or take adequate action to remedy the Defect. Rather, HP sold and serviced the Class Laptops even though it knew, or was reckless in not knowing, that the Defect impacted the functionality of the Class Laptops and would ultimately result in Plaintiffs' and Class members' inability to use their Class Laptops for their intended purpose.

28.     Defendant's knowledge of the Defect is evident from the voluminous complaints lodged on Defendant's own online forum as well as Defendant's engagement with Class Laptop owners complaining of the Defect on the forum.

29.     As a result of HP's unlawful, unfair, fraudulent, misleading, and deceptive practices, Plaintiffs and other consumers have purchased HP's products under the mistaken belief that the Class Laptops possessed high quality, functional hinges that were capable of normal use without damaging the machine.

30.     Had Plaintiffs and the Class known the facts regarding the Defect in the Class Laptops, those facts would have been material to them and any reasonable consumer's decisions to purchase the Class Laptops at the price they paid for their Class Laptops.

31.     Indeed, had Plaintiffs and the Class known about the Defect at the time of purchase, they would have paid substantially less for their Class Laptops or purchased a laptop from another manufacturer. Alternatively, they would not have purchased the Class Laptops and avoided the significant out-of-pocket costs they have incurred or will incur to repair or replace their Class Laptops once the Defect manifests.

32.     As a consequence of HP's false and misleading statements, its active concealment of the Defect, and its failure to repair or otherwise address the Defect, Plaintiffs and the Class have suffered injury in fact and actual damages in that the

Class Laptops they purchased are unreliable and/or unusable for their intended purposes. As a direct and proximate result of the Defect, Plaintiffs and the Class have also suffered or will suffer damages in the form of, *inter alia*: out-of-pocket expenditures for the replacement and attempted repairs of the Class Laptops; diminished value of the Class Laptops; time wasted attempting to repair the Defect; and the failure to receive the benefit of the bargain in their purchases of the Class Laptops.

33.     Accordingly, Plaintiffs seek redress for Defendant's breaches of warranties and violations of the below-identified state laws.

34.     In furtherance of the public interest, and in order to remedy HP's wrongful conduct, Plaintiffs bring this action as a class action, and assert claims on behalf of themselves and a class of similarly situated persons seeking money damages, equitable relief, and injunctive relief for Defendant's conduct described herein.

35.     Because of the relatively small size of the typical individual Class members' claims, it is unlikely that individual Class members could afford to seek recovery on their own. This is especially true in light of the size and resources of Defendant. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

## PARTIES

36.     Plaintiff Phyllis Carson is an individual citizen of the United States residing in Helena, Alabama and is otherwise *sui juris*.

37.     Plaintiff Carole Schauer an individual citizen of the United States residing in Apple Valley, California and is otherwise *sui juris*.

38.     Plaintiff Lorne Cosman is an individual citizen of the United States residing in Sherman Oaks, California and is otherwise *sui juris*.

39.     Plaintiff Terence Graner is an individual citizen of the United States residing in Spring Valley, California and is otherwise *sui juris.*

40.     Plaintiff Trudy Letson is an individual citizen of the United States residing in Jackson, California and is otherwise *sui juris*.

41.     Plaintiff Phillip Erickson is an individual citizen of the United States residing in Orlando, Florida and is otherwise *sui juris*.

42.     Plaintiff Donald Harman is an individual citizen of the United States residing in Wilton Manors, Florida and is otherwise *sui juris.*

43.     Plaintiff Patricia Roberts is an individual citizen of the United States residing in Cocoa Beach, Florida and is otherwise *sui juris*.

44.     Plaintiff William Draper is an individual citizen of the United States residing in Merrillville, Indiana and is otherwise *sui juris*.

45.     Plaintiff Sabine Miller is an individual citizen of the United States residing in Merrillville, Indiana and is otherwise *sui juris*.

46.     Plaintiff Diana Hobert-Powell is an individual citizen of the United States residing in Rochester Hills, Michigan and is otherwise *sui juris*.

47.     Plaintiff Janet Purvis is an individual citizen of the United States residing in Imperial, Missouri and is otherwise *sui juris*.

48.     Plaintiff Stephen Kaplitt is an individual citizen of the United States residing in Livingston, New Jersey and is otherwise *sui juris*.

49.     Plaintiff Deborah Thelen is an individual citizen of the United States residing in New York City, New York and is otherwise *sui juris*.

50.     Plaintiff Cara Washington is an individual citizen of the United States residing in Dayton, Ohio and is otherwise *sui juris*.

51.     Plaintiff Sarah Householder is an individual citizen of the United States residing in Beaverton, Oregon and is otherwise *sui juris*.

52.     Plaintiff Scott Evans is an individual citizen of the United States residing in Seneca, South Carolina and is otherwise *sui juris*.

53.     Defendant HP Inc. is a Delaware corporation with its headquarters located at 1501 Page Mill Road, Palo Alto, California, 94304. Upon information and belief, HP Inc. is a global Fortune 500 company and one of the world's largest manufacturers and sellers of computers.  Defendant HP Inc. utilizes the website

www.hp.com/us-en/home.html and its related webpages, as well as resellers, to market and sell personal computers and related products directly to consumers throughout the United States. HP Inc. is registered to do business in Alabama, California, Florida, Indiana, Michigan, Missouri, New Jersey, New York, Ohio, Oregon, South Carolina, and other states across the country.

## JURISDICTION AND VENUE

54. Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction. The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. This is a class action in which at least one member of the Class and Subclass is a citizen of a state other than the states in which Defendant is incorporated and has its principal place of business.

55. This Court has personal jurisdiction over this action because Defendant HP is a Delaware corporation.

56. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant HP resides within this District.

57. Plaintiffs is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, Defendant.

**STATEMENT OF FACTS**

58.     HP Inc. designs, develops, manufacturers, and sells personal computers, tablet computers, monitors, printers, workstations, and accessories.

59.     HP Inc. operates in more than seventy countries and sells its products globally. HP's headquarters is in Palo Alto, California.

60.     As of January 2021, HP Inc. was the world's second largest personal computer vendor by unit sales.

**1.     The Class Laptops**

61.     The laptop models which comprise the Class Laptops include a diverse line of HP's laptop computer products.  However, all the Class Laptops share and suffer from the same inherent defects in material and/or workmanship (defined above) as described in detail below.

62.     HP launched the Envy family of computers in 2009.[11] In 2014, HP unveiled its 360-degree Convertible PC[12]—so named for its ability to assume multiple form factors due to a hinged screen. Since that time, HP has released at least 37 new laptop computers under the Envy and 360-degree Convertible brand names. The latest (2021) basic Envy models are priced at $1,499.99 and $1,099.99,

---

[11] *See* Timeline of our history, https://www.hp.com/us-en/hp-information/about-hp/history/hp-timeline/timeline.html
[13] HP Worldwide Limited Warranty and Technical Support, https://www.hp.com/us-en/privacy/limited_warranty.html#2

for the 15" and 17" models, respectively. The latest (2021) convertible Envy models are only offered as 15" models and start at $699.99.

63.    The latest (2021) basic model of the 15" HP Pavilion is priced at $619.99. The latest (2021) convertible model of the 15" HP Pavilion starts at $699.99. The latest (2021) basic 15" and 17' HP Laptops are priced at $329.99, and $429.99 respectively.

64.    Defendant represented, and continues to represent, to consumers that it had years of experience in the manufacture of computers and was in effect an expert in the manufacture, design, and use of computers.

65.    Defendant's Limited Warranty "guarantees that it will repair, replace, or refund, at HP's option, an HP Hardware Product that manifests a defect in materials or workmanship during the Limited Warranty Period".[13] If "in the unlikely event that…HP determines it is unable to repair or replace the HP Hardware Product, HP, at its option, may elect to provide you with (a) a replacement unit selected by HP that is the same or functionally equivalent to your HP Hardware Produce in performance or (b) to give you a refund or credit of your purchase price or lease payments (less interest) instead of a replacement. To the

---

[13] HP Worldwide Limited Warranty and Technical Support, https://www.hp.com/us-en/privacy/limited_warranty.html#2

extent permitted by local law, this is your exclusive remedy for defective

products."[14]

66.     Defendant designed, manufactured, warranted, advertised, and sold

Class Laptops to tens of thousands of consumers throughout the United States and,

upon information and belief, disseminated marketing materials from its

headquarters in California.

## 2.     **The Defect**

67.     Contrary to HP's representations, the Class Laptops are designed and

manufactured with an inherent defect that compromises the computers' ability to

open or close, be transported, or configured into any of its advertised dynamic

positions. Moreover, the damage to the hinge results in the screen, and its parts,

sitting in a tilted position. Upon information and belief, the Defect is the result of

ordinary stress on a vital component that is common in the Class Laptops.

68.     While the hinges are connected to the Class Laptops using brass

screws, the screws are held in place by fragile plastic. The fracture toughness of

the plastic is too low for this application and reflects the overall lack of quality in

the laptop's frame.

69.     Because the hinges are anchored to the Class Laptops with poorly

designed parts constructed from weak plastic, the ordinary opening or closing of

---

[14] *Id.*

the laptop results in friction between the brass and weak plastic. This, in turn, over time and through ordinary use as intended, wears and cracks the plastic anchors — thus destabilizing the hinges. During ordinary use of the machine, the Defect causes part or all of the hinge anchors to crack, snap, separate, break or otherwise fail.

70. Once the brass becomes unsecured from the plastic rings, they will not re-seat. Therefore, in the absence of an adequate fix, the Defect will only worsen as time progresses.

Image from YouTube Repair Video[15]



[15] Laptop Hinge Repair - HP Envy - YouTube; *available at* https://www.youtube.com/watch?v=cyaZ-7rUFmQ. Last visited on November 2, 2021.

71.    Once the Defect manifests, use of the computer is, at best, difficult, and often impossible because the user cannot transport, open or close, or adjust their laptop. Since the Defect impairs the user's ability to view the visual interface to the machine and impairs or prevents the portability of the laptop, it renders the device partially or wholly unusable.

72.    According to Plaintiffs and other owners of Class Laptops who have experienced the Defect, the hinge problems are triggered and exacerbated when the laptop monitor is opened, closed, or adjusted, as intended — such as when the user folds the monitor down towards the keyboard or, in the case of the 360-degree Convertible models, the monitor is folded into tent or tablet mode.

73.     The Defect is often initially identified by crunching sounds when the devices are opened as well as plastic debris falling from the Class Laptops. Soon thereafter, the hinge becomes increasingly inoperable.

74.    Consequently, the Class Laptops are not fit for their intended purpose and cannot perform in accordance with HP's marketing materials and warranties.

75.    The Defect has impacted many other purchasers of the Envy, Envy 360, Pavilion, Pavilion 360, and HP Laptops. For example, on April 18, 2020, a forum member created a thread entitled "Broken hinge attachment" and wrote:

> I bought the 17-BY1008CA less than a year ago…The way the laptop has been designed the entire weight of the monitor is resting on two hinges that are attached to cheap plastic. It is basically designed so that if the laptop

20

is open the weight slowly pulls the screws out of where they are attached and pushes up through the housing causing everything to break…My laptop sits on my desk or on my lap in my home. It is lifted by the bottom using two hands…I have to use clamps to hold it together as it has already snapped the housing. I spent $700 on this laptop it should not break by itself.[16]

76.    In the same thread, another customer replies: "My issue is similar…Two days ago (8 months after receiving my laptop back from repairs) the hinge broke a second time. The first hinge incident occurred just over a year after purchase. I have never dropped it or handled it roughly. I used it to read an article for school the other evening, then closed it. The next morning it cracked as I attempted to open it."[17]

77.    In another thread on the HP Forum created on February 15, 2021, entitled "Broken hinge," a customer wrote:

I purchased a $1100 envy360 in 2018. The laptop is not two years old so it's a year out of warranty. I was using it last night and the left side hinge broke from the inside out. I called hp and they said because it's out of warranty I would have to pay $500 to have it fixed which would take over a month. I am a college student I don't have $500 or a month to get my laptop fixed…I have…NEVER dropped it. I'm so disappointed that HP

---

[16] *See* TheLastPrincess, Comment to *Broken hinge attachment.*, HP COMMUNITY (Apr. 18, 2020, 9:09 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge-attachment/m-p/7560795
[17] *See* Royal_Code, Comment to *Broken hinge attachment.*, HP COMMUNITY (Apr. 29, 2020, 2:21 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge-attachment/m-p/7560795

won't stand behind their products and do the right thing and fix it for free. The laptop should last longer than two years before it starts to fall apart.[18]

78.     In the same thread, another customer responded, that they were "having the same problem."[19]

79.     In another thread posted on January 21, 2021 titled "Broken left hinge and corner", a customer wrote about their Pavilion HP Notebook:

"I have an HP laptop that is cracked on the upper left corner. The hinge has also broken and I have to leave the lid open. I have not dropped the laptop and it seems that other people have posted this same issue."[20]

80.     Another customer responded to this post, writing

"I have the exact same issue but the response HP gives is that it is out of warranty and they will repair for $300!! That is unacceptable!! This is clearly a design/manufacturing flaw HP is aware of and won't stand by their product? This is a terrible way to handle your business and customers."[21]

[18] *See* Kristen131, Comment to *Broken hinge*, HP COMMUNITY (Feb. 15, 2021, 12:26 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7977304

[19] *See* Milhome, Comment to *Broken hinge*, HP COMMUNITY (Feb. 16, 2021, 5:36 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7977304

[20] *See* Andrew141**,** Comment to *Broken left hinge and corner*, HP COMMUNITY (Jan. 21, 2021, 3:02 PM), https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Broken-left-hinge-and-corner/m-p/7945435

[21] *See* JackP5, Comment to *Broken left hinge and corner*, HP COMMUNITY (Apr. 7, 2021, 6:18 PM), https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Broken-left-hinge-and-corner/m-p/7945435

81. On the HP Forum there are thousands of distinct complaints detailing the issues caused by the Defect. Below are a few such examples of such threads pertaining to the Class Laptops, each one created by a different consumer and containing a multitude of testimonials regarding the issues created by the Defect:

a. 17-Bs019cy (2PB35UA) Broken hinge (created November 29, 2020).[22]

b. HP 17" Laptop – By0053cl HP Laptop Hinge completely broken and laptop will not close – Unacceptable! (created July 1, 2021).[23]

c. HP 17-By1003na Full-HD Laptop Product 7GR46EA#ABU HINGE ON RIGHT SIDE OF LAPTOP BROKEN (created September 30, 2020).[24]

d. HP Laptop 17-By001st Horrible HP Experience – HP wants me to pay $190 to fix their faulty product (created August 22, 2020).[25]

---

[22] *See* Awilliams9103, Comment to *Broken hinge*, HP COMMUNITY (Nov. 29, 2020, 8:05 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7874642

[23] *See* Jim491, Comment to *HP Laptop Hinge completely broken and laptop will not close - Unacceptable!*, HP COMMUNITY (July 1, 2021, 10:18 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Laptop-Hinge-completely-broken-and-laptop-will-not-close/m-p/8101580

[24] *See* LEWIS_STRUTHERS, Comment to *HINGE ON RIGHT SIDE OF LAPTOP BROKEN*, HP COMMUNITY (September 30, 2020, 2:06 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HINGE-ON-RIGHT-SIDE-OF-LAPTOP-BROKEN/m-p/7799660

[25]*See* Ish197, Comment to *Solved! Horrible HP Experience - HP wants me to pay $190 to fix their faulty product*, HP COMMUNITY (August 22, 2020, 11:11 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Horrible-HP-Experience-HP-wants-me-to-pay-190-to-fix-their/m-p/7743128

e.  Pavilion Laptop 15 Broken hinge (created August 3, 2020).[26]

f.  HP 15-D035dx Notebook PC HP Notebook broken hinge – is it fixable? (created March 1, 2019).[27] The user provided the below images of the Defect.



