## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHYLLIS CARSON; LORNE
COSMAN; WILLIAM DRAPER;
PHILLIP ERICKSON; TERENCE
GRANER; DONALD HARMAN;
SARAH HOUSEHOLDER;
TRUDY L. GRANER; TRUDY
LETSON; SABINE MILLER;
DIANA HOBERT-POWELL;
JANET PURVIS; PATRICIA
ROBERTS; CAROLE SCHAUER;
CARA WASHINGTON;
STEPHEN KAPLITT; MICHAEL
DOBKIN; CHERYL MEOLA;
DIANE DRAKE; CHRISTOPHER
NIND; ROSE CARINA; BRUCE
WILLIAMS; ANTHONY
HARRIS; TIMUR SAKHARUK;
ROBERT DIMARTINO; IAN
PERRY; STEPHEN LUTHER;
GREGORY ORENSKI; RODNEY
NASH; and DEBORAH THELEN
individually and on behalf of all
others similarly situated,

Case No.:  1:22-cv-00208-CFC

**JURY TRIAL DEMANDED**

       Plaintiffs,

v.

HP Inc.

       Defendant.

_____

**SECOND AMENDED CLASS ACTION COMPLAINT**

1

Plaintiffs Phyllis Carson; Lorne Cosman; William Draper; Phillip Erickson; Terence Graner; Donald Harman; Sarah Householder; Trudy L. Graner; Trudy Letson; Sabine Miller; Diana Hobert-Powell; Jan Purvis; Patricia Roberts; Carole Schauer; Cara Washington; Stephen Kaplitt; Michael Dobkin; Cheryl Meola; Diane Drake; Christopher Nind; Rose Carina; Bruce Williams; Anthony Harris; Timur Sakharuk; Robert DiMartino; Ian Perry; Stephen Luther; Gregory Orenski; Rodney Nash; and Deborah Thelen individually and on behalf of all others similarly situated, file this Second Amended Class Action Complaint ("Second Amended Complaint") against Defendant HP Inc. ("HP"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on the investigation conducted by their counsel.

## INTRODUCTION AND SUMMARY OF ACTION

1.     Plaintiffs bring this consumer class action alleging that HP misled consumers about the quality and functionality of the Envy Laptops ("Envy"), Envy 360 Laptops ("Envy 360"), Pavilion Laptops ("Pavilion"), Pavilion 360 Laptops ("Pavilion 360") and the HP 14, HP 15, and HP 17 Laptops ("HP Laptop"). Together, these computers, sold in or after 2017, make up the "Class Laptops"[1].  The

---

[1] Plaintiffs reserve the right to modify the Class Laptops included in the Class Definition, including after conducting discovery.

specific time period alleged herein pertains to those Class Laptops that were purchased in 2017 to present (hereinafter referred to as the "Class Period").

2.      During the Class Period HP designed, manufactured, marketed, sold, and distributed the Class Laptops to tens of thousands of consumers throughout the United States.

3.      The Class Laptops all possess a material defect that prevent them from being used as portrayed in HP's advertising materials, and HP concealed, failed to disclose, or otherwise engaged in deceptive marketing with respect to this defect. As a result, many consumers purchased computers that became practically unusable after just months of use.

4.      Unbeknownst to consumers, the Class Laptops are designed and manufactured with a common inherent defect that, with ordinary use as intended, compromises the laptops' hinges, thus impairing the computer's portability and functionality. More specifically, the Class Laptops' hinges are substandard and defective in that they prematurely and unexpectedly crack and fail, eventually breaking off from the poorly secured plastic mounting points at the base (where the keyboard and internal components are located) of the device (the "Hinge Defect").

5.      One of the essential attributes of a laptop or portable computer is the ability to open and close the case like a clam shell for ease of transport. This ability is contingent on the hinge being anchored to the two halves of the laptop. A laptop's

universal design consists of a thin upper case, containing the monitor, and a thicker, more robust bottom case that contains the keyboard, hard drive, CPU, and other critical components. The hinge provides a connection between the two halves and allows the monitor to be opened and closed as needed.

6.     The Hinge Defect is the result of ordinary stress on a vital component that is common in all the Class Laptops. Because the hinges are anchored to the laptops with poorly made and substandard parts constructed from weak plastic and/or otherwise suffer from defects in material and/or workmanship, the ordinary opening or closing of the laptop fractures the plastic anchors, causing them to fail, and destabilizes the hinges, separating them from the case. This destabilizing of the hinges causes the case to become compromised resulting in further damage to the lower case and inoperability of the hinge as designed. In many instances, as a result of the Hinge Defect, one end of hinge detaches from the computer completely.  As a result of the Hinge Defect, the Class Laptops are unable to be used as intended, that is a portable computer that can easily open and close for mobility, and in the case of 360 models, reconfigure to multiple angles and be used as a tablet or a laptop. The Hinge Defect is captured in the below photograph of a Class Laptop hinge mechanism from a brand-new Class Laptop that was only opened and shut 15-20 times before the Hinge Defect manifested.

Fractured Plastic Anchors in a Class Laptop (HP 17)



Fractured Plastic Anchors in 17" HP Envy[2]



---

[2] 17" HP Envy Coming apart at the left near screen hinge - Page 3 - HP Support Community - 4651990

Fractured Plastic Anchors in a Class Laptop (HP 17)



Fractured Plastic Anchor in a Class Laptop (HP 17)



6

Hinge Defect in an HP Envy 360[3]



7.      As shown in the photographs above, the Hinge Defect is present in both HP's traditional clamshell style laptops and its 360-degree convertible hinge style laptops.  Despite its knowledge of the Hinge Defect, Defendant markets its 360 line of computers, specifically the Envy 360 and Pavilion 360 computers as "convertible" and designed to offer a near limitless range of angles and movements to users:

> "Create on-the-go with a convertible laptop designed to move with you. The power of a 360 degree hinge combined with the simultaneous use of touch and pen make for vibrant, accurate creations…The 360 degree hinge adapts so you can capture every intricate sketch with precision."[4] (Envy x360)

---

[3] HP Envy x360 Broken Hinge - HP Support Community - 6793400
[4] *See* HP Envy x360 Product Listing, https://www.hp.com/us-en/shop/pdp/hp-envy-x360-laptop-15t-ed100-174r7av-1?cq_src=google_ads&cq_cmp=12690817676&cq_con=123460399194&cq_term=&cq_med=&cq_plac=&cq_net=g&cq_pos=&cq_plt=gp&DSA&jumpid=ps_con_nb_ns&utm_

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

"The HP Pavilion x360…convertible adapts to you so that you are productive at any angle…with four modes to choose from, you'll find just the right angle for anything with the extremely flexible HP Pavilion x360."[5]

8.     Defendant marketed its HP Laptops as "reliable" and "designed for long-lasting performance", with "compact, portable design."[6]

9.     Defendant further provides assurances to customers as to the HP Laptops' durability and HP's pre-sale diligence by stating that "extensive quality testing ensures that you can keep going…and going."[7]

10.     Indeed, Defendant claims that each model has been subject to 115,000 hours of testing,[8] which included opening and closing the laptops tens of thousands of times.[9] Moreover, HP represented to consumers that it subjected its hinges to

---

medium=ps&utm_source=ga&utm_campaign=HP-Store_US_BRA_PS_CPS_OPEX_Google_All_SEM_All_Notebooks-DSA&utm_term=&matchtype=b&adid=512564949515&addisttype=g&gclid=Cj0KCQj wqKuKBhCxARIsACf4XuEpqark2dOenF2HqBQPwnykTceQK1TgHgPcz62FECDLt7b BJRgkvDsaAibJEALw_wcB&gclsrc=aw.ds

[5]  *See*  HP Pavilion x360 Convertible Product Listing, https://www.hp.com/us-en/shop/pdp/hp-pavilion-x360-convertible-15t-er000-touch-24d80av-1?jumpid=ma_weekly-deals_product-tile_laptops_3_24d80av-1_hp-pavilion-x360-con

[6]  See   Work,   Watch   and   Play   All   Day,   June   4,   2018, https://www.youtube.com/watch?v=KdB4v9ssdIY

[7] HP Laptop - 17-ca2097nr (2Y438UA#ABA)

[8] HP Total Test Process Testing - HP Inc Video Gallery - Products (brightcovegallery.com)

[9]  HP  Total  Test  Process  Testing  -  HP  Inc  Video  Gallery  -  Products (brightcovegallery.com); Inside HP Labs of Destruction! (archive.org)

25,000 cycles, which is the equivalent of opening and closing the laptop ten times a day for seven years.[10] HP further represents that the hinges it builds for its laptops are made from magnesium alloy with hardened steel pins that, according to HP "last virtually forever."[11]

11.   Defendant uniformly represented to consumers that it had years of experience manufacturing computers and was in effect an expert in manufacturing, design, and use of computers.

12.   Plaintiffs and Class members saw or heard these representations from Defendant about the Class Laptops prior to purchasing their Envy, Envy x360, Pavilion x360, Pavilion, or HP Laptops.

13.   Contrary to HP's representations, HP fails to disclose that the Class Laptops are designed and/or manufactured with a common inherent defect that, over time, compromises the laptop's hinges, significantly impairing the computer's portability and functionality.

14.   According to Plaintiffs and other owners of the Class Laptops who have experienced the Hinge Defect, the common hinge problem is not a result of dropping or otherwise handling the laptop roughly. Rather, owners report that the Hinge Defect becomes suddenly apparent by way of a popping or crunching noise when

---

[10]   https://www.alphr.com/blogs/2012/05/17/revealed-the-military-standards-and-robots-hp-uses-to-test-its-laptops/.

[11] *Id.*

opening or closing the laptop during normal and intended use. This initial fracturing of the hinge assembly eventually, with ordinary use, becomes a complete failure, making it impossible to properly open and close the laptop.

15.     As a result, the user's ability to (1) open the laptop to utilize the device, (2) close or transport the laptop, or (3) transition the configuration of the laptop, is dramatically reduced, or lost altogether.   Thus, the Hinge Defect renders the computer partially or wholly unusable.

16.     Consequently, the Class Laptops are not fit for their intended purpose as functioning, compact, portable, or flexible computers and cannot satisfy the representations HP made in its marketing materials and warranties.

17.     Defendant has been aware of the Hinge Defect for many years.  Indeed, there are thousands of customer posts on Defendant's own online forum complaining of the hinge issue described above in the Class Laptops. These posts date back to at least 2014. Accordingly, Defendant has been on notice of the Hinge Defect preceding the Class Period.

18.     Indeed, HP has long been on notice of defects in the hinges of its earlier models of its laptops, dating back as early as 2009.[12]

---

[12] Hung up on HP's hinge recall,
https://www.infoworld.com/article/2632521/hung-up-on-hp-s-hinge-recall.html (last accessed July 23, 2022).

19.     The complaints describe the Hinge Defect, including the accompanying crunching sounds when the devices are opened, and even report plastic debris from the weak hinge anchors being expelled from the Class Laptops.

20.     HP has responded to the Hinge Defect in several ways, all of which are inadequate. In communications with some owners of the Class Laptops, HP has stated that a hardware assembly issue was causing the hinge cracking and panel separation problems.[13] Despite acknowledging the Hinge Defect in this fashion, Defendant has been unable or unwilling to address the true scope and pervasive nature of the Hinge Defect in the Class Laptops.

21.     HP's laptop computers are covered by a limited warranty (the "Limited Warranty"), which warrants that HP products are free of defects in material and/or workmanship and that HP will repair the product, or if it is unable to repair the product, replace or refund the purchase.

22.     The Hinge Defect manifests both inside and outside of the warranty period. Defendant has been unable to fix the Hinge Defect during the warranty period and routinely refuses to repair the Hinge Defect free of charge outside the warranty period.

---

[13]     https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Laptop-Hinge-completely-broken-and-laptop-will-not-close/m-p/8101580     (posted     on 07/02/2021 at 6:50 AM)

23.     Many consumers complaining to HP about the Hinge Defect were told that the issue was caused by user error and HP refused to provide complimentary repair. Many other purchasers of the Class Laptops have sent their computers in for repair, only to find that the same issues crop up after the purported repairs, and/or in the next iteration of HP laptop owners purchased.

24.     Despite being aware of the cause of the Hinge Defect, HP and its representatives have often engaged in, or directed frustrated customers to engage in, ineffective repair methods.[14] More specifically, many customers who attempted to exercise their rights under the warranty were told the hinge failures were the result of a hardware problem and were instructed to order and install replacement hinges from the HP Part store, which did not fix the Hinge Defect. When HP actually accepts a Class Laptop for repair under warranty, it often replaced the hinges with the same defective part. None of these purported repairs remedied the hinge issues because none addressed the Hinge Defect.

25.     Accordingly, in its capacity as a warrantor, Defendant's knowledge of the Hinge Defect in the Class Laptops renders its efforts to limit the duration of warranties in a manner that would exclude warranty coverage unconscionable, and any such effort to disclaim, or otherwise limit, its warranties is null and void.

---

[14] *See, e.g.,* Response https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Laptop-Hinge-completely-broken-and-laptop-will-not-close/m-p/8101580 (posted on 7/2/2021 at 7:32 AM).

Defendant's limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant and Plaintiffs and the other Class members, as, at the time of purchase, Plaintiffs and the other Class members had no other options for negotiating the terms thereof.

26.   In addition, Defendant, with knowledge of the latent defect, manipulated the warranty so it often expired before the defect materialized and the consumer became aware of it.

27.   The limitations on the warranties also are substantively unconscionable. Defendant knew (and knows) that the Class Laptops are defective and incapable of performing as advertised. Defendant failed to disclose these defects to Plaintiffs and Class members while continuing to market misrepresentations of the performance properties of the Class Laptops; thus, Defendant's enforcement of the limitations on its warranties is harsh and shocks the conscience.

28.   Indeed, Defendant marketed, promoted, and sold the Class Laptops as flexible, compact, and portable laptops featuring sleek design and mobility to support on-the-go, dynamic, and prolonged use.

29.   Defendant knew that a material factor for consumers who purchased a Class Laptop was that the device was capable of handling frequent use and transportation and, in the case of the Envy 360 and Pavilion 360, possessed hinges capable of movement into various positions and angles.

30.     The Hinge Defect, however, makes it difficult or impossible to open and close the Class Laptop, transport the laptop, or move the laptop smoothly into any of its advertised dynamic positions.

31.     HP concealed from and/or failed to disclose to Plaintiffs and the Class members the defective nature of the Class Laptops and failed to remove the Class Laptops from the marketplace or take adequate action to remedy the Hinge Defect. Rather, HP sold the Class Laptops even though it knew, or was reckless in not knowing, that the Hinge Defect impacted the functionality of the Class Laptops and would ultimately result in Plaintiffs' and Class members' inability to use their Class Laptops for their intended purpose.

32.     Defendant's knowledge of the Hinge Defect is evident from the voluminous complaints lodged on Defendant's own online forum as well as Defendant's engagement with Class Laptop owners complaining of the Hinge Defect on the forum. Many of such interactions predate the Class Period.

33.     As a result of HP's unlawful, unfair, fraudulent, misleading, and deceptive practices, Plaintiffs and other consumers have purchased HP's products under the mistaken belief that the Class Laptops possessed high quality, functional hinges that were capable of normal use without damaging the machine.

34.     Had Plaintiffs and the Class known the facts regarding the Hinge Defect in the Class Laptops, those facts would have been material to them and any

reasonable consumer's decisions to purchase the Class Laptops at the price they paid for their Class Laptops.

35.     Indeed, had Plaintiffs and the Class members known about the Hinge Defect at the time of purchase, they would have paid substantially less for their Class Laptops or purchased a laptop from another manufacturer. Alternatively, they would not have purchased the Class Laptops and avoided the significant out-of-pocket costs they have incurred or will incur to repair or replace their Class Laptops once the Hinge Defect manifests.

36.     Because of HP's false and misleading statements, its active concealment of the Hinge Defect, and its failure to repair or otherwise address the Hinge Defect, Plaintiffs and the Class members have suffered injury in fact, including actual damages in that the Class Laptops they purchased are unreliable and/or unusable for their intended purposes. As a direct and proximate result of the Hinge Defect, Plaintiffs and the Class members have also suffered or will suffer damages in the form of, *inter alia*: out-of-pocket expenditures for the replacement and attempted repairs of the Class Laptops; diminished value of the Class Laptops; time wasted attempting to repair the Hinge Defect; and the failure to receive the benefit of the bargain in their purchases of the Class Laptops.

37.     Accordingly, Plaintiffs seek redress for Defendant's breaches of warranties and violations of the below-identified state laws.

15

38.     In furtherance of the public interest, and in order to remedy HP's wrongful conduct, Plaintiffs bring this action as a class action, and assert claims on behalf of themselves and a class of similarly situated persons seeking money damages, equitable relief, and injunctive relief for Defendant's conduct described herein.

39.     Because of the relatively small size of the typical individual Class members' claims, it is unlikely that individual Class members could afford to seek recovery on their own. This is especially true in light of the size and resources of Defendant. A class action is, therefore, the only reasonable means by which Class members can obtain relief.

## PARTIES

40.     Plaintiff Phyllis Carson is an individual citizen of the United States residing in Helena, Alabama and is otherwise *sui juris*.

41.     Plaintiff Cheryl Meola is an individual citizen of the United States residing in Little Rock, Arkansas and is otherwise *sui juris*.

42.     Plaintiff Carole Schauer an individual citizen of the United States residing in Apple Valley, California and is otherwise *sui juris*.

43.     Plaintiff Lorne Cosman is an individual citizen of the United States residing in Sherman Oaks, California and is otherwise *sui juris*.

44.     Plaintiff Terence Graner is an individual citizen of the United States residing in Spring Valley, California and is otherwise *sui juris.*

45.     Plaintiff Trudy Letson is an individual citizen of the United States residing in Jackson, California and is otherwise *sui juris*.

46.     Plaintiff Stephen Luther is an individualized citizen of the United States residing in Citrus Heights, California and is otherwise *sui juris*.

47.     Plaintiff Phillip Erickson is an individual citizen of the United States residing in Orlando, Florida and is otherwise *sui juris*.

48.     Plaintiff Donald Harman is an individual citizen of the United States residing in Wilton Manors, Florida and is otherwise *sui juris.*

49.     Plaintiff Patricia Roberts is an individual citizen of the United States residing in Cocoa Beach, Florida and is otherwise *sui juris*.

50.     Plaintiff Christopher Nind is an individual citizen of the United States residing in Longboat Key, Florida and is otherwise *sui juris*.

51.     Plaintiff Rodney Nash is an individual citizen of the United States residing in Tucker, Georgia and is otherwise *sui juris*.

52.     Plaintiff Rose Carina is an individual citizen of the United States residing in Bloomington, Indiana and is otherwise *sui juris*.

53.     Plaintiff William Draper is an individual citizen of the United States residing in Merrillville, Indiana and is otherwise *sui juris*.

17

54.     Plaintiff Sabine Miller is an individual citizen of the United States residing in Merrillville, Indiana and is otherwise *sui juris*.

*55.*    Plaintiff Timur Sakharuk is an individual citizen of the United States residing in Framingham, Massachusetts and is otherwise *sui juris*.

*56.*    Plaintiff Robert DiMartino is an individual citizen of the United States residing in Dedham, Massachusetts and is otherwise *sui juris*.

57.     Plaintiff Diana Hobert-Powell is an individual citizen of the United States residing in Rochester Hills, Michigan and is otherwise *sui juris*.

58.     Plaintiff Janet Purvis is an individual citizen of the United States residing in Imperial, Missouri and is otherwise *sui juris*.

59.     Plaintiff Anthony Harris is an individual citizen of the United States residing in Cleveland, Missouri and is otherwise *sui juris*.

60.     Plaintiff Stephen Kaplitt is an individual citizen of the United States residing in Livingston, New Jersey and is otherwise *sui juris*.

61.     Plaintiff Michael Dobkin is an individual citizen of the United States residing in Denville, New Jersey and is otherwise *sui juris*.

62.     Plaintiff Deborah Thelen is an individual citizen of the United States residing in New York City, New York and is otherwise *sui juris.*

63.     Plaintiff Bruce Williams is an individual citizen of the United States residing in Elmira, New York and is otherwise *sui juris*.

64.     Plaintiff Ian Perry is an individual citizen of the United States residing in Miller Place, New York and is otherwise *sui juris*.

65.     Plaintiff Cara Washington is an individual citizen of the United States residing in Dayton, Ohio and is otherwise *sui juris.*

66.     Plaintiff Gregory Orenski is an individual citizen of the United States residing in Parma, Ohio and is otherwise *sui juris*.

67.     Plaintiff Sarah Householder is an individual citizen of the United States residing in Beaverton, Oregon and is otherwise *sui juris.*

68.     Plaintiff Diane Drake is an individual citizen of the United States residing in Tacoma, Washington and is otherwise *sui juris*.

69.     Defendant HP Inc. is a Delaware corporation with its headquarters located at 1501 Page Mill Road, Palo Alto, California, 94304. Upon information and belief, HP Inc. is a global Fortune 500 company and one of the world's largest manufacturers and sellers of computers.  Defendant HP Inc. utilizes the website www.hp.com/us-en/home.html and its related webpages, as well as resellers, to market and sell personal computers and related products directly to consumers throughout the United States. HP Inc. is registered to do business in Alabama, Arkansas, California, Florida, Georgia, Indiana, Massachusetts, Michigan, Missouri, New Jersey, New York, Ohio, Oregon, Washington, and other states across the country.

## JURISDICTION AND VENUE

70.     Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction. The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. This is a class action in which at least one member of the Class and Subclass is a citizen of a state other than the states in which Defendant is incorporated and has its principal place of business.

71.     This Court has personal jurisdiction over this action because Defendant HP is a Delaware corporation.

72.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant HP resides within this District.

73.     Plaintiffs are informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, Defendant.

## STATEMENT OF FACTS

74.     HP Inc. designs, develops, manufacturers, and sells personal computers, tablet computers, monitors, printers, workstations, and accessories.

75.     HP Inc. operates in more than seventy countries and sells its products globally. HP's headquarters is in Palo Alto, California.

76.     As of January 2021, HP Inc. was the world's second largest personal computer vendor by unit sales.

### 1.      The Class Laptops

77.     The laptop models which comprise the Class Laptops include a diverse line of HP's laptop computer products.  However, all the Class Laptops share and suffer from the same inherent defects in material and/or workmanship (defined above) as described in detail below.

78.     HP launched the Envy family of computers in 2009.[15] In 2014, HP unveiled its 360-degree Convertible PC[16]—so named for its ability to assume multiple form factors, including that of a traditional laptop or a touch screen tablet, due to a hinged screen. Since that time, HP has released at least 37 new laptop computers under the Envy and 360-degree Convertible brand names. The latest (2021) basic Envy models are priced at $1,499.99 and $1,099.99, for the 15" and 17" models, respectively. The latest (2021) convertible Envy models are only offered as 15" models and start at $699.99.

---

[15] *See* Timeline of our history, https://www.hp.com/us-en/hp-information/about-hp/history/hp-timeline/timeline.html
[16] HP Worldwide Limited Warranty and Technical Support, https://www.hp.com/us-en/privacy/limited_warranty.html#2

79.     The latest (2021) basic model of the 15" HP Pavilion is priced at $619.99. The latest (2021) convertible model of the 15" HP Pavilion starts at $699.99. The latest (2021) basic 15" and 17' HP Laptops are priced at $329.99, and $429.99 respectively.

80.     Defendant represented, and continues to represent, to consumers that it had years of experience in the manufacture of computers and was in effect an expert in the manufacture, design, and use of computers.

81.     Defendant's Limited Warranty "guarantees that it will repair, replace, or refund, at HP's option, an HP Hardware Product that manifests a defect in materials or workmanship during the Limited Warranty Period".[17] If "in the unlikely event that…HP determines it is unable to repair or replace the HP Hardware Product, HP, at its option, may elect to provide you with (a) a replacement unit selected by HP that is the same or functionally equivalent to your HP Hardware Produce in performance or (b) to give you a refund or credit of your purchase price or lease payments (less interest) instead of a replacement. To the extent permitted by local law, this is your exclusive remedy for defective products."[18]

82.     Defendant designed, manufactured, warranted, advertised, and sold Class Laptops to tens of thousands of consumers throughout the United States and,

---

[17] HP Worldwide Limited Warranty and Technical Support, https://www.hp.com/us-en/privacy/limited_warranty.html#2
[18] *Id.*

upon information and belief, disseminated marketing materials from its headquarters in California.

**2.    The Hinge Defect**

83.    Contrary to HP's representations, the Class Laptops are designed and manufactured with an inherent defect that compromises the computers' ability to open or close, be transported, or configured into any of its advertised dynamic positions. Moreover, the damage to the hinge results in the screen, and its parts, sitting in a detached or tilted position. Upon information and belief, the Hinge Defect is the result of ordinary stress on a vital component that is common in the Class Laptops.

84.    While the hinges are connected to the Class Laptops using brass screws, the screws are held in place by fragile plastic. The fracture toughness of the plastic is too low for this application and reflects the overall lack of quality in the laptop's frame.

