## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHYLLIS CARSON; LORNE COSMAN;   )
WILLIAM DRAPER; PHILLIP   )
ERICKSON; TERENCE GRANER;   )
DONALD HARMAN; SARAH   )
HOUSEHOLDER; TRUDY L. GRANER;   )
TRUDY LETSON; SABINE MILLER;   )   Civil Action No. 22-208-CJB
DIANA HOBERT-POWELL; JANET   )
PURVIS; PATRICIA ROBERTS;   )
CAROLE SCHAUER; CARA   )
WASHINGTON; STEPHEN KAPLITT;   )
MICHAEL DOBKIN; CHERYL MEOLA;   )
DIANE DRAKE; CHRISTOPHER NIND;   )
ROSE CARINA; BRUCE WILLIAMS;   )
ANTHONY HARRIS; TIMUR   )
SAKHARUK; ROBERT DIMARTINO;   )
IAN PERRY; STEPHEN LUTHER;   )
GREGORY ORENSKI; RODNEY NASH;   )
and DEBORAH THELEN individually and   )
on behalf of all others similarly situated,   )
   )
        Plaintiffs,   )
   )
     v.   )
   )
HP INC.,   )
   )
        Defendant.   )

---

P. Bradford deLeeuw, DELEEUW LAW LLC, Wilmington, DE; Scott David Hirsch, SCOTT HIRSCH LAW GROUP, PLLC, Coconut Creek, FL; Nicholas A. Migliaccio, Jason S. Rathod, Mark D. Patronella, MIGLIACCIO & RATHOD LLP, Washington, D.C.; Dan E. Gustafson, David A. Goodwin, Anthony J. Stauber, GUSTAFSON GLUEK PLLC, Minneapolis, MN; Howard T. Longman, LONGMAN LAW, P.C., Livingston, NJ, Attorneys for Plaintiffs.

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, PA, Wilmington, DE; Michael J. Stortz, Marshall L. Baker, AKIN GUMP STRAUSS HAUER & FELD LLP, San Francisco, CA, Attorneys for Defendant.

---

## <u>MEMORANDUM OPINION</u>

Dated: September 26, 2024
Wilmington, Delaware

*Christopher J. Burke*

**BURKE, United States Magistrate Judge**

The 30 individual named Plaintiffs in this case ("Plaintiffs") bring this class action

lawsuit on behalf of themselves and a class of similarly situated persons; they allege that

Defendant, HP Inc. ("Defendant" or "HP"), misled consumers about the quality and functionality

of certain laptop models it produced. (*See generally* D.I. 19)  Before the Court is a motion filed

by Defendant to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6) and to strike Plaintiffs' class allegations pursuant to Federal Rule of Civil Procedure

12(f) ("Motion").  (D.I. 22)  For the reasons that follow, the Court GRANTS-IN-PART and

DENIES-IN-PART Defendant's Motion.

I.      **BACKGROUND**

        A.      **Procedural Background**

        On February 16, 2022, Plaintiff Deborah Thelen ("Thelen"), individually and on behalf

of all others similarly situated, filed a Class Action Complaint against Defendant.  (D.I. 1)

Defendant, a Delaware corporation with its headquarters in Palo Alto, California, is one of the

world's largest manufacturers and sellers of computers.  (D.I. 19 at ¶ 69)  Thelen, now joined by

a number of additional named Plaintiffs, later filed a First Amended Complaint ("FAC") on May

23, 2022.  (D.I. 11)  And after Defendant filed a motion to dismiss and to strike the FAC, (D.I.

13), the current 30 named Plaintiffs filed the operative Second Amended Complaint ("SAC") on

July 28, 2022.  (D.I. 19)[1]

---

[1]      Thelen and the other 29 additional named Plaintiffs bring the SAC on behalf of a
purported class and subclasses.  These are described in paragraph 467 of the SAC as consisting

The SAC is massive, totaling 968 numbered paragraphs and 255 pages.  (*Id*.)  As might be expected with that length, at times the SAC is confusing, or difficult to parse.  The Court will attempt to summarize the SAC's allegations briefly below.

In the SAC, Plaintiffs list various counts beginning with "Count I" and ending with "Count XLII," which would suggest there are 42 Counts set out therein.  (*Id.* at 145, 251)  But the SAC is missing a Count XX and a Count XXXVII, so it actually only alleges 40 Counts.  (*Id*.; D.I. 23 at 4 n.3)  Also, Count XXXVIII is misnumbered as "Count XXXIII" (the Court will herein refer to it as the former).  (D.I. 23 at 4 n.3; *see also* D.I. 19 at 241)

As best as the Court can figure based on the briefing (though this is not always easy to discern from the briefing), the parties have tended to break these 40 Counts down in the following way:

- **There are 20 Counts that involve claims brought pursuant to what Defendant refers to as state "'consumer fraud' statutes[,]" (D.I. 23 at 4), and what Plaintiffs refer to as state "consumer protection" statutes, (D.I. 25 at 4).**  These are as follows:  New York General Business Law, N.Y. Gen. Bus. Law §§ 349-50 (Counts I-II); Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code §§ 24-5-0.5-1 to 12 (Count III); Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. (Count IV); Fla. Stat. § 817.41 Prohibiting Misleading Advertising (Count V); Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1, *et seq*. (Count VI); Missouri Merchandise Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq*. (Count VII); Ohio Consumer

of a Nationwide Class, which is defined as "[a]ll purchasers in the United States who purchased [one of the laptop models at issue from Defendant][,]" and 13 state subclasses, defined as "[a]ll purchasers . . . who purchased [one of the laptop models at issue from Defendant]" from the following states:  (1) Alabama; (2) Arkansas; (3) California; (4) Florida; (5) Indiana; (6) Massachusetts; (7) Michigan; (8) Missouri; (9) New Jersey; (10) New York; (11) Ohio; (12) Oregon and (13) Washington.  (D.I. 19 at ¶ 467)  Georgia is not a defined subclass in paragraph 467, but elsewhere in the SAC, Plaintiffs bring claims under Georgia law and otherwise refer to the "Georgia Subclass[.]"  (*See, e.g.,* D.I. 19 at 207-08; *see also* D.I. 23 at 4 n.4)  And so herein, the Court will refer to all 14 of these state subclasses together as the "State Subclasses."

Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §§ 1345.01, *et seq*. (Count VIII); California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Count IX); California Consumer Legal Remedies Act ("CCLRA"), Cal. Civ. Code §§ 1750, *et seq*. (Count X); California False Advertising Law ("CFAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*. (Count XIII); Oregon Unlawful Trade Practices Act ("OUTPA"), Or. Rev. Stat. §§ 646.605-656 (Count XIV); Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903, *et seq*. (Count XVI); New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 (Count XXI); Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390, *et seq*. (Count XXV); Georgia Uniform Deceptive Trade Practices Act, *id*. §§ 10-1-370, *et seq*. (Count XXVI); Washington State Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86.010, *et seq*. (Count XXVII); Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq*. (Count XXVIII); Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, §§ 1, *et seq*. (Count XXIX); and a "catch-all" claim for Violation of the Unfair Prong of Various States' Unfair and Deceptive Trade Practices Statutes (Count XXXIX).[2]  The Court will refer to these as the "statutory consumer protection claims."

- **There are 2 Counts that involve common law claims relating to fraud.**  These are:  Fraud by Concealment (Count XVIII) and Fraudulent Omission or Concealment (Count XXIV).[3]  The Court will refer to these as the "common law fraud" claims.

- **There are 3 Counts that involve statutory or common law claims regarding breach of express warranty.**  The statutory claims include:  California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790-95.8, *et seq*. (Count XII); and a statutory claim for a violation of express warranty under Massachusetts law, Mass. Gen. Laws at Ch. 106, § 2-313 (Count XXXI).  The common law claim is:  Breach of Express

---

[2]      Each of these statutory Counts are brought on the behalf of the respective subclass that corresponds to the state statute at issue, with the exception of Count XXXIX, which claims are brought by certain of the named Plaintiffs on behalf of their respective subclasses.

[3]      Count XVIII is brought on behalf of the Michigan Subclass and Count XXIV is brought on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses.

Warranty (Count XL).  The Court will refer to these as the "express warranty claims."[4]

- **There are 12 Counts that involve statutory or common law claims regarding breach of implied warranty.**  The statutory claims include:  California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792, *et seq*. (Count XI); a statutory claim for breach of the implied warranty of merchantability under Oregon law, Or. Rev. Stat. §§ 72.8020, *et seq*. (Count XV); a statutory claim for breach of the implied warranty of merchantability under Michigan law, Mich. Comp. Laws § 440.314 (Count XVII); a statutory claim for a violation of the implied warranty of merchantability under Massachusetts law, Mass. Gen. Laws Ch. 106, § 2-314 (Count XXX); a statutory claim for breach of implied warranty under Arkansas law, Ark. Code Ann. §§ 4-2-314, *et seq*. (Count XXXII); a statutory claim for breach of implied warranty under Alabama law, Ala. Code §§ 7-2-314, *et seq*. (Count XXXIII); a statutory claim for breach of implied warranty under Florida law, Fla. Stat. Ann. §§ 672.314, *et seq*. (Count XXXIV); a statutory claim for breach of implied warranty under Georgia law, Ga. Code Ann. §§ 11-2-314, *et seq*. (Count XXXV); and a statutory claim for breach of implied warranty under Indiana law, Ind. Code §§ 26-1-2-314, *et seq*. (Count XXXVI).[5]  The common law claims are:  Breach of Implied Warranty of Merchantability (Count XXII);[6] Implied Warranty in Tort (Count XXXVIII);[7] and Breach of Implied Warranty (Count XLI).[8]  The Court will refer to these as the "implied warranty" claims.  (*See* D.I. 23 at 25 & n.25)

---

[4]  Each of these statutory Counts are brought on the behalf of the respective subclass that corresponds to the state statute at issue, and the common law claim is brought on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses.

[5]  Each of these statutory Counts are brought on the behalf of the respective subclass that corresponds to the state statute at issue.

[6]  Count XXII is brought on behalf of the New Jersey Subclass.

[7]  Count XXXVIII is brought on behalf of the Ohio Subclass.

[8]  Count XLI is brought on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses.

- **There are 2 common law unjust enrichment claims.** They are: Unjust Enrichment (Count XIX),[9] Unjust Enrichment/Restitution (Count XXIII).[10]  The Court will refer to these as the "unjust enrichment" claims.

- **There is 1 common law Declaratory Relief claim.** It is found in Count XLII.[11]  (*See generally id.*)

(*See generally* D.I. 19)

Defendant filed the instant Motion on September 1, 2022.  (D.I. 22)  Briefing on the Motion was voluminous, in light of the complexity and sheer numerosity of the issues raised by Defendants' filing.  (D.I. 20)  That briefing was completed on October 27, 2022.  (D.I. 26)[12]  On December 12, 2022, the parties consented to have the Court conduct all proceedings in the case, including trial, the entry of final judgment and all post-trial proceedings.  (D.I. 30)  Thereafter, both Plaintiffs and Defendant filed additional notices of supplemental authority; the last of these was filed on March 24, 2023.  (D.I. 32; D.I. 38)[13]

---

[9]        Count XIX is brought on behalf of the Michigan Subclass.

[10]        Count XXIII is brought on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses.

[11]        Count XLII is brought on behalf of the Nationwide Class and alternatively on behalf of the State Subclasses.

[12]        Plaintiffs requested oral argument on the Motion, (D.I. 28), but the Court will DENY that request.  The sheer number of issues at play with the Motion have required a substantial amount of time to assess, and the Court does not wish to delay resolution of those issues any further.  The Court assures the parties that it has carefully considered every one of the numerous arguments made in the extensive briefing, as will hopefully be evident below.

[13]        After Defendant filed its notice of supplemental authority, Plaintiffs filed a motion for leave ("motion for leave") seeking to submit a response to that authority, (D.I. 33); Plaintiffs' motion for leave, in turn, prompted the parties to file two additional briefs on the subject, (D.I. 34; D.I. 35), which was regrettable.  The Court DENIES as MOOT the motion for leave because it has not found the case cited in Defendant's notice to be necessary to reference in its decision herein.