_____

[26] *See* Van47, Comment to *Solved! Broken hinge*, HP COMMUNITY (July 3, 2020, 10:35 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7670952

[27] *See* Cassb, Comment to *Solved! HP Notebook broken hinge - is it fixable?*, HP COMMUNITY (March 1, 2019, 7:02 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Notebook-broken-hinge-is-it-fixable/m-p/7036976





g. HP Notebook – 17-By1062st Broken hinge on my laptop (created March 12, 2021).[28]

---

[28] *See* Ebfoerster, Comment to *Solved! Broken hinge on my laptop*, HP COMMUNITY (March 12, 2021, 2:50 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge-on-my-laptop/m-p/8006416

h.  HP Gaming Pavilion – 15-Cx0140tx HP Gaming Pavilion – 15-cx0140tx = Hinges broken with Pieces coming out broken! (created June 30, 2021).[29]

i.  Pavilion 15-Cs0053cl Left hinge broken (created July 9, 2020).[30]

j.  HP ENVY X360 Left Hinge on HP ENVY x360 Broken (created July 12, 2021).[31]

k.  HP Notebook Broken left rear hinge (created June 4, 2021).[32]

l.  Notebook 15-Bs121nr broken hinge (created December 18, 2019).[33]

m.  HP Notebook – 15-Bs113dx Broken hinges (created January 15, 2021).[34]

[29] *See* Jaisan, Comment to *Solved! HP Gaming Pavilion - 15-cx0140tx = Hinges broken with Pieces coming out broken*, HP COMMUNITY (June 30, 2021, 12:59 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Gaming-Pavilion-15-cx0140tx-Hinges-broken-with-Pieces/m-p/8100345

[30] *See* kmkeenan, Comment to *Solved! Left hinge broken*, HP COMMUNITY (July 9, 2020, 4:27 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Left-hinge-broken/m-p/7680094

[31] *See* RNAGY111, Comment to *Solved! Left Hinge on HP ENVY x360 Broken*, HP COMMUNITY (July 12, 2021, 6:57 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Left-Hinge-on-HP-ENVY-x360-Broken/m-p/8110870

[32] *See* NYMetsNo1, Comment to *Broken left rear hinge*, HP COMMUNITY (June 4, 2021, 4:47 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-left-rear-hinge/m-p/8080837

[33] *See* Dismayed-Too, Comment to *Solved! Broken hinge l*, HP COMMUNITY (Dec. 18, 2019, 8:32 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/broken-hinge-l/m-p/7345099

[34] *See* Joanne09, Comment to *Broken hinges*, HP COMMUNITY (Jan. 15, 2021, 7:04 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinges/m-p/7937049

n.   HP Laptop 17z Broken hinges (created December 6, 2020).[35]

o.   Pavilion 15-Cs3019nl HP Pavilion – 15-cs3019nl – Screen Hinges

Broken – Display Bezel Broken (created January 27, 2021).[36]

p.   Pavilion Gaming Laptop 15-Cx0xxx HP Pavilion Gaming Laptop 15

hinge broken just a year and a half after purchase (created April 25,

2020).[37]

q.   HP Notebook – 17-Bs001no Hp left hinge broken (created April 10,

2019).[38]

r.   Pavilion Gaming Laptop 15-Cx0020nr Broken hinge mount on Pavilion

gaming laptop (created May 20, 2020).[39]

---

[35] *See* AKIcehouse, Comment to *Broken hinges*, HP COMMUNITY (Dec. 6, 2020, 4:41 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinges/m-p/7883787

[36] *See* Gianmarco18, Comment to *Solved! HP Pavilion - 15-cs3019nl - Screen Hinges Broken - Display Bezel Broken*, HP COMMUNITY (Jan. 27, 2021, 10:49 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Pavilion-15-cs3019nl-Screen-Hinges-Broken-Display-Bezel/m-p/7952645

[37] *See* James311, Comment to *Solved! HP Pavilion Gaming Laptop 15 hinge broken just a year and a half after purchase*, HP COMMUNITY (March 25, 2020, 8:50 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Pavilion-Gaming-Laptop-15-hinge-broken-just-a-year-and-a/m-p/7574227

[38] *See* Elvijs, Comment on *Solved! Hp left hinge broken*, HP COMMUNITY (March 10, 2019, 9:13 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Hp-left-hinge-broken/m-p/7085264

[39] *See* Voo-Du_3, Comment on *Solved! Broken hinge mount on Pavilion gaming laptop*, HP COMMUNITY (May 20, 2020, 2:51 PM),

s. Hp-Bs023ca Hinge broken (created April 14, 2021).[40]

t. Broken left hinge on my HP 17-bs0xx (created July 7, 2021).[41]

u. HP Envy x360 Screen Popped Out/Broken Hinge (created April 4, 2020).[42] The post provided the below images of the Defect.

https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Broken-hinge-mount-on-Pavilion-gaming-laptop/m-p/7615274

[40] *See* T1T2T3, Comment on *Hinge broken*, HP COMMUNITY (April 14, 2021, 12:59 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Hinge-broken/m-p/8037757

[41] *See* Gina3793476, Comment to *broken left hinge on my HP 17-bs0xx*, HP COMMUNITY (July 7, 2021, 10:31 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/broken-left-hinge-on-my-HP-17-bs0xx/m-p/8106517

[42] Alasia-M, Comment to *HP Envy x360 Screen Popped Out/Broken Hinge,* HP COMMUNITY (April 4, 2020, 8:32 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Envy-x360-Screen-Popped-Out-Broken-Hinge/td-p/7536339

**Alasia-M**

New member

💬 2  ✓ 0  👍 0

Message 1 of 6

👁 1,168

Flag Post



### HP Envy x360 Screen Popped Out/Broken Hinge 

Posted on 04-04-2020 08:32 PM

Product: HP Envy X360 Convertible PC

Operating System: Microsoft Windows 10 (64-Bit)

I have had this computer for a while -- a year I believe. No drops. Always used and transported with care. Used it today in tablet mode (something I rarely ever do), and the right side of the screen (where the time and date are) popped out of the screen. I see that this is a very common issue and want to know the next steps I should take. I'm afraid to close my

computer out of fear of making it worse.







81.     Purchasers of the Class Laptops have also posted similar accounts on many other internet forums.[43] For example, the below reddit post concerning an Envy 360 illustrates the damage caused by the Defect.[44]

[43] *See, e.g.*, truecrtiq, Comment on , *HP Envy x360 Laptop right hinges so fragile-it BROKE in 3 months.,* R/AMDLAPTOPS (Jan. 14, 2021, 6:22 AM), https://www.reddit.com/r/AMDLaptops/comments/kx3tw7/hp_envy_x360_laptop_right_hinges_so_fragileit/

[44] *HP Envy x360 Hinge Issue. Closed my laptop the other day and a screw popped out and now the hinge is broken. I can see that the other 3 screws are in place on the bracket, but have also become unglued from the case. How should I fix this? Was quoted $200 from HP.* R/HEWLETT_PACKARD (Mar. 23, 2019, 4:59 PM), https://www.reddit.com/r/Hewlett_Packard/comments/b4o6g9/hp_envy_x360_hinge_issue_closed_my_laptop_the/



HP Envy x360 Hinge Issue. Closed my laptop the other day and a screw popped out and now the hinge is broken. I can see that the other 3 screws are in place on the bracket, but have also become unglued from the case. How should I fix this? Was quoted $200 from HP.

//Question

82. The Defect manifests both inside and outside of the warranty period. As illustrated above, Defendant is unable to adequately fix the Defect during the warranty period and routinely refuses to repair the Defect free of charge outside of the warranty period.

### 3. <u>HP's Exclusive and Early Knowledge of the Defect</u>

83.     HP forum activity makes clear that Defendant has been on notice of the Defect in the Class Laptops since at least 2014 through complaints made to the HP Forum.

84.     The forum page "17" HP Envy Coming apart at the left near screen hinge" (first posted October 27, 2014)[45], and the nearly 200 customer posts on it, demonstrates that the Defect was both pervasive and reported to Defendant back in 2014:



---

[45] Jude_Love, Comment to *17" HP Envy Coming apart at the left near screen hinge* HP COMMUNITY (Oct. 27, 2014, 4:44 AM), 17" HP Envy Coming apart at the left near screen hinge - HP Support Community - 4651990

Hello HP,

I am deeply concerned – I bought a 17" HP envy but less than a year since
, the laptop is coming apart at the bottom near the Hinge for the screen to the left. I am afraid to open it because it makes a "pop" sound every time I open the screen.

God knows I have been extra careful with this laptop. Yopu will not find a scratch on it from bangs or things like that but am deeply scared of this 1200$ piece falling apart not even a year into my using it.

---


Jude_Love
Author
Level 3
💬 12  ✅ 0  👍 17
Message 8 of 188
Flag Post

Posted on 07-25-2015 12:37 AM
The disintegrating hinge threw lots of debris insiee mine. The fun was always crunching and throwing out plastic parts. Every time i opened or closed it, i would hear plastic parts snapping. Subsequently half of my keyboard died. Much as i loved it, i had to settle for a Mac with much lower specs.

 1

---

Naggs20
Level 2

Posted on 07-27-2015 05:14 PM
Same thing is happening to me.  The corner of the left hing pulls apart every time I open my 17" HP Envy.  For $1200 I would expect this computer to last longer than a year.

---

Dmorga
New member
💬 3  ✅ 0  👍 0
Message 25 of 188

•••

Posted on 09-23-2015 07:33 PM
Same issue.  I called support and they said my warranty expired and then moved right into trying to sell me on a repair package.  After reading all this, I don't think I want a repair, as this looks like an engineering failure.  If they fix it, how long will it last?  Paying for a repair seems like good money after bad.  Too bad too, we have two HP laptops and an all in one desktop.  I hate to turn on them, but I don't think I can ever buy another one after this.

---

DH754
Level 2
💬 9  ✅ 0  👍 8
Message 29 of 188
Flag Post

Posted on 12-14-2015 03:11 PM
Yeah, it's quite sad that the hinge is connected with cheap plastic, if the hinge AND the spot where it's connected was made of metal, this wouldn't be a problem.
This is on you HP!

 1



Posted on 06-15-2016 05:21 PM

I'm having the exact same problem. First I noticed a screw missing. Then started hearing something jingling around, which it turns out was the part the screw screwed into. Then the hinge started popping every time I open the laptop. It's gotten to the point where it is now happening on both sides, but primarily the left. Normally it can be popped back together, but sometimes it doesn't work. Looking through the forums this seems to happen to hundreds if not thousands of these models.



Posted on 10-16-2016 03:35 PM

Mine was fixed once already under warrenty, it's broke again and now out of warrenty

 1



Posted on 02-10-2017 09:24 PM

Hello, I am an owner of an HP Envy laptop that also seems to have the same issue. Recently the hinge on the left side, below the power button has begun to come apart despite relatively light use. I have been careful whenever using the laptop and rarely transport the laptop out of my home. I believe my warranty is expired, but am wondering if HP can provide any type of support for what seems like a widespread design flaw. Thank you.

 0

117. Customer complaints continued on other HP forum pages, as demonstrated in the below images from a forum entitled "Hinges" (first posted February 16, 2016):[46]

---

[46] CarlaMaria, Comment to *Solved: Hinges,* HP COMMUNITY (Feb. 16, 2016, 10:38 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Hinges/td-p/5502838



**CarlaMaria**

Level 2

💬 5  ✓ 1  👍 6

Message 1 of 27

👁 2,233

Flag Post

✅ **Solved!**   ## Hinges

Posted on 02-16-2016 10:38 PM

**Product:** HP Envy Touchsmart 15
**Operating System:** Microsoft Windows 10 (64-Bit)

I've had my HP Envy for two years. I am the sole user of this laptop. The left hinge broke after a few short months. It was stationary -- on a desk and never transported, therefore never dropped and obviously defective. I was told that hinge replacement is not covered under warranty, so I made the decision to tolerate it since I didn't want to be without it for an indefinite period of time and also felt the estimated $250 in repair was unreasonable.

A few weeks later, the right hinge broke causing a significant separation in the case. This past weekend, the keyboard began to fail. Some of the letters do not register and have to be copied and pasted (you can appreciate how long it is taking me to write this!). I took it into a repair shop today hoping to have a replacement keyboard installed and was told they would not be able to help me because they felt they would not be able to put it back together as a result of the damage caused from the failing hinges. They felt the best option, all things considered, would be to purchase a wireless keyboard and resign myself to the idea that what I have here is a desktop.

HP... take responsibility for these failing hinges without your normal fee. You created a DEFECTIVE product with a substandard design, rendering an otherwise fantastic laptop useless. This is a widespread problem that should not have to be accepted from customers who are investing over $1000 in this product.

---



**D3ADM4N**

Level 2

💬 8  ✓ 1  👍 5

Message 7 of 27

Flag Post

Posted on 07-24-2016 05:49 PM

My left hinge on my HP Envy 17" broke today when I opened it.

I have taken very very good care of this machine since I paid around $1000+ for it.

This is crap. The plastic that holds the brass inserts for the hinge screws fell all to pieces. If they won't recall them or do something to fix it I'm done. I have been buying HP's for years.

It's sickening to say the least.

I7, GeForce, maxed memory all in a piece of **** case. I am highly highly disappointed right now.



Posted on 11-25-2016 06:52 PM

Arukaru

New member

💬 1  ✅ 0  👍 0

Message 19 of 27

Flag Post

Hi,

I have the same problem as well. both the left and right hinges are broken and the screen is hanging by the wires. Right now, the only way I can use my laptop is by leaning it towards a wall.

Please let me know what needs to be done to fix this?

118.  Defendant's failure to improve its material and/or workmanship is evident in the below continued complaints on the HP forum page "Replacement Hinges Question" (first posted January 24, 2018)[47]:



✅ Solved!  **Replacement Hinges Question** 🖼

Ben93

Level 2

💬 10  ✅ 0  👍 5

Message 1 of 14

👁 21,500

Flag Post

Posted on 01-24-2018 06:55 AM

**Product:** HP Envy 17 J130ea Notebook PC

**Operating System:** Microsoft Windows 10 (64-Bit)

Hi pals,

I'm just after some advice really.