85.    Because the hinges are anchored to the Class Laptops with poorly designed parts constructed from weak plastic, the ordinary opening or closing of the laptop results in friction between the brass and weak plastic. This, in turn, through ordinary use as intended, wears and cracks the plastic anchors — thus fracturing and destabilizing the hinges. During ordinary use of the machine, the Hinge Defect

causes part or all of the hinge anchors to crack, snap, separate, break or otherwise fail.

86.    Once the brass becomes unsecured from the plastic rings, they will not re-seat.

Image from YouTube Repair Video[19]



87.    Once the Hinge Defect manifests, use of the computer is, at best, difficult, and often impossible because the user cannot transport, open or close, or adjust their laptop. Since the Hinge Defect impairs the user's ability to view the visual interface to the machine and impairs or prevents the portability of the laptop, it renders the device partially or wholly unusable.

---

[19]    Laptop Hinge Repair - HP Envy - YouTube; *available at* https://www.youtube.com/watch?v=cyaZ-7rUFmQ. Last visited on November 2, 2021.

88.     According to Plaintiffs and other owners of Class Laptops who have experienced the Hinge Defect, the hinge problems are triggered and exacerbated when the laptop monitor is opened, closed, or adjusted, as intended — such as when the user folds the monitor down towards the keyboard or, in the case of the 360-degree Convertible models, the monitor is folded into tent or tablet mode.

89.     The Hinge Defect is often initially identified by crunching sounds when the devices are opened as well as plastic debris falling from the Class Laptops. Soon thereafter, the hinge becomes increasingly inoperable.

90.     Consequently, the Class Laptops are not fit for their intended purpose and cannot perform in accordance with HP's marketing materials and warranties.

91.     The Hinge Defect has impacted many other purchasers of the Class Laptops. For example, on April 18, 2020, a forum member created a thread entitled "Broken hinge attachment" and wrote:

> I bought the 17-BY1008CA less than a year ago…The way the laptop has been designed the entire weight of the monitor is resting on two hinges that are attached to cheap plastic. It is basically designed so that if the laptop is open the weight slowly pulls the screws out of where they are attached and pushes up through the housing causing everything to break…My laptop sits on my desk or on my lap in my home. It is lifted by the bottom using two hands…I have to use clamps to hold it together as it has already snapped the housing. I spent $700 on this laptop it should not break by itself.[20]

---

[20] *See* TheLastPrincess, Comment to *Broken hinge attachment.*, HP COMMUNITY (Apr. 18, 2020, 9:09 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge-attachment/m-p/7560795

92.    In the same thread, another customer replies: "My issue is similar…Two days ago (8 months after receiving my laptop back from repairs) the hinge broke a second time. The first hinge incident occurred just over a year after purchase. I have never dropped it or handled it roughly. I used it to read an article for school the other evening, then closed it. The next morning it cracked as I attempted to open it."[21]

93.    In another thread on the HP Forum created on February 15, 2021, entitled "Broken hinge," a customer wrote:

> I purchased a $1100 envy360 in 2018. The laptop is not two years old so it's a year out of warranty. I was using it last night and the left side hinge broke from the inside out. I called hp and they said because it's out of warranty I would have to pay $500 to have it fixed which would take over a month. I am a college student I don't have $500 or a month to get my laptop fixed…I have…NEVER dropped it. I'm so disappointed that HP won't stand behind their products and do the right thing and fix it for free. The laptop should last longer than two years before it starts to fall apart.[22]

94.    In the same thread, another customer responded, that they were "having the same problem."[23]

_____

[21] *See* Royal_Code, Comment to *Broken hinge attachment.*, HP COMMUNITY (Apr. 29, 2020, 2:21 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge-attachment/m-p/7560795

[22] *See* Kristen131, Comment to *Broken hinge*, HP COMMUNITY (Feb. 15, 2021, 12:26 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7977304

[23] *See* Milhome, Comment to *Broken hinge*, HP COMMUNITY (Feb. 16, 2021, 5:36 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7977304

95.     In another thread posted on January 21, 2021 titled "Broken left hinge and corner", a customer wrote about their Pavilion HP Notebook:

> "I have an HP laptop that is cracked on the upper left corner. The hinge has also broken and I have to leave the lid open. I have not dropped the laptop and it seems that other people have posted this same issue."[24]

96.     Another customer responded to this post, writing

> "I have the exact same issue but the response HP gives is that it is out of warranty and they will repair for $300!! That is unacceptable!! This is clearly a design/manufacturing flaw HP is aware of and won't stand by their product? This is a terrible way to handle your business and customers."[25]

97.     On the HP Forum there are thousands of distinct complaints detailing computers affected by the Hinge Defect. Below are a few such examples of such threads pertaining to the Class Laptops, each one created by a different consumer and containing a multitude of testimonials regarding the issues created by the Hinge Defect:

a.  17-Bs019cy (2PB35UA) Broken hinge (created November 29, 2020).[26]

---

[24] *See* Andrew141**,** Comment to *Broken left hinge and corner*, HP COMMUNITY (Jan. 21, 2021, 3:02 PM), https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Broken-left-hinge-and-corner/m-p/7945435

[25] *See* JackP5, Comment to *Broken left hinge and corner*, HP COMMUNITY (Apr. 7, 2021, 6:18 PM), https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Broken-left-hinge-and-corner/m-p/7945435

[26] *See* Awilliams9103, Comment to *Broken hinge*, HP COMMUNITY (Nov. 29, 2020, 8:05 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7874642

b. HP 17" Laptop – By0053cl HP Laptop Hinge completely broken and laptop will not close – Unacceptable! (created July 1, 2021).[27]

c. HP 17-By1003na Full-HD Laptop Product 7GR46EA#ABU HINGE ON RIGHT SIDE OF LAPTOP BROKEN (created September 30, 2020).[28]

d. HP Laptop 17-By001st Horrible HP Experience – HP wants me to pay $190 to fix their faulty product (created August 22, 2020).[29]

e. Pavilion Laptop 15 Broken hinge (created August 3, 2020).[30]

f. HP 15-D035dx Notebook PC HP Notebook broken hinge – is it fixable? (created March 1, 2019).[31] The user provided the below images of the Hinge Defect.

---

[27] *See* Jim491, Comment to *HP Laptop Hinge completely broken and laptop will not close - Unacceptable!*, HP COMMUNITY (July 1, 2021, 10:18 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Laptop-Hinge-completely-broken-and-laptop-will-not-close/m-p/8101580

[28] *See* LEWIS_STRUTHERS, Comment to *HINGE ON RIGHT SIDE OF LAPTOP BROKEN*, HP COMMUNITY (September 30, 2020, 2:06 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HINGE-ON-RIGHT-SIDE-OF-LAPTOP-BROKEN/m-p/7799660

[29] *See* Ish197, Comment to *Solved! Horrible HP Experience - HP wants me to pay $190 to fix their faulty product*, HP COMMUNITY (August 22, 2020, 11:11 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Horrible-HP-Experience-HP-wants-me-to-pay-190-to-fix-their/m-p/7743128

[30] *See* Van47, Comment to *Solved! Broken hinge*, HP COMMUNITY (July 3, 2020, 10:35 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge/m-p/7670952

[31] *See* Cassb, Comment to *Solved! HP Notebook broken hinge - is it fixable?*, HP COMMUNITY (March 1, 2019, 7:02 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Notebook-broken-hinge-is-it-fixable/m-p/7036976







g.   HP Notebook – 17-By1062st Broken hinge on my laptop (created March 12, 2021).[32]

h.   HP Gaming Pavilion – 15-Cx0140tx HP Gaming Pavilion – 15-cx0140tx = Hinges broken with Pieces coming out broken! (created June 30, 2021).[33]

i.   Pavilion 15-Cs0053cl Left hinge broken (created July 9, 2020).[34]

j.   HP ENVY X360 Left Hinge on HP ENVY x360 Broken (created July 12, 2021).[35]

k.   HP Notebook Broken left rear hinge (created June 4, 2021).[36]

l.   Notebook 15-Bs121nr broken hinge (created December 18, 2019).[37]

---

[32] *See* Ebfoerster, Comment to *Solved! Broken hinge on my laptop*, HP COMMUNITY (March 12, 2021, 2:50 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinge-on-my-laptop/m-p/8006416

[33] *See* Jaisan, Comment to *Solved! HP Gaming Pavilion - 15-cx0140tx = Hinges broken with Pieces coming out broken*, HP COMMUNITY (June 30, 2021, 12:59 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Gaming-Pavilion-15-cx0140tx-Hinges-broken-with-Pieces/m-p/8100345

[34] *See* kmkeenan, Comment to *Solved! Left hinge broken*, HP COMMUNITY (July 9, 2020, 4:27 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Left-hinge-broken/m-p/7680094

[35] *See* RNAGY111, Comment to *Solved! Left Hinge on HP ENVY x360 Broken*, HP COMMUNITY (July 12, 2021, 6:57 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Left-Hinge-on-HP-ENVY-x360-Broken/m-p/8110870

[36] *See* NYMetsNo1, Comment to *Broken left rear hinge*, HP COMMUNITY (June 4, 2021, 4:47 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-left-rear-hinge/m-p/8080837

[37] *See* Dismayed-Too, Comment to *Solved! Broken hinge l*, HP COMMUNITY (Dec. 18, 2019, 8:32 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/broken-hinge-l/m-p/7345099

m.  HP Notebook – 15-Bs113dx Broken hinges (created January 15, 2021).[38]

n.  HP Laptop 17z Broken hinges (created December 6, 2020).[39]

o.  Pavilion 15-Cs3019nl HP Pavilion – 15-cs3019nl – Screen Hinges Broken – Display Bezel Broken (created January 27, 2021).[40]

p.  Pavilion Gaming Laptop 15-Cx0xxx HP Pavilion Gaming Laptop 15 hinge broken just a year and a half after purchase (created April 25, 2020).[41]

q.  HP Notebook – 17-Bs001no Hp left hinge broken (created April 10, 2019).[42]

---

[38] *See* Joanne09, Comment to *Broken hinges*, HP COMMUNITY (Jan. 15, 2021, 7:04 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinges/m-p/7937049

[39] *See* AKIcehouse, Comment to *Broken hinges*, HP COMMUNITY (Dec. 6, 2020, 4:41 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Broken-hinges/m-p/7883787

[40] *See* Gianmarco18, Comment to *Solved! HP Pavilion - 15-cs3019nl - Screen Hinges Broken - Display Bezel Broken*, HP COMMUNITY (Jan. 27, 2021, 10:49 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Pavilion-15-cs3019nl-Screen-Hinges-Broken-Display-Bezel/m-p/7952645

[41] *See* James311, Comment to *Solved! HP Pavilion Gaming Laptop 15 hinge broken just a year and a half after purchase*, HP COMMUNITY (March 25, 2020, 8:50 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Pavilion-Gaming-Laptop-15-hinge-broken-just-a-year-and-a/m-p/7574227

[42] *See* Elvijs, Comment on *Solved! Hp left hinge broken*, HP COMMUNITY (March 10, 2019, 9:13 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Hp-left-hinge-broken/m-p/7085264

r.  Pavilion Gaming Laptop 15-Cx0020nr Broken hinge mount on Pavilion gaming laptop (created May 20, 2020).[43]

s.  Hp-Bs023ca Hinge broken (created April 14, 2021).[44]

t.  Broken left hinge on my HP 17-bs0xx (created July 7, 2021).[45]

u.  HP Envy x360 Screen Popped Out/Broken Hinge (created April 4, 2020).[46] The post provided the below images of the Hinge Defect.

---

[43] *See* Voo-Du_3, Comment on *Solved! Broken hinge mount on Pavilion gaming laptop*, HP COMMUNITY (May 20, 2020, 2:51 PM), https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Broken-hinge-mount-on-Pavilion-gaming-laptop/m-p/7615274

[44] *See* T1T2T3, Comment on *Hinge broken*, HP COMMUNITY (April 14, 2021, 12:59 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Hinge-broken/m-p/8037757

[45] *See* Gina3793476, Comment to *broken left hinge on my HP 17-bs0xx*, HP COMMUNITY (July 7, 2021, 10:31 AM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/broken-left-hinge-on-my-HP-17-bs0xx/m-p/8106517

[46] Alasia-M, Comment to *HP Envy x360 Screen Popped Out/Broken Hinge,* HP COMMUNITY (April 4, 2020, 8:32 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Envy-x360-Screen-Popped-Out-Broken-Hinge/td-p/7536339



**Alasia-M**

New member

💬 2   ✅ 0   👍 0

Message 1 of 6

👁 1,168

Flag Post

## HP Envy x360 Screen Popped Out/Broken Hinge 🖼

Posted on 04-04-2020 08:32 PM

Product: HP Envy X360 Convertible PC

Operating System: Microsoft Windows 10 (64-Bit)

I have had this computer for a while -- a year I believe. No drops. Always used and transported with care. Used it today in tablet mode (something I rarely ever do), and the right side of the screen (where the time and date are) popped out of the screen. I see that this is a very common issue and want to know the next steps I should take. I'm afraid to close my



computer out of fear of making it worse.







98.     Purchasers of the Class Laptops have also posted similar accounts on many other internet forums.[47] For example, the below reddit post concerning an Envy 360 illustrates the damage caused by the Hinge Defect.[48]



[47] *See, e.g.*, truecrtiq, Comment on , *HP Envy x360 Laptop right hinges so fragile-it BROKE in 3 months.*, R/AMDLAPTOPS (Jan. 14, 2021, 6:22 AM), https://www.reddit.com/r/AMDLaptops/comments/kx3tw7/hp_envy_x360_laptop_right_hinges_so_fragileit/

[48] *HP Envy x360 Hinge Issue. Closed my laptop the other day and a screw popped out and now the hinge is broken. I can see that the other 3 screws are in place on the bracket, but have also become unglued from the case. How should I fix this? Was quoted $200 from*

99.    The Hinge Defect manifests both inside and outside of the warranty period. As shown above, Defendant is unable to adequately fix the Hinge Defect during the warranty period and routinely refuses to repair the Hinge Defect free of charge outside of the warranty period.

### 3.    HP's Exclusive and Early Knowledge of the Hinge Defect

100.    HP forum activity makes clear that Defendant has been on notice of the Hinge Defect in the Class Laptops since at least 2014 through complaints made to the HP Forum.

101.    The forum page "17" HP Envy Coming apart at the left near screen hinge" (first posted October 27, 2014)[49], and the nearly 200 customer posts on it, demonstrates that the Hinge Defect was both pervasive and reported to Defendant back in 2014:

_____

*HP.*    R/HEWLETT_PACKARD    (Mar.    23,    2019,    4:59    PM), https://www.reddit.com/r/Hewlett_Packard/comments/b4o6g9/hp_envy_x360_hinge_issu e_closed_my_laptop_the/

[49] Jude_Love, Comment to *17" HP Envy Coming apart at the left near screen hinge*  HP COMMUNITY (Oct. 27, 2014, 4:44 AM), 17" HP Envy Coming apart at the left near screen hinge - HP Support Community - 4651990



Jude_Love

Level 3

💬 12   ✅ 0   👍 17

Message 1 of 188

👁 22,661

Flag Post

## 17" HP Envy Coming apart at the left near screen hinge 🖼

Posted on 10-27-2014 04:44 AM - last edited on 10-27-2014 10:42 AM by   Mod   Kevin-T



Hello HP,

I am deeply concerned – I bought a 17" HP envy but less than a year since
, the laptop is coming apart at the bottom near the Hinge for the screen to the left. I am afraid to open it because it makes a "pop" sound every time I open the screen.

God knows I have been extra careful with this laptop. Yopu will not find a scratch on it from bangs or things like that but am deeply scared of this 1200$ piece falling apart not even a year into my using it.

37



**Jude_Love**
Author
Level 3

💬 12  ✅ 0  👍 17

Message 8 of 188

Flag Post

Posted on 07-25-2015 12:37 AM

The disintegrating hinge threw lots of debris insiee mine. The fun was always crunching and throwing out plastic parts. Every time i opened or closed it, i would hear plastic parts snapping. Subsequently half of my keyboard died. Much as i loved it, i had to settle for a Mac with much lower specs.

 1

---

**Naggs20**
Level 2

Posted on 07-27-2015 05:14 PM

Same thing is happening to me.   The corner of the left hing pulls apart every time I open my 17" HP Envy.  For $1200 I would expect this computer to last longer than a year.

---

**Dmorga**
New member

💬 3  ✅ 0  👍 0

Message 25 of 188

Posted on 09-23-2015 07:33 PM                                                ●●●

Same issue.  I called support and they said my warranty expired and then moved right into trying to sell me on a repair package.  After reading all this, I don't think I want a repair, as this looks like an engineering failure.  If they fix it, how long will it last?  Paying for a repair seems like good money after bad.  Too bad too, we have two HP laptops and an all in one desktop.  I hate to turn on them, but I don't think I can ever buy another one after this.

---

**DH754**
Level 2

💬 9  ✅ 0  👍 8

Message 29 of 188

Flag Post

Posted on 12-14-2015 03:11 PM

Yeah, it's quite sad that the hinge is connected with cheap plastic, if the hinge AND the spot where it's connected was made of metal, this wouldn't be a problem.
This is on you HP!

 1

---

**Asampson87**
New member

💬 0  ✅ 0  👍 1

Message 59 of 188

Flag Post

Posted on 06-15-2016 05:21 PM

I'm having the exact same problem. First I noticed a screw missing. Then started hearing something jingling around, which it turns out was the part the screw screwed into. Then the hinge started popping every time I open the laptop. It's gotten to the point where it is now happening on both sides, but primarily the left. Normally it can be popped back together, but sometimes it doesn't work. Looking through the forums this seems to happen to hundreds if not thousands of these models.





104. Customer complaints continued on other HP forum pages, as demonstrated in the below images from a forum entitled "Hinges" (first posted February 16, 2016):[50]

---

[50] CarlaMaria, Comment to *Solved: Hinges,* HP COMMUNITY (Feb. 16, 2016, 10:38 PM), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Hinges/td-p/5502838



**CarlaMaria**

Level 2



Message 1 of 27

👁 2,233

Flag Post

✅ Solved!   **Hinges**

Posted on 02-16-2016 10:38 PM

**Product:** HP Envy Touchsmart 15

**Operating System:** Microsoft Windows 10 (64-Bit)

I've had my HP Envy for two years. I am the sole user of this laptop. The left hinge broke after a few short months. It was stationary -- on a desk and never transported, therefore never dropped and obviously defective. I was told that hinge replacement is not covered under warranty, so I made the decision to tolerate it since I didn't want to be without it for an indefinite period of time and also felt the estimated $250 in repair was unreasonable.

A few weeks later, the right hinge broke causing a significant separation in the case. This past weekend, the keyboard began to fail. Some of the letters do not register and have to be copied and pasted (you can appreciate how long it is taking me to write this!). I took it into a repair shop today hoping to have a replacement keyboard installed and was told they would not be able to help me because they felt they would not be able to put it back together as a result of the damage caused from the failing hinges. They felt the best option, all things considered, would be to purchase a wireless keyboard and resign myself to the idea that what I have here is a desktop.

HP... take responsibility for these failing hinges without your normal fee. You created a DEFECTIVE product with a substandard design, rendering an otherwise fantastic laptop useless. This is a widespread problem that should not have to be accepted from customers who are investing over $1000 in this product.



**D3ADM4N**

Level 2



Message 7 of 27

Flag Post

Posted on 07-24-2016 05:49 PM

My left hinge on my HP Envy 17" broke today when I opened it.

I have taken very very good care of this machine since I paid around $1000+ for it.

This is crap. The plastic that holds the brass inserts for the hinge screws fell all to pieces. If they won't recall them or do something to fix it I'm done. I have been buying HP's for years.

It's sickening to say the least.

I7, GeForce, maxed memory all in a piece of **** case. I am highly highly disappointed right now.



105. Defendant's failure to improve its material and/or workmanship is evident in the below continued complaints on the HP forum page "Replacement Hinges Question" (first posted January 24, 2018)[51]:



---

[51] Ben93, Comment to *Solved: Replacement Hinges Question,* HP COMMUNITY (Jan. 24, 2018, 6:55 AM),https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Replacement-Hinges-Question/m-p/6531071



106.   As the years progressed, the number of complaints on HP forum sites climbed drastically, as discussed in the excerpts below from "HP Envy Hinge Issues - Has HP acknowledged this is a known issue yet? (5+ years and counting)" (first posted July 16, 2018)[52]:

---

[52] ThatGeekGirlAU, Comment to HP Envy Hinge Issues - Has HP acknowledged this is a known issue yet? (5+ years and counting), HP COMMUNITY (July 16, 2018, 11:53 PM),https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-Envy-Hinge-Issues-Has-HP-acknowledged-this-is-a-known/td-p/6759803



ThatGeekGirlAU

Level 2

💬 15   ✅ 0   👍 8

Message 1 of 13

👁 10,396

Flag Post

### HP Envy Hinge Issues – Has HP acknowledged this is a known issue yet? (5+ years and counting) 🖼

Posted on 07-16-2018 11:53 PM

**Product:** HP ENVY 15 TS

**Operating System:** Linux

Judging by the forums (with over 2000 separate instances of HP Envy Hinge issues) has HP formally acknowledged that this is a clear and definite design flaw/defect/manufacturing issue in the Envy series?

My own notebook has succumbed to joining the ranks of being an "affected unit" despite normal usage, never dropping it, low-transport (and in the rare case it ever did get moved only in an expensive protective laptop-specific leather bag).

The hinges have finally after a few years of normal usage at a desk (well supported) given way, causing the screen to drop, it's unable to stay up on its own, the top and base casing has come apart, the reinforcements can be seen through the cracks in the unit casing, the charger point now does not stay in (as the force from the gap being too wide pushes it out), the battery thus does not charge anymore or retain charge (i.e. removing the power cord makes the unit shut down, despite that the battery states it's at 100% charge – it clearly isn't actually charging), the ethernet point is pulled apart and not usable, and both sides of the unit now are gradually becoming more and more compromised.

Has anyone ever actually received an appropriate outcome? A fix that is permanent and will not put the unit through a cycle of repeating the same hinge failures? Or has anyone successfully had HP take responsibility for this clearly demonstrated flaw, and provided a replacement/offer of an equivalent unit that does not feature these defects?





**ThatGeekGirlAU**

Author
Level 2

💬 15   ✅ 0   👍 8

Message 9 of 13
Flag Post

Posted on 07-27-2018 07:56 PM - last edited on 07-27-2018 08:01 PM by  Mod  Rick-S

Unacceptable HP!

I finally received a response from Shravan at "HP Premium Support" and I am <u>extremely angered and upset</u> by the response.

"This mail is in regards to case:[removed per Rules Of Participation]  which you had reported issue with Hinges and Display on **HP ENVY TS 15-j007AX NB PC ALL**

We have reviewed the case and the images which was shared by you. And also we had elevated this case to L2 team and its confirmed that the issue is due to User Induced Damage

Hence service will be on chargeable basis, please revert to this mail if you wish to proceed with the service on chargeable basis"


<u>This issue was NOT caused by "user induced damage".</u>

This is caused by, like over 4000 people between 2013 and 2018, the design flaw/manufacturing defect of hinging, housing and construction of this article is prone to and/or results in such damage. The weight of the screen is not able to be retained without strain on the hinging until such a time they "give out".

[removed per Rules Of Participation]

44



107.   HP claims that "When the products are serviced, it's a goldmine of information for us. We harvest that information to help us understand how to test it better and what's driving reliability."[53]

108.   Despite Defendant's awareness of the Hinge Defect and the wealth of information provided by a plethora of disgruntled customers, HP has failed to reveal, repair, prevent or adequately respond to the Hinge Defect.

---

[53]   HP Total Test Process Testing - HP Inc Video Gallery - Products (brightcovegallery.com), http://hp.brightcovegallery.com/products/detail/video/4567149706001/hp-total-test-process-testing?autoStart=true&page=0&q=Military

109.   Defendant knew that functionality, mobility, maneuverability and portability were, and continue to be, material factors for consumers purchasing a Class Laptop.

110.   HP concealed from and/or failed to disclose to the public at large—including the Plaintiffs and the Class—the defective nature of the Class Laptops and failed to remove the Class Laptops from the marketplace or take adequate action to remedy the Hinge Defect. Rather, HP sold and serviced the Class Laptops even though it knew, or was reckless in not knowing, that the Hinge Defect impacted the portability, mobility, and functionality of the Class Laptops and would ultimately result in Plaintiffs' and Class members' inability to use their Class Laptops for their intended purpose.

111.   Moreover, Defendant's omissions are accompanied by affirmative misrepresentations as to the Class Laptops' durability and portability. Defendant marketed, promoted, and sold the Class Laptops as "precision-crafted, high-performance notebooks".[54]

112.   For example, the 360-degree Convertible PC was marketed as a 2-in-1 laptop with a touchscreen monitor that could be folded flat against the underside of the base of the machine.