### B.      Factual Background

Plaintiffs bring a consumer class action suit here, alleging that Defendant misled consumers about the quality and functionality of its Envy Laptops ("Envy"), Envy 360 Laptops ("Envy 360"), Pavilion Laptops ("Pavilion"), Pavilion 360 Laptops ("Pavilion 360"), and HP 14, HP 15, and HP 17 Laptops (the "HP Laptops," and together with the Envy, Envy 360, Pavilion and Pavilion 360, the "Class Laptops").  (D.I. 19 at ¶ 1)  The claims apply to those Class Laptops purchased from 2017 to present (the "Class Period").  (*Id*.)  Plaintiffs allege that during the Class Period, Defendant designed, manufactured, marketed, sold and distributed the Class Laptops to tens of thousands of consumers throughout the United States.  (*Id*. at ¶ 2)  Yet the SAC asserts that the Class Laptops all possess a material defect preventing them from being used as advertised, and that Defendant concealed, failed to disclose, or otherwise engaged in deceptive marketing with respect to the defect.  (*Id*. at ¶ 3)

The SAC provides additional information about the defect at issue.  Plaintiffs allege that during ordinary use, the Class Laptops' hinges prematurely and unexpectedly crack and fail, eventually breaking off from the plastic mounting points at the base of the device where the keyboard and internal components are located (the "Hinge Defect").  (*Id*. at ¶¶ 4, 6)  Plaintiffs explain that the hinge is the item that provides a connection between the upper case of the laptop (containing the monitor) and the base, and is the piece of equipment that allows the laptop to open and close "like a clam shell" for ease of transport.  (*Id*. at ¶ 5)  As to Defendant's laptops that contain the Hinge Defect, the ordinary opening and closing of the device fractures its plastic anchors (causing them to fail) and destabilizes the hinges (often causing them to detach from the computer completely).  (*Id*. at ¶ 6)  This all renders the Class Laptops unable to be used as Plaintiffs allege they were intended to be used—that is, as a portable computer that can easily

open and close (and in the case of the Envy 360 and Pavilion 360 models, as a computer that can reconfigure to multiple angles and be used as a tablet or laptop).  (*Id.*)

Plaintiffs allege that although Defendant has known of the Hinge Defect since 2014 (i.e., preceding the Class Period), it falsely marketed the HP Laptops in the interval in various ways. Among these were that Defendant stated, *inter alia*, that Envy 360 and Pavilion 360 laptops were "convertible" and that the HP Laptops were "reliable" and "designed for long-lasting performance" with a "compact, portable design."  (*Id.* at ¶¶ 7-8, 17 (internal quotation marks and citation omitted))  Further, Defendant provides assurances to consumers as to the HP Laptops' durability and tells consumers that "extensive quality testing ensures that you can keep going . . . and going."  (*Id.* at ¶ 9 (internal quotation marks and citation omitted))  Plaintiffs allege that Defendant claims that each model of the Class Laptops has been subject to 115,000 hours of testing, which includes opening and closing the laptops tens of thousands of times.  (*Id.* at ¶¶ 10, 120)  Further, Defendant represented that it subjected each model's hinges to 25,000 cycles, which is the equivalent of opening and closing a laptop 10 times a day for seven years.  (*Id.* at ¶ 10; *see also id.* at ¶ 118)  Plaintiffs generally allege that they and the class members[14] saw or heard such representations from Defendant about the Class Laptops prior to purchasing their model.  (*Id.* at ¶ 12)

The SAC asserts that the Hinge Defect dramatically reduces or eliminates the user's ability to open and close the laptop or to transition its configuration between those states.  (*Id.* at ¶ 15)  This, they allege, in turn renders the Class Laptops unfit for their intended purpose as functioning, compact, portable, or flexible computers; it also ensures that the Class Laptops

---

[14]     Below, for ease of reference, the Court will at times refer to "Plaintiffs" and their knowledge or belief of facts, even though the allegations are that both named Plaintiffs and the class members had such knowledge/mental state.

cannot satisfy the representations Defendant made in its marketing materials to customers.  (*Id.* at ¶ 16)

Plaintiffs plead that there are thousands of complaints on Defendant's online forum from customers complaining of the Hinge Defect.  (*Id.* at ¶ 17)  Defendant has allegedly responded to these complaints in various ways, such as by informing customers that a hardware assembly issue was the cause of the hinge cracking and panel separation problems.  (*Id.* at ¶ 20)  However, Defendant has been assertedly unable or unwilling to address the true scope and pervasive nature of the Hinge Defect.  (*Id.*)

The Class Laptops are covered by a limited warranty (the "Limited Warranty")[15]; the Limited Warranty warrants that Defendant's products are free of defects in material and/or workmanship and that Defendant will repair a product, or if it is unable to repair a product, will replace or refund the purchase.  (*Id.* at ¶ 21)  Plaintiffs allege that Defendant has been unable to fix the Hinge Defect in the Class Laptops during the Limited Warranty period and refuses to repair the Hinge Defect free of charge outside of the Limited Warranty period.  (*Id.* at ¶ 22)  Further, Plaintiffs allege that Defendant's repair methods were ineffective.  (*Id.* at ¶ 24)  Defendant told consumers that the Hinge Defect could be remedied by purchasing and installing replacement hinges, which did not correct the Hinge Defect.  (*Id.*)  When Defendant did accept a laptop for repair, it often replaced the hinges with the same defective part.  (*Id.*)

---

[15]     Defendant requests that the Court take judicial notice of the Limited Warranty, (D.I. 24 & ex. A), and the Court will do so, as the document is properly a part of the record here regarding Defendant's Rule 12(b)(6) motion (and otherwise).  That is because the Limited Warranty is a document that is referenced in the SAC, (D.I. 19 at ¶¶ 21, 78 n.16, 81, 588, 621, 824, 950, 960), and that is integral to Plaintiffs' claims therein (particularly those asserting breach of express warranty).  *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that in resolving a motion to dismiss, a district court may consider a document integral to or explicitly relied on by the complaint); *see also J Supor & Son Trucking & Riggins Co., Inc. v. Kenworth Truck Co*, 791 F. App'x 308, 310 n.2 (3d Cir. 2019).

According to Plaintiffs, because Defendant knew of the Hinge Defect in the Class Laptops, its limitations on the warranties covering the Class Laptops are procedurally unconscionable, as Plaintiffs had no other viable options for negotiating the terms of the Limited Warranty.  (*Id*. at ¶ 25)  Further, while knowing of the Hinge Defect, Plaintiffs allege that Defendant intentionally "manipulated" the Limited Warranty so that it "often expired before the [Hinge Defect] materialized and the consumer became aware of it."  (*Id*. at ¶ 26)  Plaintiffs also assert that the limitations on the Limited Warranties are substantively unconscionable, because Defendant knew (or was reckless in not knowing) that the Class Laptops were defective, and yet it both failed to disclose these defects and made affirmative misrepresentations about the products' capabilities in the marketplace.  (*Id*. at ¶¶ 27, 31)  Plaintiffs allege that Defendant's knowledge is evident from, *inter alia*, the numerous complaints posted by consumers on Defendant's online forum and from Defendant's engagement with Class Laptop owners who complained of the Hinge Defect.  (*Id*. at ¶ 32)

Plaintiffs claim that as a result of Defendant's unlawful, unfair, fraudulent, misleading and deceptive practices, Plaintiffs purchased the Class Laptops with the mistaken belief that they were high quality products capable of normal use without incurring damage.  (*Id*. at ¶ 33)  Plaintiffs allege that the facts regarding the Hinge Laptops are material to them and to any reasonable consumer who was considering the purchase of a Class Laptop.  (*Id*. at ¶ 34)  If Plaintiffs had known of the Hinge Defect prior to purchasing one of the Class Laptops, they would have paid substantially less or purchased from another manufacturer.  (*Id*. at ¶ 35)  As a result, Plaintiffs seek redress for Defendant's breaches of warranties and violations of various state laws.  (*Id*. at ¶ 37)

## II.    DISCUSSION

Defendant makes a tremendous number of varied challenges to Plaintiffs' SAC via their Motion.  The Court will address them each below to the extent necessary to resolve the Motion (or to otherwise provide guidance regarding future potential pleading disputes).

### A.      Plaintiffs' Claims for Injunctive Relief

The Court will first address Defendant's argument that, to the extent Plaintiffs request injunctive relief, such a request should be dismissed for lack of subject matter jurisdiction.  (D.I. 23 at 27-28; *see also* D.I. 19 at 251, 253)  Defendant asserts that this is so because Plaintiffs lack standing to request injunctive relief.  (D.I. 23 at 27-28)

Defendant's argument proceeds as follows:  (1) In seeking injunctive relief, Plaintiffs need to be able to demonstrate that they are likely to suffer future injury from the challenged conduct; (2) Plaintiffs cannot do that, because the future injury they reference in the SAC involves injuries to class members who are unaware of any alleged defect in the Class Laptops and who would go on to purchase a Class Laptop and be harmed; but (3) Plaintiffs themselves will not suffer such injury, since they know of the alleged defects already.  (D.I. 23 at 27-28 (citing D.I. 19 at ¶ 129))  And while the SAC alleges that certain Plaintiffs remain interested in purchasing another Class Laptop and would consider doing so in the future if Defendant corrected the problems at issue, Defendant argues that such alleged future injury is too hypothetical to confer standing on Plaintiffs (and is also in conflict with Plaintiffs' entire theory of the case).  (*Id.* at 28)

Article III's constitutional standing requirement (that is, that there be an active case or controversy between the parties), which is at issue here, is a threshold jurisdictional issue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The plaintiff bears the burden of persuasion to show that it has standing.  *United Access Techs., LLC v. Verizon Internet Servs., Inc.*, C.A. No.

11

05-866-LPS, 2021 WL 1200650, at *5 (D. Del. Mar. 26, 2021).  Rule 12(b)(1) authorizes

dismissal of a complaint if the plaintiff lacks standing to bring his claim.  *Id.*; *see also Ballentine*

*v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

Article III standing has three requirements: (1) injury in fact; (2) a causal connection

between the injury and the challenged conduct; and (3) a likelihood that the injury will be

redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61; *see also Clapper v. Amnesty Int'l*

*USA*, 568 U.S. 398, 409 (2013).  The dispute here is over the first issue, injury in fact.  When

prospective injunctive relief is sought in the class action context, at least one named plaintiff

must be able to demonstrate that he or she is likely to suffer future injury from the defendant's

conduct.  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012); *see also Twardzik v.*

*HP Inc.*, No. 1:21-cv-00396-SB, 2022 WL 606092, at *2 (D. Del. Jan. 25, 2022), *aff'd* No. 22-

2650, 2023 WL 5770999 (3d Cir. Sept. 7, 2023).[16]  That threat of future injury must be

sufficiently real and immediate, and past exposure to illegal conduct does not itself show a

present case or controversy regarding injunctive relief if unaccompanied by any continuing,

present adverse effects.  *McNair*, 672 F.3d at 223.

In *Twardzik v. HP Inc.*, No. 1:21-cv-00396-SB, 2022 WL 606092 (D. Del. Jan. 25, 2022),

*aff'd* No. 22-2650, 2023 WL 5770999 (3d Cir. Sept. 7, 2023), a case cited by Defendant in its

briefing, (D.I. 23 at 27-28), the plaintiff sought damages and injunctive relief on behalf of

himself and a proposed class against the defendant, HP; the plaintiff argued that the computer he

purchased from the defendant did not do what he expected it to do.  2022 WL 606092, at *1-2.

---

[16]     A Rule 12(b)(1) motion on standing grounds can challenge jurisdiction on either a
facial (based on the legal sufficiency of the claim) or factual (based on the sufficiency of
jurisdictional fact) basis.  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  The
Court will treat the instant challenge as a facial one, though the difference is immaterial for
purposes of the Court's resolution of this issue.

The *Twardzik* Court found that the plaintiff had sufficiently shown injury in fact, such that he had standing to seek damages for this past injury. *Id*. at *2. However, it concluded that the plaintiff did not have standing to seek injunctive relief. *Id*. at *2-3. Plaintiff's argument to the contrary was that he alleged that HP would continue to market, sell and lease laptops like the one he had used, and that if so "he might buy another one someday." *Id*. at *3 (internal quotation marks omitted). However, the *Twardzik* Court found that this assertion of future injury was hypothetical, in that "no one will force [plaintiff] to buy another HP product"; the Court explained that it simply could not countenance "this sort of 'stop me before I buy again' claim" for injunctive relief. *Id*. (quoting *In re Johnson & Johnson Talcum Powder Prods. Mktg. Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 293 (3d Cir. 2018)).

For the same reasons as those set out in *Twardzik*, the Court agrees with Defendant that Plaintiffs' claims for future injunctive relief must be dismissed here. The SAC simply does not plausibly suggest that the named Plaintiffs will likely be misled by Defendant in the future into buying a Class Laptop; at most, the pleading asserts that other unknowing potential customers could suffer this fate. If the named Plaintiffs did buy such a laptop in the future, that would be their own choice, and it would be a decision that they made with full knowledge of the prior defects that they had previously experienced regarding similar products. *See In re Johnson & Johnson*, 903 F.3d at 292 ("The premise that former customers would again be deceived by the very sort of advertising practices over which they were already pursuing [] relief [is] a premise unmoored from reality."). Indeed, Plaintiffs offered no substantive response in their briefing to Defendant's arguments regarding this issue. (D.I. 25; D.I. 26 at 15)

Therefore, the Motion is GRANTED with prejudice as to Plaintiffs' claims for injunctive relief.

**B.      Defendant's Arguments Regarding Dismissal of Plaintiffs' Claims Pursuant to Rule 12(b)(6)**

Next, Defendant argues that all of Plaintiffs' claims should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6).  In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  In assessing such a motion, the court first separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft*, 556 U.S. at 679).

In making this Rule 12(b)(6) challenge, Defendant breaks up Plaintiffs' claims into different broad groupings:  (1) Plaintiffs' statutory consumer protection claims and common law fraud claims; (2) Plaintiffs' unjust enrichment claims; (3) Plaintiffs' express warranty claims; and (4) Plaintiffs' implied warranty claims.  (D.I. 23 at 20-27)  The Court will address these various challenges in turn.