I've had this laptop a while now - about two years. Within a couple of months of owning it, one of the hinges broke. Then after a while, the second one started to go as well. I really should of got it fixed earlier, but I haven't got round to it. The laptop still runs OK, but I've obviously a bit worried about it going kaput in the near future unless I manage to sort out the hinge issue.

---

[47] Ben93, Comment to *Solved: Replacement Hinges Question,* HP COMMUNITY (Jan. 24, 2018, 6:55 AM),https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Replacement-Hinges-Question/m-p/6531071



119. As the years progressed, the number of complaints on HP forum sites climbed drastically, as discussed in the excerpts below from "HP Envy Hinge Issues - Has HP acknowledged this is a known issue yet? (5+ years and counting)" (first posted July 16, 2018)[48]:

[48] ThatGeekGirlAU, Comment to HP Envy Hinge Issues - Has HP acknowledged this is a known issue yet? (5+ years and counting), HP COMMUNITY (July 16, 2018, 11:53 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Envy-Hinge-Issues-Has-HP-acknowledged-this-is-a-known/td-p/6759803



ThatGeekGirlAU

Level 2

💬 15  ✓ 0  👍 8

Message 1 of 13

👁 10,396

Flag Post

## HP Envy Hinge Issues – Has HP acknowledged this is a known issue yet? (5+ years and counting) 🖼

Posted on 07-16-2018 11:53 PM

**Product:** HP ENVY 15 TS

**Operating System:** Linux

Judging by the forums (with over 2000 separate instances of HP Envy Hinge issues) has HP formally acknowledged that this is a clear and definite design flaw/defect/manufacturing issue in the Envy series?

My own notebook has succumbed to joining the ranks of being an "affected unit" despite normal usage, never dropping it, low-transport (and in the rare case it ever did get moved only in an expensive protective laptop-specific leather bag).

The hinges have finally after a few years of normal usage at a desk (well supported) given way, causing the screen to drop, it's unable to stay up on its own, the top and base casing has come apart, the reinforcements can be seen through the cracks in the unit casing, the charger point now does not stay in (as the force from the gap being too wide pushes it out), the battery thus does not charge anymore or retain charge (i.e. removing the power cord makes the unit shut down, despite that the battery states it's at 100% charge – it clearly isn't actually charging), the ethernet point is pulled apart and not usable, and both sides of the unit now are gradually becoming more and more compromised.

Has anyone ever actually received an appropriate outcome? A fix that is permanent and will not put the unit through a cycle of repeating the same hinge failures? Or has anyone successfully had HP take responsibility for this clearly demonstrated flaw, and provided a replacement/offer of an equivalent unit that does not feature these defects?





**ThatGeekGirlAU**


Author
Level 2

💬 15  ✅ 0  👍 8

Message 9 of 13
Flag Post

Posted on 07-27-2018 07:56 PM - last edited on 07-27-2018 08:01 PM by [Mod] Rick-S

Unacceptable HP!

I finally received a response from Shravan at "HP Premium Support" and I am <u>extremely angered and upset</u> by the response.

"This mail is in regards to case:[removed per Rules Of Participation] which you had reported issue with Hinges and Display on **HP ENVY TS 15-j007AX NB PC ALL**

We have reviewed the case and the images which was shared by you. And also we had elevated this case to L2 team and its confirmed that the issue is due to User Induced Damage

Hence service will be on chargeable basis, please revert to this mail if you wish to proceed with the service on chargeable basis"

<u>This issue was NOT caused by "user induced damage".</u>

This is caused by, like over 4000 people between 2013 and 2018, the design flaw/manufacturing defect of hinging, housing and construction of this article is prone to and/or results in such damage. The weight of the screen is not able to be retained without strain on the hinging until such a time they "give out".

[removed per Rules Of Participation]



120. HP claims that "When the products are serviced, it's a goldmine of information for us. We harvest that information to help us understand how to test it better and what's driving reliability."[49]

121. Despite Defendant's awareness of the Defect and the wealth of information provided by a plethora of disgruntled customers, HP has failed to reveal, repair, prevent or adequately respond to the Defect.

---

[49] HP Total Test Process Testing - HP Inc Video Gallery - Products (brightcovegallery.com), http://hp.brightcovegallery.com/products/detail/video/4567149706001/hp-total-test-process-testing?autoStart=true&page=0&q=Military

122. Defendant knew that functionality, mobility, maneuverability and portability were, and continue to be, material factors for consumers purchasing a Class Laptop.

123. HP concealed from and/or failed to disclose to the public at large—including the Plaintiffs and the Class—the defective nature of the Class Laptops and failed to remove the Class Laptops from the marketplace or take adequate action to remedy the Defect. Rather, HP sold and serviced the Class Laptops even though it knew, or was reckless in not knowing, that the Defect impacted the portability, mobility, and functionality of the Class Laptops and would ultimately result in Plaintiffs' and Class members' inability to use their Class Laptops for their intended purpose.

124. Moreover, Defendant's omissions are accompanied by affirmative misrepresentations as to the Class Laptops' durability and portability. Defendant marketed, promoted, and sold the Class Laptops as "precision-crafted, high-performance notebooks". [50]

125. The 360-degree Convertible PC was marketed as a 2-in-1 laptop with a touchscreen monitor that could be folded flat against the underside of the base of the machine.

---

[50] HP Timeline | HP® Official Site, *available at* https://www.hp.com/us-en/hp-information/about-hp/history/hp-timeline/timeline.html

126. Specifically, HP stated that the 360-degree models offered "an affordable touch convertible PC that transforms the computing experience with a 360-degree hinge."[51]

127. Defendant described its HP Laptops as "reliable" and "designed for long-lasting performance", with a "compact, portable design".[52]

128. Defendant repeatedly emphasized the mobility of the Class Laptops with the following representations: "easy to take anywhere"[53]; "built to keep you productive and entertained from anywhere"[54]; "[a] compact laptop that makes it easy to get work done on the go with a Precision Touchpad, while the long battery life and HP Fast Charge let you keep moving";[55] "[t]he Pavilion 15 Laptop packs more performance into a smaller profile, so you can get more done wherever you

---

[51] *See* Timeline of our history, https://www.hp.com/us-en/hp-information/about-hp/history/hp-timeline/timeline.html
[52] See Work, Watch and Play All Day, June 4, 2018, https://www.youtube.com/watch?v=KdB4v9ssdIY
[53] HP Laptop 17-ca3097nr (2C5B7UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-laptop-pc-17-ca3000-%281c0g7av%29
[54] HP Laptop -15t-dw300 (1B9N3AV_1), https://www.hp.com/us-en/shop/pdp/hp-laptop-15t-dw300-touch-optional-1b9n3av-1
[55] HP Pavilion Laptop 15-eh1097nr (3F1F9UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-pavilion-laptop-15-eh1097nr

go…. so you can do more and enjoy entertainment wherever you go"[56]; "[c]reate on-the-go, anytime, anywhere and whenever inspirations strikes."[57]

129.  Defendant further provides assurances to customers regarding the HP Laptops' durability and HP's pre-sale diligence by stating that "extensive quality testing ensures that you can keep going...and going."[58]

130.  Defendant also promoted its quality assurance and the durability of its products by inviting technology reporters to its testing facility.[59] The tour demonstrated a variety of testing devices designed to ensure durability and longevity, including: a pulley system designed to slam laptops into a hard surface; a platform that vibrated the laptops rapidly; equipment used to send electric shocks into the laptops; and a freezer for temperature testing.[60]

131.  Most importantly, HP also represented to the attendees that the durability of the laptop hinges was tested by opening and closing the laptops "typically from minimum angle to maximum angle" 27,000 times.[61]

---

[56] HP Pavilion Laptop 15-eh1097nr (3F1F9UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-pavilion-laptop-15-eh1097nr
[57] HP® ENVY 17 Laptops, https://www.hp.com/us-en/shop/mdp/laptops/envy-17-344517--1#!&tab=features
[58] HP Laptop - 17-ca2097nr (2Y438UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-laptop-17-ca2097nr
[59] Inside HP Labs of Destruction! (archive.org), https://web.archive.org/web/20150918232024/https://www.chipchick.com/2014-07-inside-hp-labs-destruction.php
[60] *Id.*
[61] *Id.*

Photograph of Defendant's Hinge-Testing Operations in 2014[62]



Photograph of Defendant's Hinge-Testing Operations in 2011[63]



132.  Defendant's assurances regarding the durability of its products

continues to this day. HP's website includes a video entitled "HP Total Test

---

[62] *Id.*

[63] HP Durability Tests - YouTube, https://www.youtube.com/watch?v=bM7yw-y3BB0

Process".[64] This video describes Defendant's product testing procedures and presents HP products as having gone through an "exhaustive set of tests that are designed to replicate the full product life cycle in a short period of time".[65]

133.  HP claims that their product testing consists of "115,000 hours of testing on each model."[66]

134.  Once again, HP portrays its hinges as tested to survive long-term usage. "Take a notebook for example. One of the things that everybody has to do is open and close it. If you're expected to open and close that notebook 10,000 times, we'll test it to 50,000."[67]

---

[64] HP Total Test Process Testing - HP Inc Video Gallery - Products (brightcovegallery.com), http://hp.brightcovegallery.com/products/detail/video/4567149706001/hp-total-test-process-testing?autoStart=true&page=0&q=Military
[65] *Id.*
[66] *Id.*
[67] *Id.*

Image of Screens Being Opened and Closed as Part of Hinge Testing on HP's Website[68]



Image of Screens Being Opened and Closed as Part of Hinge Testing on HP's Website[69]



---

[68] *Id.*

[69] *Id.*

Image of Laptops Being Dropped as Part of Quality Testing on HP's Website[70]



135.  HP further assures customers that "after all that's done, we do low-level evaluations. We take a look at each of the subsystems at a component level to make sure that there is nothing that could causes issues in the future."[71]

136.  HP also warrants to consumers that "you can be confident if you buy HP's product it's going to work with what you've already got and what you're going to buy."[72]

137.  Defendant marketed, promoted, and warranted that the Class Laptops were premium computers, able to perform the tasks of opening and closing,

---

[70] *Id.*
[71] *Id.*
[72] *Id.*

withstand transportation, and furthermore able to perform all of the basic functions of similar laptops of their class.

138.  Plaintiffs and Class members purchased their Class Laptops to be used for mobile computing purposes like those portrayed by Defendant in its marketing materials for all of the Class Laptops.

139.  Because the defective materials are fully enclosed within the Class Laptops and the Defect is only revealed by laptop use, testing, or disassembly, reasonable consumers could not discover the Defect prior to purchase.

140.  It is likely that many of the Class Laptops will be used or purchased by unsuspecting members of the putative class, and injunctive relief could prevent harm to those who remain unaware of the Defect which can render the Class Laptops useless. Further, potential Class-wide notice may inform Class members of potential remedies that they may not be aware of.

141.  As the Defect likely results from the defects in material and/or workmanship the Class Laptops—*i.e.*, the use of flimsy plastic material to mount the laptop hinges—replacing the broken hinges with identical ones is unlikely to fully remedy the Defect.

### 4.        **Plaintiffs' Defective HP Laptops**

**Plaintiff Phyllis Carson**

142.    Plaintiff Phyllis Carson is a citizen of Alabama and resides in Helena, Alabama.

143.    Plaintiff Phyllis Carson purchased an HP 17 for her personal use on October 7, 2019, for $439.00, from Exchange.

144.    Plaintiff Phyllis Carson had been using her laptop for approximately 18 months when the Defect manifested and the hinge on the right side of the Class Laptop failed. As a result, the cover has separated from the base of the laptop and the device cannot be closed or transported. The manifestation of the Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable, can be seen in the photograph below.



145.  Plaintiff has also experienced performance issues with the laptop since the Defect manifested. Specifically, the computer speed has slowed noticeably and the computer sometimes shuts down without prompting.

146.  Plaintiff Phyllis Carson used and maintained her Class Laptop in a manner typical of a reasonable consumer.

147.  Plaintiff Phyllis Carson was unaware of, and lacked a reasonable means of discovering, the Defect.

148.  If Plaintiff Phyllis Carson had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

51

149. HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

150. Plaintiff Phyllis Carson remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Carole Schauer**

151. Plaintiff Carole Schauer is a citizen of California and resides in Apple Valley, California.

152. Plaintiff Carole Schauer purchased an HP Envy x360 for her personal use on June 23, 2017, for $894.33, from Best Buy.

153. Plaintiff Carole Schauer also purchased an HP Envy 17 for her personal use on June 23, 2017, for $1,185.24, from Best Buy.

154. Shortly after purchase, Plaintiff Carole Schauer's HP Envy x360 laptop presented cause for concern. When opening and closing the device, users

encountered substantial stiffness in the hinge and often heard a clicking sound when closing the device. Approximately one year after purchase, just days after the one-year warranty expired, a small button-like screw/rivet snapped off and the screen separated from the lid. The Class Laptop also shuts off randomly & reboots, and the battery will only charge to 75%. The laptop is no longer usable in any capacity; Plaintiff tried to move the laptop after the screen separated from the lid, but any movement seemed to cause further damage, so the laptop now lays flat in a box. The manifestation of the Defect in Plaintiff's Class Laptop can be seen in the photograph below.



155. Plaintiff Carole Schauer's HP Envy 17 laptop also manifested indicators of the defective hinge, shortly after purchase, including substantial stiffness when the device opens and closes.

156. Plaintiff Carole Schauer used and maintained her Class Laptops in a manner typical of a reasonable consumer.

157. Plaintiff Carole Schauer was unaware of, and lacked a reasonable means of discovering, the Defect.

158.  If Plaintiff Carole Schauer had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptops, or would have paid substantially less for it.

159.  HP has long been on notice of the Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

160.  Plaintiff Carole Schauer remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Lorne Cosman**

161.   Plaintiff Lorne Cosman is a citizen of California and resides in Sherman Oaks, California.

162.   Plaintiff Lorne Cosman purchased an HP Envy for his personal use on June 1, 2018, for $1,244.87, from Best Buy.

163.  Plaintiff Lorne Cosman had been using his laptop for approximately 18 months when the Defect manifested and the right hinge functionality deteriorated. Plaintiff Cosman took the Class Laptop for repair and replacement of the hard drive.  Although the hinge was repaired with epoxy, the hinge still does not work properly. Plaintiff Lorne Cosman must leave the laptop open at all times and moves it as little as possible out of fear of further damage.  As a result of the Defect, the laptop has been rendered substantially unusable.