---

[54]   HP Timeline | HP® Official Site, *available at* https://www.hp.com/us-en/hp-information/about-hp/history/hp-timeline/timeline.html

113. Specifically, HP stated that the 360-degree models offered "an affordable touch convertible PC that transforms the computing experience with a 360-degree hinge."[55]

114. Defendant described its HP Laptops as "reliable" and "designed for long-lasting performance", with a "compact, portable design".[56]

115. Defendant repeatedly emphasized the mobility of the Class Laptops with the following representations: "easy to take anywhere"[57]; "built to keep you productive and entertained from anywhere"[58]; "[a] compact laptop that makes it easy to get work done on the go with a Precision Touchpad, while the long battery life and HP Fast Charge let you keep moving";[59] "[t]he Pavilion 15 Laptop packs more performance into a smaller profile, so you can get more done wherever you go…. so you can do more and enjoy entertainment wherever you go"[60]; "[c]reate on-the-go, anytime, anywhere and whenever inspirations strikes."[61]

---

[55] *See* Timeline of our history, https://www.hp.com/us-en/hp-information/about-hp/history/hp-timeline/timeline.html

[56] See Work, Watch and Play All Day, June 4, 2018, https://www.youtube.com/watch?v=KdB4v9ssdIY

[57] HP Laptop 17-ca3097nr (2C5B7UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-laptop-pc-17-ca3000-%281c0g7av%29

[58] HP Laptop -15t-dw300 (1B9N3AV_1), https://www.hp.com/us-en/shop/pdp/hp-laptop-15t-dw300-touch-optional-1b9n3av-1

[59] HP Pavilion Laptop 15-eh1097nr (3F1F9UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-pavilion-laptop-15-eh1097nr

[60] HP Pavilion Laptop 15-eh1097nr (3F1F9UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-pavilion-laptop-15-eh1097nr

[61] HP® ENVY 17 Laptops, https://www.hp.com/us-en/shop/mdp/laptops/envy-17-344517--1#!&tab=features

116.   Defendant further provides assurances to customers regarding the HP Laptops' durability and HP's pre-sale diligence by stating that "extensive quality testing ensures that you can keep going...and going."[62]

117.   Defendant also promoted its quality assurance and the durability of its products by inviting technology reporters to its testing facility.[63] The tour demonstrated a variety of testing devices designed to ensure durability and longevity, including: a pulley system designed to slam laptops into a hard surface; a platform that vibrated the laptops rapidly; equipment used to send electric shocks into the laptops; and a freezer for temperature testing.[64]

118.   Most importantly, HP also represented to the attendees that the durability of the laptop hinges was tested by opening and closing the laptops "typically from minimum angle to maximum angle" 27,000 times.[65]That represents a use cycle of over seven (7) years.

---

[62] HP Laptop - 17-ca2097nr (2Y438UA#ABA), https://www.hp.com/us-en/shop/pdp/hp-laptop-17-ca2097nr
[63]     Inside     HP     Labs     of     Destruction!     (archive.org), https://web.archive.org/web/20150918232024/https://www.chipchick.com/2014-07-inside-hp-labs-destruction.php
[64] *Id*.
[65] *Id*.

Photograph of Defendant's Hinge-Testing Operations in 2014.[66]



Photograph of Defendant's Hinge-Testing Operations in 2011.[67]



---

[66] *Id.*

[67] HP Durability Tests - YouTube, https://www.youtube.com/watch?v=bM7yw-y3BB0

119.    Defendant's assurances regarding the durability of its products continues to this day. HP's website includes a video entitled "HP Total Test Process".[68] This video describes Defendant's product testing procedures and presents HP products as having gone through an "exhaustive set of tests that are designed to replicate the full product life cycle in a short period of time".[69]

120.    HP claims that their product testing consists of "115,000 hours of testing on each model."[70]

121.    Once again, HP portrays its hinges as tested to survive long-term usage. "Take a notebook for example. One of the things that everybody has to do is open and close it. If you're expected to open and close that notebook 10,000 times, we'll test it to 50,000."[71] Again, based upon HP's own representations, that equates fourteen (14) years of use.  A far cry from the life span Plaintiffs and the Class members actually experienced with the Class Laptops.

---

[68]   HP Total Test Process Testing - HP Inc Video Gallery - Products (brightcovegallery.com), http://hp.brightcovegallery.com/products/detail/video/4567149706001/hp-total-test-process-testing?autoStart=true&page=0&q=Military
[69] *Id.*
[70] *Id.*
[71] *Id.*

Image of Screens Being Opened and Closed as Part of Hinge Testing on HP's Website.[72]



Image of Screens Being Opened and Closed as Part of Hinge Testing on HP's Website.[73]

---

[72] *Id.*

[73] *Id.*



Image of Laptops Being Dropped as Part of Quality Testing on HP's Website[74]



---

[74] *Id.*

122.   HP further assures customers that "after all that's done, we do low-level evaluations. We take a look at each of the subsystems at a component level to make sure that there is nothing that could causes issues in the future."[75]

123.   HP also warrants to consumers that "you can be confident if you buy HP's product it's going to work with what you've already got and what you're going to buy."[76]

124.   Defendant marketed, promoted, and warranted that the Class Laptops were premium computers, able to perform the tasks of opening and closing, withstand transportation, and furthermore able to perform all of the basic functions of similar laptops of their class.

125.   Plaintiffs and Class members purchased their Class Laptops to be used for mobile computing purposes like those portrayed by Defendant in its marketing materials for all of the Class Laptops.

126.   Because the defective materials are fully enclosed within the Class Laptops and the Hinge Defect is only revealed by laptop use, testing, or disassembly, reasonable consumers could not discover the Hinge Defect prior to purchase.

127.   In addition to its knowledge of the Hinge Defect in the Class Laptops through pre-sale testing, consumer complaints, warranty inquiries, and other sources

---

[75] *Id.*
[76] *Id.*

as outlined herein, HP also knew or should have known of the Hinge Defect through its detailed knowledge of hinge designs as set out in its Dec. 2012 patent application for a hinge assembly "comprising: a first knuckle including a wall that defines a cavity; a friction element disposed in the cavity, wherein the friction element includes a plurality of fingers extending substantially parallel to a longitudinal axis of the friction element and the fingers of the friction element expanding toward the wall to frictionally engage the wall of the first knuckle; a second knuckle coupled to the friction element so that the first knuckle is movable with respect to the second knuckle; and a counterbalance member coupled to the first knuckle and the second knuckle to provide a force that both opposes movement of the first knuckle with respect to the second knuckle in a first direction and facilitates movement of the first knuckle with respect to the second knuckle in a second direction." *See* United States Patent Application Publication Pub. No.: WO2014/098792, dated December 17, 2012. Images from this application are included here:





55





56

128.   This patent application demonstrates that HP knew of the crucial importance of a durable hinge design, the mechanisms necessary to provide friction for the opening and closing of a laptop lid, as well as the interaction of internal components that facilitated the use of a laptop in this way. Moreover, as illustrated in its patent application, HP understood that it could apply its hinge design to suit a variety of form-factors: "These examples are not intended to be exhaustive or to limit the invention to the precise form or to the exemplary embodiments disclosed." *Id*. Rather, HP's hinge designs were intended to meet customers' expectation of "form-factors that are designed to help reduce size so that they may be more easily used, transported and/or stored." *Id*. Nonetheless, despite this knowledge, HP released the Class Laptops without the necessary structural integrity and otherwise failed to disclose the Hinge Defect to Plaintiffs and Class members.

129.   It is likely that many of the Class Laptops will continue to be used or purchased by unsuspecting members of the putative class, and injunctive relief could prevent harm to those who remain unaware of the Hinge Defect which can render the Class Laptops useless. Further, potential Class-wide notice may inform Class members of potential remedies that they may not be aware of.

130.   As the Hinge Defect likely results from the defects in material and/or workmanship the Class Laptops—*i.e.*, the use of flimsy plastic material to mount the

laptop hinges—replacing the broken hinges with identical ones is unlikely to fully remedy the Hinge Defect.

### 4.    Plaintiffs' Defective HP Laptops

### Plaintiff Cheryl Meola

131.   Plaintiff Cheryl Meola is a citizen of Arkansas and resides in Little Rock, Arkansas.

132.   Plaintiff Meola purchased an HP Envy from Best Buy for her personal use on October 28, 2017, for $1149.99. Her device's serial number is 5cg73768cl.

133.   Prior to purchasing her Class Laptop, Plaintiff Cheryl Meola researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

134.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Cheryl Meola.

135.   Immediately after receiving her Class Laptop, Plaintiff Cheryl Meola reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Cheryl Meola.

136.   Plaintiff Cheryl Meola had been using her laptop for approximately 18 months when the Hinge Defect manifested around April 2019. The left hinge completely separated from the base of the laptop, causing the right side of the keyboard to pop almost an inch out of place, where it remains at an incline from the

other side. The Class Laptop cannot be closed or transported from its position. Plaintiff Meola received a verbal quote for repair of $300 which she opted not to pursue. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which rendered the device substantially unusable, and which has eliminated the Class Laptop's portability, can be seen in the photograph below.





137. Plaintiff Cheryl Meola used and maintained her Class Laptop in a manner typical of a reasonable consumer.

138. Plaintiff Cheryl Meola was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

139. If Plaintiff Cheryl Meola had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

140.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

141.   Plaintiff Cheryl Meola remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Phyllis Carson**

142.   Plaintiff Phyllis Carson is a citizen of Alabama and resides in Helena, Alabama.

143.   Plaintiff Phyllis Carson purchased an HP 17 for her personal use on October 7, 2019, for $439.00, from Exchange. Her device's serial number is: 5CG939003N.

144. Prior to purchasing her Class Laptop, Plaintiff Phyllis Carson researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

145.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Phyllis Carson.

146.   Immediately after receiving her Class Laptop, Plaintiff Phyllis Carson reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Phyllis Carson.

147.   Plaintiff Phyllis Carson had been using her laptop for approximately 18 months when the Hinge Defect manifested and the hinge on the right side of the Class Laptop failed. As a result, the cover has separated from the base of the laptop and the device cannot be closed or transported. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable, which has eliminated the Class Laptop's portability functionality, can be seen in the photograph below.



148.   Plaintiff Phyllis Carson used and maintained her Class Laptop in a manner typical of a reasonable consumer.

149.   Plaintiff Phyllis Carson was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

150.   If Plaintiff Phyllis Carson had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

151.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking

remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

152.   Plaintiff Phyllis Carson remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Carole Schauer**

153.   Plaintiff Carole Schauer is a citizen of California and resides in Apple Valley, California.

154.   Plaintiff Carole Schauer purchased an HP Envy x360 for her personal use on June 23, 2017, for $894.33, from Best Buy. Her device's serial number is: 8CG727OYHD.

155.   Plaintiff Carole Schauer also purchased an HP Envy 17 for her personal use on June 23, 2017, for $1,185.24, from Best Buy.

156.   Prior to purchasing her Class Laptops, Plaintiff Carole Schauer researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

157.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Carole Schauer.

158.   Immediately after receiving her Class Laptops, Plaintiff Carole Schauer reviewed the Class Laptop boxes and the documents included inside the boxes. Neither of these sources disclosed the Hinge Defect to Plaintiff Carole Schauer.

159.   Shortly after purchase, Plaintiff Carole Schauer's HP Envy x360 laptop presented cause for concern. When opening and closing the device, Plaintiff encountered substantial stiffness in the hinge and often heard a clicking sound when closing the device. Approximately one year after purchase, just days after the one-year warranty expired, a small button-like screw/rivet snapped off and the screen separated from the lid. The laptop is no longer usable in any capacity; Plaintiff tried to move the laptop after the screen separated from the lid, but any movement seemed to cause further damage, so the laptop now lays flat in a box. The manifestation of the Hinge Defect in Plaintiff's Class Laptop can be seen in the photograph below.



155.   Plaintiff Carole Schauer's HP Envy 17 laptop also manifested indicators of the defective hinge, shortly after purchase, including substantial stiffness when the device opens and closes.

156.   Plaintiff Carole Schauer used and maintained her Class Laptops in a manner typical of a reasonable consumer.

157.   Plaintiff Carole Schauer was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

158.   If Plaintiff Carole Schauer had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptops, or would have paid substantially less for them.

159.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

160.   Plaintiff Carole Schauer remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Lorne Cosman**

161.   Plaintiff Lorne Cosman is a citizen of California and resides in Sherman Oaks, California.

162.    Plaintiff Lorne Cosman purchased an HP Envy for his personal use on June 1, 2018, for $1,244.87, from Best Buy. His device's serial number is: 5CG8114NMK.

163.    Prior to purchasing his Class Laptop, Plaintiff Lorne Cosman researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

164.    At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Lorne Cosman.

165.    Immediately after receiving his Class Laptop, Plaintiff Lorne Cosman reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Lorne Cosman.

166.    Plaintiff Lorne Cosman had been using his laptop for approximately 18 months when the Hinge Defect manifested, and the right hinge functionality deteriorated.  Although repair of the hinge was attempted with epoxy, the hinge still does not work properly. Plaintiff Lorne Cosman must leave the laptop open at all times and moves it as little as possible out of fear of further damage.  As a result of the Hinge Defect, the laptop has been rendered substantially unusable and has lost the Class Laptop's essential portability functionality.

167.    Plaintiff Lorne Cosman used and maintained his Class Laptop in a manner typical of a reasonable consumer.

168.   Plaintiff Lorne Cosman was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

169.   If Plaintiff Lorne Cosman had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

170.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

171.   Plaintiff Lorne Cosman remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Patricia Roberts**

172.   Plaintiff Patricia Roberts is a citizen of Florida and resides in Cocoa Beach, Florida.

69

173.   Plaintiff Patricia Roberts purchased an HP 15 for her personal use on August 30, 2018, for $373.43, from Walmart. Her device's serial number is: CND81557QW.

174.   Prior to purchasing her Class Laptop, Plaintiff Patricia Roberts researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

175.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Patricia Roberts.

176.   Immediately after receiving her Class Laptop, Plaintiff Patricia Roberts reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Patricia Roberts.

177.   Plaintiff Patricia Roberts had been using her laptop for approximately 2 years when the Hinge Defect manifested around June 2020. She attempted to close the laptop after using it but felt resistance from the hinges. The hinges separated as a result of the Hinge Defect which caused the frame to distort. Plaintiff Patricia Roberts tried to push the laptop's frame back into place, but the hinges felt stiff and she feared further damaging them. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which rendered the device substantially unusable, can be seen in the photograph below.



178.   Because the manifestation of the Hinge Defect prevented her from being able to close her Class Laptop, Plaintiff Patricia Roberts had to purchase a second laptop for traveling purposes

179.   Plaintiff Patricia Roberts used and maintained her Class Laptop in a manner typical of a reasonable consumer.

180.   Plaintiff Patricia Roberts was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

181.   If Plaintiff Patricia Roberts had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

182.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

183.   Plaintiff Patricia Roberts remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Terence Graner**

184.   Plaintiff Terence Graner is a citizen of California and resides in Spring Valley, California.

185.   Plaintiff Terence Graner purchased an HP 17 for his personal use on January 27, 2018, for $645.42, from Sam's Club. His device's serial number is: 8CG7422QNY.

186.   Prior to purchasing his Class Laptop, Plaintiff Terence Graner researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

187.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Terence Graner.

188.   Immediately after receiving his Class Laptop, Plaintiff Terence Graner reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Terence Graner.

189.   Plaintiff Terence Graner had been using his laptop for approximately one year when the Hinge Defect manifested. The laptop became difficult to open and close. Five months later, the Class Laptop's hinge snapped, preventing the device from being maneuvered or transported and rendering it substantially unusable. To make matters worse, Plaintiff Graner was forced to purchase a replacement stand-alone monitor to replace the detached laptop monitor—as shown in Plaintiff's photograph below.



190.   Plaintiff Terence Graner used and maintained his Class Laptop in a manner typical of a reasonable consumer.

191.   Plaintiff Terence Graner was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

192.   If Plaintiff Terence Graner had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

193.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy

the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

194.   Plaintiff Terence Graner remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Trudy Letson**

195.   Plaintiff Trudy Letson is a citizen of California and resides in Jackson, California.

196.   Plaintiff Trudy Letson purchased an HP 14 for her personal use in June 2020, for $628, from Staples. Her device's serial number is: 5CDO1216NL.

197.   Prior to purchasing her Class Laptop, Plaintiff Trudy Letson researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

198.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Trudy Letson.

199.   Immediately after receiving her Class Laptop, Plaintiff Trudy Letson reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Trudy Letson.

200.   Plaintiff Trudy Letson had been using her laptop for approximately 6 months when the Hinge Defect manifested. As a result of the Hinge Defect, the hinge would no longer support the screen, leading the laptop lid to close on its own. Plaintiff Letson would need to prop up an object behind the screen in order to keep the screen from moving forward or back. The Class Laptop's maneuverability and portability have suffered as a result of the Hinge Defect and it has been rendered substantially unusable.

201.   Plaintiff Trudy Letson contacted HP but was told she needed to pay $100 for technical support or had to have purchased an extended warranty to receive assistance. She was told her warranty was expired, despite the fact that one year had not yet passed from her purchase.

202.   Plaintiff Trudy Letson used and maintained her Class Laptop in a manner typical of a reasonable consumer.

203.   Plaintiff Trudy Letson was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

204.   If Plaintiff Trudy Letson had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

205.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

206.   Plaintiff Trudy Letson remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Stephen Luther**

207.   Plaintiff Stephen Luther is a citizen of California and resides in Citrus Heights, California.

208.   Plaintiff Stephen Luther purchased an HP 15 for his personal use on August 22, 2018, for $320, from Walmart. His device's serial number is CND8280TDW.

209.   Prior to purchasing his Class Laptop, Plaintiff Stephen Luther researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

210.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Stephen Luther.

211.   Immediately after receiving his Class Laptop, Plaintiff Stephen Luther reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Stephen Luther.

212.   Plaintiff Stephen Luther had been using his laptop for approximately two-and a-half years when the Hinge Defect manifested, and the left hinge snapped. This caused the frame of the screen to irreparably pop away from the base of the Class Laptop. Plaintiff Luther knew that his warranty had expired, but attempted to contact Defendant's customer service line anyways, with no luck. He states that he could never get a live customer service representative to assist him in this matter and that he could not, otherwise, afford repair. As a result of the Hinge Defect, the laptop has been rendered substantially unusable. Photographs of the Hinge Defect and its severe impacts on the Class Laptop can be found below.



213.   Plaintiff Stephen Luther used and maintained his Class Laptop in a manner typical of a reasonable consumer.

214.   Plaintiff Stephen Luther was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

215.   If Plaintiff Stephen Luther had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b)

misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

216.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

217.   Plaintiff Stephen Luther remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Phillip Erickson**

218.   Plaintiff Phillip Erickson is a citizen of Florida and resides in Orlando, Florida.

219.   Plaintiff Phillip Erickson purchased an HP 17 Laptop for his personal use for $463.99, from Best Buy in Orlando, FL. His device's serial number is: 5CG8398VXG.

220.   Prior to purchasing his Class Laptop, Plaintiff Phillip Erickson researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

221.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Phillip Erickson.

222.   Immediately after receiving his Class Laptop, Plaintiff Phillip Erickson reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Phillip Erickson.

223.   Plaintiff Phillip Erickson had been using his laptop for approximately 6 months when the Hinge Defect manifested. Plaintiff Phillip Erickson had difficulty closing and opening his laptop. Intending to use the laptop for travel, the Hinge Defect made it so that he could no longer carry it from location to location. The lid would sometimes slam shut and pieces, such as screws and broken plastic, dropped out of the device. What pieces remained rattled inside the chassis. As a result of the Hinge Defect, Plaintiff Phillip Erickson does not move his laptop from his desk, so the laptop is no longer portable and has been rendered substantially unusable.  The manifestation of the Hinge Defect in Plaintiff's Class Laptop can be seen in the photograph below.



224.   Plaintiff Phillip Erickson used and maintained his Class Laptop in a manner typical of a reasonable consumer.

225.   Plaintiff Phillip Erickson was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

226.   If Plaintiff Phillip Erickson had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

227.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its

warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

228.   Plaintiff Phillip Erickson remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Donald Harman**

229.   Plaintiff Donald Harman is a citizen of Florida and resides in Wilton Manors, Florida.

230.   Plaintiff Donald Harman purchased an HP Envy 17 Laptop for his personal use on December 15, 2017, for $949.99, from Best Buy. His device's serial number is: 5CG7460R5X.

231.   Prior to purchasing his Class Laptop, Plaintiff Donald Harman researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

232.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Donald Harman.

233.   Immediately after receiving his Class Laptop, Plaintiff Donald Harman reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Donald Harman.

234.   Prior to purchasing the Class Laptop, Plaintiff researched the available models on the market, ultimately choosing the Class Laptop because of its large, 17-inch screen and its high quality, reliable video streaming.

235.   For three years, Plaintiff Donald Harman used his Class Laptop exclusively at his home office, essentially as a desktop computer. The Class Laptop sat on his desk, plugged into the charger, and remained open.

236.   In late August of 2021, Plaintiff Donald Harman planned to travel for a number of days and decided to take his laptop with him. He attempted to close his Class Laptop for the first time but stopped before it was shut. Plaintiff Donald Harman was alarmed to see that the back of the bottom panel appeared to bend away from the keyboard, and the upper clamshell was beginning to separate from the bottom.

237.   Plaintiff Donald Harman brought his Class Laptop to Best Buy where he had purchased it and inquired about repairs, since his Limited Warranty had lapsed. The GeekSquad within Best Buy informed him that he would need an entirely new frame, as well as replacement hinges. Plaintiff Donald Harman was told the shipping and replacement bezzle would cost $185, but they could not give him a

quote for the required hinge repair. Reluctant to pay what seemed like the mounting costs of repair, Plaintiff Donald Harman took his defective Class Laptop home. Plaintiff Donald Harman did not take his Class Laptop on his travels, for fear of further damaging it while opening and closing the lid.

238.   Plaintiff Donald Harman continued to use the laptop but observed the back of the bottom panel was being forced incrementally and steadily out of place, despite never again trying to close the lid or transport the Class Laptop.

239.   Alarmed that the panel seemed on the brink of separating entirely, Plaintiff Donald Harman applied a clip to the bottom panel of the laptop. This clip is currently the only thing holding the pieces of the Class Laptop together.

240.   The Class Laptop's maneuverability and portability performance have suffered as a result. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable, can be seen in the photograph below.



241.   Plaintiff Donald Harman used and maintained his Class Laptop in a manner typical of a reasonable consumer.

242.   Plaintiff Donald Harman was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

243.   If Plaintiff Donald Harman had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

244.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

245.   Plaintiff Donald Harman remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Christopher Nind**

246.   Plaintiff Christopher Nind is a citizen of Florida and resides in Longboat Key, Florida.

247.   Plaintiff Christopher Nind purchased an HP Envy x360 from Best Buy for his personal use on November 5, 2020, for $879.99. His device's serial number is CNDO396TMW.

248.   Prior to purchasing his Class Laptop, Plaintiff Christopher Nind researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

249.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Christopher Nind.

250.   Immediately after receiving his Class Laptop, Plaintiff Christopher Nind reviewed the Class Laptop box and the documents included inside the box. Neither of these sources disclosed the Hinge Defect to Plaintiff Christopher Nind.

251.   After only about 18 months of use on June 7, 2022, the Hinge Defect manifested when Plaintiff Christopher Nind's HP Envy x360 laptop experienced sudden and extreme stiffness of the left hinge. He went to close the laptop that morning and, upon feeling the tension in the hinge, he left the device as it was. Despite his extreme caution in not attempting to close his laptop, when he next returned to his device, he found the hinge cracked and the material at the base of the laptop peeling away from itself. The laptop cannot be closed since the Hinge Defect manifested. As a result of the Hinge Defect, the laptop has been rendered substantially unusable.

252.   Plaintiff Christopher Nind had purchased additional technical support from Best Buy when he acquired the Class Laptop. He therefore so brought the Class Laptop back to them, still in its open and upright position, to evaluate and hopefully fix. However, they informed him that his technical support package did not support hardware and that they would not recommend moving forward with repair, since they could not guarantee it would be successful given the overall design of the

laptop's hinges. The manifestation of the Hinge Defect in Plaintiff Christopher Nind's Class Laptop can be seen in the photographs below.



253.   Plaintiff Christopher Nind used and maintained his Class Laptop in a manner typical of a reasonable consumer.

254.   Plaintiff Christopher Nind was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

255.   If Plaintiff Christopher Nind had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

256.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking

remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

257. Plaintiff Christopher Nind remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff William Draper**

258. Plaintiff William Draper is a citizen of Indiana and resides in Merrillville, Indiana.

259. Plaintiff William Draper purchased an HP Pavilion x360 Laptop for his personal use on May 12, 2019, for $449.99, from Best Buy. His device's serial number is: 8CG910CS11.

260. Prior to purchasing his Class Laptop, Plaintiff William Draper researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

261. At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff William Draper.

262.   Immediately after receiving his Class Laptop, Plaintiff William Draper reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff William Draper.

263.   Plaintiff William Draper had been using his laptop for approximately two-and-a-half years when the Hinge Defect manifested, as shown below. Plaintiff William Draper opened the laptop, heard a crunch, and saw that the left hinge had broken off from the top of the laptop.  To make matters worse, the manifestation of the Hinge Defect separated the screen from the Class Laptop's frame.  The Class Laptop's maneuverability and portability have suffered as a result. The manifestation of the Hinge Defect, which has rendered the device substantially unusable, can be seen in the images below.







264.   Plaintiff William Draper used and maintained his Class Laptop in a manner typical of a reasonable consumer. Indeed, Plaintiff Draper never even opened his Class Laptop into the full 360-degree tablet mode advertised by Defendant.