**1.      Plaintiffs' Statutory Consumer Protection Claims and Common Law Fraud Claims**

Defendants first attack Plaintiffs' statutory consumer protection claims and common law fraud claims.  (D.I. 23 at 8-20)  A preliminary question here relates to what pleading requirements apply to these claims.  The Court will address that issue first.  Then it will address the challenges to these claims on the merits.

**a.      Does Rule 8 or Rule 9(b) Apply?**

14

Normally, in order to set out a plausible claim in a complaint, a plaintiff must only meet the bar set by Federal Rule of Civil Procedure 8, which requires that the pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Defendant argues, however, that Plaintiffs' statutory consumer protection claims and common law fraud claims are all subject to Federal Rule of Civil Procedure 9(b)'s higher pleading standard.  (D.I. 23 at 8 (citing Fed. R. Civ. P. 9(b)))  Rule 9(b) mandates that the "circumstances constituting fraud or mistake" be "state[d] with particularity[.]"  Fed. R. Civ. P. 9(b); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  To do so, a party "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico*, 507 F.3d at 200.  Put another way, the pleader must allege the "who, what, when, where and how of the events at issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (internal quotation marks and citation omitted).  However, knowledge and intent "may be alleged generally."  Fed. R. Civ. P. 9(b).

In their briefing, Plaintiffs argue that many of the statutory consumer protection claims "are immune to Rule 9(b)[] or have a scope beyond fraud—which allows Plaintiffs to pursue claims under the statute without invoking Rule 9(b)."  (D.I. 25 at 4-5)  But as Defendant counters, (D.I. 26 at 2), in this Circuit whether Rule 9(b) applies to a claim does not depend on the title of the particular statute that is utilized, nor even on whether fraud is a necessary element of that claim; instead, what matters is whether *the factual allegations in the claim as pleaded* "sound in fraud."  *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996); *see also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir. 1992); *Diaz v. FCA US LLC*, Civil Action No. 21-cv-00906-EJW, 2022 WL 4016744, at *20 & n.27 (D. Del. Sept. 2, 2022).

Here, Plaintiffs' common law fraud claims obviously sound in fraud.  And in the Court's view, so too do Plaintiffs' statutory consumer protection claims.  In the first 39 paragraphs of the SAC—the part of the pleading in which Plaintiffs summarize the nature of the allegations therein—Plaintiffs assert that:  (1) Defendant "knew, or was reckless in not knowing" about the Hinge Defect and its impact in the relevant period; (2) but Defendant intentionally "concealed from and/or failed to disclose" that defect to its customers; (3) at the same time, Defendant knowingly made "false and misleading" statements about the reliability of the Class Laptops (even though Defendant knew that the laptops contained this defect); and (4) Defendant's conduct was "fraudulent, misleading, and deceptive[.]"  (D.I. 19 at ¶¶ 8-11, 27, 31, 33, 36) These amount to assertions that that Defendant knowingly and/or recklessly made false or fraudulent statements or omissions about the Hinge Defect to Plaintiffs and the classes.  Each of the 20 statutory consumer protection Counts incorporate by reference these summary allegations, and they include additional language that certainly can (and in this case, does) speak to a claim of fraud (such as "deceptive[,]" "knowing and intentionally conceal[,]" "false[,]" "intended to mislead[,]" "fraudulent[,]" and the like).  (*Id.* at ¶¶ 478-613, 641-64, 681-93, 722-30, 769-813, 935-45).[17]  For all of these reasons, the Court concludes that these Counts must be pleaded in

---

[17]     The state statutes at issue are certainly broad enough that they could accommodate claims sounding in fraud.  *See, e.g., Diaz*, 2022 WL 4016744, at *20, *23-24 & nn.27, 32 (applying Rule 9(b) to the plaintiff's claims under the New York statute at issue here); *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017) (applying Rule 9(b) to the plaintiff's claims under the Massachusetts statute at issue here); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civil Action No.: 16-2765 (JLL), 2017 WL 1902160, at *23 (D.N.J. May 8, 2017) (concluding that the plaintiffs' "statutory fraud and/or violations of consumer protection laws [claims]" based on statutes asserted in this case from the states of Arkansas, California, Florida, Georgia, Indiana, Michigan, New Jersey, Ohio and Washington "all sound in fraud and therefore are subject to the heighted pleading standard of [Rule 9(b)]"); *Blake v. Career Educ. Corp.*, No. 4:08CV00821 ERW, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (applying the Rule 9(b) pleading standard to the plaintiffs' claims under the Missouri statute at issue in this case); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 406 (S.D.N.Y. 2017)

conformance with Rule 9(b).  *See, e.g., Twardzik*, 2022 WL 606092, at *4; *Diaz*, 2022 WL 4016744, at *20, *23-24 & nn.27, 32; *DiMartino v. BMW of N. Am., LLC*, Civ. No. 15-8447 (WJM), 2016 WL 4260788, at *6 (D.N.J. Aug. 11, 2016); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999).

### b.    Discussion

With that matter settled, the Court moves on to determining whether the statutory consumer protection claims and the common law fraud claims are in fact pleaded in compliance with Rule 9(b).  In this regard, Defendant provides many different reasons why it thinks that they are not (or why Plaintiffs otherwise have failed to state a claim).  (D.I. 23 at 8-20)

In the Court's view, certain of Defendant's arguments—i.e., as to how the claims are insufficiently pleaded under Rule 9(b)—are sufficient to warrant dismissal.  Below, the Court will set out why it thinks this is so.  Thereafter, in an effort to help streamline any future pleading disputes, the Court will also briefly provide its view as to the substance of most of Defendant's other challenges regarding these claims.

### i.    Failure to Sufficiently Allege Claims Pursuant to Rule 9(b) as to Reliance/Causation

As the Court noted in Section I.B., Plaintiffs' allegations of wrongdoing, at least as they relate to the statutory consumer protection claims, essentially break down into two types of assertions:  (1) that Defendant made intentional affirmative misrepresentations regarding the Class Laptops and the Hinge Defect (i.e., that Defendant knowingly, falsely advertised the reliability and durability of the laptops); and/or (2) that Defendant knowingly omitted making

_____

(concluding that claims sounding in fraud under the Alabama statute at issue here are subject to Rule 9(b)); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1207-08 (D. Nev. 2022) (applying the Rule 9(b) heightened pleading standard to the plaintiff's claims under the Oregon statute at issue here).

important disclosures about the Class Laptops relating to the Hinge Defect (i.e., that Defendant knowingly failed to disclose the defect to customers).  (D.I. 19 at ¶¶ 8-11, 17-20, 31-32, 36)  It is apparent from the SAC and from the parties' briefing that the factual allegations underlying the statutory consumer protection claims are essentially the same types of allegations one would make if one intended to plead typical state law claims for fraudulent misrepresentation and/or fraudulent omission/concealment.  As a result, there is essentially no dispute that if Plaintiffs have failed to sufficiently allege an element of a fraudulent misrepresentation or a fraudulent omission/concealment claim, then they will not have sufficiently pleaded a claim under Rule 9(b) under any of the state statutory consumer protection statutes at issue.  (D.I. 23 at 8-20; D.I. 25 at 4-20); *see also Miller v. Gen. Motors, LLC*, Case No. 17-cv-14032, 2018 WL 2740240, at *15 (E.D. Mich. June 7, 2018) (concluding the same, in a case involving similar types of allegations.).  Nor will Plaintiffs have sufficiently stated a claim pursuant to the two common law fraud counts (which each relate to the second of those two types of misconduct:  fraudulent omission/concealment.).[18]  The Court will proceed with this in mind.

---

[18]     To state a claim under the various named consumer protection statutes, many of the statutes generally require a showing of similar elements:  (1) a deceptive or unfair practice (e.g., intentionally making misrepresentations or omitting material information about a product's defect), (2) a causal connection between the allegedly unlawful or deceptive act and plaintiff's harm, and (3) actual damages or ascertainable loss.  *See, e.g.*, *Hurry v. Gen. Motors LLC*, 622 F. Supp. 3d 1132, 1157 (M.D. Ala. 2022) (Alabama Deceptive Trade Practices Act); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. and Sales Prac. Litig.*, 955 F. Supp. 2d 1311, 1327-28 (S.D. Fla. 2013) (Arkansas Deceptive Trade Practices Act ); *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 94 (Cal. Ct. App. Dec. 15, 2009) (CCLRA); *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1046 (N.D. Cal. 2013) (CUCL and CFAL); *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (Florida Deceptive & Unfair Trade Practices Act); *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, Case No. 20-cv-23392-BLOOM/Louis, 2021 WL 3666312, at *16 (S.D. Fla. Aug. 18, 2021) (Florida Statute § 817.41); *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 17 (Ga. 2006) (Georgia Fair Business Practices Act); *Terrill v. Electrolux Home Prods.*, 753 F.Supp.2d 1272, 1291 (S.D. Ga. 2010) (Georgia Uniform Deceptive Trade Practices Act); *Butler Motors, Inc. v. Benosky*, 181 N.E.3d 304, 317-18 (Ind. Ct. App. 2021) (IDCSA); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020)

So what is required to sufficiently set out a claim that alleges a fraudulent misrepresentation or fraudulent omission/concealment?  Generally, in order to state such a claim for common law fraud, a plaintiff must establish:  (1) the defendant made a false representation of or failed to disclose a material fact; (2) the defendant knows or believes that the statement is false; (3) the plaintiff believed that the representations made by the defendant were true; (4) the defendant intended the plaintiff to act upon the misstatement or omission; and (5) the plaintiff relied on the defendant's misstatement or omission to his or her detriment.  *Miller*, 2018 WL 2740240, at *11 (citing 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Procedure § 1297 (3d ed.)).

In assessing the Motion as to these claims, the Court will first address the claims to the extent that they are premised on Defendant making *intentional fraudulent misrepresentations*. Here, Defendant's primary argument is *not* that the SAC fails to call out specific purported misrepresentations that were made by Defendant.  The SAC does do this, in various places.

---

(Massachusetts Consumer Protection Act); *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (Michigan Consumer Protection Act); *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802, 809 (Mo. Ct. App. 2014) (MMPA); *Duffy v. Samsung Elecs. Am., Inc.*, No. CIV.06-5259 (DRD), 2007 WL 703197, at *6 (D.N.J. Mar. 2, 2007) (New Jersey Consumer Fraud Act); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (Sections 349 and 350 of the New York General Business Law); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012) (Ohio Consumer Sales Practices Act); *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015) (OUTPA); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d at 880 (Washington Consumer Protection Act).  The Court presumes (the parties did not address this specifically) that a party may bring a claim premised on either a fraudulent misrepresentation or a fraudulent omission/concealment under each of these statutes.

Count XVIII's fraud by concealment claim is brought pursuant to Michigan law, which the Court will presume is representative for purposes of the common law fraud claims.  Such a claim has the same elements of a fraudulent misrepresentation claim, with the difference that it is based on:  (1) a defendant suppressing a material fact that (2) he or she had a legal duty to disclose.  *See Elec. Stick, Inc. v. Primeone Ins. Co.*, Docket No. 327421, 2016 WL 4954423, at *3 (Mich. Ct. App. Sept. 15, 2016).

Among these are where it is alleged that Defendant stated that certain of the Class Laptops are "reliable" and "designed for long-lasting performance" with a "compact, portable design[,]" or that they were subject to "extensive quality testing [that] ensures you can keep going . . . and going." (D.I. 19 at ¶¶ 8-9, 28, 114, 116 (internal quotation marks and citations omitted)) Other similar alleged misstatements are identified with specificity as well. (*Id.* at ¶¶ 10-11, 111-13, 115)

Instead, Defendant's primary argument is that Plaintiffs have failed, pursuant to Rule 9(b), to sufficiently allege "the specific statements, if any, *they reviewed or relied upon*" prior to purchasing the laptops at issue. (D.I. 23 at 8 (emphasis added); *see also id.* at 9 (Defendant arguing that Plaintiff has failed to "identify the specific marketing statements attributed to [Defendant] *that he or she claims to have relied upon*") (emphasis added)) In other words, Defendant is asserting that Plaintiffs have failed to plead the "what" and the "how" of this type of claim with the requisite particularity, because Plaintiffs have failed to specify which of the assertedly false or misleading statements Defendant made about the Class Laptops each Plaintiff saw and relied upon, prior to purchasing the product (and relatedly, how any particular misrepresentation could have caused that plaintiff to incur some form of damages). Rule 9(b) requires this type of specificity for misrepresentation-based claims; in order to make out such a claim, the plaintiff must "explain[] exactly how [Defendant] made a false representation that [Plaintiffs] reasonably relied on." *Twardzik*, 2022 WL 606092, at *4 (internal quotation marks and citations omitted).[19]

---

[19]    It may be that reliance is not an element of certain of the consumer protection statutes at issue here. For example, elsewhere in their briefing, Plaintiffs assert that a claim made pursuant to Section 349 of the New York General Business Law does not require a showing of reliance. (D.I. 25 at 17 (citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005)) But even if that is so, that law (and others like it) require a

Here, the Court agrees with Defendant that Plaintiffs' allegations are insufficient. As to 27 of the 30 named Plaintiffs at issue,[20] the SAC's allegations on this score are word-for-word identical (which is, in and of itself, a sign that Rule 9(b) may not be satisfied). That "generic[] and verbatim identical" allegation, (D.I. 23 at 3), is that "[p]rior to purchasing [a] Class Laptop, [Plaintiff] researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings." (D.I. 19 at ¶¶ 133, 144, 156, 163, 174, 186, 197, 209, 220, 231, 248, 260, 272, 284, 305, 316, 327, 338, 350, 362, 373, 385, 396, 408, 432, 444, 455) There is no attempt here to identify any *specific* alleged

---

plaintiff to show injury caused by the deceptive practice at issue. *Pelman*, 396 F. Supp. 2d at 444. Thus, even if there are some scenarios wherein a plaintiff could plead causation as to this statute without pleading reliance, the Court does not see how one could do so here—at least to the extent that a Plaintiff's claim is premised on the fact that Defendant made an intentional misrepresentation. Such a Plaintiff would have to explain (with specificity, pursuant to Rule 9(b)) how it is that the misrepresentation caused him or her harm. And to do so, he or she would presumably have to state what misrepresentation he or she saw that factored into that person's decision to buy a Class Laptop. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 791 (C.D. Cal. 2022) (citing cases); *Rice v. Electrolux Home Prods.*, No. 4:15-CV-00371, 2021 WL 916203, at *3-4 (M.D. Pa. Mar. 10, 2021).