164.  Plaintiff Lorne Cosman used and maintained his Class Laptop in a manner typical of a reasonable consumer.

165.  Plaintiff Lorne Cosman was unaware of, and lacked a reasonable means of discovering, the Defect.

166.  If Plaintiff Lorne Cosman had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

167.  HP has long been on notice of the Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under

its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

168. Plaintiff Lorne Cosman remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Patricia Roberts**

169. Plaintiff Patricia Roberts is a citizen of Florida and resides in Cocoa Beach, Florida.

170. Plaintiff Patricia Roberts purchased an HP 15 for her personal use on August 30, 2018, for $373.43, from Walmart.

171. Plaintiff Patricia Roberts had been using her laptop for approximately 2 years when the Defect manifested around June 2020. She attempted to close the laptop after using it but felt resistance from the hinges. The hinges separating as a result of the Defect caused the frame to distort. Plaintiff Patricia Roberts tried to push the laptop's frame back into place, but the hinges felt stiff and she feared further damaging them. The manifestation of the Defect in Plaintiff's Class Laptop, which rendered the device substantially unusable, can be seen in the photograph below.



172.  Because the manifestation of the Defect prevented her from being able to close her Class Laptop, Plaintiff Patricia Roberts had to purchase a second laptop for traveling purposes

173.  Plaintiff Patricia Roberts used and maintained her Class Laptop in a manner typical of a reasonable consumer.

174.  Plaintiff Patricia Roberts was unaware of, and lacked a reasonable means of discovering, the Defect.

175.  If Plaintiff Patricia Roberts had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent

its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

176.  HP has long been on notice of the Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

177.  Plaintiff Patricia Roberts remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Terence Graner**

178.   Plaintiff Terence Graner is a citizen of California and resides in Spring Valley, California.

179.   Plaintiff Terence Graner purchased an HP 17 for his personal use on January 27, 2018, for $645.42, from Sam's Club.

180.  Plaintiff Terence Graner had been using his laptop for approximately one year when the Defect manifested. The laptop became difficult to open and

close. Five months later, the Class Laptop's hinge snapped, preventing the device from being maneuvered or transported and rendering it substantially unusable. To make matters worse, Plaintiff Graner was forced to purchase a replacement stand-alone monitor to replace the detached laptop monitor—as shown in Plaintiff's photograph below.



181.  Plaintiff Terence Graner used and maintained his Class Laptop in a manner typical of a reasonable consumer.

182.  Plaintiff Terence Graner was unaware of, and lacked a reasonable means of discovering, the Defect.

183.  If Plaintiff Terence Graner had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

184. HP has long been on notice of the Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

185. Plaintiff Terence Graner remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Trudy Letson**

186. Plaintiff Trudy Letson is a citizen of California and resides in Jackson, California.

187. Plaintiff Trudy Letson purchased an HP 14 for her personal use in June 2020, for $628, from Staples.

188. Plaintiff Trudy Letson had been using her laptop for approximately 6 months when the Defect manifested. The hinge would no longer support the screen, leading the laptop lid to close on its own. Plaintiff Letson thought a screw was loose and would need to prop up an object behind the screen in order to keep

the screen from moving forward or back. The Class Laptop's maneuverability and portability have suffered as a result of the Defect and it has been rendered substantially unusable.

189. Plaintiff Letson contacted HP but was told she needed to pay $100 for technical support or had to have purchased an extended warranty to receive assistance. She was told her warranty was expired, despite the fact that one year had not yet passed from her purchase.

190. Plaintiff Trudy Letson used and maintained her Class Laptop in a manner typical of a reasonable consumer.

191. Plaintiff Trudy Letson was unaware of, and lacked a reasonable means of discovering, the Defect.

192. If Plaintiff Trudy Letson had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

193. HP has long been on notice of the Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under

its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

194.  Plaintiff Trudy Letson remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Phillip Erickson**

195.   Plaintiff Phillip Erickson is a citizen of Florida and resides in Orlando, Florida.

196.   Plaintiff Phillip Erickson purchased an HP 17 Laptop for his personal use for $463.99, from Best Buy in Orlando, FL.

197.  Plaintiff Phillip Erickson had been using his laptop for approximately 6 months when the Defect manifested. Plaintiff Erickson had difficulty closing and opening his laptop. Intending to use the laptop for travel, the Defect made it so that he could no longer carry it from location to location. The lid would sometimes slam shut and pieces, such as screws and broken plastic, dropped out of the device. What pieces remained rattled inside the chassis. As a result of the defect, Plaintiff Erickson does not move his laptop from his desk, so the laptop is no longer portable and has been rendered substantially unusable.  The manifestation of the Defect in Plaintiff's Class Laptop can be seen in the photograph below.



198. Plaintiff Phillip Erickson used and maintained his Class Laptop in a manner typical of a reasonable consumer.

199. Plaintiff Phillip Erickson was unaware of, and lacked a reasonable means of discovering, the Defect.

200. If Plaintiff Phillip Erickson had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

201. HP has long been on notice of the Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did

not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

202. Plaintiff Phillip Erickson remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Donald Harman**

203. Plaintiff Donald Harman is a citizen of Florida and resides in Wilton Manors, Florida.

204. Plaintiff Donald Harman purchased an HP Envy 17 Laptop for his personal use on December 15, 2017, for $949.99, from Best Buy.

205. Prior to purchasing the Class Laptop, Plaintiff researched the available models on the market, ultimately choosing the Class Laptop because of its large, 17-inch screen and its high quality, reliable video streaming.

206. For three years, Plaintiff Harman used his Class Laptop exclusively at his home office, essentially as a desktop computer. The Class Laptop sat on his desk, plugged into the charger, and remained open.

207. In late August of 2021, Plaintiff Harman planned to travel for a number of days and decided to take his laptop with him. He attempted to close his

Class Laptop for the first time but stopped before it was shut. Plaintiff was alarmed to see that the back of the bottom panel appeared to bend away from the keyboard, and the upper clamshell was beginning to separate from the bottom.

208.    Plaintiff Harman brought his Class Laptop to Best Buy where he had purchased it and inquired about repairs, since his Limited Warranty had lapsed. The GeekSquad within Best Buy informed him that he would need an entirely new frame, as well as replacement hinges. Plaintiff was told the shipping and replacement bezzle would cost $185, but they could not give him a quote for the required hinge repair. Reluctant to pay what seemed like the mounting costs of repair, Plaintiff took his defective Class Laptop home. Plaintiff Harman did not take his Class Laptop on his travels, for fear of further damaging it while opening and closing the lid.

209.    Plaintiff Harman continued to use the laptop but observed the back of the bottom panel was being forced incrementally and steadily out of place, despite never again trying to close the lid or transport the Class Laptop.

210.    Alarmed that the panel seemed on the brink of separating entirely, Plaintiff Harman applied a clip to the bottom panel of the laptop. This clip is currently the only thing holding the pieces of the Class Laptop together.

211.    The Class Laptop's maneuverability and portability performance have suffered as a result. The manifestation of the Defect in Plaintiff's Class Laptop,

which has rendered the device substantially unusable, can be seen in the

photograph below.



212.    Plaintiff Donald Harman used and maintained his Class Laptop in a

manner typical of a reasonable consumer.

213.    Plaintiff Donald Harman was unaware of, and lacked a reasonable

means of discovering, the Defect.

214.    If Plaintiff Donald Harman had been told of the Defect and the

deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent

its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

215. HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

216. Plaintiff Donald Harman remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff William Draper**

217. Plaintiff William Draper is a citizen of Indiana and resides in Merrillville, Indiana.

218. Plaintiff William Draper purchased an HP Pavilion x360 Laptop for his personal use on May 12, 2019, for $449.99, from Best Buy.

219. Plaintiff William Draper had been using his laptop for approximately two-and-a-half years when the defect manifested, as shown below. Plaintiff Draper

opened the laptop, heard a crunch, and saw that the left hinge had broken off from

the top of the laptop. To make matters worse, the screen separated from the Class

Laptop's frame. The Class Laptop's maneuverability and portability have suffered

as a result. The manifestation of the Defect, which has rendered the device

substantially unusable, can be seen in the images below.







220.    Plaintiff William Draper used and maintained his Class Laptop in a manner typical of a reasonable consumer. Indeed, Plaintiff Draper never even opened his Class Laptop into the full 360-degree tablet mode advertised by Defendant.

221.    Plaintiff William Draper was unaware of, and lacked a reasonable means of discovering, the Defect.

222.    When Plaintiff Draper called HP about the Defect, he was told by customer service that "there is no recall on it, so it's not our issue;" the laptop was "not under warranty;" and he would have to pay "$379.00 to have it fixed."

223.    If Plaintiff William Draper had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

224.    HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

225. Plaintiff William Draper remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Sabine Miller**

226. Plaintiff Sabine Miller is a citizen of Indiana and resides in Merrillville, Indiana.

227. Plaintiff Sabine Miller purchased an HP 17 Laptop for her personal use on November 19, 2019, for $649.99, from Costco.

228. In or around May 2020, the hinges on Plaintiff Miller's HP 17" began making clicking sounds when she opened and closed the laptop. The hinge defect also interrupts the battery connection, disabling the battery. Plaintiff Miller now, in order to operate the laptop, pushes the battery back in because the laptop would be without power otherwise. As a result of the defect, Plaintiff Miller's laptop is no longer portable, which was one of the reasons she purchased a laptop. Plaintiff Miller's laptop was well-protected, as it used to travel in a rolling, padded cases. Despite this precaution, the device must now remain on her desk in order to prevent further manifestations of the Defect and complete destruction of the device. The Class Laptop's maneuverability, portability, and battery performance

have suffered as a result. Therefore, the laptop has been rendered substantially unusable.

229.    Plaintiff Miller was unable to exchange the laptop from Costco since the Defect did not manifest until after the exchange period expired.

230.    Plaintiff Sabine Miller used and maintained her Class Laptop in a manner typical of a reasonable consumer.

231.    Plaintiff Sabine Miller was unaware of, and lacked a reasonable means of discovering, the Defect.

232.    If Plaintiff Sabine Miller had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

233.    HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

234.   Plaintiff Sabine Miller remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Diana Hobert-Powell**

235.   Plaintiff Hobert-Powell is a citizen of Michigan and resides in Rochester Hills, Michigan.

236.   Plaintiff Hobert-Powell purchased an HP 17 Laptop for her personal use on November 10, 2018, for $528.94, from Sam's Club.

237.   The hinges on Plaintiff Hobert-Powell's HP 17" came apart and lifted the top case from the laptop base a few months after purchase, in early 2019. Plaintiff Hobert-Powell is afraid to open and close the laptop because she is afraid the exposed wires will be cut and render the computer unusable. As a result of the Defect, Plaintiff Hobert-Powell does not move her laptop from her desk. The laptop is therefore no longer portable.

238.   Plaintiff Hobert-Powell had dealt with HP before regarding a previous laptop that HP failed to adequately repair. She therefore did not consider it worthwhile to call HP about repairing her HP 17" because of the past negative experience she had with the company. The manifestation of the Defect in

Plaintiff's Class Laptop, which has rendered the device substantially unusable, can be seen in the photograph below.



239. Plaintiff Hobert-Powell used and maintained her Class Laptop in a manner typical of a reasonable consumer.

240. Plaintiff Hobert-Powell was unaware of, and lacked a reasonable means of discovering, the Defect.

241. If Plaintiff Hobert-Powell had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent

its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

242. HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

243. Plaintiff Hobert-Powell remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Janet Purvis**

244. Plaintiff Purvis is a citizen of Missouri and resides in Imperial, Missouri.

245. Plaintiff Purvis received an HP Pavilion x360 Laptop as a gift for her personal use on November 1, 2019.

246. Plaintiff Purvis had been using her laptop for approximately two years when the hinge on one side of the Class Laptop suddenly separated, followed

shortly thereafter by the second side. Plaintiff Purvis heard the distinctive crunch sound complained of by other plaintiffs and noticed plastic debris falling out of the unit. The screen had intermittent issues and the fan made a loud noise followed by the laptop failing to boot. The manifestation of the Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable, can be seen in the photographs below.







247. Plaintiff Purvis used and maintained her Class Laptop in a manner typical of a reasonable consumer.

248. Plaintiff Purvis was unaware of, and lacked a reasonable means of discovering, the Defect.

249. If Plaintiff Purvis had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

250. HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect

under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

251.   Plaintiff Purvis remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Sarah Householder**

252.   Plaintiff Householder is a citizen of Oregon and resides in Beaverton, Oregon.

253.   Plaintiff Householder purchased an HP Pavilion 17 Laptop (certified factory refurbished by HP) for her personal use on October 18, 2019, for $449.95, from Ebay.

254.   Plaintiff Householder had been using her laptop for approximately one year when the hinge separated from the frame holding the screen, as such the computer cannot be maneuvered or transported. The defect prevents the laptop's screen from staying in place—it simply falls down unless it is propped up on something. The manifestation of the Defect, which has rendered the device substantially unusable, can be seen in the image below.



255. Plaintiff Householder used and maintained her Class Laptop in a manner typical of a reasonable consumer.

256. Plaintiff Householder was unaware of, and lacked a reasonable means of discovering, the Defect.

257. If Plaintiff Householder had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

258. HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

259. Plaintiff Householder remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Scott Evans**

260. Plaintiff Evans is a citizen of South Carolina and resides in Seneca, South Carolina.

261. Plaintiff Evans purchased an HP 15 Laptop for his personal use in June 2018, from Walmart.

262. Plaintiff Evans had been using his laptop for three months when the hinge separated from the frame holding the screen, as such the computer cannot be maneuvered or transported and has been rendered substantially unusable. Plaintiff experienced this same issue with two previous HP laptops.

263.   Plaintiff Evans used and maintained his Class Laptop in a manner typical of a reasonable consumer.

264.   Plaintiff Evans was unaware of, and lacked a reasonable means of discovering, the Defect.

265.   If Plaintiff Evans had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

266.   HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

267.   Plaintiff Evans remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Plaintiff Cara Washington**

268.    Plaintiff Washington is a citizen of Ohio and resides in Dayton, Ohio.

269.    Plaintiff Washington purchased an HP 17 Laptop for her personal use on October 8, 2018, for $639.90, from the QVC television network.

270.    Plaintiff Washington had been using her laptop for less than year and a half when she noticed the machine made a popping and cracking sound when she opened or closed the lid. Soon after, the hinge became askew, and the keyboard assembly separated from its base. Now, the Class Laptop has been rendered substantially unusable and Plaintiff Washington has to manually push the keyboard assembly back down into the base.