265.   Plaintiff William Draper was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

266.   When Plaintiff Draper called HP about the Hinge Defect, he was told by customer service that "there is no recall on it, so it's not our issue;" the laptop was "not under warranty;" and he would have to pay "$379.00 to have it fixed."

267.   If Plaintiff William Draper had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

268.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

269.   Plaintiff William Draper remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Sabine Miller**

270.   Plaintiff Sabine Miller is a citizen of Indiana and resides in Merrillville, Indiana.

271.   Plaintiff Sabine Miller purchased an HP 17 Laptop for her personal use on November 19, 2019, for $649.99, from Costco. Her device's serial number is: 8CG7212T97.

272.   Prior to purchasing her Class Laptop, Plaintiff Sabine Miller researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

273.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Sabine Miller.

274.   Immediately after receiving her Class Laptop, Plaintiff Sabine Miller reviewed the Class Laptop box and the documents included inside the box. Neither of these sources disclosed the Hinge Defect to Plaintiff Sabine Miller.

275.   The Hinge Defect manifested in or around May 2020, the hinges on Plaintiff Sabine Miller's HP 17" began making clicking sounds when she opened

and closed the laptop. The hinge then popped out of its position. Every time Plaintiff Sabine Miller attempts to reposition the hinge into its correct positioning, it subsequently pops back out again. The destabilized hinge interferes with the opening and closing of the laptop. As a result of the Hinge Defect, Plaintiff Sabine Miller's laptop is no longer portable, which was one of the reasons she purchased a laptop. Plaintiff Sabine Miller's laptop was well-protected, as it used to travel in a rolling, padded cases. Despite this precaution, the device must now remain on her desk in order to prevent further manifestations of the Hinge Defect and complete destruction of the device. The Class Laptop's maneuverability and portability have suffered as a result. Therefore, the laptop has been rendered substantially unusable.

276.   Plaintiff Sabine Miller was unable to exchange the laptop from Costco since the Hinge Defect did not manifest until after the exchange period expired.

277.   Plaintiff Sabine Miller used and maintained her Class Laptop in a manner typical of a reasonable consumer.

278.   Plaintiff Sabine Miller was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

279.   If Plaintiff Sabine Miller had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

96

280.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

281.   Plaintiff Sabine Miller remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Diana Hobert-Powell**

282.   Plaintiff Diana Hobert-Powell is a citizen of Michigan and resides in Rochester Hills, Michigan.

283.   Plaintiff Diana Hobert-Powell purchased an HP 17 Laptop for her personal use on November 10, 2018, for $528.94, from Sam's Club. Her device's serial number is: 5CG83909NZ.

284.   Prior to purchasing her Class Laptop, Plaintiff Diana Hobert-Powell researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

285.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Diana Hobert-Powell.

286.   Immediately after receiving her Class Laptop, Plaintiff Diana Hobert-Powell reviewed the Class Laptop box and the documents included inside the box. Neither of these sources disclosed the Hinge Defect to Plaintiff Diana Hobert-Powell.

287.   The Hinge Defect manifested when the hinges on Plaintiff Diana Hobert-Powell's HP 17" came apart and lifted the top case from the laptop base a few months after purchase, in early 2019. Plaintiff Diana Hobert-Powell is afraid to open and close the laptop because she is afraid the exposed wires will be cut and render the computer unusable. As a result of the Hinge Defect, Plaintiff Diana Hobert-Powell does not move her laptop from her desk. The laptop is therefore no longer portable.

288.   Plaintiff Diana Hobert-Powell had dealt with HP before regarding a previous laptop that HP failed to adequately repair. She therefore did not consider it worthwhile to call HP about repairing her HP 17" because of the past negative experience she had with the company. The manifestation of the Hinge Defect in Plaintiff Diana Hobert-Powell's Class Laptop, which has rendered the device substantially unusable, can be seen in the photograph below.



289.   Plaintiff Diana Hobert-Powell used and maintained her Class Laptop in a manner typical of a reasonable consumer.

290.   Plaintiff Diana Hobert-Powell was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

291.   If Plaintiff Diana Hobert-Powell had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

292.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

293.   Plaintiff Diana Hobert-Powell remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Janet Purvis**

294.   Plaintiff Janet Purvis is a citizen of Missouri and resides in Imperial, Missouri.

295.   Plaintiff Janet Purvis received an HP Pavilion x360 Laptop as a gift for her personal use on November 1, 2019.

296.   Immediately after receiving her Class Laptop, Plaintiff Janet Purvis reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Janet Purvis.

297.   Plaintiff Janet Purvis had been using her laptop for approximately two years when the Hinge Defect manifested and the hinge on one side of the Class Laptop suddenly separated, followed shortly thereafter by the second side.  Plaintiff Purvis heard the distinctive crunch sound complained of by other plaintiffs and noticed plastic debris falling out of the unit. The manifestation of the Hinge Defect in Plaintiff Janet Purvis's Class Laptop, which has rendered the device substantially unusable, can be seen in the photographs below.







298.   Plaintiff Janet Purvis used and maintained her Class Laptop in a manner typical of a reasonable consumer.

299.   Plaintiff Janet Purvis was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

300.   If Plaintiff Janet Purvis had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

301.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy

the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

302.   Plaintiff Janet Purvis remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Sarah Householder**

303.   Plaintiff Sarah Householder is a citizen of Oregon and resides in Beaverton, Oregon.

304.   Plaintiff Sarah Householder purchased an HP Pavilion 17 Laptop (certified factory refurbished by HP) for her personal use on October 18, 2019, for $449.95, from Ebay. Her device's serial number is: 5CG8337TDF.

305.   Prior to purchasing her Class Laptop, Plaintiff Sarah Householder researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

306.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Sarah Householder.

307.   Immediately after receiving her Class Laptop, Plaintiff Householder reviewed the Class Laptop box and the documents included inside the box. Neither of these sources disclosed the Hinge Defect to Plaintiff Sarah Householder.

308. Plaintiff Sarah Householder had been using her laptop for approximately one year when the Hinge Defect manifested and the left hinge separated from the frame holding the screen, as such the computer cannot be maneuvered or transported. The Hinge Defect prevents the laptop's screen from staying in place—it simply falls down unless it is propped up on something. The manifestation of the Hinge Defect, which has rendered the device substantially unusable, can be seen in the image below.



309.   Plaintiff Sarah Householder used and maintained her Class Laptop in a manner typical of a reasonable consumer.

310.   Plaintiff Sarah Householder was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

311.   If Plaintiff Sarah Householder had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

312.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

313.   Plaintiff Sarah Householder remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Gregory Orenski**

314.   Plaintiff Gregory Orenski is a citizen of Ohio and resides in Parma, Ohio.

315.   Plaintiff Gregory Orenski purchased two HP 17 laptops for his personal use on November 23, 2018, for a merchandise total of $712.78 (after applying two $200 coupons), from Staples. His devices' serial numbers are 5CG8432VS0 and 5CG8432W5S.

316.   Prior to purchasing his Class Laptop, Plaintiff Gregory Orenski researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

317.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Gregory Orenski.

318.   Immediately after receiving his Class Laptop, Plaintiff Gregory Orenski reviewed the Class Laptop box and the documents included inside the box. Neither of these sources disclosed the Hinge Defect to Plaintiff Gregory Orenski.

319.   Plaintiff Gregory Orenski had been using his laptop for approximately thirty-two months when the Hinge Defect manifested and both hinges on the Class Laptops failed. As a result, Plaintiff Gregory Orenski could not open and close the lid on either laptop.

320.   Plaintiff Gregory Orenski used and maintained his Class Laptops in a manner typical of a reasonable consumer.

321.   Plaintiff Gregory Orenski was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

322.   If Plaintiff Gregory Orenski had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptops, or would have paid substantially less for them.

323.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

324.   Plaintiff Gregory Orenski remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Cara Washington**

325.   Plaintiff Cara Washington is a citizen of Ohio and resides in Dayton, Ohio.

326.   Plaintiff Cara Washington purchased an HP 17 Laptop for her personal use on October 8, 2018, for $639.90, from the QVC television network. Her device's serial number is: 5CG84157Y9.

327.   Prior to purchasing her Class Laptop, Plaintiff Cara Washington researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

328.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Cara Washington.

329.   Immediately after receiving her Class Laptop, Plaintiff Cara Washington reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Washington.

330.   Plaintiff Cara Washington had been using her laptop for less than year and a half when the Hinge Defect manifested and she noticed the machine made a popping and cracking sound when she opened or closed the lid. Soon after, the hinge became askew, dislodging the keyboard assembly from its base. Now, the Class Laptop has been rendered substantially unusable and Plaintiff Cara Washington has to manually push the keyboard assembly back down into the base.

331.   Plaintiff Cara Washington used and maintained her Class Laptop in a manner typical of a reasonable consumer.

332.   Plaintiff Cara Washington was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

333.   If Plaintiff Cara Washington had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

334.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

335.   Plaintiff Cara Washington remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Michael Dobkin**

336.   Plaintiff Michael Dobkin is a citizen of New Jersey and resides in Denville, New Jersey.

337.   Plaintiff Michael Dobkin purchased an HP Pavilion x360 2-in-1 for his personal use on November 23, 2018 from Best Buy.  The laptop cost $399.00 before applicable taxes.  The Purchased Class Laptop is identified by the serial number: 8CG8406HJY.

338.   Prior to purchasing his Class Laptop, Plaintiff Michael Dobkin researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

339.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Michael Dobkin.

340.   Immediately after receiving his Class Laptop, Plaintiff Michael Dobkin reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Michael Dobkin.

341.   Plaintiff Michael Dobkin had been using the laptops for approximately 19 months when the Hinge Defect manifested and the hinge on the right side of the Class Laptop failed. As a result, the screen cracked, the cover has separated from the base of the laptop and the devices cannot be closed or transported or transformed to tablet mode.  The manifestation of the Hinge Defect in Plaintiff's Class Laptop has rendered the device substantially unusable.

342.   At the time of purchase, Plaintiff Michael Dobkin purchased an extended warranty through American Express.  Upon manifestation of the Hinge

Defect, Plaintiff Michael Dobkin contacted American Express which in turn contacted HP to seek coverage under the extended warranty.  HP told American Express that the Hinge Defect was a result of physical damage caused by Plaintiff Michael Dobkin, not the Hinge Defect, and would not cover the claim.  Accordingly, American Express rejected the extended warranty claim.

343.   Plaintiff Michael Dobkin used and maintained his Class Laptop in a manner typical of a reasonable consumer.

344.   Plaintiff Michael Dobkin was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

345.   If Plaintiff Michael Dobkin had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

346.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

111

347.   Plaintiff Michael Dobkin remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Stephen Kaplitt**

348.   Plaintiff Stephen Kaplitt is a citizen of New Jersey and resides in Livingston, New Jersey.

349.   Plaintiff Stephen Kaplitt purchased an HP17 laptop in 2012. It broke as a result of the plastic frame being unable to hold the metal hinge in place. Believing the laptop to simply be a lemon, Plaintiff Stephen Kaplitt purchased a second HP17 laptop, included among the Class Laptops, on December 12, 2018, for $511.79 from Staples, Serial # 5CG8475LLX. He purchased an extended warranty for his Class Laptop on April 19, 2019, for $95.95. The extended warranty expired on November 26, 2021, although it should have expired on December 12, 2021, three years after the date of purchase.

350.   Prior to purchasing his Class Laptop, Plaintiff Stephen Kaplitt researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

351.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Stephen Kaplitt.

352.   Immediately after receiving his Class Laptop, Plaintiff Stephen Kaplitt reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Stephen Kaplitt.

353.   Plaintiff's HP 17 laptop broke in November 2021, after not even three years of use. Plaintiff called HP on December 16, 2021 and was told that the extended warranty had expired and HP was unable to repair it or compensate him for the damaged laptop. Once again, the damage was a result of the Defect, as shown in the below image of Plaintiff Stephen Kaplitt's HP 17 laptop. The weak plastic anchor broke, rendering the laptop hinge inoperable. The location where the plastic broke is shown in the red circle.

354.   Plaintiff Stephen Kaplitt did not use the Class Laptop in any manner not anticipated or expected in the course of ordinary use, and neither of Plaintiff's HP laptops (purchased in 2012 and 2018) suffered any accidental damage or misuse of any kind.



355. Plaintiff Stephen Kaplitt used and maintained his Class Laptop in a manner typical of a reasonable consumer and did not do anything to either cause, exacerbate or accelerate the deterioration of the plastic base holding the hinge in place.[77]

356. Plaintiff Stephen Kaplitt was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

357. If Plaintiff Stephen Kaplitt had been told by HP of the Hinge Defect instead of HP deceptively (a) concealing the Hinge Defect, and (b) misrepresenting the quality, durability, and portability of the Class Laptop, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

358. HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

---

[77] The removal of the back of the laptop occurred after the plastic broke and was done only after Plaintiff was advised by HP that the laptop was out of warranty. The removal was done for the purpose of seeing what had caused the hinge failure, and subsequently showing Plaintiff Stephen Kaplitt's counsel what had happened.

359.   Plaintiff Stephen Kaplitt remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Timur Sakharuk**

360.   Plaintiff Timur Sakharuk is a citizen of Massachusetts and resides in Framingham, Massachusetts.

361.   Plaintiff Timur Sakharuk purchased two HP 17s for his personal and family use on June 3, 2020 and June 28, 2020.  Each laptop cost $999.00 for a total purchase price, before tax of $1,998.00.  The Class Laptops are identified by the serial numbers: 5CG9370249 and 5CG0143XWB.

362.   Prior to purchasing his Class Laptops, Plaintiff Timur Sakharuk researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

363.   At no point, in either researching Class Laptops, at the point of sale or otherwise, did HP disclose the Hinge Defect to Plaintiff Timur Sakharuk.

364.   Immediately after receiving his Class Laptops, Plaintiff Timur Sakharuk reviewed the Class Laptop boxes and the documents included inside the boxes.  Neither of these sources disclosed the Hinge Defect to Plaintiff Timur Sakharuk.

365. Plaintiff Timur Sakharuk had been using the laptops for approximately 13 months when the Hinge Defect manifested and the hinge on the right side of both Class Laptops failed. As a result, the cover has separated from the bases of the laptops and the devices cannot be closed or transported. The manifestation of the Hinge Defect in Plaintiff's Class Laptops has rendered the devices substantially unusable.

366. Plaintiff Timur Sakharuk used and maintained his Class Laptops in a manner typical of a reasonable consumer.

367. Plaintiff Timur Sakharuk was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

368. If Plaintiff Timur Sakharuk had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptops, or would have paid substantially less for them.

369. HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy

the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

370.   Plaintiff Timur Sakharuk remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Robert DiMartino**

371.   Plaintiff Robert DiMartino is a citizen of Massachusetts and resides in Dedham, Massachusetts.

372.   Plaintiff Robert DiMartino purchased two HP 17s for his personal use on June 15, 2020 from Costco and June 29, 2020 from BJ's.  The laptops each cost $499.99.  The Class Laptop purchased at Costco is identified by the serial number: 5CG023037D.

373.   Prior to purchasing his Class Laptops, Plaintiff Robert DiMartino researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

374.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Robert DiMartino.

375.  Immediately after receiving his Class Laptops, Plaintiff Robert DiMartino reviewed the Class Laptop boxes and the documents included inside the

boxes. Neither of these sources disclosed the Hinge Defect to Plaintiff Robert DiMartino.

376. Plaintiff Robert DiMartino had been using the laptops for approximately 14 months when the Hinge Defect manifested and the hinges on both sides of the Class Laptops failed. As a result, the screens separated from the base of the laptop and the devices cannot be closed or transported. The Hinge Defect rendered the laptop purchased from BJ's so useless that Plaintiff had no choice but to discard it. However, to use the laptop purchased from Costco, Plaintiff has to hold up or prop up the screen to prevent it from falling.

377. The manifestation of the Hinge Defect in Plaintiff's Class Laptop has rendered the devices totally and substantially unusable. Plaintiff Robert DiMartino contacted HP about the manifestation of the Hinge Defect but was told the laptops were out of warranty and they would not offer a repair free of charge.

378. Plaintiff Robert DiMartino used and maintained his Class Laptop in a manner typical of a reasonable consumer.

379. Plaintiff Robert DiMartino was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

380. If Plaintiff Robert DiMartino had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b)

misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptops, or would have paid substantially less for them.

381.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

382.   Plaintiff Robert DiMartino remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint

**Plaintiff Deborah Thelen**

383.   Plaintiff Deborah Thelen is a citizen of New York and resides in New York City, New York.

384.   Plaintiff Deborah Thelen purchased an HP 17 Laptop for her personal use on December 16, 2019, for $631.46, from Best Buy. Her device's serial number is: 5CG7460R5X.

385.    Prior to purchasing her Class Laptop, Plaintiff Deborah Thelen researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

386.    At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Deborah Thelen.

387.    Immediately after receiving her Class Laptop, Plaintiff Deborah Thelen reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Deborah Thelen.

388.    Plaintiff Deborah Thelen had been using her laptop for less than year when the Hinge Defect manifested. She noticed the machine made a popping sound when she opened or closed the lid. Shortly after the noise manifested, the right hinge holding the two panels of the laptop together snapped entirely. The top and bottom panels of the laptop are now held together only by wiring; as such, it does not stay open, cannot be transported, and has been rendered wholly unusable.



389.   Plaintiff Deborah Thelen used and maintained her Class Laptop in a manner typical of a reasonable consumer.

390.   Plaintiff Deborah Thelen was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

391.   If Plaintiff Deborah Thelen had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

392.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy

the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

393.   Plaintiff Deborah Thelen remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Diane Drake**

394.   Plaintiff Diane Drake is a citizen of Washington and resides in Tacoma, Washington.

395.   Plaintiff Diane Drake purchased an HP 15 for her personal use on October 3, 2019, for $550.99, from Costco. Her device's serial number is 5CD916OYT8.

396.   Prior to purchasing her Class Laptop, Plaintiff Diane Drake researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

397.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Diane Drake.

398.   Immediately after receiving her Class Laptop, Plaintiff Diane Drake reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Diane Drake.

399.    Approximately one month after the expiration of her warranty period, Plaintiff Diane Drake was opening her Class Laptop like normal when the Hinge Defect manifested, and the hinges made a cracking noise as they failed. Upon further examination, she found that pieces of plastic had been expelled from her Class Laptop. As a result, the frame around the screen is puckered outward from the laptop and the device cannot be closed or transported in any normal fashion. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable in the ways for which it was marketed, can be seen in the photograph below.



400.   Plaintiff Diane Drake took the laptop to two separate repair shops in November or December 2020, Gadget Genie and UBreakIFix, who each verbally quoted her $250 repairs to the hinges. She opted not to pay for either service.

401.   Plaintiff Diane Drake used and maintained her Class Laptop in a manner typical of a reasonable consumer.

402.   Plaintiff Diane Drake was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

403.   If Plaintiff Diane Drake had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

404.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

405.   Plaintiff Diane Drake remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would

124

correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Bruce Williams**

406.   Plaintiff Bruce Williams is a citizen of New York and resides in Elmira, New York.

407.   Plaintiff Bruce Williams purchased an HP Envy for his personal use on December 14th, 2020, for $1,249.99, from Best Buy. His device's serial number is CND0458CFQ.

408.   Prior to purchasing his Class Laptop, Plaintiff Bruce Williams researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

409.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Bruce Williams.

410.   Immediately after receiving his Class Laptop, Plaintiff Bruce Williams reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Bruce Williams.

411.   On or around June 26, 2022, Plaintiff Bruce Williams was opening his Class Laptop like normal when the Hinge Defect manifested, and the hinges made a crunching noise. While he did not notice any visible damage, his Class Laptop continued to make crunching noises when he opened and closed it.

412.   On or around July 3, 2022, Plaintiff Bruce Williams opened the screen and saw that the left hinge had popped out of place. The manifestation of the Hinge Defect also shattered the lower left part of the Class Laptop's screen

413.   To avoid further hinge and screen damage, Plaintiff has left the device open since the Hinge Defect manifested; thus, the device cannot be transported. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable in the ways for which it was marketed, can be seen in the photograph below.

414.   When Plaintiff Bruce Williams entered his serial number on HP's serial number search engine, the website showed that his warranty had expired.

415.   Plaintiff Bruce Williams used and maintained his Class Laptop in a manner typical of a reasonable consumer.

416.   Plaintiff Bruce Williams was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

417.   If Plaintiff Bruce Williams had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

418.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge

Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

419.   Plaintiff Bruce Williams remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Ian Perry**

420.   Plaintiff Ian Perry is a citizen of New York and resides in New York, New York.

421.   Plaintiff Ian Perry purchased an HP Pavilion x3 for his personal use in November of 2019 at Sam's Club for on December 14th, 2020, for approximately $500. His device's serial number is 8CG9381BYD.

422.   In or around April, 2022, Plaintiff Ian Perry was using his Class Laptop like normal when the Hinge Defect manifested and the left hinge failed.

423.   He can no longer open and close the Class Laptop. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable in the ways for which it was marketed.

424.   When the Hinge Defect manifested, his warranty on the Class Laptop had expired. He had contacted HP for service, but HP refused to assist him repair the Hinge Defect because his Class Laptop was out of warranty. In fact, HP support told Plaintiff Ian Perry that HP was unaware of any hinge issues with HP laptops.

425.   Plaintiff Ian Perry used and maintained his Class Laptop in a manner typical of a reasonable consumer.

426.   Plaintiff Ian Perry was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

427.   If Plaintiff Ian Perry had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

428.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

429.   Plaintiff Ian Perry remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint

**Plaintiff Rose Carina**

430.   Plaintiff Rose Carina is a citizen of Illinois and resides in Bloomington, Illinois.

431.   Plaintiff Rose Carina purchased an HP Envy 360 for her personal use on April 18th, 2018, for $759.99, from Best Buy. Her device's serial number is 8CG7422K5W.

432.   Prior to purchasing her Class Laptop, Plaintiff Rose Carina researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

433.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Rose Carina.

434.   Immediately after receiving her Class Laptop, Plaintiff Rose Carina reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Rose Carina.

435.   In or around April 2022, Plaintiff Rose Carina noticed that the screen was popping out of place on the lower left side and had to push it back into place in

order to use her Class Laptop. On or around June 23, 2022, Plaintiff opened her laptop and heard a loud cracking noise and noticed that several small screws had fallen out of the left hinge area, and that the bottom left screen and the screen casing were separating. Following the manifestation of the Hinge Defect, Plaintiff Rose Carina cannot open or close the Class Laptop without using a tool to hold the hinge in place while she closes the device. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable in the ways for which it was marketed, can be seen in the photograph below.



436.    When Plaintiff Rose Carina contacted HP regarding the Hinge Defect, a representative told her that they would be unable to help her because she was no

longer in warranty. Additionally, she was told that HP no longer makes the part required to repair the laptop, and even if they did, the repair would cost Plaintiff at least $400.

437.   Plaintiff Rose Carina used and maintained her Class Laptop in a manner typical of a reasonable consumer.

438.   Plaintiff Rose Carina was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

439.   If Plaintiff Rose Carina had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

440.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

441.   Plaintiff Rose Carina remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would

correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Rodney Nash**

442.   Plaintiff Rodney Nash is a citizen of Georgia and resides in Tucker, Georgia.

443.   Plaintiff Rodney Nash purchased an HP Pavilion for on October 27th, 2020, for $719.99, from Amazon. His device's serial number is 5CG022C433.

444.   Prior to purchasing his Class Laptop, Plaintiff Rodney Nash researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

445.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Rodney Nash.

446.   Immediately after receiving his Class Laptop, Plaintiff Rodney Nash reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Rodney Nash.

447.   In or around May 2021, after only about seven months of use, Plaintiff Rodney Nash opened his Class Laptop and a small piece of plastic fell out next to the right hinge. The screen and keyboard began to separate from one another, and the hinge has popped out of its original place. Because of the hinge detachment, the screen feels very heavy when Plaintiff opens and closes it, and the screen is barely

able to support itself when the laptop is fully open. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which has rendered the device substantially unusable in the ways for which it was marketed, can be seen in the photograph below.



448.   Plaintiff Rodney Nash used and maintained his Class Laptop in a manner typical of a reasonable consumer.

449.   Plaintiff Rodney Nash was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

450.   If Plaintiff Rodney Nash had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

451.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple Class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

452.   Plaintiff Rodney Nash remains very interested in purchasing another HP laptop in the future and would consider doing so if he felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

**Plaintiff Anthony Harris**

453.   Plaintiff Anthony Harris is a citizen of Missouri and resides in Cleveland, Missouri.

454.   Plaintiff Anthony Harris purchased an HP 17 in December 2020, for $666.84, from HP. His device's serial number is 5CG052208X.

455.   Prior to purchasing his Class Laptop, Plaintiff Anthony Harris researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings.

456.   At no point, in either researching Class Laptops, at the point of sale or otherwise did HP disclose the Hinge Defect to Plaintiff Anthony Harris.

457.   Immediately after receiving his Class Laptop, Plaintiff Anthony Harris reviewed the Class Laptop box and the documents included inside the box.  Neither of these sources disclosed the Hinge Defect to Plaintiff Anthony Harris.