[20]   With regard to Plaintiff Janet Purvis of Missouri, the SAC does not make any allegations at all that she reviewed any alleged misstatements of Defendant before purchasing a Class Laptop. (D.I. 19 at ¶¶ 294-302) That is because Ms. Purvis is alleged to have "received an HP Pavilion x360 Laptop as a gift for her personal use on November 1, 2019." (*Id*. at ¶ 295) The Court does not understand how Ms. Purvis could successfully make out a claim based on fraudulent misrepresentation pursuant to the counts at issue here, if she never relied on or interacted with any form of Defendant-related advertising prior to receiving her laptop as a gift.

Similarly, as to Plaintiff Ian Perry of New York, the SAC pointedly does not state that he reviewed any advertisements from Defendant prior to purchasing his laptop. (*Id*. at ¶¶ 420-29) Thus, it does not appear that Plaintiffs intend to make a claim regarding Mr. Perry that relates to intentional misrepresentations.

Lastly, the SAC includes reference in its caption and opening paragraph to Plaintiff Trudy L. Graner. (*Id*. at 1-2) So far as the Court can tell, Ms. Graner is never mentioned again in the SAC. (D.I. 23 at 2-3 n.1) And so the Court does not see how Plaintiffs can be attempting to put Ms. Graner forward as a named Plaintiff in any respect, including as to a claim premised on intentional misrepresentations. It will not discuss her further herein.

misrepresentation that each Plaintiff actually saw, or that is said to have contributed to that Plaintiff's decision to buy a Class Laptop.

It makes sense why Rule 9(b) requires more. *See Frederico*, 507 F.3d at 200 (explaining that Rule 9(b)'s purpose is to require a plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged") (internal quotation marks and citation omitted). For example, assume that Defendant had a winning argument that certain of the alleged statements at issue do not actually amount to actionable misrepresentations. (*See, e.g.*, D.I. 23 at 9 n.7) But also assume that its arguments on that score as to other of the asserted misrepresentations were not viable. In such a scenario, Defendant (and the Court) would need to know, on a Plaintiff-by-Plaintiff basis, which Plaintiff had seen which alleged misstatement at issue. Only if that was well set out in the pleading could Defendant and the Court thus be clear as to which of these Plaintiffs' claims should proceed forward, and which should not.

For these reasons, Plaintiffs' statutory consumer protection claims are dismissed to the extent that they are premised on intentional misrepresentations made by Defendant. *See, e.g.*, *Shea v. Gen. Motors LLC*, 567 F. Supp. 3d 1011, 1024 (N.D. Ind. 2021) (finding that a claim based on fraudulent misrepresentations brought under the Indiana statute at issue here did not satisfy Rule 9(b), where the plaintiffs "never sufficiently allege they relied on the[ marketing materials at issue said to include deceptive statements] in making their purchases"); *Glass v. BMW of N. Am.*, Civil Action No. 10-5259 (ES), 2011 WL 6887721, at *7 (D.N.J. Dec. 29, 2011) (concluding that a plaintiff, who was attempting to plead an intentional misrepresentation-type claim based on the New Jersey statute at issue here, had failed to do so pursuant to Rule 9(b), where she simply "reference[d] a statement on a website without providing the date when

22

the statement was made or at what point—if ever—Plaintiff was exposed to that statement[,]" such that she had failed to state "the specific advertisement that she reviewed which included a misrepresentation"); *cf. Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1188 (W.D. Wash. 2010) (concluding that plaintiffs, who were attempting to plead such a claim under the Washington statute at issue here, had not sufficiently done so because they failed to identify the statements of defendant that they had relied upon).

The Court next assesses the statutory consumer protection claims and the common law fraud claims to the extent they are premised on Defendant's alleged *fraudulent omissions*. In the SAC, Plaintiffs' allegation is that Defendant "concealed from and/or failed to disclose to Plaintiffs and the Class members the defective nature of the Class Laptops[.]" (D.I. 19 at ¶ 31)

This Rule 9(b) analysis is a bit more challenging than that regarding the alleged fraudulent misrepresentations. But in the end, the Court similarly agrees that Plaintiffs' claims as to the counts at issue should be dismissed to the extent they relate to purported fraudulent omissions.

To start, the Court acknowledges (as Plaintiffs note), (D.I. 25 at 5-6), that when it comes to claims that plead fraudulent omissions (as opposed to fraudulent misrepresentations), Rule 9(b)'s pleading standard is necessarily "relaxed" in certain ways. Our Court has recognized this in the past, *see Bolton v. Ford Motor Co*., Civil Action No. 23-00632-GBW, 2024 WL 3328522, at *9 (D. Del. July 8, 2024); *Robinson v. Gen. Motors, LLC*, Civil Action No. 20-663-RGA-SRF, 2021 WL 3036353, at *4 (D. Del. July 19, 2021), *report and recommendation adopted*, 2021 WL 7209365 (D. Del. Nov. 30, 2021), and the Court presumes that the United States Court of Appeals for the Third Circuit would as well, *see Twardzik v. HP Inc*., No. 22-2650, 2023 WL 5770999, at *6 (3d Cir. Sept. 7, 2023) (Freeman, J., dissenting in part). The Court understands

23

that the reason why Rule 9(b) must necessarily be "relaxed" as to fraudulent omission claims is

that—unlike with a fraudulent misrepresentation claim (where it is always the case that a

particular statement at issue has been made in a particular time period by a particular speaker, or

reviewed in a particular time period by a particular claimant)—a claim regarding a fraudulent

omission simply does not lend itself to specificity of that same type.  Put differently, one cannot

identify with specificity *one particular date or time or speaker* that relates to an *omission*—since

by definition, when it comes to an omission, the idea is that the defendant simply *never* said

anything at *any* particular time.  *See Robinson*, 2021 WL 3036353, at *4 (explaining that with a

fraud-by-omission claim, the plaintiff "will not be able to specify the time, place and specific

content of an omission as precisely as would a plaintiff in a false representation claim");

*Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 533 (D. Md.

2013) (noting that Rule 9(b) is less strictly applied with respect to claims of fraud by

concealment because "an omission cannot be described in terms of the time, place, and contents

of the misrepresentation or the identity of the person making the misrepresentation") (internal

quotation marks and citation omitted).

Even still, there is no dispute that as to their fraudulent omission-based claims, Plaintiffs

otherwise need to plead the "who, what, when, where and how," in order to satisfy Rule 9(b).

(D.I. 25 at 6; D.I. 26 at 3)  In the Court's view, this would mean that each Plaintiff would need to

plead some *specific* facts (i.e., facts that would satisfy Rule 9(b)), indicating why it is plausible

that he or she relied upon the omission at issue (or why the omission caused him or her harm) as

to the purchase of a Class Laptop.  Put another way, each Plaintiff should have to plead some

*specific* facts that show why it is plausible that—had Defendant not concealed the Hinge Defect

(and instead made some type of public statement or disclosure regarding it)—this actually would

have impacted the Plaintiff's purchasing decision in some way.  This should include some *specific* allegations about the extent to which, prior to purchase, each Plaintiff made an effort to search for or obtain information about HP laptops (or at least laptops in general)—i.e., the kind of searching that might have plausibly caused them to see a statement/disclosure from Defendant about the Hinge Defect, had one ever been made.

However, as was noted above, the SAC does not include any such *specific* allegations.  Instead, for 27 of the 30 Plaintiffs, it simply makes the exact same *broad, general, boilerplate-type* assertion:  that before acquisition of the Class Laptop at issue, each Plaintiff "researched different laptops and viewed multiple advertisements from HP, touting HP laptops' reliability, durability, and superiority over competitive offerings."  Again, that is a vague, *unspecific* allegation.  And because the allegation is identical as to each Plaintiff at issue, it cannot be meant to state with particularity the actual experience of any *one* Plaintiff at all.  This simply cannot be what Rule 9(b) contemplates.

Plaintiffs push back by suggesting that, pursuant to the "relaxed" standard for pleading Rule 9(b) in fraudulent omission cases, they should not have to make any specific, particularized assertions as to how Defendant's omissions caused them harm.  (D.I. 25 at 5-7)  But the Court does not see why this is so.  Certainly, this type of information is not unavailable to each Plaintiff.  Put differently, while there is no one unique and specific date or time on which Defendant omitted the information about the Class Laptops, a Plaintiff certainly can plead some specific facts (as opposed to one genericized, copy-and-pasted sentence) about the extent to which they searched for information relevant to the laptops at issue before they made their purchase.

Moreover, the SAC itself sheds light on why these types of specific allegations could be crucial at the pleading stage.  (D.I. 23 at 11)  As was noted previously, *see supra* at 21 n.20, one Plaintiff, Janet Purvis of Missouri, received her Class Laptop as a gift.  (D.I. 19 at ¶ 295) Another, Ian Perry of New York, does not appear to have done any research about laptops at all, nor to have reviewed any advertisements from Defendant, prior to purchasing his Class Laptop. (*Id*. at ¶¶ 420-29)  If this is so, then the Court does not see how it could plausibly be asserted that either of these Plaintiffs relied on Defendant's fraudulent omissions.  Nor does it see how one could allege that the omissions somehow caused these Plaintiffs to come into possession of their laptop.

Additionally, consider a Plaintiff who browsed the internet looking for information about a laptop she might purchase, but did so only on one day for a few minutes.  Then consider another Plaintiff who spent weeks looking for laptop-related information online, including by perusing HP-related websites on the subject.  It could be that the former would not have a plausible claim premised on the fraudulent omissions at issue.  But the latter surely would.  And yet, the problem with the SAC is that there are no *specific* facts (that is, facts *specific to each Plaintiff*) pleaded on this score enabling the reader to differentiate the former Plaintiff from the latter.  And again, it is possible for a plaintiff to plead these types of facts; Plaintiffs here simply did not take the time to do so.[21]  *See, e.g., Bertini v. Smith & Nephew, Inc*., 8 F. Supp. 3d 246,

---

[21]     In *Eisen v. Porche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019 (N.D. Cal. Feb. 22, 2012), the United States District Court for the Northern District of California concluded that the plaintiff, in order to plead a fraud by omission claim (and a similar claim pursuant to certain of the California statutes at issue here) with specificity under Rule 9(b), had to "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied upon to make her purchase and that failed to include the allegedly omitted information."  2012 WL 841019, at *3.  Both sides reference *Eisen* in their briefing here.  (D.I. 23 at 10-11; D.I. 25 at 6-7)  But Plaintiffs argue that other judicial opinions

259 (E.D.N.Y. 2014) (concluding that plaintiffs had not sufficiently pleaded reliance pursuant to Rule 9(b) as to a fraudulent omission claim made pursuant to New York law, where the plaintiffs had never alleged that they had viewed any press releases of defendants about the relevant subject matter); *Rice v. Electrolux Home Prods., Inc.*, No. 4:15-CV-00371, 2020 WL 247284, at *14 (M.D. Pa. Jan. 15, 2020) (concluding that, regardless of whether under Rule 9(b) a "more flexible" standard for pleading reliance as to a fraudulent omissions was used, the plaintiff had not met the pleading bar, where the assertions amounted to only a "general allegation" regarding reliance); *cf. In re MacBook Keyboard Litig.*, Case No. 5:18-cv-02813-EJD, 2019 WL 1765817, at *7 (N.D. Cal. Apr. 22, 2019) (concluding that the plaintiffs had sufficiently pleaded reliance as

---

have criticized *Eisen*'s holding in this respect, or have otherwise failed to require such specificity when it comes to reliance on omissions, (D.I. 25 at 6-7). *See, e.g.*, *Banh v. Am. Honda Motor Co., Inc.*, Case No. 2:19-cv-05984-RGK-AS, 2019 WL 8683361, at *7 (C.D. Cal. Dec. 17, 2019) (concluding that, contrary to *Eisen*, plaintiffs bringing fraudulent omission claims, including as to certain of the California statutes at issue here, could plead causation sufficiently pursuant to Rule 9(b) where their allegations, though "not a model of specificity[,]" asserted that they "reviewed information on Acura's website or Honda promotional materials before purchasing the Vehicle") (*cited in* D.I. 25 at 6); *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 612 (D.N.J. 2014) (concluding that, as to the Washington statute at issue here, a plaintiff asserting a claim based on omissions did not need to plead "that he saw a communication from [the defendant] before he made his purchase[,]" but noting that he would still need to "prove causation") (*cited in* D.I. 25 at 6, 7). Yet other courts seem to have cited to *Eisen* approvingly as to this issue. *See Grimes v. Ford Motor Co.*, Case No. EDCV 22-1896-MWF (JC), 2023 WL 5207463, at *9 (C.D. Cal. Mar. 6, 2023); *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 826 (N.D. Cal. July 26, 2021); *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00698-KJM-CKD, 2019 WL 2249605, at *4 (E.D. Cal. May 24, 2019).