271.    Plaintiff Washington used and maintained her Class Laptop in a manner typical of a reasonable consumer.

272.    Plaintiff Washington was unaware of, and lacked a reasonable means of discovering, the Defect.

273.    If Plaintiff Washington had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

274.    HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under

its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

275.   Plaintiff Washington remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

**Stephen Kaplitt**

276.   Plaintiff Kaplitt is a citizen of New Jersey and resides in Livingston, New Jersey.

277.   Plaintiff Kaplitt purchased an HP17 laptop in 2012. It broke as a result of the plastic frame being unable to hold the metal hinge in place. Believing the laptop to simply be a lemon, Plaintiff Kaplitt purchased a second HP17 laptop, included among the Class Laptops, on December 12, 2018, for $511.79 from Staples. He purchased an extended warranty for his Class Laptop on April 19, 2019, for $95.95. The extended warranty expired on November 26, 2021, although it should have expired on December 12, 2021, three years after the date of purchase.

278. Plaintiff's HP 17 laptop broke in November 2021 after not even three years of use. Plaintiff called HP on December 16, 2021, and was told that the extended warranty had expired and HP was unable to repair it or compensate him for the damaged laptop. Once again, the damage was a result of the Defect, as shown in the below image of Plaintiff Kaplitt's HP 17 laptop. The weak plastic anchor broke, rendering the laptop hinge inoperable. The location where the plastic broke is shown in the red circle.

279. Plaintiff Kaplitt did not use the Class Laptop in any manner not anticipated or expected in the course of ordinary use, and neither of Plaintiff's HP laptops (purchased in 2021 and 2018) suffered any accidental damage or misuse of any kind.



280. Plaintiff Kaplitt used and maintained his Class Laptop in a manner typical of a reasonable consumer and did not do anything to either cause.

Exacerbate or accelerate the deterioration of the plastic base holding the hinge in place.[73]

281.  Plaintiff Kaplitt was unaware of, and lacked a reasonable means of discovering, the Defect.

282.  If Plaintiff Kaplitt had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

283.  HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

284.  Plaintiff Kaplitt remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would

---

[73] The removal of the back of the laptop occurred after the plastic broke and was done only after Plaintiff was advised by HP that the laptop was out of warranty. The removal was done for the purpose of seeing what had caused the hinge failure, and subsequently showing Plaintiff Kaplitt's counsel what had happened.

correct the problems discussed herein and throughout this First Amended Complaint.

**Deborah Thelen**

285.    Plaintiff Thelen is a citizen of New York and resides in New York City, New York.

286.    Plaintiff Thelen purchased an HP 17 Laptop for her personal use on December 16, 2019, for $631.46, from Best Buy.

287.    Plaintiff Thelen had been using her laptop for less than year when she noticed the machine made a popping sound when she opened or closed the lid. Shortly after the noise manifested, the right hinge holding the two panels of the laptop together snapped entirely. The top and bottom panels of the laptop are now held together only by wiring; as such, it does not stay open, cannot be transported, and has been rendered wholly unusable.



288. Plaintiff Thelen used and maintained her Class Laptop in a manner typical of a reasonable consumer.

289. Plaintiff Thelen was unaware of, and lacked a reasonable means of discovering, the Defect.

290. If Plaintiff Thelen had been told of the Defect and the deceptive manner in which HP would (a) conceal the Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

291. HP has long been on notice of the Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Defect under HP's warranties.

292. Plaintiff Thelen remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this First Amended Complaint.

## CLASS ACTION ALLEGATIONS

293.    Plaintiffs bring this lawsuit on behalf of themselves, and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4). The class and subclasses consist of:

a. **The Nationwide Class:** All purchasers in the United States who purchased a Class Laptop (the "Nationwide Class");

b. **The Alabama Subclass:** All purchasers in the state of Alabama who purchased a Class Laptop (the "Alabama Subclass");

c. **The California Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "California Subclass);

d. **The Florida Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "Florida Subclass");

e. **The Indiana Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "Indiana Subclass");

f. **The Michigan Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "Michigan Subclass");

g. **The Missouri Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "Missouri Subclass");

h. **The New Jersey Subclass:** All purchasers in the state of New Jersey who purchased a Class Laptop (the "New Jersey Subclass");

i. **The New York Subclass:** All purchasers in the state of New York who purchased a Class Laptop (the "New York Subclass");

j. **The Ohio Subclass:** All purchasers in the state of Ohio who purchased a Class Laptop (the "Ohio Subclass"); and

k. **The Oregon Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "Oregon Subclass"); and

l. **The South Carolina Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "South Carolina Subclass").

294.  Plaintiffs and Class members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence.  Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and its subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

295.  ***Numerosity*:** Members of the Class are so numerous that their individual joinder is impracticable. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Class Laptops. The precise number of Class members can be ascertained through discovery, which includes Defendant's records. Plaintiffs estimate the number of Class members to be in at least the tens of thousands. The disposition of their claims through a class action will benefit both the parties and this Court.

296. The proposed classes are ascertainable because they are defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

297. ***Commonality*:** There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class members. Among the questions common to the Class are:

a. Whether the Class Laptops suffer from a defect that causes the hinges to fail;

b. The origins and implementation of, and the justifications for, if any, HP's policies and technology relating to the Defect and its manifestation in the Class Laptops;

c. When HP became aware of the Defect in the Class Laptops and how it responded to that knowledge;

d. Whether HP actively concealed and/or failed to notify consumers of the Defect in the Class Laptops;

e. Whether Defendant knew of the Defect but failed to disclose the problem and its consequences to their customers;

f. Whether a reasonable consumer would consider the Defect and its consequences to be material;

g.  Whether Defendant's conduct violates state consumer protection laws as asserted herein;

h.  Whether Defendant's sale of Class Laptops containing the Defect is an unfair, false, misleading, or deceptive act in the conduct of any trade or commerce;

i.  Whether Defendant breached the implied warranty of merchantability by selling the Class Laptops containing the Defect;

j.  Whether Plaintiffs and the other Class members overpaid for their Class Laptops as a result of the Defect herein;

k.  Whether Plaintiffs and Class members would have purchased their Class Laptops, and whether they would have paid a lower price for them, had they known that they contained the Defect at the time of purchase;

l.  Whether Plaintiffs and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement or repair of the Class Laptops; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Class Laptops as merchantable in the absence of the Defect, and as actually manufactured and sold possessing the Defect; and (iii) whether Plaintiffs and the Class are

entitled to all costs associated with repair and replacement of their Class Laptops; and

m. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief.

298. ***Typicality***: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in manufacturing, marketing, advertising, warranting, selling, and/or designing the Class Laptops. All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiffs and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members. Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of himself and all absent Class members.

299. ***Adequate Representation***: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions

involving, *inter alia*, breach of warranties, product liability, product defects, and state consumer fraud statutes.

300. ***Predominance***: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.

301. ***Superiority***: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Given the amount at issue for each Class member, individual suits would not be economically viable; however, should individual Class members bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the judicial system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

302. ***Manageability***: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

# CAUSES OF ACTION

## Count I
## Violation of the New York General Business Law § 349,
## (N.Y. Gen. Bus. Law § 349)
## (Asserted on behalf of the New York Subclass)

303.   Plaintiff Thelen incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

304.  Plaintiff Thelen brings this claim individually and on behalf of the proposed New York Subclass against HP.

305.  Plaintiff Thelen and New York Subclass members are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen. Bus. Law § 349(h).

306.  HP is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. NY. Gen. Bus. Law § 349(b).

307.  Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

308.  In the course of HP's business, it failed to disclose and actively concealed the Defect in the Class Laptops with the intent that consumers rely on that concealment in deciding whether to purchase the Class Laptops.

309.  By intentionally concealing the Defect while advertising the Class Laptops as superior and high quality in their material and/or workmanship, HP engaged in deceptive acts or practices in violation of GBL section 349.

310. HP's deceptive acts or practices were materially misleading. HP's conduct was likely to and did deceive reasonable consumers, including Plaintiff Thelen, about the true performance and value of the Class Laptop.

311. Plaintiff Thelen and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that HP suppressed.

312. HP's actions set forth above occurred in the conduct of trade or commerce.

313. HP's misleading conduct concerns widely purchased consumer products and affects the public interest. HP's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

314. Plaintiff Thelen and New York Subclass members suffered ascertainable loss as a direct and proximate result of HP's GBL violations. Plaintiff Thelen and New York Subclass Members are entitled to recover their actual damages or $50, whichever is greater. Additionally, because HP acted willfully or knowingly, Plaintiff Thelen and New York Subclass members are entitled to recover three times their actual damages. Plaintiff is also entitled to reasonable attorney's fees.

## Count II
### Violation of the New York General Business Law § 350,
### (N.Y. Gen. Bus. Law § 350)
### (Asserted on behalf of the New York Subclass)

315. Plaintiff Thelen incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

316. Plaintiff Thelen brings this claim individually and on behalf of the proposed New York Subclass against HP.

317. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

318. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual …

319. HP's labeling and advertisements of the Class Laptops were false and misleading in a material way, via affirmative statements and omissions as HP failed to reveal material facts in light of such representations or conduct.

320. Specifically, HP advertised the superior abilities of the Class Laptops and durability of the hinges, while omitting material information concerning the Defect.

321. This misrepresentation has resulted in consumer injury or harm to the public interest.

322. As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Class Laptops had they known the truth, and (b) they overpaid for the Class Laptops on account of the misrepresentations and omissions that the Class Laptops' hinges were of superior quality, including in their material and/or workmanship.

323. By reason of the foregoing and as a result of HP's conduct, Plaintiff and Class seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## Count III
Indiana Deceptive Consumer Sales Act
Indiana Code § 24-5-0.5-1 to 12
(Asserted on behalf of the Indiana Subclass)

324.   Plaintiffs William Draper and Sabine Miller incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

325.   The purposes and policies of the Indiana Deceptive Consumer Sales Act (the "DCSA", Indiana Code § 24-5-0.5-1 to -12, are to:

> 1.  simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;
> 2.  protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and
> 3.  encourage the development of fair consumer sales practice.
>
> Ind. Code § 24-5-0.5-1(b).

326.   The Indiana General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. Ind. Code § 24-5-0.5-1(a).

327.   Defendant is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familial, or household purpose, such as those at issue in this action. Ind. Code § 24-5-0.5-2(1), (3).  The term "Supplier" "includes a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer." *Id.*

328. The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

329. For the reasons discussed herein, Defendant violated and continues to violate the DCSA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by DSCA § 24-5-0.5-3. Defendant's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

330. In advertising and selling the Class Laptops, Defendant failed to disclose the material information that the Class Laptops feature the Defect.

331. Defendant's omissions were material because they were likely to deceive reasonable consumers to induce them to purchase the Class Laptops without being aware that the Class Laptops contained a material defect. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiffs Draper, Miller and the Indiana Subclass Members purchased the Class Laptops—which they would not have purchased had they known the truth. In so

doing, they received a product that was substantially worthless because it was predisposed to break at the hinges, become unmovable, and even fall apart.

332. Defendant's deceptive trade practices caused injury in fact and actual damages Plaintiffs Draper, Miller, and the Indiana Subclass Members in the form of the loss or diminishment of value of the Class Laptops they purchased. This allowed Defendants to profit at the expense of Plaintiffs Draper, Miller and the Indiana Subclass Members. The injuries to Plaintiffs Draper, Miller and the Indiana Subclass Members were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

333. The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand ($1,000). Ind. Code § 24-5-0.5-4(a).

334. The DCSA provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on

behalf of any class of persons of which that person is a member . . . ." Ind. Code §

24-5-0.5-4(b).

335. Plaintiffs Draper, Miller, and the Indiana Subclass Members seek relief

for the injuries they have suffered as a result of Defendant's unfair and deceptive

acts and practices, as provided by TDTPA and applicable law.

<div align="center">

**Count IV**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201, *et seq*.**
**(Asserted on behalf of the Florida Subclass)**

</div>

336. Plaintiffs Phillip Erickson, Donald Harman, Patricia Roberts and the

Florida Subclass incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

337. The purpose of the Florida Deceptive and Unfair Trade Practices Act

("FDUPTA") is "to protect the consuming public and legitimate business

enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or

commerce." Fla. Stat. § 501.202(2).

338. The FDUPTA prohibits "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the

conduct of any trade or commerce." Fla. Stat. § 501.204(1).

339. The actions of HP, as set forth above, occurred in the conduct of trade

or commerce.

340. Defendant misrepresented and/or knowingly and intentionally concealed material facts concerning the characteristics, uses, and quality of the Class Laptops, and thereby created confusion among purchasers of the Class Laptops. Accordingly, HP engaged in unfair and deceptive acts or practices.

341. Contrary to Defendant's representations, the Class Laptops were not precisely designed, premium computers, and they could not be used in the manner shown in Defendant's marketing materials--*i.e.*, a functional, portable, compact design and/or a 2-in-1 laptop employing hinges enabling the machine to fold into various positions—without triggering the Defect and becoming largely or wholly unusable.

342. Meanwhile, Defendant failed to disclose the major Defect in the Class Laptops, as well as the serious impacts the Defect has on functionality. Defendants failed to disclose that the Class Laptops are not in fact portable and quite literally fall apart when the user opens and closes them.

343. These misrepresentations and/or omissions led Plaintiffs Erickson, Harman, Roberts and the Florida Subclass members to believe that they were purchasing fully functional, portable and compact and/or premium computers, when in fact they purchased laptops that would cease to function properly if used as advertised.

344. Plaintiffs Erickson, Harman, Roberts and members of the Florida Subclass were deceived by and relied upon Defendants affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the Class Laptops' quality, material and/or workmanship, design, and hinge movement capabilities.

345. HP's acts and practices deceived Plaintiffs Erickson, Harman, Roberts and the Florida Subclass. In failing to disclose the Defect and suppressing material facts to purchasers of the Class Laptops, HP violated the FDUPTA and caused injuries to Plaintiff and the Florida Subclass.

346. Therefore, Plaintiffs Erickson, Harman, Roberts and the members of the Florida Subclass are entitled to recover actual, statutory, and all other damages to the extent permitted by law, as well as costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.2105, and any other just and appropriate relief.

347. Plaintiffs Erickson, Harman, Roberts and the members of the Florida Subclass are entitled to injunctive relief because it is likely that many of the Class Laptops will be used or purchased by unsuspecting members of the putative class, and injunctive relief could prevent harm to those who remain unaware of the Defect which can render the Class Laptops useless.

348. Plaintiffs Erickson, Harman, Roberts and the members of the Florida Subclass seek restitution of all monies that HP received as a result of selling the

defective Class Laptops to Plaintiffs and the members of the Florida Subclass. As a result of this deception, Plaintiffs and the members of the Florida Subclass expended substantial sums of money and/or time for the repair and/or replacement of their Class Laptops. Plaintiffs Erickson, Harman, Roberts are informed and believe that the amount of said restitution is unknown at this time but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

349.  Plaintiffs Erickson, Harman, Roberts sent Defendant a notice letter prior to the filing of this action. Plaintiffs Erickson, Harman, Roberts have yet to receive a response from HP. Defendant was also provided notice of these issues by numerous informal and formal complaints filed against it, including the instant Complaint and the various complaints detailed herein, and by numerous communications sent by Plaintiffs and other Class members.