458.   Plaintiff Anthony Harris had been using his Class Laptop for approximately 11 months when the Hinge Defect manifested around November 2021. The right hinge popped out of place and, in so doing, separated the base of the laptop. The Class Laptop cannot be closed or transported. The manifestation of the Hinge Defect in Plaintiff's Class Laptop, which rendered the device substantially unusable, can be seen in the photograph below.



459.    Plaintiff Anthony Harris used and maintained his Class Laptop in a manner typical of a reasonable consumer.

460.    Plaintiff Anthony Harris was unaware of, and lacked a reasonable means of discovering, the Hinge Defect.

461.   If Plaintiff Anthony Harris had been told of the Hinge Defect and the deceptive manner in which HP would (a) conceal the Hinge Defect, and (b) misrepresent its quality, durability, and portability, Plaintiff would not have purchased the Class Laptop, or would have paid substantially less for it.

462.   HP has long been on notice of the Hinge Defect. As detailed herein, multiple class members have contacted HP, yet HP has failed to remedy the Hinge Defect under its warranties. Moreover, HP was previously sent a notice letter seeking remedies for, among other things, its failure to remedy the Hinge Defect under its warranties. HP did not respond to that letter, and, through counsel, refused to remedy the Hinge Defect under its warranties. Finally, Plaintiff, though counsel, sent a notice letter seeking correction of the Hinge Defect under HP's warranties.

463.   Plaintiff Anthony Harris remains very interested in purchasing another HP laptop in the future and would consider doing so if she felt confident that HP would correct the problems discussed herein and throughout this Second Amended Complaint.

## TOLLING OF STATUTES OF LIMITATIONS

464.   Any applicable statute(s) of limitations have been tolled by HP's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Hinge Defect until shortly before this class action litigation was commenced.

465.   In addition, even after Plaintiffs and Class members contacted HP and/or its authorized retailers for Class Laptops repairs concerning the effects of the Hinge Defect, they were routinely told by HP and/or through its retailers that the Class Laptops were not defective and that a breakdown of the hinge on a Class Laptop was the result of normal use of the Class Laptop or user error.

466.   HP was and remains under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality, and nature of the Class Laptops. As a result of HP's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

467.   Plaintiffs bring this lawsuit on behalf of themselves, and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4). The class and subclasses consist of:

a.   **The Nationwide Class:** All purchasers in the United States who purchased a Class Laptop (the "Nationwide Class");

b.   **The Alabama Subclass:** All purchasers in the state of Alabama who purchased a Class Laptop (the "Alabama Subclass");

c.   **The Arkansas Subclass:** All purchasers in the state of Arkansas who purchased a Class Laptop (the "Arkansas Subclass");

d. **The California Subclass:** All purchasers in the state of California who purchased a Class Laptop (the "California Subclass);

e. **The Florida Subclass:** All purchasers in the state of Florida who purchased a Class Laptop (the "Florida Subclass");

f. **The Indiana Subclass:** All purchasers in the state of Indiana who purchased a Class Laptop (the "Indiana Subclass");

g. **The Massachusetts Subclass:** All purchasers in the state of Massachusetts who purchased a Class Laptop (the "Massachusetts Subclass");

h. **The Michigan Subclass:** All purchasers in the state of Michigan who purchased a Class Laptop (the "Michigan Subclass");

i. **The Missouri Subclass:** All purchasers in the state of Missouri who purchased a Class Laptop (the "Missouri Subclass");

j. **The New Jersey Subclass:** All purchasers in the state of New Jersey who purchased a Class Laptop (the "New Jersey Subclass");

k. **The New York Subclass:** All purchasers in the state of New York who purchased a Class Laptop (the "New York Subclass");

l. **The Ohio Subclass:** All purchasers in the state of Ohio who purchased a Class Laptop (the "Ohio Subclass");

m. **The Oregon Subclass:** All purchasers in the state of Oregon who purchased a Class Laptop (the "Oregon Subclass"); and

n. **The Washington Subclass:** All purchasers in the state of Washington who purchased a Class Laptop (the "Washington Subclass").

468.   Plaintiffs and Class members reserve the right to narrow or expand the forgoing class definition, or create subclasses, in light of future fact discovery, and including as the Court deems necessary. The may include, by way of example, bellwether classes or state or other sub-classes.  Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and its subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

469.   No actual conflict of laws exists between the laws of Plaintiffs' home states, and the laws of other Class members' states in the putative Nationwide Class. Or alternatively, any potential conflict is a false one.  The lack of conflict, or the false conflict, between the laws of Plaintiffs' home states and the laws of other Class members' states in the putative Nationwide Class means it is appropriate to certify Nationwide Class under the laws of the aforementioned states. Alternatively, Class members from jurisdictions can be grouped together for purposes of class treatment given that Rule 23 and choice of law principles permit certification of subgroups of

states and provide that relatively minor differences in state law that can be overcome by grouping similar laws together.[78]

470.   **_Numerosity_**: Members of the Class are so numerous that their individual joinder is impracticable. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Class Laptops. The precise number of Class members can be ascertained through discovery, which includes Defendant's records. Plaintiffs estimate the number of Class members to be in at least the tens of thousands. The disposition of their claims through a class action will benefit both the parties and this Court.

471.   The proposed classes are ascertainable because they are defined by reference to objective criteria.  In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

472.   **_Commonality_**: There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class members. Among the questions common to the Class are:

---

[78] *See also, e.g., Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("[t]here can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit").

a. Whether the Class Laptops suffer from a defect that causes the hinges to fail;

b. The origins and implementation of, and the justifications for, if any, HP's policies and technology relating to the Hinge Defect and its manifestation in the Class Laptops;

c. When HP became aware of the Hinge Defect in the Class Laptops and how it responded to that knowledge;

d. Whether HP actively concealed and/or failed to notify consumers of the Hinge Defect in the Class Laptops;

e. Whether Defendant knew of the Hinge Defect but failed to disclose the problem and its consequences to their customers;

f. Whether a reasonable consumer would consider the Hinge Defect and its consequences to be material;

g. Whether Defendant's conduct violates state consumer protection laws as asserted herein;

h. Whether Defendant's sale of Class Laptops containing the Hinge Defect is an unfair, false, misleading, or deceptive act in the conduct of any trade or commerce;

i. Whether Defendant breached the implied warranty of merchantability or fitness by selling the Class Laptops containing the Hinge Defect;

j. Whether the Defendant's purported warranty limitations are unconscionable;

k. Whether Plaintiffs and the other Class members overpaid for their Class Laptops as a result of the Hinge Defect herein;

l. Whether Plaintiffs and Class members would have purchased their Class Laptops, and whether they would have paid a lower price for them, had they known that they contained the Hinge Defect at the time of purchase;

m. Whether Plaintiffs and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement or repair of the Class Laptops; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Class Laptops as merchantable in the absence of the Hinge Defect, and as actually manufactured and sold possessing the Hinge Defect; and (iii) whether Plaintiffs and the Class are entitled to all costs associated with repair and replacement of their Class Laptops; and

n. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief.

473. ***Typicality***: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in manufacturing, marketing, advertising, warranting, selling, and/or designing the Class Laptops. All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all

Class members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiffs and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members. Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of himself and all absent Class members.

474.   ***Adequate Representation*:** Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, product defects, and state consumer fraud statutes.

475.   ***Predominance*:** This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.

476.   ***Superiority*:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Given the amount at issue for each Class

member, individual suits would not be economically viable; however, should individual Class members bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the judicial system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

477.   *Manageability*: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### Count I
**Violation of the New York General Business Law § 349,**
**N.Y. Gen. Bus. Law § 349**
**(Asserted on behalf of the New York Subclass)**

478.   Plaintiffs Thelen, Williams, and Perry incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

479.   Plaintiffs Thelen, Williams, and Perry bring this claim individually and on behalf of the proposed New York Subclass against HP.

480.   Plaintiffs Thelen, Williams, and Perry and New York Subclass members are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. GEN. BUS. LAW § 349(h).

481.   HP is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. NY. GEN. BUS. LAW § 349(b).

482.   Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

483.   In the course of HP's business, it failed to disclose and actively concealed the Defect in the Class Laptops with the intent that consumers rely on that concealment in deciding whether to purchase the Class Laptops.

484.   By intentionally concealing the Defect while advertising the Class Laptops as superior and high quality in their material and/or workmanship, HP engaged in deceptive acts or practices in violation of GBL § 349.

485.   HP's deceptive acts or practices were materially misleading. HP's conduct was likely to and did deceive reasonable consumers, including Plaintiffs Thelen, Williams, and Perry, about the true performance and value of the Class Laptop.

486.   Plaintiffs Thelen, Williams, and Perry and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that HP suppressed.

146

487. HP's actions set forth above occurred in the conduct of trade or commerce.

488. HP's misleading conduct concerns widely purchased consumer products and affects the public interest. HP's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

489. Plaintiffs Thelen, Williams, and Perry and New York Subclass members suffered ascertainable loss as a direct and proximate result of HP's GBL violations. Plaintiffs Thelen, Williams, and Perry and New York Subclass Members are entitled to recover their actual damages or $50, whichever is greater. Additionally, because HP acted willfully or knowingly, Plaintiffs Thelen, Williams, and Perry and New York Subclass members are entitled to recover three times their actual damages. Plaintiffs Thelen, Williams, and Perry are also entitled to reasonable attorney's fees.

## Count II
### Violation of the New York General Business Law § 350,
### N.Y. GEN. BUS. LAW § 350
### (Asserted on behalf of the New York Subclass)

490. Plaintiffs Thelen, Williams, and Perry incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

491. Plaintiffs Thelen, Williams, and Perry bring this claim individually and on behalf of the proposed New York Subclass against HP.

492.   N.Y. GEN. BUS. LAW § 350 provides, in part, as follows: False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

493.   N.Y. GEN. BUS. LAW § 350A(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual …

494.   HP's labeling and advertisements of the Class Laptops were false and misleading in a material way, via affirmative statements and omissions as HP failed to reveal material facts in light of such representations or conduct.

495.   Specifically, HP advertised the superior abilities of the Class Laptops and durability of the hinges, while omitting material information concerning the Hinge Defect.

496.   This misrepresentation has resulted in consumer injury or harm to the public interest.

497.   As a result of this misrepresentation, Plaintiffs Thelen, Williams, and Perry and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Class Laptops had they known the

148

truth, and (b) they overpaid for the Class Laptops on account of the misrepresentations and omissions that the Class Laptops' hinges were of superior quality, including in their material and/or workmanship.

498.   By reason of the foregoing and as a result of HP's conduct, Plaintiffs Thelen, Williams, and Perry and Class seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

**Count III**
**Indiana Deceptive Consumer Sales Act**
**INDIANA CODE § 24-5-0.5-1 to 12**
**(Asserted on behalf of the Indiana Subclass)**

499.   Plaintiffs Draper, Miller and Carina incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

500.   Plaintiffs Draper, Miller and Carina bring this claim individually and on behalf of the proposed Indiana Subclass against HP.

501.   The purposes and policies of the Indiana Deceptive Consumer Sales Act (the "DCSA", INDIANA CODE § 24-5-0.5-1 to -12, are to:

1.   simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;
2.   protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and
3.   encourage the development of fair consumer sales practice.

IND. CODE § 24-5-0.5-1(b).

502.   The Indiana General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. IND. CODE § 24-5-0.5-1(a).

503.   Defendant is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familial, or household purpose, such as those at issue in this action. IND. CODE § 24-5-0.5-2(1), (3).   The term "Supplier" "includes a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer." *Id.*

504.   The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." IND. CODE § 24-5-0.5-3(a).

505.   For the reasons discussed herein, Defendant violated and continues to violate the DCSA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by DSCA § 24-5-0.5-3. Defendant's acts and practices, including its material omissions, described herein, were likely to, and did

in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

506.  In advertising and selling the Class Laptops, Defendant failed to disclose the material information that the Class Laptops feature the Defect.

507.  Defendant's omissions were material because they were likely to deceive reasonable consumers to induce them to purchase the Class Laptops without being aware that the Class Laptops contained a material defect. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiffs Draper, Miller and Carina and the Indiana Subclass Members purchased the Class Laptops—which they would not have purchased had they known the truth. In so doing, they received a product that was substantially worthless because it was predisposed to break at the hinges, become unmovable, and even fall apart.

508.  Defendant's deceptive trade practices caused injury in fact and actual damages Plaintiffs Draper, Miller and Carina, and the Indiana Subclass Members in the form of the loss or diminishment of value of the Class Laptops they purchased. This allowed Defendants to profit at the expense of Plaintiffs Draper, Miller and Carina and the Indiana Subclass Members. The injuries to Plaintiffs Draper, Miller and Carina and the Indiana Subclass Members were to legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

151

509.   The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand ($1,000). IND. CODE § 24-5-0.5-4(a).

510.   The DCSA provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member . . . ." IND. CODE § 24-5-0.5-4(b).

511.   Plaintiffs Draper, Miller and Carina and the Indiana Subclass Members seek relief for the injuries they have suffered as a result of Defendant's unfair and deceptive acts and practices, as provided by TDTPA and applicable law.

### Count IV
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**FLA. STAT. § 501.201, *et seq*.**
**(Asserted on behalf of the Florida Subclass)**

512.   Plaintiffs Erickson, Harman, Roberts, and Nind and the Florida Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

513.   Plaintiffs Erickson, Harman, Roberts, and Nind bring this claim individually and on behalf of the proposed Florida Subclass against HP.

514.   The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

515.   The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

516.   The actions of HP, as set forth above, occurred in the conduct of trade or commerce.

517.   Defendant misrepresented and/or knowingly and intentionally concealed material facts concerning the characteristics, uses, and quality of the Class Laptops, and thereby created confusion among purchasers of the Class Laptops. Accordingly, HP engaged in unfair and deceptive acts or practices.

518.   Contrary to Defendant's representations, the Class Laptops were not precisely designed, premium computers, and they could not be used in the manner shown in Defendant's marketing materials--*i.e.*, a functional, portable, compact design and/or a 2-in-1 laptop employing hinges enabling the machine to fold into

153

various positions—without triggering the Defect and becoming largely or wholly unusable.

519. Meanwhile, Defendant failed to disclose the major Defect in the Class Laptops, as well as the serious impacts the Defect has on functionality. Defendants failed to disclose that the Class Laptops are not in fact portable and quite literally fall apart when the user opens and closes them.

520. These misrepresentations and/or omissions led Plaintiffs Erickson, Harman, Roberts, and Nind and the Florida Subclass members to believe that they were purchasing fully functional, portable and compact and/or premium computers, when in fact they purchased laptops that would cease to function properly if used as advertised.

521. Plaintiffs Erickson, Harman, Roberts, and Nind and members of the Florida Subclass were deceived by and relied upon Defendants affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the Class Laptops' quality, material and/or workmanship, design, and hinge movement capabilities.

522. HP's acts and practices deceived Plaintiffs Erickson, Harman, Roberts, and Nind and the Florida Subclass. In failing to disclose the Defect and suppressing material facts to purchasers of the Class Laptops, HP violated the FDUPTA and caused injuries to Plaintiff and the Florida Subclass.

523.   Therefore, Plaintiffs Erickson, Harman, Roberts, and Nind and the members of the Florida Subclass are entitled to recover actual, statutory, and all other damages to the extent permitted by law, as well as costs and reasonable attorneys' fees pursuant to FLA. STAT. § 501.2105, and any other just and appropriate relief.

524.   Plaintiffs Erickson, Harman, Roberts, and Nind and the members of the Florida Subclass are entitled to injunctive relief because it is likely that many of the Class Laptops will be used or purchased by unsuspecting members of the putative class, and injunctive relief could prevent harm to those who remain unaware of the Defect which can render the Class Laptops useless.

525.   Plaintiffs Erickson, Harman, Roberts, and Nind and the members of the Florida Subclass seek restitution of all monies that HP received as a result of selling the defective Class Laptops to Plaintiffs Erickson, Harman, Roberts, and Nind and the members of the Florida Subclass. As a result of this deception, Plaintiffs Erickson, Harman, Roberts, and Nind and the members of the Florida Subclass expended substantial sums of money and/or time for the repair and/or replacement of their Class Laptops. Plaintiffs Erickson, Harman, Roberts, and Nind are informed and believe that the amount of said restitution is unknown at this time but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

526.   Plaintiffs Erickson, Harman, Roberts, and Nind sent Defendant a notice letter prior to the filing of this action. Plaintiffs Erickson, Harman, Roberts, and Nind have yet to receive a response from HP. Defendant was also provided notice of these issues by numerous informal and formal complaints filed against it, including the instant Complaint and the various complaints detailed herein, and by numerous communications sent by Plaintiffs and other Class members.

**<u>Count V</u>**
**Violation of Fla. Stat. § 817.41 Prohibiting Misleading Advertising**
**(Asserted on behalf of the Florida Subclass)**

527.   Plaintiffs Erickson, Harman, Roberts, and Nind and the Florida Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

528.   Plaintiffs Erickson, Harman, Roberts, and Nind bring this claim individually and on behalf of the proposed Florida Subclass against HP.

529.   Florida's prohibition on misleading advertising declares unlawful for any person to do the following:

> "[M]ake or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

FLA. STAT. § 817.41(1).

530.   The statutory term "misleading advertising" includes statements made or disseminated to the public in "oral, written, electronic, or printed form or otherwise...which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading." FLA. STAT. § 817.40(5). Consumers have standing to state a claim under this statute by alleging that they relied on an identifiable misleading advertisement.

531.   As described herein, HP regularly and pervasively advertised the Class Laptops as portable with a compact design and/or as 2-in-1 laptops employing hinges enabling the machine to fold into various positions, while in fact those computers would cease to function if used as advertised.

532.   Plaintiffs Erickson, Harman, Roberts, and Nind, and members of the Florida Subclass were deceived by and relied upon Defendant's affirmative representations and failures to disclose, including but not limited to, the representations about the Class Laptops' quality, material and/or workmanship, design, and hinge movement capabilities.

533.   Defendant's statements regarding the purported quality and functionality of the Class Laptops were material to prospective purchasers, and were untrue, deceptive, and misleading.

534.   HP has violated FLA. STAT. § 817.41 by engaging in this false advertising scheme described herein.

157

535.   Plaintiffs Erickson, Harman, Roberts, and Nind, and the Florida Subclass members have been injured and have suffered economic damages from HP's false advertising scheme.

536.   Pursuant to FLA. STAT. § 817.41(6), Plaintiffs Erickson, Harman, Roberts, and Nind, and the Florida Subclass members are entitled to relief for HP's violations of the statute, including: 1) damages; 2) punitive damages; 3) costs and reasonable attorneys' fees; and 4) any other remedies prescribed by law.

## Count VI
### Violation of the Alabama Deceptive Trade Practices Act ("ADTPA"),
### ALA. CODE §§ 8-19-1, *et seq*.
### (On Behalf of the Alabama Subclass and in the alternative)

537.   Plaintiff Carson and the Alabama Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

538.   Plaintiff Carson brings this claim individually and on behalf of the proposed Alabama Subclass against HP.

539.   HP is a "person" as identified by ALA. CODE § 8-19-3(5).

540.   Plaintiff Carson and all other Alabama Subclass members are "consumers" as defined by ALA. CODE § 8-19-3(2).

541.   HP received notice pursuant to ALA. CODE § 8-19-10(2) concerning its wrongful conduct as alleged herein by Plaintiff Carson and Alabama Subclass members. However, sending pre-suit notice pursuant to ALA. CODE § 8-19-10(e) would have been an exercise in futility for Plaintiff, as HP has already been informed

of the allegedly unfair and unlawful conduct as described herein as of the date of the first-filed lawsuit, and has yet to offer Class members a remedy in accordance with similar consumer protection statutes.

542.   HP advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

543.   HP engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the ADTPA, including:

    a.   Knowingly designing, developing, manufacturing, advertising, and selling Class Laptops with significant defects that result in broken hinges that compromise portability, reliability, and usability so that consumers did not receive the benefit of their bargain;

    b.   Marketing and selling laptops that relied upon their hinge design as a means to achieve 2-in-1 functionality to differentiate Class Laptops from competing laptops, while at the same time using subpar parts or construction to increase profits;

    c.   Failing to take steps to secure the hinges from normal wear and tear;

    d.   Making affirmative public representations about the versatility of Class Laptops, while, at the same time, not ensuring that versatility in practice; and

e.  Concealing and/or failing to disclose material facts, including but not limited to, that in designing its Class Laptops, it failed to take measures to perform adequate quality control checks.

544.  HP's representations and omissions were material because they were likely to deceive ordinary, reasonable consumers.

545.  HP intended to mislead Plaintiff Carson and Alabama Subclass members and induce them to rely on its misrepresentations and omissions.

546.  Had HP disclosed to Plaintiff Carson and Alabama Subclass members material facts, including but not limited to, that in designing and manufacturing the Class Laptops, HP failed to take adequate quality control measures to ensure the durability and reliability of the laptop hinges, and was otherwise engaged in deceptive, common business practices, they would not have purchased the Class Laptops, or would have paid substantially less for them. Instead, HP represented that its Class Laptops were well-constructed and suited to their advertised purpose, namely to be used as a portable laptop and tablet computer. Plaintiff Carson and Alabama Subclass members acted reasonably in relying on HP's misrepresentations and omissions, because the Defect was hidden and could not be discovered prior to purchase and disassembly of the device.

547.  HP acted intentionally, knowingly, and maliciously to violate the ADTPA, and recklessly disregarded Plaintiff Carson's and Alabama Subclass

members' rights. HP's knowledge of the Class Laptops' defect put it on notice that the Class Laptops were not as it advertised.

548.   As a direct and proximate result of HP's deceptive acts and practices, Plaintiff Carson and Alabama Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with reliability and usability issues.

549.   HP's deceptive acts and practices caused substantial injury to Plaintiff Carson and Alabama Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competitors.

550.   Plaintiff Carson and the Alabama Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (1) actual damages or (b) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

<u>Count VII</u>
**Missouri Merchandise Practices Act,**
**MO. REV. STAT. §§ 407.010, *et seq*. (the "MMPA")**
**(On Behalf of the Missouri Subclass)**

551.   Plaintiffs Purvis and Harris and the Missouri Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

161

552.   Plaintiffs Purvis and Harris bring this claim individually and on behalf of the Missouri Subclass.

553.   HP is a "person" as defined by MO. REV. STAT. § 407.010(5).

554.   HP advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by MO. REV. STAT. § 407.101(4), (6) and (7).

555.   Plaintiffs Purvis and Harris and Missouri Subclass members purchased goods or services primarily for personal, family, or household purposes.

556.   HP engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

557.   HP's misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

558.   HP intended to mislead Plaintiffs Purvis and Harris and the Missouri Subclass members and induce them to rely on its misrepresentations and omissions.

559.   HP acted intentionally, knowingly, and maliciously to violate MMPA, and recklessly disregarded Plaintiff Purvis Plaintiffs Purvis and Harris' and Missouri Subclass members' rights. HP's knowledge of the Class Laptops reliability issues, including through customer complaints and forum posts, put it on notice that the Class Laptops were not as it advertised.

162

560.   As a direct and proximate result of HP's deceptive acts and practices, Plaintiffs Purvis and Harris and Missouri Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expenses in dealing with reliability issues.

561.   Plaintiffs Purvis and Harris and Missouri Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

### Count VIII
### Violation of Ohio's Consumer Sales Practices Act
### OHIO REV. CODE ANN. § 1345.01, *et seq*. (the "CSPA")
### (On Behalf of the Ohio Subclass)

562.   Plaintiffs Washington and Orenski and the Ohio Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

563.   Plaintiffs Washington and Orenski bring this claim individually and on behalf of the Ohio Subclass.

564.   HP is a "person" within the meaning of CSPA § 1345.01(B) and is a "[s]upplier... engaged in the business of effecting or soliciting consumer transactions..." within the meaning of CSPA § 1345.01(C).

565.   HP's acts and practices, as alleged in this Complaint, violate CSPA § 1345.02(A), (B)(1) and (B)(2) because they include unfair and deceptive acts and practices in connection with consumer transactions – the sale of defective laptops. Specifically, in violation of the CSPA, HP:

566.   Knowingly designed, developed, manufactured, advertised, and sold the Class Laptop with the Hinge Defect, resulting in broken hinges that compromise portability, reliability, and usability so that consumers did not receive the benefit of their bargain;

567.   Advertised and sold the 360-degree Class Laptops that relied upon its hinge design as a means to achieve 2-in-1 functionality to differentiate the Class Laptops from competing laptops while, at the same time, using subpar parts or construction to increase profits;

568.   Failed to take steps to secure the hinges from normal wear and tear;

569.   Made affirmative public representations and advertisements about the versatility of Class Laptops while, at the same time, failing to ensure such versatility in practice; and

570.   Concealed and/or failed to disclose material facts that included, but are not limited to, the fact that in designing the Class Laptops, HP failed to take measures to perform adequate quality control checks.

571.   HP also committed unconscionable acts and practices in violation of CSPA § 1345.03(B)(3) because it knew, at the time the consumer transactions were entered into, that the consumers were unable to receive a substantial benefit of the subject of the consumer transactions.

572.   Through its design, development, and pre-release testing of the hinges and display, as well as through other consumer complaints, HP knew that the Class Laptops' hinges and display were defective and prone to the failure described throughout this Complaint.