The Court is not suggesting that a plaintiff has to plead every possible advertising-related location or venue where the defendant could have possibly made a fulsome disclosure (but failed to). Nor is it suggesting that a plaintiff has to remember with precise detail the content of any HP-related or laptop-related advertising/information it sought out in the relevant time. Instead, the Court is simply suggesting that when it comes to Rule 9(b)'s requirement that a plaintiff plead sufficient reliance-related facts as to a fraudulent omission claim, the pleading cannot just include the same cut-and-pasted wording for each of approximately 30 different Plaintiffs. The pleading needs to allege at least some facts—*specific to that plaintiff*—that renders it plausible that he or she actually relied on a fraudulent omission (or that the omission actually caused him or her harm).

to a fraudulent omission claim pursuant to Rule 9(b), but where each plaintiff had alleged that they visited a specific website of the defendant prior to purchasing their laptop, and had also alleged that they saw certain representations on that website regarding the laptop's keyboard (i.e., the portion of the laptop that was at issue in plaintiffs' defect claims) and its capabilities).

For these reasons, the Court concludes that Plaintiffs' statutory consumer protection claims and common law fraud claims must also be dismissed, to the extent that they are premised upon Defendant's fraudulent omissions/concealment of facts relating to the Hinge Defect. Thus, the Court has now ruled that the Motion is GRANTED as to the entirety of these claims, such that they are now dismissed.

With that said, it seems possible that as to the statutory consumer protection claims and common law fraud claims, at least some number of Plaintiffs could address the Court's concerns here in a renewed pleading. For that reason, because Plaintiffs have sought leave to amend if their allegations were deemed deficient, (D.I. 25 at 33-34), and because Federal Rule of Civil Procedure 15(a)(2) states that a court should "freely give leave [to amend the pleadings] when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the court will dismiss these claims without prejudice.

        ii.        **Defendant's Other Challenges to the Statutory Consumer Protection Claims and the Common Law Fraud Claims**

The Court could stop here as to the statutory consumer protection claims and common law fraud claims. But because Defendant raised so many other challenges to them, and because it may help streamline the future pleading process to do so (assuming Plaintiffs attempt to re-plead), below the Court will provide its view as to how it likely would have ruled on Defendant's other challenges to these claims, had it needed to do so:

- The Court would likely have DENIED the Motion as to its argument that the SAC contains no particularized allegations of falsity (in that it instead simply references non-actionable puffery), (D.I. 23 at 9 n.7), because the argument was made solely in a footnote in Defendant's opening brief.  *See Sage Chem., Inc. v. Supernus Pharms., Inc*., Civil Action No. 22-1302-CJB, 2024 WL 2260331, at *11 n.14 (D. Del. May 9, 2024) (citing cases).

- The Court would likely have DENIED the Motion as to its argument that Plaintiffs failed to sufficiently allege a defect (i.e., because there are no allegations as to why there was a materially significant failure rate as to the Class Laptops), (D.I. 23 at 12), in light of the SAC's allegations regarding the magnitude of the customer complaints regarding the Hinge Defect, (D.I. 19 at ¶¶ 17, 91-98).

- The Court would likely have DENIED the Motion as to its argument that Plaintiffs failed to sufficiently allege Defendant's knowledge of any defect, (D.I. 23 at 12-13), in light of the SAC's allegations regarding the magnitude of the customer complaints regarding the Hinge Defect and that many of those complaints were found on Defendant's own website, (D.I. 19 at ¶¶ 17, 91-98; D.I. 25 at 9-10).  *See In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 815-16 (N.D. Ill. 2016); *Avedisian v. Mercedes-Benz USA, LLC*, No. CV 12-00936 DMG (CWx), 2013 WL 2285237, at *7 (C.D. Cal. May 22, 2013); *In re Sony Vaio Comput. Notebook Trackpad Litig.*, No. 09cv2109 BEN (RBB), 2010 WL 4262191, at *5 (S.D. Cal. Oct. 28, 2010).

- The Court would likely have DENIED the Motion as to its argument that Plaintiffs failed to sufficiently allege a duty to disclose, (D.I. 23 at 14), for essentially the reasons set out by Plaintiffs, (D.I. 25 at 10-12), and because Defendant did not do enough to "parse the different state standards for duty to disclose in its briefing[,]" *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 600 (E.D. Mich. 2017).

- With regard to the various additional state law-specific reasons (i.e., those reasons that are distinct from whether Plaintiffs sufficiently pleaded the above-referenced elements of a fraudulent misrepresentation and omission claim) that Defendants suggested would warrant dismissal of these counts as to some Plaintiffs, (D.I. 23 at 15-20), the Court would likely have DENIED the Motion on these grounds, with the exception of:  (1) Plaintiff Carole Schauer's California statutory claims in Counts IX, X and XIII, and Plaintiff Terrance Graner's claims under the CCLRA and

CFAL in Counts X and XIII, which appear to be time-barred as pleaded.[22] (D.I. 23 at 17; D.I. 25 at 15; *see also* D.I. 19 at ¶¶ 154-55, 159, 185, 189);[23] (2) Plaintiffs' claims in Counts XXV and XXIX, for the reason set out by Defendant. (D.I. 23 at 18); (3) Plaintiff Sabine Miller's claim under the IDCSA in Count III, which appears to be time-barred as pleaded. (*Id*.; *see also* D.I. 19 at ¶¶ 271, 275); (4) Plaintiff Janet Purvis' claim under the MMPA in Count VII, due to lack of standing. (D.I. 23 at 19; *see also* D.I. 19 at ¶ 295); *see supra* at 21 n.20.; (5) Plaintiff Cara Washington's claim under the OCSPA in Count VIII, which appears to be time-barred as pleaded. (D.I. 23 at 20; *see also* D.I. 19 at ¶¶ 326, 330); (6) Plaintiff Sarah Householder's claim under the OUTPA in Count XIV, which appears to be time-barred as pleaded. (D.I. 23 at 20; *see also* D.I. 19 at ¶¶ 304, 308); and (7) Plaintiff Donald Harmon's claim in Count IV, in that Plaintiffs have conceded that claim. (D.I. 25 at 2 n.1)[24]

## 2.     Plaintiffs' Nationwide Class Claims

The Court next addresses Defendants' Rule 12(b)(6) challenges to what Defendants refer to as Plaintiffs' "nationwide class claims." (D.I. 23 at 20-27) These include Plaintiffs': (1) unjust enrichment claims; (2) express warranty claims; and (3) implied warranty claims. The Court will take up these challenges in turn.

### a.     Unjust Enrichment Claims

---

[22]     The Court agrees with Defendant that Plaintiffs' allegations that might implicate tolling of the relevant statutes of limitations were conclusory and insufficiently pleaded. (D.I. 26 at 8)

[23]     Due to another typographical error, the SAC has two sets of paragraphs 155-59, found on pages 64-67. Above, the Court means to refer to the first paragraph 159 and both paragraphs 155.

[24]     Above the Court has dismissed the statutory consumer protection claims and common law fraud claims without prejudice. To the extent here it is noting that certain of such claims do not appear to be properly pleaded on other grounds, it expects Plaintiffs to take this guidance into consideration in determining whether and/or how to re-plead certain of these claims.

The Court first addresses Plaintiffs' two unjust enrichment claims: their class-wide claim for unjust enrichment/restitution (Count XXIII) and the unjust enrichment claim brought on behalf of the Michigan subclass (Count XIX). Generally, to state a claim for unjust enrichment, "a plaintiff must allege that: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civil Action No. 16-2765 (JLL), 2017 WL 1902160, at *22 (D.N.J. May 8, 2017) (internal quotation marks and citation omitted).

In Count XXIII in the SAC, Plaintiffs allege that as a result of Defendant's false, deceptive and misleading actions (of the type described above), Defendant received payment for the sale of the Class Laptops; however, since the products were unfit for their intended use, Plaintiffs and Class Members did not receive the goods they paid for. (D.I. 19 at ¶¶ 745-50) And Plaintiffs allege that to the extent they did not purchase a Class Laptop directly from Defendant, they are nonetheless a victim of Defendant's unjust enrichment. (*Id*. at ¶ 751) Further, they assert that the benefits Defendant received were earned at Plaintiffs' expense and were not legitimately earned. (*Id*. at ¶ 752) Plaintiffs' allegations in Count XIX are no different. (*Id.* at ¶¶ 717-21)

Defendant responds by arguing that the unjust enrichment claim fails for five different reasons: (1) Plaintiffs have not sufficiently asserted the claim pursuant to Rule 9(b); (2) Plaintiffs are unable to show that any benefit conferred on Defendant was unjust; (3) Plaintiffs from certain named states may not pursue a claim for unjust enrichment because an express contract—the Limited Warranty—governs the subject matter; (4) certain of Plaintiffs' claims fail because the Class Laptop was not purchased directly from Defendant; and (5) certain of Plaintiffs' claims are time-barred. (D.I. 23 at 20-22)

With regard to the first asserted reason for dismissal—i.e., that the claim is not sufficiently pleaded pursuant to Rule 9(b)—the Court agrees with Defendant.  Plaintiffs' only counter-argument here was that it need not satisfy Rule 9(b) as to its claims.  (D.I. 25 at 20)  In order to make out an unjust enrichment claim, as was noted above, Plaintiffs have to, *inter alia*, plead facts indicating that Defendant engaged in acts "that would make it unjust for [it] to retain the benefit [at issue] without paying for it."  Here, those "unjust" acts are alleged to be Defendant's purportedly fraudulent misrepresentations and omissions regarding the Class Defect—the types of factual allegations sounding in fraud that implicate Rule 9(b).  (D.I. 19 at ¶ 749 (Plaintiffs alleging, in Count XXIII, that Defendant received the benefits at issue unjustly due to having engaged "in a false, deceptive and misleading scheme"); *see also id*. at ¶ 754; *id*. at ¶ 719 (Plaintiffs noting that Count XIX is premised on Defendant's "wrongful and fraudulent acts and omissions as set forth above"))  Thus, Rule 9(b) applies to these claims too.  *See Diaz*, 2022 WL 4016744, at *22; *Murray Eng'g P.C. v. Remke*, 17 Civ. 6267 (KPF), 2018 WL 3773991, at *15 (S.D.N.Y. Aug. 9, 2018) (citing cases); *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 521 (S.D.N.Y. Mar. 11, 2016).  And since Plaintiffs (for the reasons set out previously) did not sufficiently plead the "what" and the "how" of such claims, their allegations in Counts XIX and XXIII also do not satisfy Rule 9(b).

For the foregoing reasons, the Court GRANTS Defendant's Motion as to the unjust enrichment claims.  As with Plaintiffs' statutory consumer protection claims and common law fraud claims, the Court does so without prejudice.[25]

---

[25]     Although it need not do so (since it has already ordered the claims dismissed on another ground), the Court again briefly here will provide guidance regarding Defendant's four other arguments for dismissal of the unjust enrichment claims.  The second ground (i.e., that Plaintiffs have not sufficiently pleaded that any benefit conferred on Defendant was unjust) seems subsumed within (and thus duplicative of) Defendant's first Rule 9(b)-related ground.

### b.   Express Warranty Claims

The Court next addresses Plaintiffs' express warranty claims.[26]  As to these claims,

Plaintiffs allege, *inter alia*, that Defendant:  (1) made express warranties to the public (via its

Limited Warranty) that the Class Laptops were merchantable and fit for their ordinary purposes,

and that Defendant will repair the product if needed (or replace or refund the product if repairs

are not feasible); and (2) breached those warranties by selling defective Class Laptops, and by

---

With regard to the third ground (i.e., that certain Plaintiffs may not pursue the claim because an express contract—the Limited Warranty—governs the subject matter), the briefing on the issue was sparse.  That said, while a plaintiff can plead in the alternative, (D.I. 25 at 21), in order to do so here it seems Plaintiffs would have to have pleaded some alternative facts that plausibly suggest that the Limited Warranty did *not* exist or did *not* provide an adequate legal remedy at law for the misconduct at issue.  *Cf. Villanueva v. Am. Honda Motor Co*., Case No. CV 19-1390-MWF (MAAx), 2019 WL 8112467, at \*15-16 (C.D. Cal. Oct. 10, 2019).  The Court does not see where they did so.  And so because the facts set out in the pleading suggest that both sides agree on the existence of such a contract, the Court likely would have GRANTED the Motion as to the unjust enrichment claims on this ground as well.  *See Shea*, 567 F. Supp. 3d at 1024; *Miller*, 2018 WL 2740240, at \*15.  With regard to the fourth ground (i.e., that the unjust enrichment claims on behalf of certain Plaintiffs should be dismissed because those Plaintiffs did not buy their Class Laptop directly from Defendant), the Court can at least say the following:  (1) Having carefully reviewed the cases cited by the parties, it seems that the law of a number of the relevant states permits such a claim to be brought even if the defendant can be said to have received an indirect benefit from the plaintiff (or a benefit that passed through intermediaries), or that the law of the state is at least unclear in that regard.; (2) So, if in a further amended pleading Plaintiffs pleaded facts that explain how, as to each Plaintiff's purchase, Defendant would have plausibly indirectly benefitted from that purchase, this ground would not likely serve to dismiss all (or even most) of these Plaintiffs' unjust enrichment claims.; (3) The Court does not see how Plaintiff Janet Purvis could state a claim in any respect, for the reason Defendant cites. (D.I. 23 at 22-23 (citing D.I. 19 at ¶ 295))  Lastly, as to the fifth ground, it appears that the unjust enrichment claims of Plaintiffs Carole Schauer, Lorne Cosman, Terence Graner and Sabine Miller are time-barred as pleaded.  (D.I. 23 at 22; D.I. 19 at ¶¶ 154-55, 157, 162, 166, 185, 189, 271, 275)  So the Court would likely have GRANTED the Motion as to these claims regarding these Plaintiffs on this ground as well.