**Count V**
**Violation of Fla. Stat. § 817.41 Prohibiting Misleading Advertising**
**(Asserted on behalf of the Florida Subclass)**

350.  Plaintiffs Phillip Erickson, Donald Harman, Patricia Roberts and the Florida Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

351.  Florida's prohibition on misleading advertising declares unlawful for any person to do the following:

"[M]ake or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

Fla. Stat. § 817.41(1).

352.   The statutory term "misleading advertising" includes statements made or disseminated to the public in "oral, written, electronic, or printed form or otherwise...which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading." Fla. Stat. § 817.40(5). Consumers have standing to state a claim under this statute by alleging that they relied on an identifiable misleading advertisement.

353.   As described herein, HP regularly and pervasively advertised the Class Laptops as portable with a compact design and/or as 2-in-1 laptops employing hinges enabling the machine to fold into various positions, while in fact those computers would cease to function if used as advertised.

354.   Plaintiffs Erickson, Harman, Roberts and members of the Florida Subclass were deceived by and relied upon Defendant's affirmative representations and failures to disclose, including but not limited to, the representations about the Class Laptops' quality, material and/or workmanship, design, and hinge movement capabilities.

355.  Defendant's statements regarding the purported quality and functionality of the Class Laptops were material to prospective purchasers, and were untrue, deceptive, and misleading.

356.  HP has violated Fla. Stat. § 817.41 by engaging in this false advertising scheme described herein.

357.  Plaintiffs Erickson, Harman, Roberts and the Florida Subclass members have been injured and have suffered economic damages from HP's false advertising scheme.

358.  Pursuant to Fla. Stat. § 817.41(6), Plaintiff Erickson, Harman, Roberts and the Florida Subclass members are entitled to relief for HP's violations of the statute, including: 1) damages; 2) punitive damages; 3) costs and reasonable attorneys' fees; and 4) any other remedies prescribed by law.

## Count VI
## Violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code §§ 8-19-1, *et seq*.
## (On Behalf of the Alabama Subclass)

359.  Plaintiff Phyllis Carson and the Alabama Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

360.  HP is a "person" as identified by Ala. Code § 8-19-3(5).

361.  Plaintiff Carson and all other Alabama Subclass members are "consumers" as defined by Ala. Code § 8-19-3(2).

362. HP received notice pursuant to Ala. Code § 8-19-10(2) concerning its wrongful conduct as alleged herein by Plaintiff Carson and Alabama Subclass members. However, sending pre-suit notice pursuant to Ala. Code § 8-19-10(e) would have been an exercise in futility for Plaintiff, as HP has already been informed of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit, and has yet to offer Class members a remedy in accordance with similar consumer protection statutes.

363. HP advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

364. HP engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the ADTPA, including:

365. Knowingly designing, developing, manufacturing, advertising, and selling Class Laptops with significant defects that result in broken hinges that compromise portability, reliability, and usability so that consumers did not receive the benefit of their bargain;

    a. Marketing and selling laptops that relied upon their hinge design as a means to achieve 2-in-1 functionality to differentiate Class Laptops from competing laptops, while at the same time using subpar parts or construction to increase profits;

b. Failing to take steps to secure the hinges from normal wear and tear;

c. Making affirmative public representations about the versatility of Class Laptops, while, at the same time, not ensuring that versatility in practice; and

d. Concealing and/or failing to disclose material facts, including but not limited to, that in designing its Class Laptops, it failed to take measures to perform adequate quality control checks.

366. HP's representations and omissions were material because they were likely to deceive ordinary, reasonable consumers.

367. HP intended to mislead Plaintiff Carson and Alabama Subclass members and induce them to rely on its misrepresentations and omissions.

368. Had HP disclosed to Plaintiff Carson and Alabama Subclass members material facts, including but not limited to, that in designing and manufacturing the Class Laptops, HP failed to take adequate quality control measures to ensure the durability and reliability of the laptop hinges, and was otherwise engaged in deceptive, common business practices, they would not have purchased the Class Laptops, or would have paid substantially less for them. Instead, HP represented that its Class Laptops were well-constructed and suited to their advertised purpose, namely to be used as a portable laptop and tablet computer. Plaintiff Carson and Alabama Subclass members acted reasonably in relying on HP's

misrepresentations and omissions, because the Defect was hidden and could not be discovered prior to purchase and disassembly of the device.

369. HP acted intentionally, knowingly, and maliciously to violate the ADTPA, and recklessly disregarded Plaintiff Carson's and Alabama Subclass members' rights. HP's knowledge of the Class Laptops' defect put it on notice that the Class Laptops were not as it advertised.

370. As a direct and proximate result of HP's deceptive acts and practices, Plaintiff Carson and Alabama Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with reliability and usability issues.

371. HP's deceptive acts and practices caused substantial injury to Plaintiff Carson and Alabama Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competitors.

372. Plaintiff Carson and the Alabama Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (1) actual damages or (b) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

## Count VII
## Missouri Merchandise Practices Act,
## Mo. Rev. Stat. §§ 407.010, *et seq*. (the "MMPA")
## (On Behalf of the Missouri Subclass)

373.  Plaintiff Janet Purvis and the Missouri Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

374.  Plaintiff Purvis brings this claim individually and on behalf of the Missouri Subclass.

375.  HP is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

376.  HP advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.101(4), (6) and (7).

377.  Plaintiff Purvis and Missouri Subclass members purchased goods or services primarily for personal, family, or household purposes.

378.  HP engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

379.  HP's misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

380.  HP intended to mislead Plaintiff Purvis and the Missouri Subclass members and induce them to rely on its misrepresentations and omissions.

381. HP acted intentionally, knowingly, and maliciously to violate MMPA, and recklessly disregarded Plaintiff Purvis' and Missouri Subclass members' rights. HP's knowledge of the Class Laptops reliability issues, including through customer complaints and forum posts, put it on notice that the Class Laptops were not as it advertised.

382. As a direct and proximate result of HP's deceptive acts and practices, Plaintiff Purvis and Missouri Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expenses in dealing with reliability issues.

383. Plaintiff Purvis and Missouri Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

<u>**Count VII**</u>
**Violation of Ohio's Consumer Sales Practices Act**
**Ohio Rev. Code Ann. § 1345.01, *et seq*. (the "CSPA")**
**(On Behalf of the Ohio Subclass)**

384.  Plaintiff Cara Washington and the Ohio Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

385.  HP is a "person" within the meaning of CSPA § 1345.01(B) and is a "[s]upplier... engaged in the business of effecting or soliciting consumer transactions..." within the meaning of CSPA § 1345.01(C).

386.  HP's acts and practices, as alleged in this Complaint, violate CSPA § 1345.02(A), (B)(1) and (B)(2) because they include unfair and deceptive acts and practices in connection with consumer transactions – the sale of defective laptops. Specifically, in violation of the CSPA, HP:

a.  Knowingly designed, developed, manufactured, advertised, and sold the Class Laptop with the Defect, resulting in broken hinges that compromise portability, reliability, and usability so that consumers did not receive the benefit of their bargain;

b.  Advertised and sold the360-degree Class Laptops that relied upon its hinge design as a means to achieve 2-in-1 functionality to differentiate the Class Laptops from competing laptops while, at the same time, using subpar parts or construction to increase profits;

113

c. Failed to take steps to secure the hinges from normal wear and tear;

d. Made affirmative public representations and advertisements about the versatility of Class Laptops while, at the same time, failing to ensure such versatility in practice; and

e. Concealed and/or failed to disclose material facts that included, but are not limited to, the fact that in designing the Class Device, HP failed to take measures to perform adequate quality control checks.

387. HP also committed unconscionable acts and practices in violation of CSPA § 1345.03(B)(3) because it knew, at the time the consumer transactions were entered into, that the consumers were unable to receive a substantial benefit of the subject of the consumer transactions.

388. Through its design, development, and pre-release testing of the hinges and display, as well as through other consumer complaints, HP knew that the Class Laptops' hinges and display were defective and prone to the failure described throughout this Complaint.

389. HP was under a duty to disclose that the Class Laptop was defective because it had superior knowledge of the defect – stemming from its own production thereof, repair requests, complaints made directly to HP, online complaints, quality control and pre-release testing, and online reputation management.

390. HP had ample means and opportunities to disclose to Plaintiff Washington and Ohio Subclass members that the Class Laptops were defective, including through advertisements, external packaging, and during the laptop's setup process. Despite its exclusive knowledge and these opportunities to disclose the defect, HP failed to disclose to Plaintiff Washington and Ohio Subclass members the defective nature of the Class Laptops either prior to purchase or before Plaintiff Washington's and Ohio Subclass members' respective buyer's remorse periods expired.

391. HP's misrepresentations and omissions were material. Had Plaintiff Washington and members of the Ohio Subclass known that the Class Laptops were defective, they either (a) would not have purchased them, (b) would not have purchased them at the prices they did, or (c) would have returned them during their respective buyer's remorse periods.

392. Requisite notice to HP of its violations required under CSPA § 1345.09(B) has been satisfied here as HP's violations constitute acts and practices that have been declared to be deceptive or unconscionable by rules adopted under CSPA § 1345.05(b)(2). Additionally, notice to HP has likewise been satisfied under CSPA § 1345.09(B) due to deceptive and unconscionable acts and practices similar to those alleged herein having already been determined by courts of the State of Ohio to be in violation of both CSPA §§ 1345.02 and 1345.03.

393. Plaintiff Washington and the Ohio Subclass were injured by HP's CSPA violations. As a result, Plaintiff Washington seeks and is entitled to economic damages resulting from Defendant's violation of the CSPA, as well as to declaratory and injunctive relief under CSPA § 1345.09, such damages and relief to be further determined at trial.

394. Because HP knowingly committed the violations alleged herein, Plaintiff Washington also seeks attorney's fees under CSPA § 1345.09(F)(2).

## Count VIII
### Violation of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. (On Behalf of the California Subclass)

395. Plaintiffs and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

396. Plaintiffs Schauer, Cosman, Roberts, Graner, and Letson assert this claim on behalf of the Class or, in the alternative, the California Subclass.

397. The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

### Unlawful

398. HP's conduct is unlawful, in violation of the UCL, because it violates the Consumers Legal Remedies Act, the Song-Beverly Act, and California's False Advertising Law.

116

**Unfair**

399.  HP's conduct is unfair in violation of the UCL because it violates California public policy, legislatively declared in the Song-Beverly Consumer Warranty Act, requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purpose. HP violated the Song-Beverly Act because the Class Laptops are unfit for their most central purpose: to be used as laptops and tablets.

400.  HP acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner. HP engaged in unfair business practices and acts in at least the following respects:

a. HP promoted and sold laptops it knew were defective because they contain hinges prone to failure;

b. HP promoted and sold laptops with defective hinges despite knowing that users do not expect the hinges to materially degrade over time;

c. HP failed to disclose that the Class Laptops are defective, and represented through advertising, its website, product packaging, press releases, and other sources that the Class Laptops possess particular qualities that were inconsistent with HP's actual knowledge of the product;

d. HP made repairs and provided replacements that caused Plaintiffs to experience repeated instances of hinge failure, rendering the Limited Warranty useless;

e. HP failed to exercise adequate quality control and due diligence over the Class Laptops before placing them on the market; and

f. HP minimized the scope and severity of the problems with the Class Laptops, refusing to acknowledge that its hinges are defective, failing to provide adequate relief to consumers, and suggesting to consumers that their aftermarket conduct resulted in the failure of the hinges when HP had actual knowledge of the true cause of the failure.

401. The gravity of harm resulting from HP's unfair conduct outweighs any potential utility. The practice of selling defective laptops without providing an adequate remedy to cure the defect—and continuing to sell those laptops without full and fair disclosure of the defect—harms the public at large and is part of a common and uniform course of wrongful conduct.

402. The harm from HP's conduct was not reasonably avoidable by consumers. The Class Laptops suffer from a latent defect, and even after receiving a large number of consumer complaints, HP did not disclose the defect. Plaintiffs did not know if, and had no reasonable means of discovering, that the Class Laptops' hinges were defective.

403. There were reasonably available alternatives that would have furthered HP's business interests by satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledging the defect and providing a permanent fix for defective keyboards; (2) adequately disclosing the defect to prospective purchasers; (3) extending the warranty for the HP Laptops; and (4) offering refunds or suitable non-defective replacement laptops to consumers with failed hinges.

## Fraud by Omission

404. HP's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

   a. HP knowingly and intentionally concealed from Plaintiffs and Class members that the Class Laptops contain a latent defect that render the hinges prone to failure;

   b. HP volunteered information to Plaintiffs and Class members through advertising and other means that the Class Laptops—and their hinges—were functional products without disclosing facts that would have materially qualified those partial representations; and

c. HP promoted the high quality and versatile features of the Class Laptops, including the hinges, despite knowing the Class Laptops are defective, and failed to correct its misleading partial disclosure.

405. HP had ample means and opportunities to alert Plaintiffs and Class members of the defective nature of the Class Laptops, including on HP's webpages; in its advertisements of the Class Laptops; on the Class Laptops' external packaging; and as part of the standardized Class Laptop setup process. HP uniformly failed to disclose that the Class Laptops are defective. Had HP disclosed that the Class Laptops are defective, Plaintiffs and Class members would not have purchased a Class Laptop, would not have purchased a Class Laptop at the prices they did, or would have returned their Class Laptop during their respective buyer's remorse periods.

406. HP was under a duty to disclose the Defect because of its exclusive knowledge of the defect before selling the Class Laptops stemming from its quality control and pre-release testing, complaints made directly to HP, online complaints, and online reputation management would have put it on notice that the Class Laptops were not as advertised and because it made partial representations about the Class Laptops and their hinges without disclosing the hinge defect.

407. Plaintiffs and Class members suffered injury in fact, including lost money or property, as a result of HP's unlawful, unfair, and fraudulent acts and

omissions. Absent HP's unlawful, unfair, and fraudulent conduct, Plaintiffs and Class members would not have purchased a Class Laptop, would not have purchased a Class Laptop at the prices they did, or would have returned their Class Laptop for a refund during their respective buyer's remorse periods.

408. Through its unlawful, unfair, and fraudulent conduct, HP acquired money directly and as passed on by HP's authorized resellers (i.e. Amazon, Best Buy, etc.).

409. Plaintiffs and Class members accordingly seek appropriate relief, including (1) restitution under the UCL and (2) such orders or judgments as may be necessary to enjoin HP from continuing its unfair, unlawful, and fraudulent practices. Plaintiffs also respectfully seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure 1021.5.

## Count IX
### Violation of California's Consumer Legal Remedies Act (the "CLRA")
### Cal. Civ. Code § 1750, *et seq*.
### (On Behalf of the California Subclass)

410. Plaintiffs and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

411. HP is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "goods" within the meaning of sections 1761(a) and 1770.

412. HP's acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(5), (7) and (9) because they include unfair and deceptive acts and practices in connection with transactions—the sale of defective laptops. In violation of the CLRA, HP:

a. Represented that the Class Laptops had characteristics, uses, and benefits they do not have;

b. Represented that the Class Laptops are of a standard, quality, or grade when in fact they are not; and

c. Advertised the Class Laptops with intent not to sell them as advertised.