573.   HP was under a duty to disclose that the Class Laptop was defective because it had superior knowledge of the defect – stemming from its own production thereof, repair requests, complaints made directly to HP, online complaints, quality control and pre-release testing, and online reputation management.

574.   HP had ample means and opportunities to disclose to Plaintiffs Washington and Orenski and Ohio Subclass members that the Class Laptops were defective, including through advertisements, external packaging, and during the laptop's setup process. Despite its exclusive knowledge and these opportunities to disclose the defect, HP failed to disclose to Plaintiffs Washington and Orenski and Ohio Subclass members the defective nature of the Class Laptops either prior to purchase or before Plaintiffs Washington's and Orenski's and Ohio Subclass members' respective buyer's remorse periods expired.

575.   HP's misrepresentations and omissions were material. Had Plaintiffs Washington and Orenski and members of the Ohio Subclass known that the Class Laptops were defective, they either (a) would not have purchased them, (b) would not have purchased them at the prices they did, or (c) would have returned them during their respective buyer's remorse periods.

576.   Requisite notice to HP of its violations required under CSPA § 1345.09(B) has been satisfied here as HP's violations constitute acts and practices that have been declared to be deceptive or unconscionable by rules adopted under CSPA § 1345.05(b)(2). Additionally, notice to HP has likewise been satisfied under CSPA § 1345.09(B) due to deceptive and unconscionable acts and practices similar to those alleged herein having already been determined by courts of the State of Ohio to be in violation of both CSPA §§ 1345.02 and 1345.03.

577.   Plaintiffs Washington and Orenski and the Ohio Subclass were injured by HP's CSPA violations. As a result, Plaintiffs Washington and Orenski seek and are entitled to economic damages resulting from Defendant's violation of the CSPA, as well as to declaratory and injunctive relief under CSPA § 1345.09, such damages and relief to be further determined at trial.

578.   Because HP knowingly committed the violations alleged herein, Plaintiffs Washington and Orenski also seek attorneys' fees under CSPA § 1345.09(F)(2).

## Count IX
### Violation of California's Unfair Competition Law (the "UCL"),
### CAL. BUS. & PROF. CODE § 17200, *et seq*.
### (On Behalf of the California Subclass)

579.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

580.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther assert this claim on behalf of the California Subclass against HP.

581.   The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

### Unlawful

582.   HP's conduct is unlawful, in violation of the UCL, because it violates the Consumers Legal Remedies Act, the Song-Beverly Act, and California's False Advertising Law.

### Unfair

583.   HP's conduct is unfair in violation of the UCL because it violates California public policy, legislatively declared in the Song-Beverly Consumer Warranty Act, requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purpose. HP violated the Song-Beverly Act

because the Class Laptops are unfit for their most central purpose: to be used as laptops and tablets.

584.   HP acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner. HP engaged in unfair business practices and acts in at least the following respects:

585.   HP promoted and sold laptops it knew were defective because they contain hinges prone to failure;

586.   HP promoted and sold laptops with defective hinges despite knowing that users do not expect the hinges to materially degrade over time;

587.   HP failed to disclose that the Class Laptops are defective, and represented through advertising, its website, product packaging, press releases, and other sources that the Class Laptops possess particular qualities that were inconsistent with HP's actual knowledge of the product;

588.   HP made repairs and provided replacements that caused Plaintiffs Schauer, Cosman, Graner, Letson, and Luther to experience repeated instances of hinge failure, rendering the Limited Warranty useless;

589.   HP failed to exercise adequate quality control and due diligence over the Class Laptops before placing them on the market; and

590.   HP minimized the scope and severity of the problems with the Class Laptops, refusing to acknowledge that its hinges are defective, failing to provide

adequate relief to consumers, and suggesting to consumers that their aftermarket conduct resulted in the failure of the hinges when HP had actual knowledge of the true cause of the failure.

591.   The gravity of harm resulting from HP's unfair conduct outweighs any potential utility. The practice of selling defective laptops without providing an adequate remedy to cure the defect—and continuing to sell those laptops without full and fair disclosure of the defect—harms the public at large and is part of a common and uniform course of wrongful conduct.

592.   The harm from HP's conduct was not reasonably avoidable by consumers. The Class Laptops suffer from a latent defect, and even after receiving a large number of consumer complaints, HP did not disclose the defect. Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass did not know if, and had no reasonable means of discovering, that the Class Laptops' hinges were defective.

593.   There were reasonably available alternatives that would have furthered HP's business interests by satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledging the defect and providing a permanent fix for defective hinges; (2) adequately disclosing the defect to prospective purchasers; (3) extending the warranty for the HP Laptops; and (4) offering refunds or suitable non-defective replacement laptops to consumers with failed hinges.

**Fraud by Omission**

594.   HP's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

   a.   HP knowingly and intentionally concealed from Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass that the Class Laptops contain a latent defect that render the hinges prone to failure;

   b.   HP volunteered information to Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass through advertising and other means that the Class Laptops—and their hinges—were functional products without disclosing facts that would have materially qualified those partial representations; and

   c.   HP promoted the high quality and versatile features of the Class Laptops, including the hinges, despite knowing the Class Laptops are defective, and failed to correct its misleading partial disclosure.

595.   HP had ample means and opportunities to alert Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass of the defective nature of the Class Laptops, including on HP's webpages; in its advertisements of the Class Laptops; on the Class Laptops' external packaging; and as part of the standardized Class Laptop setup process. HP uniformly failed to disclose that the

Class Laptops are defective. Had HP disclosed that the Class Laptops are defective, Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass would not have purchased a Class Laptop, would not have purchased a Class Laptop at the prices they did, or would have returned their Class Laptop during their respective buyer's remorse periods.

596.   HP was under a duty to disclose the Defect because of its exclusive knowledge of the defect before selling the Class Laptops stemming from its quality control and pre-release testing, complaints made directly to HP, online complaints, and online reputation management would have put it on notice that the Class Laptops were not as advertised and because it made partial representations about the Class Laptops and their hinges without disclosing the hinge defect.

597.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass suffered injury in fact, including lost money or property, as a result of HP's unlawful, unfair, and fraudulent acts and omissions. Absent HP's unlawful, unfair, and fraudulent conduct, Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass would not have purchased a Class Laptop, would not have purchased a Class Laptop at the prices they did, or would have returned their Class Laptop for a refund during their respective buyer's remorse periods.

598.   Through its unlawful, unfair, and fraudulent conduct, HP acquired money directly and as passed on by HP's authorized resellers (i.e. Amazon, Best Buy, etc.).

599.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass accordingly seek appropriate relief, including (1) restitution under the UCL and (2) such orders or judgments as may be necessary to enjoin HP from continuing its unfair, unlawful, and fraudulent practices. Plaintiffs also respectfully seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure 1021.5.

## Count X
### Violation of California's Consumer Legal Remedies Act (the "CLRA")
### CAL. CIV. CODE § 1750, *et seq*.
### (On Behalf of the California Subclass)

600.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

601.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther assert this claim on behalf of the California Subclass against HP.

602.   HP is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "goods" within the meaning of sections 1761(a) and 1770.

172

603.   HP's acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(5), (7) and (9) because they include unfair and deceptive acts and practices in connection with transactions—the sale of defective laptops. In violation of the CLRA, HP:

604.   Represented that the Class Laptops had characteristics, uses, and benefits they do not have;

605.   Represented that the Class Laptops are of a standard, quality, or grade when in fact they are not; and

606.   Advertised the Class Laptops with intent not to sell them as advertised.

607.   Through its design, development, and pre-release testing of the display, as well as through consumer complaints, HP knew that the Class Laptops' hinges were defective and prone to failure.

608.   HP was under a duty to disclose that the Class Laptops are defective because it had superior knowledge of the defect—stemming from repairs, complaints made directly to HP, online complaints, its quality control and pre-release testing, as well as online reputation management —and because it made partial, materially misleading representations about the Class Laptops' high quality and versatile features, including the hinges.

609.   HP had ample means and opportunities to disclose to Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass that the Class

Laptops are defective, including through advertisements, on external packaging, and during the Class Laptops' setup process. Despite its exclusive knowledge and opportunities to disclose the Class Laptops' defective nature, HP failed to disclose the defects to Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass either prior to purchase or before Plaintiffs Schauer, Cosman, Graner, Letson, and Luthers' and the California Subclass' respective buyer's remorse periods expired.

610.   HP's misrepresentations and omissions were material. Had Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass known that the Class Laptops were defective, they would not have purchased the Class Laptops, would not have purchased them at the prices they did, or would have returned their Class Laptops during their respective buyer's remorse periods.

611.   Under California Civil Code section 1782(a), on their own behalf and on behalf of the Class, Plaintiffs Schauer, Cosman, Graner, Letson, and Luther separately sent notices to HP on March 21, 2022, April 19, 2022, and again on July 18, 2022, via letter sent by certified mail, return receipt requested to HP's principal place of business, advising HP of its violations and that it must correct, replace, or otherwise rectify the goods alleged to be in violation. HP failed to correct its business practices or provide the requested relief within 30 days. Accordingly, Plaintiffs

Schauer, Cosman, Graner, Letson, and Luther now seek monetary damages under the CLRA.

612.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther were injured by HP's CLRA violations. As a result, Plaintiffs Schauer, Cosman, Graner, Letson, and Luther are entitled to actual damages in an amount to be proven at trial, reasonable attorney's fees and costs, declaratory relief and punitive damages.

613.   In accordance with California Civil Code section 1780(d), Plaintiffs' CLRA venue declarations are attached as Exhibit A to this complaint.

## Count XI
### Violation of California's Song-Beverly Consumer Warranty Act, CAL. CIV. CODE § 1792, *et seq*. (On Behalf of the California Subclass)

614.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

615.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther bring this claim on behalf of the California Subclass against HP.

616.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther are "buyers" within the meaning of California Civil Code section 1791(b). Each purchased a Class Laptop in California.

617.   HP is a manufacturer within the meaning of California Civil Code section 1791(j). HP was responsible for producing the Class Laptops and directed and was involved in all stages of the production and manufacturing processes.

618.   The Class Laptops are a "consumer good[]" within the meaning of California Civil Code section 1791(a).

619.   HP impliedly warranted to Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass that the Class Laptops each purchased was "merchantable" under California Civil Code sections 1791.1(a) and 1792.

620.   HP breached the implied warranty of merchantability by producing, manufacturing, and selling laptops that were not of merchantable quality. The Class Laptops are defective, resulting in hinges that break and cannot support the screen. As a result, the laptops are difficult or impossible to transport and the 360-degree Class Laptops cannot perform the central 2-in-1 function. The Class Laptops are therefore unfit for the ordinary purpose for which a laptop computer is used and would not pass without objection in the laptop computer trade.

621.   The defect in the Class Laptops is latent. Though the Class Laptops appear operable when new, the Hinge Defect existed in the product at the time of sale and throughout the one-year Limited Warranty period. Accordingly, any subsequent discovery of the defect beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

622.   Any attempt by HP to disclaim its implied warranty obligations under the Song Beverly Act is ineffective due to its failure to adhere to California Civil Code sections 1792.3 and 1792.4. Those sections provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must 'in simple and concise language' state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." HP's attempted warranty disclaimer does not conform to sections 1792.3 and 1972.4.

623.   As a direct and proximate cause of HP's breaches of the Song-Beverly Consumer Warranty Act, Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass members have been damaged in an amount to be proven at trial.

624.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther seek costs and expenses, including reasonable attorney's fees, under California Civil Code section 1794.

## Count XII
### Violations of the Song-Beverly Consumer Warranty Act For Breach of Express Warranty
### CAL. CIV. CODE §§ 1790-1795.8
### (On Behalf of the California Subclass)

625.   Plaintiff Leston incorporates by reference each preceding paragraph as though sully set forth herein.

626.   Plaintiff Letson bring this claim on behalf of the California Subclass.

627.   Plaintiff Letson and the California Subclass members who purchased the Class Laptops are "buyers" within the meaning of CAL. CIV. CODE § 1791(b).

628.   The Class Laptops are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

629.   HP is a "manufacturer" of the Class Laptops within the meaning of CAL. CIV. CODE § 1791(j).

630.   HP made express warranties to Plaintiff Letson and the California Subclass within the meaning of CAL. CIV. CODE §§ 1791.2 & 1793.2(d).

631.   HP breached these express warranties by selling defective Class Laptops that required repair or replacement. Plaintiff Letson contacted HP but was told she needed to pay $100 for technical support or had to have purchased an extended warranty to receive assistance. She was told her warranty was expired, despite the fact that one year had not yet passed from her purchase. Accordingly, despite a reasonable number of attempted repairs, HP has failed to adequately repair the Defect.

632.   HP has failed to promptly replace or buy back the laptop of Plaintiff Letson and the proposed California Subclass as required under CAL. CIV. CODE § 1793.2(d)(2).

633.   Defendant's attempts to disclaim or limit the express warranty is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Defect.

634.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff Leston and members of the Class. Among other things, Plaintiff Leston and members of the Class had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Class Laptops were defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

635.   Plaintiff Leston and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

636.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

637.   Prior to the filing of this Complaint, Plaintiff Leston sent Defendant a pre-suit notice letter concerning the Defect setting forth Plaintiff's experiences with the Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty of merchantability on behalf of the Class or Subclass.

638.   As a direct and proximate result of HP's breach of its express warranties, Plaintiff Letson and the California Subclass received goods in a condition that substantially impair their value to Plaintiff and the other Subclass members. Plaintiff Letson and the California Subclass have been damaged as a result of, among other things, overpaying for the Class Laptops, the diminished value of the Class Laptops, the Class Laptops' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

639.   Pursuant to CAL. CIV. CODE §§ 1793.2 & 1794, Plaintiff Letson and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Laptops or the overpayment or diminution in value of their Class Laptops as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

640.   Pursuant to CAL. CIV. CODE § 1794(d), (e) Plaintiff Letson and the California Subclass are entitled to reasonable costs and attorneys' fees.

### Count XIII
### Violation of California's False Advertising Law,
### CAL. BUS. & PROF. CODE § 17500, *et seq.*
### (On Behalf of the California Subclass)

641.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

642.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther bring this claim on behalf of the California Subclass.

643.   Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public. As described above, and throughout this Complaint, Defendant misrepresented the Class Laptops and concealed the Defect.

644.   By its actions, Defendant disseminated uniform advertising regarding the Class Laptops into California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of CAL. BUS. & PROF. CODE § 17500, *et seq.* Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

645.   The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive because it does

181

not disclose the Defect—and how the Defect negatively affects consumers' experience with the Class Laptops by rendering the hinges inoperable.

646.   Defendant continued to misrepresent to consumers that its Class Laptops were reliable, durable, easy to transport and capable of operating as 2-in-1 devices, when, in fact, that was not the case as described in detail throughout this Complaint.

647.   In making and disseminating the statements alleged herein. Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law. Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass based their purchasing decisions on Defendant's omitted material facts. The revenue attributable to products sold in those false and misleading advertisements likely amounts to hundreds of millions of dollars. Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass were injured in fact and lost money and property as a result.

648.   The misrepresentations and non-disclosure by Defendant of the material facts described and details herein constitute false and misleading advertising and, therefore, constitute violations of CAL. BUS. & PROF. CODE § 17500, *et seq*.

649.   As a result of Defendant's wrongful conduct, Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass lost money in an

amount to be proven at trial. Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass are therefore entitled to restitution as appropriate for this cause of action.

650.   Plaintiffs Schauer, Cosman, Graner, Letson, and Luther and the California Subclass seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorney's fees and costs under California Code of Civil Procedure section 1021.5; injunctive relief; and other appropriate equitable relief.

## Count XIV
### Violation of the Oregon Unlawful Trade Practices Act, OR. REV. STAT. § 646.605 through 646.656
### (On Behalf of the Oregon Subclass)

651.   Plaintiff Sarah Householder and the Oregon Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

652.   Plaintiff Householder brings this claim on behalf of herself and on behalf of the members of the Oregon Subclass against Defendant.

653.   Defendant is a "person" under the Oregon Unlawful Trade Practices Act, ORS § 646.605(4).

654.   Plaintiff Householder's Class Laptop is a "good[]" under ORS § 646.605(6)(a).

655.   Defendant is and was engaged in "trade" and "commerce" as defined by ORS § 646.605(8).

656.   ORS § 646.607 provides, in relevant part, that a "person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person . . . [e]mploys any unconscionable tactic in connection with selling . . . goods or services."

657.   Defendant knew or should have known that the Class Laptops' hinges were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

658.   Defendants employed unconscionable tactics in selling the Class Laptops by not giving Plaintiff Householder and the Oregon Subclass members sufficient notice or warning regarding the defective hinges, intending that Plaintiff Householder and the Oregon Subclass rely upon HP's omissions when purchasing the Class Laptops. Plaintiff Householder and the Oregon Subclass members were deceived by Defendant concealing the defective hinges.

659.   Defendant also engaged in unlawful and deceptive practices in violation of ORS § 646.608 by causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the Class Laptops (ORS § 646.608(b)); representing that the Class Laptops have characteristics, uses, benefits, quantities and qualities that they do not have (ORS

§646.608(e)); representing that the Class Vehicles are of a particular standard, quality or grade when they are of another (ORS § 646.608(g)); concurrently with tender or delivery of the Class Laptops, failing to disclose known material defects or material nonconformities (ORS § 646.608(t)); and engaging in other unfair or deceptive conduct (ORS § 646.608(u)).

660.   Defendant also engaged in unlawful and deceptive practices in violation of ORS §§ 646.607 and 646.608 by failing to provide Plaintiff Householder and Oregon Subclass members the full cost to repair the Class Laptops and replace the defective hinges.

661.   Defendant knew or should have known that its conduct was a violation of the Oregon Unfair Trade Practices Act, ORS § 646.605 - .656, and therefore its conduct was willful. ORS § 646.605(10).

662.   Plaintiff Householder and Oregon Subclass members have suffered an ascertainable loss of money or property as a direct and proximate result of Defendant's willful use or employment of unlawful methods, acts or practices.

663.   Pursuant to ORS § 646.638, Plaintiff Householder and the Oregon Subclass members seek an order enjoining Defendant's unfair and/or deceptive practices, actual damages, punitive damages, attorney's fees and costs, and any other just and proper relief available under the Oregon UTPA.

664.   Pursuant to ORS § 646.638(2), Plaintiff Householder will serve the Oregon Attorney General with a copy of this Complaint.

**Count XV**
**Breach of the Implied Warranty of Merchantability**
**OR. REV. STAT. § 72.8020, *et seq*.**
**(On Behalf of the Oregon Subclass)**

665.   Plaintiff Sarah Householder and the Oregon Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

666.   Plaintiff Householder brings this claim on behalf of herself and on behalf of the members of the Oregon Subclass against Defendant HP.

667.   The Class Laptops are "consumer goods" as defined in ORS § 72.8010(1).

668.   Plaintiff Householder and the Oregon Subclass members are "buyers" and "retail buyers" as defined in ORS § 72.8010(2).

669.   HP is and was at all relevant times a "manufacturer" as defined in ORS § 72.8010(3) with respect to the Class Laptops.

670.   Pursuant to ORS § 72.8020, HP impliedly warranted that the Class Laptops are fit for the ordinary purposes for which they are used: displaying information in a standard laptop form factor and being easily portable, without defective hinges that fail to support the screen. With respect to the 360-degree Class

186

Laptops, HP impliedly warranted that the devices hinges would be sufficient to allow the device to be manipulated into various positions, including tablet mode.

671.   By marketing, advertising, distributing, and selling Class Laptops with the defective hinges, HP breached the implied warranty that the Class Laptops were merchantable and fit for use as personal computers.

672.   The defective hinges were installed in the Class Laptops at the time they left HP's manufacturing facilities and at the time they were sold to Plaintiff Householder and the Oregon Subclass.

673.   Plaintiff Householder and the Oregon Subclass members have performed the duties required of them under the terms of the warranties, except as may have been excused or prevented by HP's conduct or by operation of law in light of HP's unconscionable conduct.

674.   HP received timely notice about the defective hinges but has failed to rectify the problem and refused to offer an effective remedy.

675.   Plaintiff Householder and the Oregon Subclass members have had sufficient dealings with HP or its agents to establish privity of contract. Privity is not required in this case, however, because Plaintiff Householder and the Oregon Subclass members are the intended third-party beneficiaries of contracts between HP and its authorized sellers and are the intended beneficiaries of HP's implied warranties. The sellers were not intended to be the ultimate consumers of the Class

Laptops, and the warranties were designed for and intended to benefit the ultimate consumers only. Defendant's attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Defect.

676.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff Householder and the Oregon Subclass members. Among other things, Plaintiff Householder and the Oregon Subclass members had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

677.   Plaintiff Householder and the Oregon Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

678.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

679.   Prior to the filing of this Complaint, Plaintiff Householder sent Defendant a pre-suit notice letter concerning the Defect setting forth Plaintiff Householder's experiences with the Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty of merchantability on behalf of the Class or Subclass.

680.   As a direct and proximate result of HP's breach of the implied warranty of merchantability, Plaintiff Householder and the Oregon Subclass members suffered economic damages, including loss attributable to the diminished value of the Class Laptops.

**Count XVI**
**Violations of the Michigan Consumer Protection Act,**
**MICH. COMP. LAWS § 445.903, *et seq*.**
**(On Behalf of the Michigan Subclass)**

681.   Plaintiff Diana Hobert-Powell and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

682.   Plaintiff Hobert-Powell brings this claim on behalf of herself and on behalf of the members of the Michigan Subclass against Defendant.

683.   Plaintiff Hobert-Powell and members of the Michigan Subclass are "persons" within the meaning of MICH. COMP. LAWS § 445.902(1)(d).

684.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce...." MICH. COMP. LAWS § 445.903(1).

685.   Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendant's manufacture, sale, and use of the defective hinges, which Defendant failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the durability, reliability, and usability of the Class Laptops.

686.   Defendant's conduct as alleged above and herein constitutes practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics … that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omissions of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

687.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

688.    Defendant intended that Plaintiff Hobert-Powell and the Michigan Subclass members rely on their misrepresentations and omissions, so that Plaintiff Hobert-Powell and the Michigan Subclass members would purchase Class Laptops.

689.    Had Defendant disclosed the omitted material, Plaintiff Hobert-Powell and the Michigan Subclass members would not have purchased the Class Laptops or would have paid less for them.

690.    Defendant's violations present a continuing risk to Plaintiff Hobert-Powell and Michigan Subclass members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

691.    Plaintiff Hobert-Powell and the Michigan Subclass members were injured as a result of Defendant's conduct. Plaintiff Hobert-Powell and the Michigan Subclass members overpaid for the Class Laptops and did not receive the benefit of their bargain, and thus the Class Laptops have suffered a diminution in value.

692.    Defendant's conduct proximately caused the injuries to Plaintiff Hobert-Powell and the Michigan Subclass members.

693.   Defendant is liable to Plaintiff Hobert-Powell and the Michigan Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## Count XVII
### Breach of the Implied Warranty of Merchantability,
### MICH. COMP. LAWS § 440.314
### (On Behalf of the Michigan Subclass)

694.   Plaintiff Diana Hobert-Powell and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

695.   Plaintiff Hobert-Powell brings this claim on behalf of herself and on behalf of the Michigan Subclass members against Defendant.

696.   HP is and was at all relevant times a merchant with respect to Class Laptops within the meaning of MICH. COMP. LAWS § 440.2314(1).

697.   Pursuant to MICH. COMP. LAWS § 440.2314, a warranty that the Class Laptops were in merchantable condition is implied by law in the instant transactions.

698.   The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops and 2-in-1 devices are used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display in either Laptop or tablet mode, constituting a usability hazard to Plaintiff Hobert-Powell and Michigan

Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

699.   Privity is not required in this case because Plaintiff Hobert-Powell and the Michigan Subclass were the intended third-party beneficiaries of contracts between HP and its sellers; specifically, they are the intended beneficiaries of HP's implied contracts. The sellers were not intended to be the ultimate consumers of the Class Laptops and have no rights under the warranty agreements provided with the Class Laptops; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

700.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website forums and the instant Complaint, within a reasonable amount of time after the Defect was discovered.

701.   Defendant's attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Defect.

702.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff Hobert-Powell and the Michigan Subclass members. Among other things, Plaintiff Hobert-Powell and the Michigan

Subclass members had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

703.  Plaintiff Hobert-Powell and the Michigan Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

704.  Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

705.  Prior to the filing of this Complaint, Plaintiff Hobert-Powell sent Defendant a pre-suit notice letter concerning the Defect setting forth t Plaintiff Hobert-Powell's experiences with the Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty of merchantability on behalf of the Class or Subclass.

706.  As a direct and proximate result of HP's breach of the warranties of merchantability, Plaintiff Hobert-Powell and the Michigan Subclass members have been damaged in an amount to be proven at trial.

## Count XVIII
### Fraud by Concealment
### (On Behalf of the Michigan Subclass)

707.   Plaintiff Diana Hobert-Powell and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

708.   Plaintiff Hobert-Powell brings this claim on behalf of herself and on behalf of the Michigan Subclass members against Defendant.

709.   As set forth above, Defendant know and intentionally concealed and/or suppressed material facts concerning the usability of the Class Laptops.

710.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff Hobert-Powell and the Michigan Subclass members to purchase the Class Laptops at a higher price, which did not match their true value.