[26]      Defendant does not assert that the express warranty claims (or the implied warranty claims discussed hereafter) are subject to Rule 9(b); the Court will thus assess them pursuant to Rule 8's pleading requirements.

insufficiently repairing defective components or by wrongly refusing to repair laptops in certain circumstances.  (D.I. 19 at ¶¶ 21-27, 630-31, 633-34, 834-35, 837-38, 947-55)

Defendant argues that Plaintiffs' breach of express warranty claims must fail, because Plaintiffs did not experience any alleged defect during the one-year Limited Warranty period, and (relatedly) because they did not permit Defendant to repair or replace the laptops at issue within that one-year period, as is required by the warranty.  (D.I. 23 at 1, 23-24 (citing D.I. 24, ex. A at 1); D.I. 26 at 7); *see also* D.I. 19 at ¶ 621)[27]  Indeed, a manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992).  Thus, typically a claim for breach of express warranty under a state's laws will fail if the defect in question manifested after the expiration of the express warranty itself. *See, e.g.*, *Robinson*, 2021 WL 3036353, at *16; *Tabak v. Apple, Inc.*, Case No. 19-cv-02455-JST, 2020 WL 9066153, at *11 (N.D. Cal. Jan. 30, 2020); *Skeen v. BMW of N. Am., LLC*, Civ. No. 2:13-cv-1531-WHW-CLW, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014).

---

[27]     In its opening brief, Defendant seemed to say that the SAC's allegations were that every one of the 30 named Plaintiffs "did not experience any alleged defect during the one-year Limited Warranty period."  (D.I. 23 at 23)  From the Court's review, it seems like all but seven of the Plaintiffs allege that they first experienced the defect after a year had passed since they purchased or otherwise obtained their Class Laptop; the allegations as to the other seven could at least be read to assert that they experienced the defect prior to a year's passing. (*See* D.I. 19 at ¶¶ 196, 201, 223, 271, 275, 283, 287-88, 384, 388, 443, 447, 454, 458)  That said, as to all but one of those seven Plaintiffs (all but Plaintiff Trudy Letson), (*id.* at ¶ 201), it does not appear that there are allegations that the Plaintiff actually provided Defendant with notice of the problem with their Class Laptop within the one-year time period, which is required by the warranty.  (D.I. 19; D.I. 23 at 24; D.I. 24, ex. A at 1)  And in any event, in their answering brief, Plaintiffs did not argue that the express warranty claims should survive as to any Plaintiff because Plaintiff did in fact satisfy the one-year durational requirement of the warranty.  Instead, there, Plaintiffs focused solely on their assertion that this portion of the warranty was unconscionable. (D.I. 25 at 24-27)  And so that unconscionability issue will be the Court's focus here too.

Plaintiffs respond by arguing that their express warranty claims should not be dismissed on the ground that their claims fall outside of the warranty's durational limitations.  To that end, they retort that it "matters not that the Hinge Defect manifested after HP's one-year warranty period expired . . . because Plaintiffs' adequately allege the durational limitations in HP's warranty are *unconscionable* and unenforceable."  (D.I. 25 at 24 (emphasis added))

These claims, then, will rise or fall on whether Plaintiffs sufficiently pleaded the unconscionability (and thus, unenforceability) of the Limited Warranty.  "Unconscionability has both a procedural and a substantive element."  *Tabak*, 2020 WL 9066153, at *12 (describing CA law) (internal quotation marks and citation omitted); *see also Skeen*, 2014 WL 283628, at *13 (describing NJ, GA and IL law).  The procedural element focuses on oppression and surprise.  *Tabak*, 2020 WL 9066153, at *12; *Skeen*, 2014 WL 283628, at *13.  "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice.  Surprise involves the extent to which the terms of the [agreement] are hidden" by the complicated or convoluted language of the agreement.  *Tabak*, 2020 WL 9066153, at *12 (internal quotation marks and citation omitted); *see also Skeen*, 2014 WL 283628, at *13.  The substantive element of unconscionability focuses on the actual terms of the agreement "and evaluates whether they create overly harsh or one-sided results as to shock the conscience."  *Tabak*, 2020 WL 9066153, at *12 (internal quotation marks and citation omitted); *see also Skeen*, 2014 WL 283628, at *13.[28]

---

[28]     The Court presumes that what it has described here as the law regarding procedural and substantive unconscionability, as set out by the cited cases above, would not materially differ as to any of the state laws that are relevant to the express warranty claims.  In their briefing, the parties did not suggest otherwise.  (*See, e.g.*, D.I. 25 at 25); *see also Skeen*, 2014 WL 283628, at *12-13.

The SAC's allegations about why the Limited Warranty was procedurally and substantively unconscionable are laid out in certain of its paragraphs relating to the breach of express warranty allegations. (*See, e.g.*, D.I. 19 at ¶¶ 25, 27, 633-34, 951-53) The Court will summarize them here.

With regard to procedural unconscionability, Plaintiffs focus on the oppression element. There they assert that there was "unequal bargaining power between Defendant and Plaintiffs[.]" (D.I. 19 at ¶ 25; *see also id.* at ¶ 634) This was because at the time of purchase, Defendant had "knowledge of the Hinge Defect in the Class Laptops" while Plaintiffs did not, and because Defendant "manipulated the warranty" at issue to be a one-year warranty, all while knowing that in doing so, the durational limitation would "often expire before the defect materialized" (which Plaintiffs did not realize). (*Id.* at ¶¶ 25-26, 633-34, 952; D.I. 25 at 26) This practice left Plaintiffs with "no other options" to negotiate better terms for the warranty. (D.I. 19 at ¶ 25)

As to substantive unconscionability, Plaintiffs are not suggesting that a one-year warranty is *per se* wrongful. *See, e.g.*, *Popham v. Keystone RV Co.*, CAUSE NO.: 3:15-CV-197-TLS, 2016 WL 4993393, at *7 (N.D. Ind. Sept. 19, 2016) ("A one-year durational warranty is not per se unconscionable."); *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2006 WL 3093685, at *8 (N.D. Cal. Oct. 31, 2006) (finding that a time limitations in express warranties are not themselves unconscionable). Instead, Plaintiffs are alleging that what is unduly "harsh

---

Additionally, in their briefing, Plaintiffs suggest that parties in their shoes must plead *both* procedural and substantive unconscionability. (D.I. 25 at 25-26) That seems to be the case at least in many of the states at issue here, *see, e.g.*, *Snowdy v. Mercedes-Benz USA, LLC*, Civil Action No. 23-1681 (ES) (AME), 2024 WL 1366446, at *23 & n.15 (D.N.J. Apr. 1, 2024); *Tabak*, 2020 WL 9066153, at *12 & n.12, though not every state's law appears to require this, *see, e.g., Skeen*, 2014 WL 283628, at *14; *Brown v. Louisiana-Pacific Corp.*, Case No. 4:12-cv-00102-SMR-HCA, 2014 WL 11513168, at *13 (S.D. Iowa Sept. 18, 2014). But for our purposes, the Court will assume Plaintiffs are correct in this regard as to all of the varying states' laws at issue.

and shocks the conscience" is that Defendant intentionally crafted a one-year Limited Warranty in light of the fact that they: (1) knew that the Class Laptops were defective; (2) "failed to disclose" that fact to Plaintiffs; and (3) "continu[ed] to market misrepresentations of the performance properties" of the laptops to Plaintiffs. (D.I. 19 at ¶¶ 27, 634, 951; D.I. 25 at 26)

The judicial opinions regarding what allegations are sufficient to plead unconscionability of this type are not all of like mind. Indeed, the parties cite to divergent lines of cases in this regard. One line tends to rely on the decision in *Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), while the other tends to cite to the decisions in *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995) and *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238 (2d Cir. 1986). Generally, the cases cited by Plaintiffs follow *Carlson*, whereas the cases cited by Defendant rely on *Duquesne* and *Abraham*.

In *Carlson*, the case involved claims by plaintiffs that the defendant, General Motors Corporation ("GM"), produced automobile engines with certain alleged defects; the plaintiffs claimed that GM was liable in various ways for those defects. 883 F.2d at 289. One difficulty for the plaintiffs was that GM's express and implied warranties had two- or three-year durational limitations (depending on the model year of the engine at issue). *Id*. at 290. Certain plaintiffs had challenged the durational limitations relating to the implied warranties as being unconscionable pursuant to federal law; the district court had denied those challenges (finding the limitations to be "'reasonable'" and "'conscionable'") and dismissed the claims. *Id*. at 292-93.

However, the United States Court of Appeals for the Fourth Circuit overturned that decision, finding that the plaintiffs had adequately pleaded the unconscionability of the limitations at issue. As to procedural unconscionability, for example, the *Carlson* Court noted

that the plaintiffs alleged that due to "unequal bargaining power" between the parties and "lack of effective warranty competition among dominant firms" in the industry, consumers "had no meaningful alternative to accepting [the defendant's] attempted limitation of the duration of the implied warranty." *Id*. at 294 (internal quotation marks and citations omitted).  The Fourth Circuit found that these facts, "if proven, clearly would establish unconscionability." *Id*. (internal quotation marks and citation omitted).  The Court additionally stated that "[p]erhaps most significantly, plaintiffs also alleged that GM knew of the inherent defects in its diesel engines—but failed to warn its customers of the consequential likelihood of 'catastrophic failures.'" *Id*. (citation omitted). It found that such assertions, coupled with the fact that GM imposed the durational limitations at issue on the warranties with knowledge that "the weaker party will be unable to receive substantial benefits from the contract[,]" was enough to plead unconscionability. *Id*. at 294 (internal quotation marks and citation omitted); *see also id*. at 296 ("Here, proof that GM knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable[,]'" particularly where the "buyer has 'no notice of [or] ability to detect' the problem[.]") (citation omitted).

The unconscionability cases that cite to and rely on *Carlson* generally take the following logical path:  (1) if the plaintiff is able to plausibly allege that the defendant knew of the alleged defect in the product at the time of contracting, and that the defect would typically manifest after the warranty had run (but did not disclose this); and (2) if the plaintiff alleges (as to procedural unconscionability) that the defendant was in a superior position with regard to negotiations over the contract at issue (e.g., in light of the fact that the defendant knew of the defect at issue, while

the plaintiff did not, and/or in light of other imbalances in the parties' respective negotiating positions); then (3) at the pleading stage, the plaintiff has sufficiently alleged that the durational terms of the warranty are unconscionable.  *See McIntyre v. Am. Honda Motor Co.*, Case No. 2:23-cv-7024-SPG-BFM, 2024 WL 3324622, at \*11 (C.D. Cal. July 3, 2024); *Bieda v. CNH Indus. Am. LLC*, 518 F. Supp. 3d 863, 871-73 (W.D. Pa. 2021); *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 322-24 (D. Md. 2021); *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493(VB), 2011 WL 7095432, at \*10 (S.D.N.Y. Dec. 16, 2011); *Cooper v. Samsung Elecs. Am., Inc.*, Civil Action No. 07-3853 (JLL), 2008 WL 4513924, at \*3 (D.N.J. Sept. 30, 2008); *Payne v. Fujifilm U.S.A., Inc.*, Civil Action No. 07-385(JAG), 2007 WL 4591281, at \*5 (D.N.J. Dec. 28, 2007); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006).

Next the Court will turn to the *Duquesne*/*Abraham* line of cases.  *Duquesne* did not address the question of unconscionability of a warranty *per se*.  Instead, there the Third Circuit reviewed a district court's decision to dismiss a breach of express warranty claim—as to a warranty that required a defect to manifest itself within one year in order that it be covered.  66 F.3d at 616.  The plaintiff argued that the warranty at issue should protect it against even those defects that were not discovered until after the warranty period expired, but the *Duquesne* Court found no reason to deviate from the "general rule" "that 'an express warranty does not cover repairs made after the applicable time . . . has elapsed'" and that "'latent defects discovered after the term of the warranty are not actionable.'"  *Id.* (quoting *Abraham*, 795 F.2d at 250).  For these propositions, *Duquesne* relied on *Abraham*.  *Id.*

In *Abraham*, the plaintiffs argued "that a defect discovered outside the time or mileage limits of the applicable written warranty, but latent before that time, may be the basis of a valid express warranty claim if the warrantor knew of the defect at the time of sale."  795 F.2d at 249.