413. Through its design, development, and pre-release testing of the display, as well as through consumer complaints, HP knew that the Class Laptops' hinges were defective and prone to failure.

414. HP was under a duty to disclose that the Class Laptops are defective because it had superior knowledge of the defect—stemming from repairs, complaints made directly to HP, online complaints, its quality control and pre-release testing, as well as online reputation management —and because it made partial, materially misleading representations about the Class Laptops' high quality and versatile features, including the hinges.

415. HP had ample means and opportunities to disclose to Plaintiffs and Class members that the Class Laptops are defective, including through

advertisements, on external packaging, and during the Class Laptops' setup process. Despite its exclusive knowledge and opportunities to disclose the Class Laptops' defective nature, HP failed to disclose the defects to Plaintiffs and California Subclass members either prior to purchase or before Plaintiffs' and California Subclass members' respective buyer's remorse periods expired.

416. HP's misrepresentations and omissions were material. Had Plaintiffs and California Subclass members known that the Class Laptops were defective, they would not have purchased the Class Laptops, would not have purchased them at the prices they did, or would have returned their Class Laptops during their respective buyer's remorse periods.

417. Under California Civil Code section 1782(a), on their own behalf and on behalf of the Class, Plaintiffs separately sent notices to HP on March 21, 2022 and again on April 19, 2022, via letter sent by certified mail, return receipt requested to HP's principal place of business, advising HP of its violations and that it must correct, replace, or otherwise rectify the goods alleged to be in violation. HP failed to correct its business practices or provide the requested relief within 30 days. Accordingly, Plaintiffs now seek monetary damages under the CLRA.

418. Plaintiffs were injured by HP's CLRA violations. As a result, Plaintiffs are entitled to actual damages in an amount to be proven at trial, reasonable attorney's fees and costs, declaratory relief and punitive damages.

419. In accordance with California Civil Code section 1780(d), Plaintiff Graner's CLRA venue declarations are attached as Exhibit A to this complaint.

**Count X**
**Violation of California's Song-Beverly Consumer Warranty Act,**
**Cal. Civ. Code § 1792, *et seq*.**
**(On Behalf of the California Subclass)**

420. Plaintiffs and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

421. Plaintiffs Schauer, Cosman, Roberts, Graner, and Letson bring this claim on behalf of the California Subclass.

422. Plaintiffs Schauer, Cosman, Roberts, Graner, and Letson are "buyers" within the meaning of California Civil Code section 1791(b). Each purchased a Class Laptop in California.

423. HP is a manufacturer within the meaning of California Civil Code section 1791(j). HP was responsible for producing the Class Laptops and directed and was involved in all stages of the production and manufacturing processes.

424. The Class Laptops are a "consumer good[]" within the meaning of California Civil Code section 1791(a).

425. HP impliedly warranted to Plaintiffs Schauer, Cosman, Roberts, Graner, and Letson that the Class Laptops each purchased was "merchantable" under California Civil Code sections 1791.1(a) and 1792.

426. HP breached the implied warranty of merchantability by producing, manufacturing, and selling laptops that were not of merchantable quality. The Class Laptops are defective, resulting in hinges that break and cannot support the screen. As a result, the laptops are difficult or impossible to transport and the 360-degree Class Laptops cannot perform the central 2-in-1 function. The Class Laptops are therefore unfit for the ordinary purpose for which a laptop computer is used and would not pass without objection in the laptop computer trade.

427. The defect in the Class Laptops is latent. Though the Class Laptops appear operable when new, the Defect existed in the product at the time of sale and throughout the one-year Limited Warranty period. Accordingly, any subsequent discovery of the defect beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

428. Any attempt by HP to disclaim its implied warranty obligations under the Song Beverly Act is ineffective due to its failure to adhere to California Civil Code sections 1792.3 and 1792.4. Those sections provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must 'in simple and concise language' state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all

necessary servicing or repair." HP's attempted warranty disclaimer does not conform to sections 1792.3 and 1972.4.

429.  As a direct and proximate cause of HP's breaches of the Song-Beverly Consumer Warranty Act, Plaintiffs Schauer, Cosman, Roberts, Graner, and Letson and California Subclass members have been damaged in an amount to be proven at trial.

430.  Plaintiffs Schauer, Cosman, Roberts, Graner, and Letson seek costs and expenses, including reasonable attorney's fees, under California Civil Code section 1794.

## Count XI
### Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*. (On Behalf of the California Subclass)

431.  Plaintiffs and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

432.  Plaintiffs Schauer, Cosman, Roberts, Graner, and Letson bring this claim on behalf of the California Subclass.

433.  Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public. As described above, and throughout this Complaint, Defendant misrepresented the Class Laptops and concealed the Defect.

434. By its actions, Defendant disseminated uniform advertising regarding the Class Laptops into California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code section 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

435. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive because it does not disclose the Defect—and how the Defect negatively affects consumers' experience with the Class Laptops by rendering the hinges inoperable.

436. Defendant continued to misrepresent to consumers that its Class Laptops were reliable, durable, easy to transport and capable of operating as 2-in-1 devices, when, in fact, that was not the case as described in detail throughout this Complaint.

437. In making and disseminating the statements alleged herein. Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law. Plaintiffs and other class members based their purchasing decisions on Defendant's omitted material facts. The revenue attributable to products sold in those false and misleading advertisements likely amounts to hundreds of millions of dollars. Plaintiff and class members were injured in fact and lost money and property as a result.

438.    The misrepresentations and non-disclosure by Defendant of the material facts described and details herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof. Code section 17500, *et seq*.

439.    As a result of Defendant's wrongful conduct, Plaintiffs and the class members lost money in an amount to be proven at trial. Plaintiffs and the class members are therefore entitled to restitution as appropriate for this cause of action.

440.    Plaintiffs and class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorney's fees and costs under California Code of Civil Procedure section 1021.5; injunctive relief; and other appropriate equitable relief.

## Count XII
### Violation of the Oregon Unlawful Trade Practices Act,
### (Or. Rev. Stat. § 646.605 through 646.656)
### (On Behalf of the Oregon Subclass)

441.    Plaintiff Sarah Householder and the Oregon Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

442.    Plaintiff Householder (for the purposes of this section, the "Oregon Plaintiff") brings this claim on behalf of herself and on behalf of the members of the Oregon Subclass against Defendant.

128

443.    Defendant is a "person" under the Oregon Unlawful Trade Practices Act, ORS § 646.605(4).

444.    The Oregon Plaintiff's Class Laptop is a "good[]" under ORS § 646.605(6)(a).

445.    Defendant is and was engaged in "trade" and "commerce" as defined by ORS § 646.605(8).

446.    ORS § 646.607 provides, in relevant part, that a "person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person . . . [e]mploys any unconscionable tactic in connection with selling . . . goods or services."

447.    Defendant knew or should have known that the Class Laptops' hinges were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

448.    Defendants employed unconscionable tactics in selling the Class Laptops by not giving the Oregon Plaintiff and the Oregon Subclass members sufficient notice or warning regarding the defective hinges, intending that the Oregon Plaintiff and the Oregon Subclass rely upon HP's omissions when purchasing the Class Laptops. The Oregon Plaintiff and the Oregon Subclass members were deceived by Defendant concealing the defective hinges.

449.    Defendant also engaged in unlawful and deceptive practices in violation of ORS § 646.608 by causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the Class Laptops (ORS § 646.608(b)); representing that the Class Laptops have characteristics, uses, benefits, quantities and qualities that they do not have (ORS §646.608(e)); representing that the Class Vehicles are of a particular standard, quality or grade when they are of another (ORS § 646.608(g)); concurrently with tender or delivery of the Class Laptops, failing to disclose known material defects or material nonconformities (ORS § 646.608(t)); and engaging in other unfair or deceptive conduct (ORS § 646.608(u)).

450.    Defendant also engaged in unlawful and deceptive practices in violation of ORS §§ 646.607 and 646.608 by failing to provide the Oregon Plaintiff and Oregon Subclass members the full cost to repair the Class Laptops and replace the defective hinges.

451.    Defendant knew or should have known that its conduct was a violation of the Oregon Unfair Trade Practices Act, ORS § 646.605 - .656, and therefore its conduct was willful. ORS § 646.605(10).

452.    The Oregon Plaintiff and Oregon Subclass members have suffered an ascertainable loss of money or property as a direct and proximate result of Defendant's willful use or employment of unlawful methods, acts or practices.

130

453.   Pursuant to ORS § 646.638, The Oregon Plaintiff and the Oregon Subclass members seek an order enjoining Defendant's unfair and/or deceptive practices, actual damages, punitive damages, attorney's fees and costs, and any other just and proper relief available under the Oregon UTPA.

454.   Pursuant to ORS § 646.638(2), Plaintiff Householder will serve the Oregon Attorney General with a copy of this Complaint.

<div align="center">

**Count XIII**
**Breach of the Implied Warranty of Merchantability**
**(Or. Rev. Stat. § 72.8020, *et seq*.)**
**(On Behalf of the Oregon Subclass)**

</div>

455.   Plaintiff Sarah Householder and the Oregon Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

456.   Plaintiff Householder (for purposes of this section, the "Oregon Plaintiff") brings this claim on behalf of herself and on behalf of the members of the Oregon Subclass against Defendant HP.

457.   The Class Laptops are "consumer goods" as defined in ORS § 72.8010(1).

458.   The Oregon Plaintiff and the Oregon Subclass members are "buyers" and "retail buyers" as defined in ORS § 72.8010(2).

459.   HP is and was at all relevant times a "manufacturer" as defined in ORS § 72.8010(3) with respect to the Class Laptops.

460. Pursuant to ORS § 72.8020, HP impliedly warranted that the Class Laptops are fit for the ordinary purposes for which they are used: displaying information in a standard laptop form factor and being easily portable, without defective hinges that fail to support the screen. With respect to the 360-degree Class Laptops, HP impliedly warranted that the devices hinges would be sufficient to allow the device to be manipulated into various positions, including tablet mode.

461. By marketing, advertising, distributing, and selling Class Laptops with the defective hinges, HP breached the implied warranty that the Class Laptops were merchantable and fit for use as personal computers.

462. The defective hinges were installed in the Class Laptops at the time they left HP's manufacturing facilities and at the time they were sold to the Oregon Plaintiff and the Oregon Subclass.

463. The Oregon Plaintiff and the Oregon Subclass members have performed the duties required of them under the terms of the warranties, except as may have been excused or prevented by HP's conduct or by operation of law in light of HP's unconscionable conduct.

464. HP received timely notice about the defective hinges but has failed to rectify the problem and refused to offer an effective remedy.

465. The Oregon Plaintiff and the Oregon Subclass members have had sufficient dealings with HP or its agents to establish privity of contract. Privity is

not required in this case, however, because the Oregon Plaintiff and the Oregon Subclass members are the intended third-party beneficiaries of contracts between HP and its authorized sellers and are the intended beneficiaries of HP's implied warranties. The sellers were not intended to be the ultimate consumers of the Class Laptops, and the warranties were designed for and intended to benefit the ultimate consumers only.

466.    As a direct and proximate result of HP's breach of the implied warranty of merchantability, The Oregon Plaintiff and the Oregon Subclass members suffered economic damages, including loss attributable to the diminished value of the Class Laptops.

<div align="center">

**Count XIV**
**Violations of the Michigan Consumer Protection Act,**
**(Mich. Comp. Laws § 445.903, *et seq*.)**
**(On Behalf of the Michigan Subclass)**

</div>

467.    Plaintiff Diana Hobert-Powell and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

468.    Plaintiff Hobert-Powell (for purposes of this section, "Michigan Plaintiff") brings this claim on behalf of herself and on behalf of the members of the Michigan Subclass against Defendant.

469.    The Michigan Plaintiff and members of the Michigan Subclass are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

470.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce...." Mich. Comp. Laws § 445.903(1).

471.    Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendant's manufacture, sale, and use of the defective hinges, which Defendant failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the durability, reliability, and usability of the Class Laptops.

472.    Defendant's conduct as alleged above and herein constitutes practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics … that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omissions of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

473. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

474. Defendant intended that the Michigan Plaintiff and the Michigan Subclass members rely on their misrepresentations and omissions, so that the Michigan Plaintiff and the Michigan Subclass members would purchase Class Laptops.

475. Had Defendant disclosed the omitted material, Michigan Plaintiff and the Michigan Subclass members would not have purchased the Class Laptops or would have paid less for them.

476. Defendant's violations present a continuing risk to the Michigan Plaintiff and Michigan Subclass members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

477. The Michigan Plaintiff and the Michigan Subclass members were injured as a result of Defendant's conduct. The Michigan Plaintiff and the Michigan Subclass members overpaid for the Class Laptops and did not receive the benefit of their bargain, and thus the Class Laptops have suffered a diminution in value.

478. Defendant's conduct proximately caused the injuries to the Michigan Plaintiff and the Michigan Subclass members.

479. Defendant is liable to the Michigan Plaintiff and the Michigan Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## Count XV
### Breach of the Implied Warranty of Merchantability, (Mich. Comp. Laws § 440.314) (On Behalf of the Michigan Subclass)

480. Plaintiff Diana Hobert-Powell and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

481. Plaintiff Hobert-Powell (for purposes of this section, the "Michigan Plaintiff") brings this claim on behalf of herself and on behalf of the Michigan Subclass members against Defendant.

482. HP is and was at all relevant times a merchant with respect to Class Laptops within the meaning of Mich. Comp. Laws § 440.2314(1).

483. Pursuant to Mich. Comp. Laws § 440.2314, a warranty that the Class Laptops were in merchantable condition is implied by law in the instant transactions.

484. The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops and 2-in-1 devices are used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display in either Laptop or

tablet mode, constituting a usability hazard to the Michigan Plaintiff and Michigan Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

485.   Privity is not required in this case because the Michigan Plaintiff and the Michigan Subclass were the intended third-party beneficiaries of contracts between HP and its sellers; specifically, they are the intended beneficiaries of HP's implied contracts. The sellers were not intended to be the ultimate consumers of the Class Laptops and have no rights under the warranty agreements provided with the Class Laptops; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

486.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website forums and the instant Complaint, within a reasonable amount of time after the Defect was discovered.

487.   As a direct and proximate result of HP's breach of the warranties of merchantability, the Michigan Plaintiff and the Michigan Subclass members have been damaged in an amount to be proven at trial.

## Count XVI
## Fraud by Concealment
## (On Behalf of the Michigan Subclass)

488.   Plaintiff Diana Hobert-Powell and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

489.   Plaintiff Hobert-Powell (for purposes of this section, the "Michigan Plaintiff") brings this claim on behalf of herself and on behalf of the Michigan Subclass members against Defendant.