711.   Defendant still has not made full and adequate disclosure and continues to defraud Plaintiff Hobert-Powell and Michigan Subclass members.

712.   Plaintiff Hobert-Powell and the Michigan Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff Hobert-Powell's and the Michigan Subclass members' actions were justified. Defendant had exclusive

control of the material facts and such facts were not known to the public, to Plaintiff Hobert-Powell, or the Michigan Subclass members.

713.   Defendant owed Plaintiff Hobert-Powell and members of the Michigan Subclass a duty to disclose the true durability, reliability, and usability of the Class Laptops, because Plaintiff Hobert-Powell and the Michigan Subclass members relied on Defendant's material representations that the Class Laptops they were purchasing were functional and free from defects.

714.   Plaintiff Hobert-Powell and the members of the Michigan Subclass relied on Defendant's failure to disclose the faulty and defective nature of the hinges in purchasing the Class Laptops.

715.   As a result of their reliance, Plaintiff Hobert-Powell and the Michigan Subclass members have been injured in an amount to be proven at trial, including, but not limited to, actual damages, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their Class Laptops.

716.   Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff Hobert-Powell's and the Michigan Subclass members' rights to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Count XIX**
**Unjust Enrichment**

196

**(In the alternative on Behalf of the Michigan Subclass)**

717.   Plaintiff Diana Hobert-Powel and the Michigan Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

718.   Plaintiff Hobert-Powell brings this action on behalf of herself and the Michigan Subclass against Defendant HP.

719.   As a result of Defendant's wrongful and fraudulent acts and omissions, as set forth above, pertaining to the concealing of the defective hinges described herein, HP charged a higher price for the Class Laptops than the Class Laptops' true value and HP obtained monies rightfully belonging to Plaintiff Hobert-Powell and the Michigan Subclass members.

720.   HP enjoyed the benefit of increased financial gains, to the detriment of Plaintiff Hobert-Powell and the Michigan Subclass members, who paid a higher price for laptops which actually had lower values. It would be inequitable and unjust for HP to retain these wrongfully obtained profits.

721.   Plaintiff Hobert-Powell, therefore, seeks an order establishing HP as constructive trustee of the profits unjustly obtained, plus interest.

**Count XXI**
**New Jersey Consumer Fraud Act**
**N.J. STAT. ANN. § 56:8**
**(On behalf of the New Jersey Subclass)**

722.    Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

723.    This claim is brought by Plaintiffs Kaplitt and Dobkin individually under the laws of New Jersey and on behalf of all members of the Class who reside in New Jersey (the "New Jersey Subclass").

724.    The marketing and branding of the Class Laptops are advertisements within the meaning of N.J. STAT. ANN. § 56:8-1(a).

725.    The Class Laptops are merchandise within the meaning of N.J. STAT. ANN. § 56:8-1(c).

726.    Defendant is a "person" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

727.    N.J. STAT. ANN. § 56:8-2 provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

728.    As explained above, Defendant knew or had reason to know of the defective nature of the Class Laptops prior to the branding, marketing, and sales of

those products. Defendant therefore knowingly and unconscionably concealed, misrepresented, and omitted material facts with the intent that consumers would rely on such concealments, misrepresentations, and omissions in purchasing the defective Class Laptops.

729.   Defendant's concealments, misrepresentations, and omissions were material because Plaintiffs Kaplitt and Dobkin and New Jersey Class members would not have purchased the HP Class Laptops had they known of their defective nature.

730.   Pursuant to N.J. STAT. ANN. § 56:8-2.11, Defendant is liable for full refunds of all moneys acquired by means of its unlawful branding, marketing, and sales, as well as treble damages. Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass represented in this claim seek all relief dictated by this law, in addition to such other relief as is deemed just and proper.

## Count XXII
**Breach of the Implied Warranty of Merchantability**
**(Asserted on Behalf of the New Jersey Subclasses)**

731.   Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

732.   This claim is brought by Plaintiffs Kaplitt and Dobkin individually under the laws of New Jersey and on behalf of all members of the New Jersey Subclass.

733.   HP is a merchant who regularly engages in the manufacture, marketing, and distribution of computer equipment, including the Class Laptops, which Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members purchased. By operation of law, HP impliedly warranted to Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members that the products were fit for their intended use.

734.   Contrary to the implied warranties, the Class Laptops were not fit for their intended use due to their propensity for the plastic casing around the hinges to break. HP knew or had reason to know of the defective nature of the laptops prior to issuing the implied warranties.

735.   While the defective manufacturing was present at the time the warranties were issued, Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members could not have discovered it at that time. At the time of purchase, Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members reasonably expected the Class Laptops to be fit for their intended use, and they did not receive the goods for which they bargained. Had they known of the defective manufacturing, they would not have made the purchases.

736. Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members used the Class Laptops in the ordinary manner for which they were intended. The products were not altered, and no action by Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members caused or contributed to the Hinge Defect.

737. In instances where Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members did not purchase the vehicles directly from Defendant, they are still the intended beneficiaries of the implied warranties, as the end users whom the retailers purchased the products to sell to and are therefore entitled to enforce the implied warranties against Defendant.

738. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. 50 § 2301 *et seq*., Defendant is prohibited from disclaiming or limiting the implied warranty of merchantability so as to not cover the defective laptops.

739. Defendant's attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Defect.

740. The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass had no meaningful choice in determining these time limitations, terms which

unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

741.   Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

742.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

743.   Prior to the filing of this Complaint, Plaintiffs Kaplitt and Dobkin sent Defendant a pre-suit notice letter concerning the Defect setting forth Plaintiffs Kaplitt's and Dobkin's experiences with the Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty of merchantability on behalf of the Class or Subclass.

744.  As a result of Defendant's breach of the implied warranty of merchantability, Plaintiffs Kaplitt and Dobkin and the New Jersey Subclass members suffered damages of an amount to be determined at trial.

## Count XXIII
## Unjust Enrichment/Restitution

**(Asserted in the alternative on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses)**

745.   Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

746.   HP has been enriched as a result of the conduct described in this Second Amended Complaint.

747.   HP received a benefit from Plaintiffs and other members of the Class in the form of payment for products purchased, including purchases made on HP's website.

748.   Defendant knowingly and willingly accepted and enjoyed the benefits of the sales.

749.   Retention of these benefits by HP would be unjust and inequitable because HP received these benefits by engaging in a false, deceptive, and misleading scheme to market the Class Laptops as premium, portable, fully functional machines and/or 2-in-1 laptop computers, and by engaging in the unlawful, unjust, and wrongful acts and practices described in this Second Amended Complaint.

750.   As the products were unfit for their intended use, Plaintiffs and Class members did not receive the goods they bargained for.

751.   In the instances where Class members did not purchase the defective products directly from Defendant, they are nonetheless the ultimate victims of the

unjust enrichment, as the end purchasers whom the retailers sold the products to in turn.

752.   The benefits, in whole or in part, that HP received were not legitimately earned and came at the expense of Plaintiffs and the other members of the Class.

753.   HP knows that the above-described conduct is unjust, inequitable, and wrongful, but systematically engages in this scheme anyway in order to gain unfair advantages and reap unearned financial benefits.

754.   HP is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for the rights of Plaintiffs and other Class members.

755.   Plaintiffs and the Class members are entitled to restitution and disgorgement of all amounts unjustly retained by HP, as well as other appropriate relief.

## Count XXIV
### Fraudulent Omission or Concealment
### (Asserted on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses)

756.   Plaintiffs and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

757.   At all relevant times, HP was engaged in the business of designing, manufacturing, distributing, and selling the Class Laptops.

758.   HP, directly and through its representatives or agents, delivered Class Laptops to its distributors and various other distribution channels.

759. HP willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Class Laptops.

760. Rather than disclose the Hinge Defect to Plaintiffs and other prospective purchasers of Class Laptops, HP concealed the Hinge Defect.

761. HP omitted and concealed this material information to drive up sales, maximize profits, and maintain its market power, as consumers would not purchase Class Laptops, or would pay substantially less for them, had they known the truth.

762. Plaintiffs and Class members could not have discovered the Hinge Defect prior to it manifesting in their Class Laptops.

763. HP was in exclusive possession of information concerning the Hinge Defect's existence, which would have been material to reasonable consumers, and thus was obligated to disclose the Hinge Defect to Plaintiffs and Class members, at the point of sale or otherwise.

764. HP also had a duty to disclose because it made many general affirmative representations about the quality, warranty, maneuverability, and durability of the Class Laptops as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, functionality, and durability.

765. Even when faced with complaints regarding the Hinge Defect, HP often refused to acknowledge the issue. As a result, Class members were misled as to the

true condition of the Class Laptops once at the time of purchase and often again when the Hinge Defect was complained of to HP. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Laptops purchased by Plaintiffs and Class members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased, are material concerns to a consumer.

766.   Although HP had a duty to disclose the Hinge Defect to consumers, it failed to do so.

767.   Plaintiffs and Class members sustained injury at the time they purchased Class Laptops that suffer from the Hinge Defect, which Defendant failed to disclose and actively concealed from them. Had Plaintiffs and the Class known about the Hinge Defect at the time of purchase, they would have paid substantially less for their Class Laptops, or would not have purchased them and avoided the significant out-of-pocket costs they have or will incur to repair or replace Class Laptops once the Hinge Defect manifests.

768.   HP's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and well-being, and in part to enrich itself at the expense of consumers. HP's acts were done to gain commercial advantage over competitors, and to drive consumers

away from consideration or competitor devices. HP's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## Count XXV
**Violation of Georgia's Fair Business Practices Act – Placeholder Claim Only**
**GA. CODE ANN. §10-1-390, *et seq*.)**
**(Asserted On Behalf Of The Georgia Subclasses)**

769.   Plaintiff Nash and the Georgia Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

770.   Plaintiff Nash brings this claim on behalf of himself and the Georgia Subclass.

771.   Plaintiff Nash intends to assert a claim under the Georgia Fair Business Practices Act ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade ... if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," GA. CODE. ANN. § 10-1-393(b). Plaintiff Nash will make a demand in satisfaction of GA. CODE. ANN. § 10-1-399(b) upon HP, and may amend

this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed.

772.   This Cause of Action is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA at this time.

### Count XXVI
### Violation of Georgia's Uniform Deceptive Trade Practices Act
### GA. CODE ANN. § 10-1-370, *et seq.*
### (Asserted on behalf of the Georgia Subclasses)

773.   Plaintiff Nash and the Georgia Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

774.   Plaintiff Nash brings this claim on behalf of himself and the Georgia Subclass.

775.   Defendant, Plaintiff Nash, and the Georgia Subclass are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN. § 10-1-371(5).

776.   The Georgia UDTPA prohibits "deceptive trade practices," which includes the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN. § 10-1-372(a).

777.   In the course of doing business, Defendant misrepresented material facts concerning the Class Laptops. As alleged herein, misrepresented through its

advertisements that the hinges utilized in the Class Laptops could be reliably used to open and closed the laptops without issue and maintain their portable nature.

778. In the course of doing business, Defendant also knowingly failed to disclose, suppressed, concealed, and/or omitted material facts regarding the defective hinges and the durability hazards associated with it, and misrepresented the standard, quality, or grade of the Class Laptops, which directly caused harm to Plaintiff Nash and the members of the Georgia Subclass. Moreover, Defendant actively suppressed the fact that the hinges were defective and presented durability concerns because of materials, workmanship, and/or manufacturing defects.

779. Defendant thus violated the Georgia UDTPA by, at minimum: (1) representing that the Class Laptops have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Laptops are of a particular standard and quality when they are not; (3) advertising the Class Laptops with the intent not to sell them as advertised; (4) willfully using, in any oral or written representation, exaggeration, falsehood, innuendo or ambiguity as to a material fact; (5) willfully failing to state a material fact, or willfully concealing, suppressing or omitting a material fact; and (6) otherwise engaging in an unconscionable act or practice in connection with a consumer transaction.

780.   Defendant had the duty to Plaintiff Nash and the members of the Georgia Subclass to disclose the defective hinges and the defective nature of the Class Laptops because:

a.   Defendant possessed exclusive knowledge that they were manufacturing, selling, and distributing laptops throughout the United States that contained the defective hinges;

b.   Plaintiff Nash and the members of the Georgia Subclass could not reasonably have been expected to learn or discover that the Class Laptops had defects until those defects became manifest; and

c.   Defendant knew that Plaintiff Nash and the members of the Georgia Subclass could not reasonably have been expected to learn about or discover the defective hinges and the effect they would have on the Class Laptops' reliability and portability.

781.   In failing to disclose the defective hinges and its resulting reliability and portability concerns, Defendant has knowingly and intentionally concealed and omitted material facts and breached its duty to disclose.

782.   The facts Defendant concealed or did not disclose to Plaintiff Nash and the members of the Georgia Subclass are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Laptops or pay a lesser price. Had Plaintiff Nash and the members of the

Georgia Subclass known the Class Laptops were defective, they would not have purchased the Class Laptops or would have paid less for them.

783.   Defendant knowingly and intentionally misrepresented material facts regarding the Class Laptops, intending for Plaintiff Nash and the members of the Georgia Subclass to rely on those material misrepresentations when choosing to purchase a Class Laptop instead of laptops marketed and sold by Defendant's competitors.

784.   Plaintiff Nash and members of the Georgia Subclass justifiably relied on Defendant's material misrepresentation.

785.   Defendant's violations present a continuing risk to Plaintiff Nash as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

786.   Plaintiff Nash and the members of the Georgia Subclass suffered ascertainable loss directly and proximately resulting from Defendant's Georgia UDTPA violations. Plaintiff Nash and the members of the Georgia Subclass have suffered actual damages and/or injury in fact, including, inter alia, the difference in value between the Class Laptops promised and warranted, and the Class Laptops utilizing the defective hinges.

787.   Plaintiff Nash and the members of the Georgia Subclass seek actual damages against Defendant in an amount to be determined at trial and statutory,

treble, and/or punitive damages under the Georgia UDTPA. Plaintiff Nash and the members of the Georgia Subclass also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the Georgia UDTPA.

**Count XXVII**
**Violation of the Washington State Consumer Protection Act**
**REV. CODE WASH. ANN. §§ 19.86.010, e*t seq*.**
**(Asserted on behalf of the Washington Subclasses)**

788.   Plaintiff Drake and the Washington Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

789.   Plaintiff Drake brings this claim on behalf of herself and on behalf of the members of the Washington Subclass.

790.   Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendant's manufacture, sale, and use of the defective hinges, which Defendant failed to adequately investigate, disclose, and remedy, and its misrepresentations and omissions regarding the reliability, durability, and portability of the Class Laptops.

791.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

792.   Defendant's actions impact the public interest because Plaintiff Drake was injured in the same way as tens of thousands of others purchasing Defendant's

Class Laptops as a result of Defendant's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.

793.   Plaintiff Drake and the Washington Subclass members were injured as a result of Defendant's conduct. Plaintiff Drake and the Washington Subclass overpaid for the Class Laptops, did not receive the benefit of their bargain, and are left with laptops that have suffered a diminution in value.

794.   Defendant's conduct proximately caused the injuries to Plaintiff Drake and the Washington Subclass members.

795.   Defendant is liable to Plaintiff Drake and the Washington Subclass members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

796.   Pursuant to Wash. Rev. Code. Ann. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

**Count XXVIII**
**Violation of the Arkansas Deceptive Trade Practices Act,**
**A.C.A. §§ 4-88-101, *et seq.***
**(Asserted on behalf of the Arkansas Subclasses)**

797.   Plaintiff Meola and the Arkansas Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

798.   Plaintiff Meola brings this claim on behalf of herself and on behalf of the members of the Arkansas Subclass.

799.   HP is a "person" as defined by A.C.A. § 4-88-102(5).

800.   HP's products and services are "goods" and "services" as defined by A.C.A. §§ 4-88-102(4) and (7).

801.   HP advertised, offered, or sold goods or services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

802.   The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, et seq., prohibits unfair, deceptive, false, and unconscionable trade practices.

803.   HP engaged in acts of deception and false pretense in connection with the sale and advertisement of services in violation of A.C.A. § 4-88-108(1); the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression or omission in violation of A.C.A. § 4-88-108(2); and engaged in the following deceptive and unconscionable trade practices defined in A.C.A. § 4-88-107:

> a. Knowingly designing, developing, manufacturing, advertising, and selling Class Laptops with significant hinge defects that result in reliability, durability, and portability risks so that consumers did not receive the benefit of their bargain;

214

b.  Failing to take steps to secure the Class Laptop hinges from premature failure;

c.  Making affirmative public representations about the durability of the Class Laptops, while at the same time not ensuring the durability of the hinges themselves; and

d.  Concealing and/or failing to disclose material facts, including but not limited to, that in designing the Class Laptops, it failed to take measures to protect the structural integrity of the hinges from normal wear and tear, while knowing that the Class Laptops were to be used in such a manner that necessitated the opening and closing of the lid, and thus the use of the hinges.

804.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

805.  Defendant intended to mislead Plaintiff Meola and Arkansas Subclass members and induce them to rely on its misrepresentations and omissions.

806.  Had Defendant disclosed to Plaintiff Meola and Arkansas Subclass members material facts, including but not limited to, that in producing the Class Laptops, it failed to take quality control measures to protect the Class Laptops, including the hinges responsible for opening and closing the laptop screens, from premature failure that compromised the reliability, durability, and portability of the

Class Laptops, and was otherwise engaged in deceptive, common business practices, Defendant would have been unable to continue in business and it would have been forced to disclose the defective hinges in the Class Laptops. Instead, Defendant represented that its Class Laptops were reliable, durable, portable, and tested to meet those expectations. Plaintiff Meola and Arkansas Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

807.   Defendant acted intentionally, knowingly, and maliciously to violate Arkansas's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Meola's and Arkansas Subclass members' rights. Defendant's knowledge of the Class Laptops' durability and portability issues—from, among other sources, internal testing, consumer complaints, and warranty data put it on notice that the Class Laptops were not as it advertised.

808.   As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts or practices and Plaintiff Meola's and Arkansas Subclass members' reliance thereon, Plaintiff Meola and Arkansas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with mitigation and repair.

809.   Plaintiff Meola and Arkansas Subclass members seek all monetary and non-monetary relief allowed by law, including actual financial losses, injunctive relief, and reasonable attorneys' fees and costs.

## Count XXIX
### Violation of the Massachusetts Consumer Protection Act – Placeholder Claim Only
### MASS. GEN. LAWS CH. 93A, §§ 1, *et seq.*
### (Asserted on behalf of the Massachusetts Subclass)

810.   Plaintiffs Sakharuk and DiMartino and the Massachusetts Subclass incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

811.   Plaintiffs Sakharuk and DiMartino bring this claim individually and on behalf of the proposed Massachusetts Subclass against HP.

812.   Plaintiffs Sakharuk and DiMartino intend to assert a claim under the Massachusetts Consumer Protection Act ("MCPA") against HP, which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS. CH. 93A, § 2(1). Plaintiffs Sakharuk and DiMartino will make a demand in satisfactions of MASS. GEN. LAWS. CH. 93A § 9(3) upon HP, and may amend this complaint to assert claims under the MCPA once the required 30 days have elapsed.

813.   This Cause of Action is included for purposes of notice only and is not intended to actually assert a claim under the MCPA at this time.

## Count XXX
### Violation of the Massachusetts Implied Warranty of Merchantability
### MASS. GEN. LAWS CH. 106, § 2-314
### (Asserted on behalf of the Massachusetts Subclass)

814.   Plaintiffs Sakharuk and DiMartino and the Massachusetts Subclass incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

815.   Plaintiffs Sakharuk and DiMartino bring this claim individually and on behalf of the proposed Massachusetts Subclass against HP.

816.   Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass purchased Class Laptops from HP's authorized retailers for non-commercial purposes.

817.   HP is a merchant with respect to consumer laptop computers. Class Laptops are goods within the meaning of the Uniform Commercial Code as adopted by Massachusetts.

818.   HP impliedly warranted to the public and owners of Class Laptops that Class Laptops were merchantable and fit for the ordinary purposes for which consumer laptop computers are used.

819.   As a manufacturer of consumer goods, HP is precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

820.   HP failed to provide written notice to Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass of implied warranty exclusions at time of purchase because the warranty exclusions were in the sealed shipping box and was ineffective since it was not conspicuous within the meaning of MASS. GEN. LAWS. CH. 106, § 2-316.

821.   Class Laptops were not of merchantable quality and were unfit for the ordinary purposes for which laptop computers are used because of the Hinge Defect as described above.

822.   HP received adequate notice of its breach of the implied warranty of merchantability and request for repair or replacement.   In the alternative, the Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass, as indirect purchasers were not required to issue notice of the warranty breach to HP and/or lack of notice of warranty breach did not result in any prejudice to HP. HP declined to offer Plaintiffs Sakharuk and DiMartino an effective remedy for their defective Class Laptops.

823.   HP breached the implied warranty of merchantability by producing, manufacturing, and selling laptops that were not of merchantable quality. The Class Laptops are defective, resulting in hinges that break and cannot support the screen. As a result, the laptops are difficult or impossible to transport and the Class Laptops cannot perform their central function. The Class Laptops are therefore unfit for the

ordinary purpose for which a laptop computer is used and would not pass without objection in the laptop computer trade.

824. The defect in the Class Laptops is latent. Though the Class Laptops appear operable when new, the Hinge Defect existed in the product at the time of sale and throughout the one-year Limited Warranty period. Accordingly, any subsequent discovery of the defect beyond that time does not bar an implied warranty claim under Mass. Gen. Laws. ch. 106, § 2-316.

825. These above enumerated defects render the Class Laptop unfit for serving their essential function as an easily portable laptop computer at the time the Class Laptops were delivered.

826. Class Laptops are not reliable, and Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass of these laptop computers have lost confidence in the ability of the Class Laptops to perform the function of being a reliable portable computer which can open and close or change viewing position as designed.

827. Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass reasonably relied upon the expertise, skill, judgment and knowledge of HP and upon its implied warranty that Class Laptops were of merchantable quality and fit for their intended use.

828.    Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass relied on implied warranties of merchantability made by HP concerning the Class Laptops and sustained an ascertainable loss and financial injury resulting from the breach of those warranties by HP.

829.    Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass could not have reasonably discovered the defective condition of the Class Laptops at the time of purchase.

830.    HP's breach of implied warranties of merchantability was the direct and proximate cause of financial harm to Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass.

831.    Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass demand judgment against HP including monetary damages, interest, costs and attorneys' fees.

### Count XXXI
**Violation of the Massachusetts Express Warranty**
**MASS. GEN. LAWS CH. 106, §2-313**
**(Asserted on behalf of the Massachusetts Subclass)**

832.    Plaintiffs Sakharuk and DiMartino and the Massachusetts Subclass incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

833.    Plaintiffs Sakharuk and DiMartino bring this claim individually and on behalf of the proposed Massachusetts Subclass against HP.

221

834.   HP expressly warranted to the public including Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass, that Class Laptops were merchantable and fit for the ordinary purposes for which consumer laptop computers are used.

835.   HP extensively advertised that Class Laptops were superior in construction and extolled the quality and virtues of Class Laptops including superior design and manufacture, safety, durability, reliability and performance and that the Class Laptop would open and close reliably in excess of 50,000 times.

836.   Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass were unaware of any express warranty exclusions because they did not receive their Class Laptops' Owner's Manual and warranty materials that contained any purported warranty exclusions at the time of purchase. Their Class Laptops and shipping boxes were not marked "irregular", "factory seconds", "as is", "with all faults" or "damaged". Class Laptops' Owner's Manuals and warranty materials were in the sealed shipping box that contained the laptop computer.[79] Consequently, Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass were not presented with an opportunity to review (let alone bargain for) warranty provisions at the time of purchase of their Class Laptop.

---

[79] Even if the Owner's Manual and warranty materials had been present for pre-purchase review, the warranty exclusion clause failed to satisfy conspicuity and other requirements of MASS. GEN. LAWS. CH. 106, § 2-316.

837.   HP represented that Class Laptops were of a particular standard or quality when they in fact were not.

838.   HP's representations were made in newspapers, magazines, television and Internet advertising viewed by Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass.  Other representations were made by HP's authorized retail vendors who relied upon their training, promotional publications and statements contained in materials generated by HP including but not limited to Class Laptop Owner's Manuals.

839.   HP breached its express warranties in that Class Laptops were defective with respect to design and manufacture.

840.   HP received adequate notice of its breach of its express warranties and failed to cure the warranty breaches. In the alternative, Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass, as indirect purchasers were not required to issue notice of the warranty breach to HP and/or lack of notice of warranty breach did not result in any prejudice to HP.

841.   Class Laptops are not reliable, and Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass of these laptop computers have lost confidence in the ability of the Class Laptops to perform the function of being a reliable portable computer which can open and close or change viewing position as designed.

842. Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass reasonably relied upon the expertise, skill, judgment and knowledge of HP and upon its express warranty that Class Laptops were of merchantable quality and fit for their intended use.

843. Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass relied on express warranties of merchantability made by HP concerning the Class Laptops and sustained an ascertainable loss and financial injury resulting from the breach of those warranties by HP.

844. Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass could not have reasonably discovered the defective condition of the Class Laptops prior to failure.

845. HP's breach of its express warranties was the direct and proximate cause of cause of financial harm to Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass.