The United States Court of Appeals for the Second Circuit rejected this argument, explaining that "virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty." *Id*. at 250.  Further, the *Abraham* Court stated that "[m]anufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time" and that "manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired."  *Id*.  The *Abraham* Court concluded, in affirming the district court's denial of the plaintiff's express warranty claim, that "[a] rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage."  *Id*.

A number of district courts addressing this issue have relied on *Duquesne* or *Abraham*; in doing so, they have tended to take a stricter approach as to what a plaintiff must allege in order to plausibly establish unconscionability.  These opinions tend to conclude that it is not sufficient to simply allege that a defendant knew (while the plaintiff did not) of a defect in the product at issue at the time of sale/warranty, and that the duration of the warranty may expire before the defect manifests.  In support, they note that the *Duquesne* Court and/or the *Abraham* Court did not appear to find this type of scenario to be troubling when assessing breach of warranty claims; thus, these courts conclude that such a scenario should not indicate unconscionable behavior. *See, e.g.*, *Alban v. BMW of N. Am.*, Civ. No. 09-5398 (DRD), 2011 WL 900114, at *9 (D.N.J. Mar. 15, 2011) (concluding that "the general rule, stated in *Duquesne*, prohibiting breach of warranty actions premised on defects that did not arise until after the warranty expired applies to Plaintiff's claims regardless of his assertion that BMW knew that his vehicle was defective

before the time-limit took effect" and concluding that the plaintiff's "bare-bones allegations that he had no meaningful choice in determining the time and mileage limitation, and that a gross disparity in bargaining power existed between him and BMW[,] are no more than conclusions [that] are not entitled to the assumption of truth") (internal quotation marks and citations omitted); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 257 (D.N.J. 2020) (citing *Abraham* and concluding that "conclusory allegations of substantive unconscionability based on a defendant[']s knowledge of a latent defect are insufficient to withstand a motion to dismiss"); *Callen v. Daimler AG*, CIVIL ACTION FILE NO. 1:19-CV-1411-TWT, 2020 WL 10090879, at *10 (N.D. Ga. June 17, 2020) (relying on *Abraham* for the "general rule [] that a manufacturer's knowledge of a defect cannot, without more, form the basis of a valid post-expiration express warranty claim"); *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, No. 1:14-cv-3722 (JBS-JS), 2015 WL 4591236, at *21 (D.N.J. July 29, 2015) (explaining that the "prevailing approach" is to "reject[] conclusory allegations of unconscionability based on knowledge of a latent defect" and pointing to cases relying on *Duquesne* and/or *Abraham*).

As noted above, *Duquesne* is a Third Circuit opinion, and the Third Circuit's law would control in this case. Therefore, the Court must look hard at what the Third Circuit was saying in *Duquesne*. And the Court agrees with the second line of cases discussed above that the tenor of *Duquesne*—and its reliance on the decision in *Abraham*—suggest that the Third Circuit would be unlikely to deem allegations about unconscionability sufficient, if all that was alleged was that: (1) a manufacturer knew of a defect in its product; and (2) that manufacturer entered into express warranty agreements with its customers wherein the warranty's duration could expire before the defect began to rear its head. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 520 (D.N.J. 2008) (concluding essentially the same).

That said, in the Court's view, where a plaintiff pleads not only that the manufacturer knew of the existence of the defect and offered a warranty that often expired before the defect manifested—*but also* that the manufacturer *intentionally took steps to manipulate* the durational limitation in the warranty for the very purpose of ensuring that it expired before the defect manifested, without telling unsuspecting customers—that seems like we are getting into a different, more substantive allegation.  Moreover, here the allegation is that Defendant did this all while making false statements or omissions to those same customers about the product's performance—allegations that seem to underscore the malign intent behind the conduct at issue. These alleged acts of intentional deception could plausibly suggest substantive unconscionability—i.e., the type of behavior that, if true, could "shock the conscience." Moreover, the Court sees how such conduct could plausibly demonstrate procedural unconscionability.  The SAC describes a scenario wherein the parties had unequal bargaining power (i.e., a power disparity regarding how warranty terms are established, and a power disparity with regard to knowledge of the key defect at issue and its relationship to the warranty's durational limitation).  Indeed, a number of courts have found a plaintiff to have sufficiently pleaded unconscionability when it plausibly made just these types of allegations.  *See Gelis v. Bayerische Motoren Werke Aktiengesellschaft*, No. 2:17-cv-07386, 2018 WL 6804506, at *6 (D.N.J. Oct. 30, 2018) (concluding that "[g]iven both (1) Plaintiffs' relative lack of power and sophistication and (2) allegations that BMW purposefully manipulated the warranty provision through their superior knowledge, Plaintiffs have sufficiently ple[d] an express warranty claim"); *Merkin v. Honda N. Am., Inc*., Civil Action No: 17-cv-03625 (PGS)(DEA), 2017 WL 5309623, at *5 (D.N.J. Nov. 13, 2017) (explaining that "a manufacturer's knowledge that a part may ultimately fail does not, alone, make a time/mileage limitation unconscionable"

but that "where the plaintiff has alleged that the manufacturer has knowingly manipulated the warranty terms to avoid coverage, courts in this district have been more inclined to find the warranty unconscionable"); *Skeen*, 2014 WL 283628, at *14 (finding that the plaintiffs "adequately alleged substantive unconscionability by claiming that Defendants knew the timing chain tensioners would fail and manipulated the warranty terms to avoid paying for it[,]" noting that the durational limitations on the express warranty were not per se unconscionable, "[b]ut the allegation of manipulation is sufficient"); *cf. Robinson*, 2021 WL 3036353, at *17 & n.41 (concluding that unconscionability was insufficiently alleged, but in part because the plaintiffs made no allegation that the defendants intentionally manipulated the warranty at issue, such that it would expire before the relevant defect came to light); *Taylor v. BMW of N. Am., LLC*, Civ. No. 20-1994 (KM)(JBC), 2021 WL 1186777, at *11 (D.N.J. Mar. 29, 2021) (dismissing the plaintiffs' unconscionability claims where the plaintiffs only alleged the defendant's knowledge of the defect—and did not allege that "Defendants manipulated the CPO Warranty so that the alleged defects would emerge after the warranty period"); *T.J. McDermott Transp. Co. v. Cummins, Inc.*, Civ. No. 14-04209 (WHW)(CLW), 2015 WL 1119475, at *9 (D.N.J. Mar. 11, 2015) (similar).

Here (as was noted above), in the SAC Plaintiffs have made just these types of allegations. That is, not only do they plead facts relating to Defendant's alleged pre-sale knowledge of the Hinge Defect (and Defendant's allegedly false statements or omissions about that subject matter), but they also assert that at the same time, Defendant took steps to "manipulate[] the warranty so it often expired before the defect materialized and the customer became aware of it." (D.I. 19 at ¶¶ 26-27) And there are additional allegations that render this assertion more than conclusory. As was previously discussed, the SAC not only pleads that

Defendant knew of the Hinge Defect, but it also includes detailed allegations suggesting that the defect was a *substantial* issue for Defendant that prompted an *extensive number* of complaints— and that many of those complaints were found on Defendant's own website.  (*Id.* at ¶¶ 17, 32, 91-98; D.I. 25 at 9-10); *see also supra* at 29.  Those facts, in turn, could render it more plausible that the Hinge Defect was such a significant problem and of such magnitude that Defendant might in fact have intentionally altered its warranty term, all in order to box out affected customers from seeking (possibly expensive) redress for this problem.  This is enough to plead substantive unconscionability.

Additionally, the SAC pleads enough to plausibly allege procedural unconscionability. As was noted above, Plaintiffs assert that because Defendant had knowledge of the Hinge Defect and of its own manipulation of the warranty terms (while Plaintiffs did not), then there was unequal bargaining power between the parties.  (D.I. 19 at ¶ 25)  They also allege that Plaintiffs had no other real options to negotiate the terms of the warranty, (*id.*), which seems plausible, in light of the nature of the transaction and the warranty at issue.[29]

For the foregoing reasons, then, the Court DENIES Defendant's Motion as to the express warranty claims.

---

[29]     Defendant argues that because Plaintiffs had the option of purchasing an extended warranty from either HP, the involved retailer or other sources, then Plaintiffs cannot show procedural unconscionability.  (D.I. 23 at 24)  In certain circumstances, courts have found that where a plaintiff has alternative options—either to purchase an extended warranty or to purchase the product from another manufacturer—this factored into a conclusion that the plaintiff had not sufficiently made out a claim for procedural unconscionability.  *See, e.g., Fisher v. Honda N. Am., Inc.*, No. LA CV13–09285 JAK(PLAx), 2014 WL 2808188, at *9 (C.D. Cal. June 12, 2014); *Majdipour v. Jaguar Land Rover N. Am., LLC*, Civ. No. 2:12-cv-07849 (WHW), 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013).  But here, the presence of this factor is not enough to warrant dismissal of Plaintiffs' claims.  The Court does not see how it helped Plaintiffs from a procedural standpoint to know that they could purchase an extended warranty, if Plaintiffs allegedly did *not* know that Defendant had intentionally manipulated the duration of the Limited Warranty—such that it would often expire before the Hinge Defect manifested.

### c.      Implied Warranty Claims

The Court next turns to Plaintiffs' implied warranty claims (which, as noted above, are brought via 12 different counts).  It will first summarize the law with regard to those claims, and will then address the merits.

The implied warranty of merchantability, which appears to be what is at issue here in all of the implied warranty claims, (D.I. 23 at 25 & n.25; D.I. 25 at 4 n.3 & 28), does not impose a general requirement that the goods at issue precisely fill the expectations of the buyer; instead it only "provides for a *minimum* level of quality."  *Wesley v. Samsung Elecs. Am., Inc*., Civil Action No. 20-cv-18629, 2021 WL 5771738, at *7 (D.N.J. Dec. 3, 2021) (internal quotation marks and citations omitted, emphasis added) (discussing the law as it relates to NJ, IL and FL state law claims); *see also Stearns v. Select Comfort Retail Corp*., No. 08-2746 JF, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) (discussing the law relating to CA state law claims).  It is breached when "the product at issue [is] defective or not fit for the ordinary purpose for which it was intended[]" and where the primary use of the product is impacted by the alleged defect. *Wesley*, 2021 WL 5771738, at *7 (internal quotation marks and citation omitted) (distinguishing from cases where courts found that the implied warranty of merchantability was not breached because the defect impacted a use "incidental to the product's ordinary purpose[]"); *see also Stearns*, 2009 WL 1635931, at *8; *cf. Stewart v. Electrolux Home Prods., Inc*., 304 F. Supp. 3d 894, 913 (E.D. Cal. 2018) (stating that "as long as a car can provide safe, reliable transportation, it is generally considered merchantable even if certain features[,] such as a navigation system do not function properly[]").  At the same time, the alleged defect does not need to preclude *any and all* use of the product at all for the warranty to be violated; again, the question is whether the

defect does not permit the product to be used for its ordinary purpose or function.  *Stearns*, 2009 WL 1635931, at *8.[30]

Turning next to Plaintiffs' allegations, the SAC alleges, *inter alia*, that that Defendant impliedly warranted to Plaintiffs that the Class Laptops were merchantable, but that it breached that implied warranty by producing laptops that contained the latent Hinge Defect.  (*See, e.g.*, D.I. 19 at ¶¶ 9, 614-24, 956-65)  The SAC asserts that the Class Laptops are unfit for the ordinary purpose as to which a laptop computer is used, because when the defective hinges break and cannot support the laptops' screen, the laptops "are unable to be used as intended, that is [as] a portable computer that can easily open and close for mobility, and in the case of 360 models, reconfigure to multiple angles and be used as a tablet or laptop."  (*Id.* at ¶ 6; *see also id.* at ¶¶ 620, 958)  In other words, Plaintiffs allege that the Class Laptops are intended to be portable, that Defendant marketed the Class Laptops as such, and yet because of the Hinge Defect—which renders the "user's ability to [] open the laptop to utilize the device, [] close or transport the laptop, or [] transition the configuration of the laptop . . . dramatically reduced, or lost altogether"—the Class Laptops do not provide for even a minimum level of quality and cannot be used for the ordinary purpose for which they were intended.  (*Id.* at ¶ 15; *see also id.* ¶¶ 6-8, 10, 13, 16)

In response, Defendant's primary argument for dismissal is that Plaintiffs were in fact able to use their Class Laptops "for months or years after purchase" and so "they have no viable claim for breach of implied warranty."  (D.I. 23 at 25-26)  On this score, the SAC does allege that every named Plaintiff used their laptop for many months (most for over a year and some for

---

[30]     Here, once again, the Court presumes that the law it has set out above applies to all of the implied warranty claims at issue, and the parties did not suggest otherwise in their briefing.