490.   As set forth above, Defendant know and intentionally concealed and/or suppressed material facts concerning the usability of the Class Laptops.

491.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce the Michigan Plaintiff and the Michigan Subclass members to purchase the Class Laptops at a higher price, which did not match their true value.

492.   Defendant still has not made full and adequate disclosure and continues to defraud the Michigan Plaintiff and Michigan Subclass members.

493.   The Michigan Plaintiff and the Michigan Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The Michigan Plaintiff's and the Michigan Subclass members' actions were justified. Defendant had

exclusive control of the material facts and such facts were not known to the public, to the Michigan Plaintiff, or the Michigan Subclass members.

494. Defendant owed the Michigan Plaintiff and members of the Michigan Subclass a duty to disclose the true durability, reliability, and usability of the Class Laptops, because the Michigan Plaintiff and the Michigan Subclass members relied on Defendant's material representations that the Class Laptops they were purchasing were functional and free from defects.

495. The Michigan Plaintiff and the members of the Michigan Subclass relied on Defendant's failure to disclose the faulty and defective nature of the hinges in purchasing the Class Laptops.

496. As a result of their reliance, the Michigan Plaintiff and the Michigan Subclass members have been injured in an amount to be proven at trial, including, but not limited to, actual damages, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their Class Laptops.

497. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the Michigan Plaintiff's and the Michigan Subclass members' rights to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## Count XVII
## Unjust Enrichment
## (On Behalf of the Michigan Subclass)

498.   Plaintiff Diana Hobert-Powel and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

499.   Plaintiff Hobert-Powell (for purposes of this section, the "Michigan Plaintiff") brings this action on behalf of herself and the Michigan Subclass against Defendant HP.

500.   As a result of Defendant's wrongful and fraudulent acts and omissions, as set forth above, pertaining to the concealing of the defective hinges described herein, HP charged a higher price for the Class Laptops than the Class Laptops' true value and HP obtained monies rightfully belonging to the Michigan Plaintiff and the Michigan Subclass members.

501.   HP enjoyed the benefit of increased financial gains, to the detriment of the Michigan Plaintiff and the Michigan Subclass members, who paid a higher price for laptops which actually had lower values. It would be inequitable and unjust for HP to retain these wrongfully obtained profits.

502.   The Michigan Plaintiff, therefore, seeks an order establishing HP as constructive trustee of the profits unjustly obtained, plus interest.

## Count XVIII
## Violations of the South Carolina Unfair Trade Practices Act
(S.C. Code Ann. § 39-5-10, *et seq*.)
**(On Behalf of the South Carolina Subclass)**

503.   Plaintiff Scott Evans and the South Carolina Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

504.   Plaintiff Evans (for purposes of this section, the "South Carolina Plaintiff") brings this action on behalf of himself and the South Carolina Subclass.

505.   Defendant is a "person" within the meaning of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10(a) and conducts "trade" and "commerce" within the meaning of S.C. Code Ann. § 39-5-10(b).

506.   The South Carolina Plaintiff and the South Carolina Subclass are "persons" within the meaning of the SCUTPA, S.C. Code Ann. § 39-5-10(a).

507.   In the course of HP's business, HP intentionally or negligently concealed and suppressed material facts concerning the defect affecting the hinges of the Class Laptops. These material facts include, but are not limited to, the fact that the hinges are defective and that as a result of such defect, the Class Laptops' hinges fail prematurely, render the devices difficult or impossible to transport, and are unfit to support the display in either laptop or tablet mode.

508. Defendant thus violated the SCUTPA by (1) causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Laptops; (2) representing that the Class Laptops have approval, characteristics, uses, or benefits that they do not have; (3) representing that the Class Laptops are of a particular standard, quality, and grade when they are not; (4) advertising the Class Laptops with the intent not to sell or lease them as advertised; (5) engaging in other conduct which created a likelihood of confusion or of misunderstanding; and (6) using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale of the Class Laptops, whether or not any person has in fact been misled, deceived, or damaged thereby.

509. HP intentionally and knowingly misrepresented material facts regarding the Class Laptops with intent to mislead the South Carolina Plaintiff and the South Carolina Subclass.

510. HP know or should have known that its conduct violated the SCUTPA.

511. Defendant owed the South Carolina Plaintiff and the South Carolina Subclass members a duty to disclose, truthfully, all the facts concerning the reliability of the Class Laptops because it: (1) possessed knowledge of the defect

from several sources, including at the time of manufacture when it created the

hinges in a manner unable to: provide support for the display or render the devices

easily transportable[74], from complaints made on HP's website and to web forums

actively monitored by HP, and from HP's internal analyses determining the

ubiquity of the problem upon learning of customer repair requests; (3) intentionally

concealed the defect from consumers; and (3) made incomplete representations

about the Class Laptops generally, while purposefully withholding material facts

from the South Carolina Plaintiff and the South Carolina Subclass members.

512.   Defendant's acts and omissions are unfair in that they (1) offend

public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3)

cause substantial injury to consumers. Defendant has, through knowing,

intentional, material omissions, concealed the true defective nature of the Class

Laptops.

513.   Defendant's acts and omissions are also unfair in that they cause

substantial injury to consumers far in excess of any conceivable benefit and are

injuries of a nature that they could not have been reasonably avoided by

consumers.

514.   The South Carolina Plaintiff and the South Carolina Subclass

members suffered ascertainable loss and actual damages as a direct and proximate

---

[74] and in the case of the 360-degree Class Laptops, support the functionality of a 2-in-1 device

result of HP's misrepresentations and its concealment of and failure to disclose material information. The South Carolina Plaintiff and the South Carolina Subclass members who purchased the Class Laptops would not have purchased them at all and/or—if the Class Laptops' true nature had been disclosed—would have paid significantly less for them.

515.   As a direct and proximate result of HP's actions described above, the South Carolina Plaintiff and the South Carolina Subclass members have been injured in fact and suffered damages, and seek relief in the form of actual damages, treble damages, reasonable attorney's fees, and any other appropriate relief pursuant to S.C. Code Ann. § 39-5-140.

**Count XIX**
**New Jersey Consumer Fraud Act**
*(N.J. Stat. Ann. § 56:8)*
**(On behalf of the New Jersey Subclass)**

516.   Plaintiff Kaplitt and the New Jersey Subclass incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

517.   This claim is brought individually under the laws of New Jersey and on behalf of members of all members of the Class who reside in New Jersey (the "New Jersey Subclass").

518. The marketing and branding of the Class Laptops are advertisements within the meaning of N.J. Stat. Ann. § 56:8-1(a).

519. The Class Laptops are merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c).

520. Defendant is a "person" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

521. N.J. Stat. Ann. § 56:8-2 provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

522. As explained above, Defendant knew or had reason to know of the defective nature of the Class Laptops prior to the branding, marketing, and sales of those products. Defendant therefore knowingly and unconscionably concealed, misrepresented, and omitted material facts with the intent that consumers would rely on such concealments, misrepresentations, and omissions in purchasing the defective Class Laptops.

523.   Defendant's concealments, misrepresentations, and omissions were material because the New Jersey Plaintiff and New Jersey Class members would not have purchased the HP Class Laptops had they known of their defective nature.

524.   Pursuant to N.J. Stat. Ann. § 56:8-2.11, Defendant is liable for full refunds of all moneys acquired by means of its unlawful branding, marketing, and sales, as well as treble damages. Plaintiff Kaplitt and the subclass members represented in this claim seek all relief dictated by this law, in addition to such other relief as is deemed just and proper.

## Count XX
### Breach of the Implied Warranty of Merchantability
### (Asserted on Behalf of the New Jersey Subclasses)

525.   Plaintiff Kaplitt and the New Jersey Subclass incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

526.   This claim is brought individually under the laws of New Jersey and on behalf of members of all members of the New Jersey Subclass.

527.   HP is a merchant who regularly engages in the manufacture, marketing, and distribution of computer equipment, including the Class Laptops, which Plaintiff Kaplitt and New Jersey Subclass members purchased. By operation

of law, HP impliedly warranted to Plaintiff Kaplitt and New Jersey Subclass members that the products were fit for their intended use.

528. Contrary to the implied warranties, the Class Laptops were not fit for their intended use due to their propensity for the plastic casing around the hinges to break. HP knew or had reason to know of the defective nature of the laptops prior to issuing the implied warranties.

529. While the defective manufacturing was present at the time the warranties were issued, Plaintiff Kaplitt and the New Jersey Subclass members could not have discovered it at that time. At the time of purchase, Plaintiff Kaplitt and the New Jersey Subclass members reasonably expected the Class Laptops to be fit for their intended use, and they did not receive the goods for which they bargained. Had they known of the defective manufacturing, they would not have made the purchases.

530. Plaintiff Kaplitt and the New Jersey Subclass members used the Class Laptops in the ordinary manner for which they were intended. The products were not altered, and no action by Plaintiff Kaplitt and the New Jersey Subclass members caused or contributed to the Defect.

531. In instances where Plaintiff Kaplitt and the New Jersey Subclass members did not purchase the vehicles directly from Defendant, they are still the intended beneficiaries of the implied warranties, as the end users whom the

retailers purchased the products to sell to and are therefore entitled to enforce the implied warranties against Defendant.

532.    Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. 50 § 2301 et seq., Defendant is prohibited from disclaiming or limiting the implied warranty of merchantability so as to not cover the defective laptops.

533.    As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff Kaplitt and New Jersey Subclass members suffered damages of an amount to be determined at trial.

## Count XXI
### Unjust Enrichment/Restitution
**(Asserted on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses)**

534.    Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

535.    HP has been enriched as a result of the conduct described in this First Amended Complaint.

536.    HP received a benefit from Plaintiffs and other members of the Class in the form of payment for products purchased, including purchases made on HP's website.

537.    Defendant knowingly and willingly accepted and enjoyed the benefits of the sales.

538.   Retention of these benefits by HP would be unjust and inequitable because HP received these benefits by engaging in a false, deceptive, and misleading scheme to market the Class Laptops as premium, portable, fully functional machines and/or 2-in-1 laptop computers, and by engaging in the unlawful, unjust, and wrongful acts and practices described in this First Amended Complaint.

539.   As the products were unfit for their intended use, the New Jersey Plaintiff and Class members did not receive the goods they bargained for.

540.   In the instances where Class members did not purchase the defective products directly from Defendant, they are nonetheless the ultimate victims of the unjust enrichment, as the end purchasers whom the retailers sold the products to in turn.

541.   The benefits, in whole or in part, that HP received were not legitimately earned and came at the expense of Plaintiffs and the other members of the Class.

542.   HP knows that the above-described conduct is unjust, inequitable, and wrongful, but systematically engages in this scheme anyway in order to gain unfair advantages and reap unearned financial benefits.

543.   HP is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for the rights of Plaintiffs and other Class Members.

544. Plaintiffs and the Class Members are entitled to restitution and disgorgement of all amounts unjustly retained by HP, as well as other appropriate relief.

## Count XXII
### Fraudulent Omission or Concealment
**(Asserted on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses)**

545. Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

546. At all relevant times, HP was engaged in the business of designing, manufacturing, distributing, and selling the Class Laptops.

547. HP, directly and through its representatives or agents, delivered Class Laptops to its distributors and various other distribution channels.

548. HP willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Class Laptops.

549. Rather than disclose the Defect to Plaintiffs and other prospective purchasers of Class Laptops, HP concealed the Defect.

550. HP omitted and concealed this material information to drive up sales, maximize profits, and maintain its market power, as consumers would not purchase Class Laptops, or would pay substantially less for them, had they known the truth.

551. Plaintiffs and Class members could not have discovered the Defect prior to it manifesting in their Class Laptops.

552. HP was in exclusive possession of information concerning the Defect's existence, which would have been material to reasonable consumers, and thus was obligated to disclose the Defect to Plaintiffs and Class Members, at the point of sale or otherwise.

553. HP also had a duty to disclose because it made many general affirmative representations about the quality, warranty, maneuverability, and durability of the Class Laptops as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, functionality, and durability.

554. Even when faced with complaints regarding the Defect, HP often refused to acknowledge the issue. As a result, Class Members were misled as to the true condition of the Class Laptops once at the time of purchase and often again when the Defect was complained of to HP. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Laptops purchased by Plaintiffs and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased, are material concerns to a consumer.

555. Although HP had a duty to disclose the Defect to consumers, it failed to do so.

556. Plaintiffs and Class Members sustained injury at the time they purchased Class Laptops that suffer from the Defect, which Defendant failed to disclose and actively concealed from them. Had Plaintiffs and the Class known about the Defect at the time of purchase, they would have paid substantially less for their Class Laptops, or would not have purchased them and avoided the significant out-of-pocket costs they have or will incur to repair or replace Class Laptops once the Defect manifests.

557. HP's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being, and in part to enrich itself at the expense of consumers. HP's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration or competitor devices. HP's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for a judgment against Defendant as follows:

a.      Entering judgment in favor of Plaintiffs against Defendant;

b.      Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

c.      Appointment of Plaintiffs as Class Representative for the Class;

d.      Appointment of Plaintiff's counsel as Class Counsel;

e.      A declaration that HP violated the State statutes that form the basis for Plaintiffs' primary statutory claims;

f.      A declaration that HP was unjustly enriched by its conduct as described herein;

g.      Monetary damages;

h.      Statutory damages in the alternative;

i.      Restitution;

j.      Injunctive relief;

k.      Disgorgement of all monies received by HP as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

l.      Penalties as provided by law;

m.      Treble damages;

n.	A permanent injunction enjoining HP from continuing the

unlawful, unjust, unfair, and deceptive acts and practices described herein;

o.	Pre-judgment and post-judgment interest;

p.	Reasonable attorneys' fees and expenses; and

q.	Such other further relief that the Court deems just and

equitable.

Dated: May 23, 2022

<div style="margin-left:40%">

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
(302) 351-6905 (fax)
brad@deleeuwlaw.com

</div>

OF COUNSEL:

Scott David Hirsch (*pro hac vice*)
**SCOTT HIRSCH LAW GROUP PLLC**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-7062
scott@scotthirschlawgroup.com

Nicholas A. Migliaccio (*pro hac vice*)
Jason S. Rathod (*pro hac vice*)
Mark D. Patronella (*pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
mpatronella@classlawdc.com

Dan E. Gustafson (*pro hac vice* forthcoming)
David A. Goodwin (*pro hac vice* forthcoming)
Frances Mahoney-Mosedale (*pro hac vice* forthcoming)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

Howard T. Longman (*pro hac vice* forthcoming)
Adam Longman (*pro hac vice* forthcoming)
**LONGMAN LAW, P.C.**
354 Eisenhower Parkway, Suite 1800
Livingston, N.J. 07039
Telephone: (973) 994-2315
Hlongman@longman.law
Alongman@longman.law

***Attorneys for Plaintiffs***