846. The express warranty remedy set out in the Owner's Manual of the Class Laptops fails of its essential purpose under MASS. GEN. LAWS. CH. 106, § 2-719(2) because Class Laptops are not repairable and the limitation of consequential damages is unconscionable under MASS. GEN. LAWS. CH. 106, § 2-719(3) because of the conduct of HP described supra.

847.   Plaintiffs Sakharuk and DiMartino and the members of the Massachusetts Subclass demand judgment against HP including monetary damages, interest, costs and attorneys' fees.

**Count XXXII**
**Breach of the Implied Warranty**
**A.C.A. § 4-2-314 *et seq*.**
**(On Behalf of the Arkansas Subclass)**

848.   Plaintiff Meola and the Arkansas Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

849.   Plaintiff Meola (for purposes of this section, the "Arkansas Plaintiff") brings this claim on behalf of herself and on behalf of the Arkansas Subclass members against Defendant.

850.   HP is and was at all relevant times a merchant with respect to Class Laptops within the meaning of A.C.A. § 4-2-104(1).

851.   The Class Laptops are and were at all relevant times goods within the meaning of A.C.A. § 4-2-105(1).

852.   Pursuant to A.C.A. § 4-2-314, a warranty that the Class Laptops were in merchantable condition is implied by law in the instant transactions.

853.   Pursuant to A.C.A. § 4-2-315, a warranty that the Class Laptops are fit for a particular purpose is implied by law in the instant transactions.

854.   The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops are

used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display, constituting a usability hazard to the Arkansas Plaintiff and Arkansas Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

855.   As a result of the laptops not being merchantable or fit for their ordinary purpose, Plaintiff Meola and the Arkansas Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with mitigation and repair.

856.   Privity is not required in this case because the Arkansas Plaintiff and the Arkansas Subclass were the intended third-party beneficiaries of contracts between HP and its sellers; specifically, they are the intended beneficiaries of HP's implied contracts. The sellers were not intended to be the ultimate consumers of the Class Laptops and have no rights under the warranty agreements provided with the Class Laptops; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

857.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website

forums and the instant Complaint, within a reasonable amount of time after the Hinge Defect was discovered.

858.   Defendant's attempts to disclaim or limit the implied warranty vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Hinge Defect.

859.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, the Arkansas Plaintiff and members of the Arkansas Subclass had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Arkansas Subclass members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

860.   The Arkansas Plaintiff and Arkansas Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

861.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Hinge Defect became public.

862.   Prior to the filing of this Complaint, Plaintiffs sent Defendant a pre-suit notice letter concerning the Hinge Defect setting forth Plaintiff's experiences with the Hinge Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty on behalf of the Class or Subclass.

863.   As a direct and proximate result of HP's breach of the implied warranties, the Arkansas Plaintiff and the Arkansas Subclass members have been damaged in an amount to be proven at trial.

## Count XXXIII
### Breach of the Implied Warranty
### ALA. CODE 7-2-314 *et seq.*
### (On Behalf of the Alabama Subclass)

864.   Plaintiff Carson and the Alabama Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

865.   Plaintiff Carson (for purposes of this section, the "Alabama Plaintiff") brings this claim on behalf of herself and on behalf of the Alabama Subclass members against Defendant.

866.   HP is and was at all relevant times a merchant with respect to Class Laptops within the meaning of ALA. CODE 7-2-104.

867.   The Class Laptops are and were at all relevant times goods within the meaning of ALA. CODE 7-2-105(1).

868.   Pursuant to ALA. CODE 7-2-314, a warranty that the Class Laptops were in merchantable condition is implied by law in the instant transactions.

228

869.   The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops are used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display, constituting a usability hazard to the Alabama Plaintiff and Alabama Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

870.   As a result of the laptops not being merchantable or fit for their ordinary purpose, Plaintiff Carson and the Alabama Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with mitigation and repair.

871.   Privity is not required in this case because the Alabama Plaintiff and the Alabama Subclass were the intended third-party beneficiaries of contracts between HP and its sellers; specifically, they are the intended users of the devices and intended beneficiaries of HP's implied contracts. The sellers were not intended to be the ultimate consumers of the Class Laptops and have no rights under the warranty agreements provided with the Class Laptops; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

872.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website forums and the instant Complaint, within a reasonable amount of time after the Hinge Defect was discovered.

873.   Defendant's attempts to disclaim or limit the implied warranty vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Hinge Defect.

874.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Alabama Subclass. Among other things, the Alabama Plaintiff and members of the Alabama Subclass had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Alabama Subclass members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

875.   The Alabama Plaintiff and Alabama Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

230

876.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Hinge Defect became public.

877.   Prior to the filing of this Complaint, Plaintiffs sent Defendant a pre-suit notice letter concerning the Hinge Defect setting forth Plaintiff's experiences with the Hinge Defect and their intentions to file the instant Complaint alleging a breach of the implied warranties on behalf of the Class or Subclass.

878.   As a direct and proximate result of HP's breach of the implied warranties, the Alabama Plaintiff and the Alabama Subclass members have been damaged in an amount to be proven at trial.

## Count XXXIV
### Breach of the Implied Warranty
### F.S.A. §§ 672.314 *et seq*.
### (On Behalf of the Florida Subclass)

879.   Plaintiffs Erickson, Harman, Roberts, Nind and the Florida Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

880.   Plaintiffs Erickson, Harman, Roberts, and Nind (for purposes of this section, the "Florida Plaintiffs") bring this claim on behalf of themselves and on behalf of the Florida Subclass members against Defendant.

881.   HP is and was at all relevant times a merchant with respect to Class Laptops within the meaning of FLA. STAT. § 672.104(1).

231

882.   The Class Laptops are and were at all relevant times goods within the meaning of FLA. STAT. § 672.105(1).

883.   Pursuant to FLA. STAT. § 672.314, a warranty that the Class Laptops were in merchantable condition is implied by law in the instant transactions.

884.   The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops are used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display, constituting a usability hazard to the Florida Plaintiffs and Florida Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

885.   As a result of the laptops not being merchantable or fit for their ordinary purpose, the Florida Plaintiffs and the Florida Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with mitigation and repair.

886.   Privity is not required in this case because the Florida Plaintiffs and the Florida Subclass were the intended third-party beneficiaries of contracts between HP and its sellers; specifically, they are the intended users of the devices and intended

beneficiaries of HP's implied contracts. The sellers were not intended to be the ultimate consumers of the Class Laptops and have no rights under the warranty agreements provided with the Class Laptops; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

887.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website forums and the instant Complaint, within a reasonable amount of time after the Hinge Defect was discovered.

888.   Defendant's attempts to disclaim or limit the implied warranty vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Hinge Defect.

889.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Florida Plaintiffs and members of the Florida Subclass. Among other things, Plaintiffs and members of the Florida Subclass had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Florida Subclass members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

890.   Florida Plaintiffs and Florida Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

891.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Hinge Defect became public.

892.   Prior to the filing of this Complaint, Plaintiffs sent Defendant a pre-suit notice letter concerning the Hinge Defect setting forth Plaintiff's experiences with the Hinge Defect and their intentions to file the instant Complaint alleging a breach of the implied warranties on behalf of the Class or Subclass.

893.   As a direct and proximate result of HP's breach of the implied warranties, the Florida Plaintiffs and the Florida Subclass members have been damaged in an amount to be proven at trial.

## Count XXXV
### Breach of the Implied Warranty
### O.C.G.A. § 11-2-314 *et seq.*
### (On Behalf of the Georgia Subclass)

894.   Plaintiff Nash and the Georgia Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

895.   Plaintiff Nash (for purposes of this section, the "Georgia Plaintiff") brings this claim on behalf of himself and on behalf of the Georgia Subclass members against Defendant.

234

896.   HP is and was at all relevant times a merchant with respect to Class Laptops within the meaning of O.C.G.A. § 11-2-104.

897.   The Class Laptops are and were at all relevant times goods within the meaning of O.C.G.A. § 11-2-105(1).

898.   Pursuant to O.C.G.A. § 11-2-314, a warranty that the Class Laptops were in merchantable condition is implied by law in the instant transactions.

899.   The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops are used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display, constituting a usability hazard to the Georgia Plaintiff and Georgia Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

900.   As a result of the laptops not being merchantable or fit for their ordinary purpose, the Georgia Plaintiff and the Georgia Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with mitigation and repair.

235

901.   Privity is not required in this case because the Georgia Plaintiff and the Georgia Subclass were the intended third-party beneficiaries of contracts between HP and its sellers; specifically, they are the intended users of the devices and intended beneficiaries of HP's implied contracts. The sellers were not intended to be the ultimate consumers of the Class Laptops and have no rights under the warranty agreements provided with the Class Laptops; the warranty agreements, which offer repair and replacement of the devices, were designed for and intended to benefit the ultimate consumers only.

902.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website forums and the instant Complaint, within a reasonable amount of time after the Hinge Defect was discovered.

903.   Defendant's attempts to disclaim or limit the implied warranties vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Hinge Defect.

904.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect the Georgia Plaintiff and members of the Georgia Subclass. Among other things, Plaintiffs and members of the Florida Subclass had no meaningful choice in determining these time limitations, terms

which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Georgia Subclass members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

905.   Florida Plaintiffs and Georgia Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

906.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Hinge Defect became public.

907.   Prior to the filing of this Complaint, Plaintiffs sent Defendant a pre-suit notice letter concerning the Hinge Defect setting forth Plaintiff's experiences with the Hinge Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty on behalf of the Class or Subclass.

908.   As a direct and proximate result of HP's breach of the implied warranties, the Georgia Plaintiff and the Georgia Subclass members have been damaged in an amount to be proven at trial.

**Count XXXVI**
**Breach of the Implied Warranty**
**INDIANA CODE § 26-1-2-314 *et seq*.**
**(On Behalf of the Indiana Subclass)**

909.   Plaintiffs Rose Carina, William Draper, Sabine Miller and the Indiana Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

910.   Plaintiffs Carina, Draper, and Miller bring this claim on behalf of themselves and on behalf of the Indiana Subclass members against Defendant.

911.   HP is and was at all relevant times a merchant with respect to Class Laptops within the meaning of INDIANA CODE § 26-1-2-104(1).

912.   The Class Laptops are and were at all relevant times goods within the meaning of O.C.G.A. § INDIANA CODE § 26-1-2-105(1).

913.   Pursuant to INDIANA CODE § 26-1-2-314(1), a warranty that the Class Laptops were in merchantable condition is implied by law in the instant transactions.

914.   The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops are used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display, constituting a usability hazard to the Indiana Plaintiffs and Indiana Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

915.   As a result of the laptops not being merchantable or fit for their ordinary purpose, Plaintiffs Carina, Draper, and Miller and the Indiana Subclass Members

have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with mitigation and repair.

916.   Privity is not required in this case because Plaintiffs Carina, Draper, and Miller and the Indiana Subclass were the intended third-party beneficiaries of contracts between HP and its sellers; specifically, they are the intended users of the devices and intended beneficiaries of HP's implied contracts. The sellers were not intended to be the ultimate consumers of the Class Laptops and have no rights under the warranty agreements provided with the Class Laptops; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

917.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website forums and the instant Complaint, within a reasonable amount of time after the Hinge Defect was discovered.

918.   Defendant's attempts to disclaim or limit the implied warranties vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Hinge Defect.

919.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs Carina, Draper, and Miller and members of the Indiana Subclass. Among other things, Plaintiffs Carina, Draper, and Miller and members of the Indiana Subclass had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Indiana Subclass members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

920.   Plaintiffs Carina, Draper, and Miller and Indiana Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

921.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Hinge Defect became public.

922.   Prior to the filing of this Complaint, Plaintiffs Carina, Draper, and Miller sent Defendant a pre-suit notice letter concerning the Hinge Defect setting forth Plaintiffs' experiences with the Hinge Defect and their intentions to file the

instant Complaint alleging a breach of the implied warranty on behalf of the Class or Subclass.

923.   As a direct and proximate result of HP's breach of the implied warranties, Plaintiffs Carina, Draper, and Miller and the Indiana Subclass members have been damaged in an amount to be proven at trial.

### Count XXXIII
### Implied Warranty in Tort
### (On Behalf of the Ohio Subclass)

924.   Plaintiffs Washington, Orenski and the Ohio Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

925.   Plaintiffs Washington and Orenski bring this claim on behalf of themselves and on behalf of the Ohio Subclass members against Defendant.

926.   The Class Laptops, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which laptops are used. Specifically, the Class Laptops are inherently defective in that the defective hinges cannot support the display, constituting a usability hazard to Plaintiffs Washington and Orenski, and Ohio Subclass members. In addition, the failed hinges make the devices difficult or impossible to transport, undermining the ordinary purpose of a laptop computer.

927.   As a result of the laptops not being merchantable, Plaintiffs Washington and Orenski, and the Ohio Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Laptops, and increased time and expense in dealing with mitigation and repair.

928.   HP was provided notice of the defective hinges, as alleged herein, by numerous complaints filed against it, including those submitted to HP's website forums and the instant Complaint, within a reasonable amount of time after the Hinge Defect was discovered.

929.   Defendant's attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Hinge Defect.

930.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs Washington and Orenski, and members of the Ohio Subclass. Among other things, Plaintiffs Washington and Orenski, and members of the Ohio Subclass had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A

242

gross disparity in bargaining power existed between Defendant and Ohio Subclass members, as only Defendant knew or should have known that the Class Laptops was defective at the time of sale and that the Class Laptops would fail well before the expiration of its useful life.

931.   Plaintiffs Washington and Orenski, and Ohio Subclass members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

932.   Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Hinge Defect became public.

933.   Prior to the filing of this Complaint, Plaintiffs Washington and Orenski sent Defendant a pre-suit notice letter concerning the Hinge Defect setting forth Plaintiffs' experiences with the Hinge Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty of merchantability on behalf of the Class or Subclass.

934.   As a direct and proximate result of HP's breach of the warranties of merchantability, Plaintiffs Washington and Orenski, and the Ohio Subclass members have been damaged in an amount to be proven at trial.

## Count XXXIX

**Violation of the Unfair Prong of Various States' Unfair and Deceptive Trade Practices Statutes**
**(Brought by Plaintiffs Carson, Shauer, Cosman, Graner, Letson, Luther, Erickson, Harmon, Roberts, Nind, Nash, Carina, Draper, Miller, Sakharuk, DiMartino, Hobert-Powell, Purvis, Harris, Householder, and Drake on behalf of their respective Subclasses)**

935.   Plaintiffs Carson, Shauer, Cosman, Graner, Letson, Luther, Erickson, Harmon, Roberts, Nind, Nash, Carina, Draper, Miller, Sakharuk, DiMartino, Hobert-Powell, Purvis, Harris, Householder, and Drake repeat and reallege the above allegations as if fully set forth herein.

936.   Plaintiffs Carson, Shauer, Cosman, Graner, Letson, Luther, Erickson, Harmon, Roberts, Nind, Nash, Carina, Draper, Miller, Sakharuk, DiMartino, Hobert-Powell, Purvis, Harris, Householder, and Drake bring this claim individually and on behalf of their State Subclasses.

937.   Plaintiffs Carson, Shauer, Cosman, Graner, Letson, Luther, Erickson, Harmon, Roberts, Nind, Nash, Carina, Draper, Miller, Sakharuk, DiMartino, Hobert-Powell, Purvis, Harris, Householder, Drake, and class members who purchased Class Laptops are "consumers" under their states' unfair and deceptive practices statutes.[80]

---

[80] Plaintiff Carson represents the Alabama Subclass for violations of the unfairness prong of Alabama's Deceptive Trade Practices Act (ALA. CODE § 8-19-1, *et seq.*); Plaintiffs Shauer, Cosman, Graner, Letson, and Luther represent the California Subclass for violations of the unfairness prong of California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200); Plaintiffs Erickson, Harmon, Roberts, and Nind represent the

938.   Defendant's practices, acts, policies and course of conduct violated these states' unfair and deceptive practices statutes in that: Defendant engaged in unfair acts and practices in or affecting commerce, through their advertisements, packaging, and labeling of Class Laptops, by representing to Plaintiffs and members of their Subclasses, among other things, that the products were superior and high quality in their material and/or workmanship, that the Class Laptops were precisely designed, and that the Class Laptops could be used in the manner shown in Defendants' marketing materials—i.e., a functional, portable, compact design and/or a 2-in-1 laptop employing hinges enabling the machine to fold into various positions – without triggering the Defect and becoming largely and wholly unusable. Such

---

Florida Subclass for violations of the unfairness prong of Florida's Deceptive and Unfair Trade Practices Act (FLA. STAT. § 501.204); Plaintiff Nash represents the Georgia Subclass for violations of the unfairness prong of Georgia's Fair Business Practices Act (GA. CODE. ANN. § 10-1-393); Plaintiffs Carina, Draper, and Miller represent the Indiana Subclass for violations of the unfairness prong of Indiana's Deceptive Consumer Sales Act (IND. CODE ANN. § 24-5-0.5-3); Plaintiffs Sakharuk and DiMartino represent the Massachusetts Subclass for violations of the Massachusetts General Laws Chapter 93A, section 2 (MASS. GEN. LAWS. CH. 93A § 2); Plaintiff Hobert-Powell represents the Michigan Subclass for violations of the unfairness prong of the Michigan Consumer Protection Act (MICH. COMP. LAWS SERV. § 445.903); Plaintiffs Purvis and Harris represent the Missouri Subclass for violations of the unfairness prong of the Missouri Merchandising Practices Act (MO. REV. STAT. § 407.020); Plaintiff Householder represents the Oregon Subclass for violations of the unfairness prong of Oregon's Unlawful Trade Practices Act (OR. REV. STAT. § 646.608);  and Plaintiff Drake represents the Washington Subclass for violations of the unfairness prong of Washington's Consumer Protection Act (WASH. REV. CODE § 19.86.020).

pattern of conduct was uniform in nature with respect to the marketing and sale of the product.

939.   Defendant also knowingly concealed, suppressed and consciously omitted material facts from Plaintiffs and other members of their Subclasses – such as the hinge defect – knowing that consumers would rely on the advertisements and Defendant's uniform representations concerning the Class Laptops' high-end features and functionality in purchasing their Class Laptops.

940.   Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers.

941.   Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

942.   Until the present, Defendant knowingly accepted the benefits of their unfair conduct in the form of profits from the increased sale of the Class Laptops and replacement parts as well as from repair charges performed by HP on the Class Laptops.

943.   As a proximate result of the above-described unfair acts, Plaintiffs and members of their Subclasses: (a) purchased and used Class Laptops when they would not otherwise have done so; (b) suffered economic losses consisting of the Class

Laptops' cost of purchase or, alternatively, the diminished value of the Class Laptops with the hinge defect; (c) suffered and/or will suffer additional economic losses in purchasing another laptop; and (d) suffered and will suffer additional economic losses incidental to the hinge defect.

944.   As a direct and proximate result of these unfair practices, Plaintiffs and the members of their state subclasses have been damaged and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

945.   Plaintiffs and Subclass Members also seek appropriate equitable relief, including an order requiring Samsung to adequately disclose and remediate the defect plaguing the Class Laptops, and an order enjoining HP from incorporating the defect into its laptops in the future.  Plaintiffs and the Subclasses also seek attorneys' fees and any other just and proper relief available under their states' unfair and deceptive trade practices statutes.

### Count XL
### Breach of Express Warranty
### (On Behalf of the Nationwide Class in the alternative to the State Subclasses)

946.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

947.   HP expressly warrants that it will remedy defects in materials or workmanship in Class Laptops that manifest within one year of purchase for consumers who notify HP during the one-year warranty period.

948.   HP also expressly limits warranty relief to repair, replacement or refund, at HP's sole option.

949.   HP, however, has refused to remedy the Hinge Defect when Class Laptops are presented for repair within an applicable warranty period because it repairs Class Laptops using similarly defective replacement components, or asserts that Class Laptops failed due to customer abuse and, thus, do not qualify for warranty coverage. HP's repair-or-replace warranty thus fails of its essential purpose.

950.   HP also routinely refuses to repair the Hinge Defect in Class Laptops when presented for repair just outside the warranty period on grounds that the Class Laptops fall outside the limited warranty's durational limits.

951.   HP's knowledge and notice of the Hinge Defect prior to sale render its warranty limitations substantively unconscionable.

952.   HP's warranties also are procedurally unconscionable because there was unequal bargaining power between HP and Plaintiffs and the other Class members, as, at the time of purchase, Plaintiffs and the other Class members had no other options for negotiating the terms thereof.

953.   HP's warranty remedial and durational warranty limitations thus are

unconscionable and fail of their essential purpose and are unenforceable.

954.   Plaintiffs have complied with the warranty terms. Plaintiffs have made a demand upon HP to perform under the warranty terms, but HP has failed to comply with those terms.

955.   As a direct and proximate result of the breach of express warranties, Plaintiffs have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

**Count XLI**
**Breach of Implied Warranty**
**(On Behalf of the Nationwide Class in the alternative to the State Subclasses)**

956.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

957.   HP is in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling the Class Laptops. HP impliedly warranted to Plaintiffs and the Class that the Class Laptops were of a certain quality, free from defects, and fit for the serving the purpose of laptop computers.

958.   But the Class Laptops were unfit for ordinary use and were not of merchantable quality as warranted by HP in violation of U.C.C. § 2-314 because the Class Laptops have a Defect that (1) causes the hinge on the Class Laptops to fail,

and (2) prohibits owners from actually using the Class Laptops as laptop computers insofar as they cannot be easily used in a portable manner because the

959.  Before purchase, Plaintiffs and the Class could not have readily discovered that the Class Laptops were not merchantable, were not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

960.  HP has failed to provide adequate remedies under their limited warranties, which have caused those warranties to fail of their essential purpose, thereby permitting remedies under these implied warranties.

961.  HP has not sufficiently (meaning specifically and conspicuously) disclaimed the implied warranty of merchantability.

962.  The purported limitations in HP's warranties, including limiting the exclusive remedy to a refund, repair, or replacement, as well as any durational limitations, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302. HP knew or should have known that the Class Laptops are susceptible to premature failure, HP had unequal bargaining power and misrepresented the Class Laptops' reliability, and the limited remedies unreasonably favor HP and fail Plaintiffs' (and the Class') reasonable expectations for product performance.

963.   Plaintiffs gave HP actual or constructive notice of the breaches of these warranties, and HP has failed to cure these breaches.

964.   As a direct and proximate result of the breaches of these implied warranties, Plaintiffs and the Class have suffered damages, injury in fact and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages.

965.   Plaintiffs demand judgment against HP for compensatory damages for themselves and each class member, for the establishment of a common fund, plus additional remedies as this Court deems fit.

## Count XLII
## Declaratory Relief
### (On Behalf of the Nationwide Class or, alternatively, the State Subclasses)

966.   Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

967.   Defendant has acted or refuses to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

968.   Plaintiff seeks a ruling that:

   a. Class Laptops have defects that result in a premature hinge failure in ordinary use;

b. Any limitation of consumer rights in Defendant's warranty is void as unconscionable;

c. Defendant must notify owners of the Hinge Defect;

d. Defendant will reassess all prior warranty claims and pay the full cost of repairs and damages relating to the Hinge Defect; and

e. Defendant will pay the cost of inspection to determine whether any Class member's Class Laptops needs replacement due to the Hinge Defect.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for a judgment against Defendant as follows:

a. Entering judgment in favor of Plaintiffs against Defendant;

b. Certification of the proposed Class and Subclasses pursuant to Federal Rule of Civil Procedure 23;

c. Appointment of Plaintiffs as Class Representative for the Class and Subclasses;

d. Appointment of Plaintiffs' counsel as Class Counsel;

e. A declaration that HP violated the state statutes that form the basis for Plaintiffs' primary statutory claims;

f.  A declaration that HP was unjustly enriched by its conduct as described herein;

g.  A declaration that the limitations on HP's warranties are unenforceable as set forth herein;

h.  Monetary damages;

i.  Statutory damages;

j.  Restitution;

k.  Injunctive relief;

l.  Disgorgement of all monies received by HP as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

m. Penalties as provided by law;

n.  Treble damages;

o.  A permanent injunction enjoining HP from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein, including but not limited to, an injunction preventing incorporation of the Hinge Defect in future laptop models;

p.  Pre-judgment and post-judgment interest;

q.  Reasonable attorneys' fees and expenses; and

r.  Such other further relief that the Court deems just and equitable.

Dated: July 28, 2022

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
Wilmington, DE 19807
 (302) 274-2180
(302) 351-6905 (fax)
brad@deleeuwlaw.com

Scott David Hirsch (*pro hac vice*)
**SCOTT HIRSCH LAW GROUP PLLC**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-7062
scott@scotthirschlawgroup.com

Nicholas A. Migliaccio (*pro hac vice*)
Jason S. Rathod (*pro hac vice*)
Mark D. Patronella (*pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
mpatronella@classlawdc.com

Dan E. Gustafson (*pro hac vice* forthcoming)
David A. Goodwin (*pro hac vice* forthcoming)
Anthony J. Stauber (*pro hac vice* forthcoming)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

254

tstauber@gustafsongluek.com

Howard T. Longman (*pro hac vice* forthcoming)
**LONGMAN LAW, P.C.**
354 Eisenhower Parkway, Suite 1800
Livingston, N.J. 07039
Telephone: (973) 994-2315
Hlongman@longman.law

***Attorneys for Plaintiffs***