many years) before the Hinge Defect first manifested.  (D.I. 19 at ¶ 136 (approximately 18 months of use before Hinge Defect manifested); *id.* at ¶ 147 (same); *id.* at ¶ 159 (approximately 12 months); *id.* at ¶ 166 (approximately 18 months); *id.* at ¶¶ 177-78 (approximately 24 months); *id.* at ¶ 189 (approximately 12 months); *id.* at ¶ 200 (approximately 6 months); *id.* at ¶ 212 (approximately 30 months); *id.* at ¶ 223 (approximately 6 months); *id.* at ¶¶ 235-39 (approximately 44 months); *id.* at ¶ 251 (approximately 18 months); *id.* at ¶ 263 (approximately 30 months); *id.* at ¶ 275 (approximately 6 months); *id.* at ¶ 287 (some unstated number of months); *id.* at ¶ 297 (approximately 24 months); *id.* at ¶ 308 (approximately 12 months); *id.* at ¶ 319 (approximately 32 months); *id.* at ¶ 330 (approximately 18 months); *id.* at ¶ 341 (approximately 19 months); *id.* at ¶ 353 (approximately 36 months); *id.* at ¶ 365 (approximately 13 months); *id.* at ¶ 376 (approximately 14 months); *id.* at ¶ 388 (approximately 12 months); *id.* at ¶ 399 (approximately 13 months); *id.* at ¶¶ 411-13 (approximately 18 months); *id.* at ¶¶ 422-23 (approximately 29 months); *id.* at ¶ 435 (approximately 48 months); *id.* at ¶ 447 (approximately 7 months); *id.* at ¶ 458 (approximately 11 months))  Even after the defect manifested, as to nearly every such named Plaintiff, there is no assertion that they could not or did not use the laptop for *computing purposes* thereafter.  Instead, there is only the assertion that the laptop could not be *easily transported or used in a portable manner* due to the defect.  (*Id.*)  Indeed, as to those Plaintiffs, a fair reading of the allegations is that they *could and did* continue to use the laptop for computing purposes even after the defect reared its head.  (*Id.*)

Assessing this issue was challenging, in that in the relevant sections of the parties' briefs, they cite to almost no court opinions:  (1) that were issued at the motion to dismiss stage; (2) that address a claim for breach of the implied warranty of merchantability; and (3) that address whether an alleged defect in a *laptop* rendered the product unfit for its ordinary purpose or its

primary use. But plenty of opinions involving just those circumstances are out there. And in researching this question, the Court has reviewed many of them. Those opinions are generally supportive of Defendant's argument for dismissal of these claims.

These opinions almost uniformly indicate the following: (1) that the "ordinary purpose" or primary use of a laptop computer is personal computing, i.e., of permitting a user to make use of the computer's processing ability and/or to view various items or media on the computer; and (2) if a defect (like the loss of portability here) renders a laptop *more difficult* to use, but yet still *usable* for basic computing purposes, this will not render the laptop unfit for its ordinary purpose or primary use. *See, e.g.*, *Taleshpour v. Apple Inc.*, Case No. 5:20-cv-03122-EJD, 2021 WL 1197494, at *13 (N.D. Cal. Mar. 30, 2021) (concluding that a laptop's ordinary purpose was use for computing purposes, and finding that the defect at issue—loss of use of the display backlighting system, which severely affected the user's ability to view text and images on the monitors—did not inhibit use of the laptop for ordinary purposes); *In re MacBook Keyboard Litig.*, Case No. 5:18-cv-02813-EJD, 2019 WL 6465285, at *10 (N.D. Cal. Dec. 2, 2019) (agreeing that a laptop is unfit for its ordinary purpose if one cannot type on it); *Thornton v. Micro-Star Int'l Co.*, Case No. 2:17-cv-03231-CAS-AFMx, 2018 WL 5291925, at *10 (C.D. Cal. Oct. 23, 2018) (finding that a laptop's ordinary purpose was use for gaming purposes, and concluding that the laptop's failure to allow for "upgradeability" did not render it unfit for ordinary use); *Miller v. Fuhu Inc.*, No. 2:14-cv-06119-CAS(ASx), 2015 WL 2085490, at *14 (C.D. Cal. May 4, 2015) (concluding that a laptop was still fit for ordinary use, where the allegations were that the laptop could be used for computing purposes, but yet still suffered problems when recharging and could not reliably be used when plugged into a power source); *In re Sony Vaio Comput. Notebook Trackpad Litig.*, Case No. AJB 09cv2109 AJB (MDD), 2013

WL 12116137, at *16 (S.D. Cal. Sept. 25, 2013) ("Common sense indicates a purchaser's ordinary, intended purpose for a laptop is personal computing[.]"); *Kacsuta v. Lenovo (United States) Inc*., Case No.: SACV 13-00316-CJC(RNBx), 2013 WL 12126775, at *3 (C.D. Cal. July 16, 2013) (concluding that although the laptops at issue were difficult to connect to Wi-Fi and had very slow internet speeds, that did not mean that they were unfit for ordinary use, since users were still able to use the laptops to do word processing, consume non-internet-based media and connect to the internet in certain ways); *Elias v. Hewlett-Packard Co*., 903 F. Supp. 2d 843, 852 (N.D. Cal. 2012) (concluding that laptop computers were not unfit for ordinary use, where they may fail to boot, randomly restart, generally underperform, have software failure, overheat, crash and even catch fire, as the computers could still be used as computers as were not unmerchantable); *Kent v. Hewlett-Packard Co*., No. 09-5341 JF (PVT), 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010) (finding that laptops that were prone to "locking up" when turned on, which could cause a loss of data, were still fit for their ordinary purpose or use, as the plaintiffs did not allege that they were unable to use the computers).[31]  Moreover, these cases suggest that where a purchaser has been able to use a laptop computer and its processing power for a period of at least 18 months, then an implied warranty of merchantability claim cannot stand.  *See, e.g., Ocampo v. Apple Inc*., Case No. 5:20-cv-05857-EJD, 2022 WL 767614, at *6 (N.D. Cal. Mar. 14, 2022) (dismissing the plaintiffs' implied warranty claims where they alleged that they used their computers "far past the express and implied warranty period[,]" i.e., for two or three years);

---

[31]      *Cf. Williamson v. Apple, Inc*., No. 5:11-cv-00377 EJD, 2012 WL 3835104, at *8 (N.D. Cal. Sept. 4, 2012) (dismissing claims regarding the implied warranty of merchantability as to an iPhone 4, where the plaintiff's contention was that the phone was not fit for its ordinary purpose because its glass housing was not ultradurable, and concluding that the ordinary purpose of such a product was for use as a smartphone, and where there was no allegation that the product at issue could not perform any expected "phone functions").

*Taleshpour*, 2021 WL 1197494, at *13 (concluding that the ability to use the laptop for computing purposes for nearly three years, despite the presence of a defect, meant it was still fit for basic use); *Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 151489, at *9 (N.D. Cal. Jan. 8, 2015) (concluding that the plaintiffs had failed to adequately plead a breach of the implied warranty of merchantability, because the complaint alleged that one plaintiff's logic board had not failed until 18 months after purchase, while a second plaintiff's logic board (having once been fixed by the defendant) did not fail until approximately two years after purchase; since both plaintiffs were "able to adequately use their computers for approximately 18 months and two years, respectively[,]" no claim was viable); *Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *7 (W.D. Tex. Oct. 31, 2013) (concluding that the laptops were fit for their ordinary purpose, where they were able to be used for computing purposes for up to five years before failure).

In this case, as noted above, the SAC alleges that about half of the Plaintiffs did not experience any defect in their laptops until 18 months had passed.  And it indicates that no matter when the alleged defects manifested, all (or very nearly all) of the Plaintiffs were still able to use their laptops as functioning computers (that is, to perform computer functions) thereafter.  In light of this, and line with the guidance from the caselaw cited above, the Court concludes that the Motion should be GRANTED as to Plaintiffs' implied warranty claims.

In terms of whether to permit amendment, as the Court noted above, the SAC's allegations indicate that all *or nearly all* of the named Plaintiffs could use their laptops for computing purposes both before and after any defect manifested.  That said, the allegations as to a few Plaintiffs—Plaintiffs Carole Schauer, Terence Graner, Robert DiMartino and Deborah Thelen—seem like they could be different.  As to these Plaintiffs, the SAC could be read to

indicate that they were only able to use their laptops for a relatively short amount of time before any defect manifested, and that once the defect manifested, they were unable to use their laptops at all (or "substantially" at all) for computing purposes.  More specifically:

- Plaintiff Schauer alleges that approximately 12 months after purchase, the Hinge Defect manifested in her laptop, which caused the screen to separate from the lid of the laptop, rendering her laptop "no longer usable in any capacity."  (D.I. 19 at ¶ 159)

- Plaintiff Graner alleges that approximately 12 months after purchase, the Hinge Defect manifested in his laptop, making it difficult to open and close.  Approximately five months later, the hinge snapped, rendering his laptop "substantially unusable."  (*Id.* at ¶ 189)

- Plaintiff Di Martino alleges that approximately 14 months after purchase of his two laptops, the Hinge Defect manifested, which resulted in the computer's screens separating from the base of the laptop; this rendered one of his laptops "so useless that [he] had no choice but to discard it."  (*Id.* at ¶ 376)

- Plaintiff Thelen alleges that approximately 12 months after purchase, the Hinge Defect manifested in her laptop, resulting in the right hinge snapping so that now the laptop is only held together by wiring, rendering her laptop "wholly unusable." (*Id.* at ¶ 388)

As to these four Plaintiffs, it seems possible they could explicitly allege that once the defect manifested, they were unable to use their laptops even for computing purposes.  But in the SAC, Plaintiffs were not attempting to address this particular issue; instead, they were focused on explaining when they lost *portability* as to their laptops.  Thus, it is unclear whether, given the chance to replead, these Plaintiffs would be able to make out a plausible claim (or whether it would be even viable for Plaintiffs to pursue class action-related claims regarding the implied warranty of merchantability, when so few of the named Plaintiffs' allegations here could even possibly support such a claim).

But the Court is not certain that re-pleading as to these Plaintiffs would be a nullity.  And so it will order that:  (1) dismissal of the implied warranty claims as to the remainder of the Plaintiffs shall be with prejudice, but (2) dismissal of such claims as to the four Plaintiffs listed above shall be without prejudice to renew (with allegations that more explicitly speak to the legal issues regarding the implied warranty of merchantability described herein).[32]

## C.    Defendants' Arguments Regarding the Class Allegations

Lastly, Defendant moves to strike Plaintiffs' class allegations on various grounds.  (D.I. 23 at 28-32)  More specifically, Defendant argues that:  (1) Plaintiffs' allegations cannot satisfy Federal Rule of Civil Procedure 23's ascertainability, predominance and commonality requirements; (2) Plaintiffs' nationwide common law claims for fraudulent concealment and unjust enrichment are defective for various reasons; (3) Plaintiffs' class definitions are overbroad; and (4) there are a few state-specific reasons for dismissal of certain claims.  (*Id.*) The Court will begin by addressing the legal standard for a Rule 12(f) motion to strike and will then address the disposition of these issues.

### 1.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  In doing so, "[t]he court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after

---

[32]    In light of the nature of the Court's grant of the Motion as to these claims, it does not make sense to address Defendant's additional arguments for dismissal of the implied warranty claims.  Those are state-specific grounds, (D.I. 23 at 26-27), nearly all of which will not be relevant to the remaining Plaintiffs who could possibly have viable claims.

being served with the pleading." *Id*.  Motions to strike are generally disfavored.  *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009).

      **2.**       **Discussion**

      For three reasons, the Court will DENY the Motion as it relates to the class allegations.

      First, and most importantly, the Third Circuit has previously opined that in "most cases" a district court acts in a "premature" manner if it determines "whether the class could potentially fit within Rule 23 . . . on a motion to dismiss[]" when "there had been no motion for class certification and no discovery[.]" *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011), *vacated on other grounds by* No. 09–3532, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).  Making such a determination requires the district court to conduct "a rigorous analysis[,]" that will often require it to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied."  *Id*. (internal quotation marks and citations omitted).  In line with this, motions to strike class allegations at the pleading stage are generally disfavored in this District and in the other districts in the Third Circuit.  *See, e.g., Talley v. Gen. Motors, LLC*, No. 1:20-cv-01137-SB, 2021 WL 7209448, at *9 (D. Del. Nov. 26, 2021) ("Generally, motions to strike before discovery are disfavored."); *Davis v. D.R. Horton Inc*., C.A. No. 19-1686-LPS-JLH, 2020 WL 6042091, at *2 (D. Del. Oct. 13, 2020) (same); *Martin v. Ford Motor Co*., 765 F. Supp. 2d 673, 680 (E.D. Pa. 2011) (same).

      Second, some of the issues raised here by Defendant are meaty, and yet they were only addressed in a few sentences in this portion of the briefing.  This did not permit a robust evaluation of the issues, which could be more substantively addressed in class certification briefing.

Third, it seems very possible that Plaintiffs may seek leave to amend.  If they do, a proposed new pleading might look materially different in some regards.  So even as to certain issues raised here by Defendants that appear to have merit (like the issue about how the class allegations are overbroad), (*see* D.I. 26 at 17), waiting to address them until a later stage might obviate the need to address them at all.

## III.    CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court GRANTS-IN-PART and DENIES-IN-PART the Motion.

An appropriate Order will issue.